| | |
|---|---|
| KHOLKAR VISHVESHWAR GANPAT,<br>    **Plaintiff** | CIVIL DOCKET |
| **VERSUS** | NO. 18-13556 |
| **EASTERN PACIFIC SHIPPING, PTE. LTD,**<br>    **Defendant** | SECTION: "E" (4) |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss for Insufficient Service of Process filed by Defendant Eastern Pacific Shipping, PTE. LTD ("Eastern Pacific") pursuant to Federal Rule of Civil Procedure 12(b)(5).[1] Plaintiff Kholkar Vishveshwar Ganpat opposes the motion.[2] Eastern Pacific filed a supplemental memorandum in support of its motion to dismiss.[3] Plaintiff filed a reply to Eastern Pacific's supplemental memorandum in support of its motion to dismiss.[4]

## BACKGROUND

Plaintiff alleges he contracted malaria while working as a crew member aboard the M/V STARGATE.[5] On December 12, 2018, Plaintiff filed the instant suit, bringing claims against Eastern Pacific under the Jones Act, general maritime law, and contract law.[6] Eastern Pacific is a Singapore private limited company and its principal place of business is in Singapore.[7] On December 17, 2019, Plaintiff filed into the record his purported proof

---

[1] R. Doc. 69.
[2] R. Docs. 116.
[3] R. Doc. 118.
[4] R. Doc. 120.
[5] R. Doc. 1 at ¶¶ 6, 32
[6] R. Doc. 1. Plaintiff alleges Eastern Pacific is his Jones Act employer.
[7] R. Doc. 1 at ¶ 2; R. Doc. 69-4 at ¶ 2.

of service on Eastern Pacific.[8] The return on the summons reflects Plaintiff served Captain Owen Bona[9] aboard the M/V BANDA SEA on December 15, 2018[10] while the ship lay at anchor in the Mississippi River just below New Orleans, Louisiana.[11] On January 4, 2019, counsel for Eastern Pacific made an appearance, limited to contesting service of process and personal jurisdiction.[12]

On January 5, 2019, Eastern Pacific filed a motion to dismiss, moving to dismiss Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.[13] Eastern Pacific alternatively moved to require proper service in Singapore through the Hague Service Convention.[14] Eastern Pacific further sought dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[15] Plaintiff opposed this motion, arguing service upon Eastern Pacific was proper because Plaintiff made personal service on Captain Bona, who Plaintiff argued is a "managing agent" of Eastern Pacific.[16] In a conference with the Court on April 18, 2019, Eastern Pacific represented that it "withdrew its objection to personal jurisdiction and will not object to venue in this Court."[17] In the minute entry for the conference, the Court granted Eastern Pacific leave to file an amended and restated motion to dismiss.[18] Eastern Pacific did so, filing the instant Motion to Dismiss for Insufficient Service of Process on

---

[8] R. Doc. 8.

[9] The return on the summons provides that "Captain Owen Bona" was served. R. Doc. 8 at 2. Captain Bona's full name is Christopher Owen Bona. *See* R. Doc. 118-4 (Capt. Bona Dep.).

[10] R. Doc. 8.

[11] R. Doc. 116-3 at 1.

[12] R. Doc. 9.

[13] R. Doc. 16 at 1.

[14] *Id.* Eastern Pacific now acknowledges Singapore is not a signatory to the Hague Service Convention. R. Doc. 68.

[15] R. Doc. 16-1 at 1 n.3.

[16] R. Doc. 23.

[17] R. Doc. 68.

[18] *Id.*

April 25, 2019.[19] Eastern Pacific asks the Court "either to dismiss the complaint or require its proper service on Eastern Pacific in Singapore pursuant to a Letter Rogatory."[20] Accordingly, on April 30, 2019, the Court denied as moot Eastern Pacific's original motion to dismiss.[21]

On April 30, 2019, Plaintiff filed a motion for leave to take discovery on the "managing agent" issue.[22] On June 4, 2019, the Court granted this motion.[23] After completing discovery on the "managing agent" issue, Plaintiff filed his opposition to Eastern Pacific's instant motion to dismiss.[24] Plaintiff argues depositions and written discovery demonstrate personal service on Captain Bona was proper service upon Eastern Pacific because (1) Captain Bona was Eastern Pacific's actual or borrowed employee and/or (2) Captain Bona was a "managing agent" of Eastern Pacific vested with "general powers involving the exercise of independent judgment and discretion."[25] Eastern Pacific argues Captain Bona is neither Eastern Pacific's actual or borrowed employee nor its managing agent, but rather is an employee of Ventnor Navigation, Inc. ("Ventnor"), a Liberian corporation.[26] Anil Arjun Singh, the Chief Operating Officer of Eastern Pacific,[27] attested "Eastern Pacific manages but does not own the M/V STARGATE."[28] With respect to Eastern Pacific's "management" role, Singh testified in his deposition that Eastern Pacific "find[s] commercial employment for the vessel on behalf of the shipowner, and

---

[19] R. Doc. 69.
[20] *Id.* at 1.
[21] R. Doc. 72.
[22] R. Doc. 70.
[23] R. Doc. 81.
[24] R. Doc. 116.
[25] *Id.* at 2.
[26] The parties at times refer to Ventnor as "Ventor." The company's name is Ventnor.
[27] R. Doc. 118-5 at 6.
[28] R. Doc. 69-4 at ¶ 5.

. . . ensure[s] that the vessel has sufficient provisions, stores, spare parts, [and] competent crew. . ."[29] With respect to Captain Bona, Singh attested:

> Captain Owen Bona is not and has never been a corporate officer, or managing or general agent of Eastern Pacific. Captain Owen Bona is not and has never been an employee of Eastern Pacific. Eastern Pacific has never expressly or impliedly authorized Captain Owen Bona to accept service of any legal process for Eastern Pacific. In connection with the M/V BANDA SEA, Captain Bona is an employee of Vent[n]or Navigation, Inc., a Liberian corporation.[30]

Eastern Pacific alternatively asks the Court to certify the question to the Fifth Circuit Court of Appeal, should the Court deny Eastern Pacific's motion to dismiss.[31]

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim if service of process is not completed in the proper manner. Service is not completed in the proper manner if not made in compliance with the requirements of Rule 4.[32] "In the absence of valid service of process, proceedings against a party are void."[33] Because Eastern Pacific objects to the legal sufficiency of the service of process, the plaintiff has the burden to demonstrate by a preponderance of the evidence the validity of service.[34] "The district

---

[29] R. Doc. 118-5 at 60.

[30] R. Doc. 69-4 at ¶ 6.

[31] R. Doc. 116.

[32] Fed. R. Civ. P. 4.

[33] *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981).

[34] *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). *See also Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990). On the rare occasion a defendant challenges whether service was in fact made as reflected in the return of service, the rule is that "[a] signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011). However, the presumption of valid service under Hartmann applies only when the return reflects service of process "has been effected through personal service on the defendant," and the defendant denies as a matter of fact that such personal service took place. *Moreno v. LG Elecs., U.S.A. Inc.*, No. 7:13-CV-427, 2014 WL 11281383, at *3 (S.D. Tex. May 7, 2014). "Such an interpretation of *Hartmann* is logical, given that service was challenged by the plaintiffs in that case on the ground that the process server was lying when he claimed to have left copies of the summons and the complaint with a person of suitable age at the defendants' domicile. Where the dispute over the validity of service effectively becomes a swearing match, it is reasonable for a court to attribute extra weight to the sworn declaration of the neutral process server." *Veliz v. Rimax Contractors, Inc.*, 2016 WL 1704496, at *1, n.3 (E.D. La. Apr. 28, 2016) (discussing *Moreno's* interpretation of *Hartmann*). "In situations such as the one before the Court, however, where the question of proper service turns not on factual issues but on legal ones, such a presumption is less compelling." *Id.*

court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process."[35]

## LAW AND ANALYSIS

Initially, Eastern Pacific challenged the Court's personal jurisdiction over Eastern Pacific, in addition to challenging the sufficiency of the service of process.[36] Eastern Pacific subsequently filed an amended motion to dismiss in which it challenged the legal sufficiency of the service of process but did not challenge the Court's personal jurisdiction.[37] Under Federal Rule of Civil Procedure 12(h), a party waives any objection to personal jurisdiction by failing to assert it in the party's answer or responsive pleading.[38] In this case, Eastern Pacific's amended motion to dismiss does not include an objection to personal jurisdiction, and, as a result, Eastern Pacific has waived this objection pursuant to Rule 12(h). Nevertheless, a party's waiver of an objection to personal jurisdiction does not constitute a finding that facts exist which justify the exercise of personal jurisdiction by the Court. Instead, such a waiver creates a presumption that personal jurisdiction exists.[39]

Even though Eastern Pacific has legally submitted to the personal jurisdiction of the Court by waiving any objection it might have, the Court still must determine whether

---

In this case, Eastern Pacific does not dispute that Captain Bona was physically served with the Plaintiff's complaint. Rather, the dispute concerns whether the service made was legally sufficient under Federal Rule of Civil Procedure 4. Accordingly, application of a presumption of valid service is inappropriate in this case and Plaintiff has the burden of proving service was valid. However, even if the signed return of service on Captain Bona constituted prima facie evidence of proper service, Eastern Pacific has provided sufficient evidence to overcome any presumption that service was valid.

[35] *George v. United States Dep't of Labor*, 788 F.2d 1115, 1115 (5th Cir. 1986).
[36] R. Doc. 16-1 at 1, 1 n.3.
[37] R. Doc. 69.
[38] Fed. R. Civ. P. 12(h)(1)(B); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982).
[39] *Ins. Corp. of Ireland*, 456 U.S. at 709 (discussing the "application of a legal presumption to the issue of personal jurisdiction").

the service of process on Eastern Pacific is legally sufficient. "[P]ersonal jurisdiction and service of process a[re] conceptually distinct issues."[40] As the Fifth Circuit has explained:

> [An] analysis of personal jurisdiction is based on a combination of two elements, amenability to jurisdiction and service of process. By amenability we refer to the substantive reach of a forum's jurisdiction. Service of process is the physical means by which jurisdiction is asserted. These elements are related but distinct . . . If the law of the forum does not authorize the means by which service on a party has been accomplished, the court lacks personal jurisdiction over the party even though the party is amenable to the court's jurisdiction.[41]

Federal Rule of Civil Procedure 4(h) provides the method of service of process on a corporation, partnership, or association. The rule provides different means of service when service is effectuated within the United States as opposed to outside of the United States.[42] When service is effected within the United States, it may take place in two ways:

> (A) in the manner prescribed by [Rule 4(h)(1)(A) and] Rule 4(e)(1) for serving an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"[43]; or

> (B) in the manner prescribed by Rule 4(h)(1)(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.[44]

Plaintiff argues service on Captain Bona aboard the M/V BANDA SEA while the vessel lay at anchor in the Mississippi River was proper either under Rule 4(h)(1)(A) and Rule 4(e)(1) because Captain Bona is an actual or borrowed employee of Eastern Pacific,

---

[40] *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 826 (5th Cir. 1996).
[41] *Terry v. Raymond Intern., Inc.*, 658 F.2d 398, 401 (5th Cir. 1981), *rev'd on other grounds, Point Landing, Inc. v. Omni Capital Intern., Ltd.*, 795 F.2d 415, 427 (5th Cir. 1986).
[42] Fed R. Civ. P. 4(h)(2).
[43] Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1).
[44] Fed. R. Civ. P. 4(h)(1)(B).

or, alternatively, under Rule 4(h)(1)(B) because Captain Bona is a managing agent of Eastern Pacific. Eastern Pacific argues it was not properly served under these rules.

## I.  Rule 4(h)(1)(A) and Rule 4(e)(1)

Plaintiff argues service of process was proper under Rule 4(h)(1)(A) and Rule 4(e)(1), which incorporate Louisiana state law. Rule 4(h)(1)(A) allows service to be made as permitted by Rule 4(e)(1) when a domestic or foreign corporation must be served in a judicial district of the United States. Rule 4(e)(1) in turn allows service to be made as permitted by Louisiana state law. La. Code Civ. P. art. 1261(B) provides, in pertinent part:

> B. If the corporation has failed to designate an agent for service of process, if there is no registered agent by reason of death, resignation, or removal, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service of the citation or other process may be made by any of the following methods:
>
>> (1) By personal service on any officer, or director, or on any person named as such in the last report filed with the secretary of state.
>>
>> (2) By personal service on any employee of suitable age and discretion at any place where the business of the corporation is regularly conducted.
>>
>> (3) By service of process under the provisions of R.S. 13:3204, if the corporation is subject to the provisions of R.S. 13:3201.[45]

The provision in La. Code Civ. P. art. 1261(B)(2) allowing service on an employee of suitable age and discretion at any place where the business of the corporation is regularly conducted applies only if the corporation "has *failed* to designate an agent for service of process."[46] To determine whether Eastern Pacific has *failed* to designate an agent for service of process, the Court must first determine whether Eastern Pacific was *required* to designate an agent for service of process under Louisiana law.

---

[45] La. Code Civ. P. 1261.
[46] La. Code Civ. P. 1261(B)(2) (emphasis added).

"Louisiana, like every other state in the country, requires a foreign entity to register to do business in the state before it can transact business in the state."[47] La. R.S. 12:301 requires a foreign entity to procure a certificate of authority from the secretary of state to transact business in Louisiana.[48,49] Specifically, La. R.S. 12:301 provides, in pertinent part:

> No foreign corporation or association, except one which has before January 1, 1969, been granted a certificate of authority to do business in this state which is still valid, shall have the right to transact business in this state until it shall have procured a certificate of authority to do so from the secretary of state.[50]

In *Kirkeby–Natus Corporation v. Campbell*, the Louisiana Fourth Circuit Court of Appeal held the requirement that a foreign corporation obtain a certificate of authority to do business in Louisiana before transacting business in the state "does not apply to a foreign corporation unless [the foreign corporation] is actually [d]oing business in Louisiana."[51]

"No statutes establish those acts which do constitute transacting business within the state."[52] However, La. R.S. 12:302 defines "acts not considered transacting business" in Louisiana.[53] Significantly, La. R.S. 12:302 provides:

---

[47] *Gulf Coast Bank v. Designed Conveyor Systems, LLC*, Civil Action No. 16-412-JJB-RLB, 2017 WL 120645, at *4 (M.D. La. Jan. 12, 2017) (citing La. R.S. 12:301).

[48] La. R.S. 12:301. A failure to register carries certain penalties under Louisiana law. If a foreign entity fails to obtain a certificate of authority prior to transacting business in Louisiana, La. R.S. 12:314 forbids the entity from "present[ing] any judicial demand before any court of this state." Further, La. R.S. 12:314.1 authorizes the secretary of state to "impose a penalty of not more than one thousand dollars per violation against such foreign corporations transacting business in this state without a valid certificate of authority." La. R.S. 12:314.1.

[49] If a corporation is required to obtain a certificate of authority to transact business in the state, the foreign entity must designate a registered agent for service of process. La. R.S. 12:308(A)(1) ("Each foreign corporation authorized to transact business in this state" must have and continuously maintain in Louisiana "[a]t least one registered agent.").

[50] La. R.S. 12:301.

[51] *Kirkeby–Natus Corporation v. Campbell*, 210 So.2d 103, 105 (La. App. 4 Cir. 1968) (discussing Louisiana statute that forbids a foreign corporation not authorized to transact business in the state from bringing suit in a Louisiana court)).

[52] *Williamson-Dickie Apparel Manufacturing Co. v. Hanger, Inc.*, 422 So.2d 602 (La. App. 3 Cir. 1982).

[53] La. R.S. 12:302.

> Without excluding other activities which may not constitute transacting business in this state, a foreign corporation or a business association shall not be considered to be transacting business in this state, for the purpose of being required to procure a certificate of authority pursuant to R.S. 12:301, by reason of carrying on in this state any one or more of the following activities:
> . . .
> H. Transacting any business in interstate or foreign commerce.[54]

Subsection H excludes from activities constituting transacting business in the state the transaction of business in interstate or foreign commerce.[55] Under subsection H, a foreign corporation engaged only in interstate or foreign commerce is exempt from the requirement of procuring a certificate of authority.[56] A foreign corporation is engaging in intrastate business, as distinguished from interstate or foreign commerce, when the foreign corporation's activity in the state is "such as to remove the corporation's sphere of operation from one in [foreign or] interstate commerce to a local state operation thus subjecting the corporate entity to local licensing and regulation."[57] "[T]he question of intrastate corporate activity must be determined in the light of the circumstances of each individual case."[58]

To serve process on an employee of Eastern Pacific in Louisiana under La. Code Civ. P. art. 1261(B)(2), Plaintiff has the burden of showing Eastern Pacific was transacting intrastate business in Louisiana, as opposed to interstate or foreign commerce, and as a result was required to procure a certificate of authority pursuant to La. R.S. 12:301 but failed to do so.[59] The fact that Eastern Pacific has waived its objection to personal jurisdiction does not automatically subject the corporation to Louisiana's requirement

---

[54] La. R.S. 12:302(H).
[55] *Id.*
[56] *Campbell*, 210 So.2d at 105.
[57] *A. E. Landvoight, Inc. v. Louisiana State Emp. Retirement Sys.*, 337 So.2d 881, 885 (La. App. 1 Cir. 1976).
[58] *Id.* at 885-86 (citations omitted).
[59] *See supra* fn.34.

that it procure a certificate of authority from the Secretary of State because it is transacting business in Louisiana. This is true for two reasons. First, the Court has not made no factual determination that the actions of Eastern Pacific are sufficient to subject the corporation to personal jurisdiction in this state; instead, Eastern Pacific waived its objection to personal jurisdiction. Second, even if the Court had made a finding of personal jurisdiction, "the jurisprudence concerning the amount of business activity required to support state regulation demands considerably more local activity than is necessary to subject a nonresident to a state's jurisdiction for purposes of litigation."[60]

To determine whether a foreign corporation is transacting intrastate business in this state, Louisiana courts often focus on whether an entity maintains offices, employees, and operations in Louisiana.[61] For instance, in *Hattiesburg Manufacturing Co. v. Pepe*, the Louisiana First Circuit Court of Appeal considered whether a foreign corporation was prohibited from bringing suit in Louisiana pursuant to state law, which prohibited any corporation "doing business in this State" from bringing suit before any court of the state unless the corporation "has complied with the laws of this state for doing business herein."[62] The court held the foreign corporation plaintiff's activities were "purely interstate in character" and not intrastate because the plaintiff maintained no office or warehouse in Louisiana, any materials the plaintiff purchased in Louisiana were shipped to its home office in Mississippi, and the salesmen employed by the plaintiff that traveled

---

[60] *A. E. Landvoight*, 337 So.2d 881 ("[T]he nature and extent of [the] [a]ppellant's Louisiana activities constitute operation in interstate commerce. Such limited activity is insufficient, in our view, to constitute intrastate operation subjecting a foreign corporation to state licensing and regulation."). *See also Stanga v. McCormick Shipping Corp.*, 268 F.2d 544 (5th Cir. 1959).

[61] *See, e.g.*, *LeFebure Corp. v. Lefebure, Inc.*, 284 F. Supp. 617 (E.D. La. 1968); *R.J. Brown Co. v. Grosjean*, 189 La. 778 (1938); *Williamson-Dickie*, 422 So.2d 602; *J. Perez, S.A. v. Louisiana Rice Growers, Inc.*, 139 So.2d 247 (La. App. 3 Cir. 1962).

[62] *Hattiesburg Manufacturing Co. v. Pepe*, 140 So.2d 449, 451 (La. App. 1 Cir. 1962) (discussing former La. R.S. 12:211, now La. R.S. 12:314).

to Louisiana would send purchase orders back to Mississippi, from where the plaintiff's supplies would be transported to the purchasers in Louisiana.[63]

In *A. E. Landvoight, Inc. v. Louisiana State Emp. Retirement System*, the Louisiana First Circuit Court of Appeal considered whether the exception contained in subsection H of La. R.S. 302 applied such that a loan broker was exempt from a state law requiring loan brokers "transact[ing] business in this state" to register in the officer of the commissioner.[64] The court held the "nature and extent of [the loan broker's] Louisiana activities constitute operation in interstate commerce" as opposed to intrastate commerce.[65] The loan broker, a company incorporated in Maryland with its main office in Virginia, "maintain[ed] no office in Louisiana and ha[d] no agents, employees or representatives residing in or making calls upon prospective borrowers or lenders in this state."[66] The loan broker's "activity in [Louisiana] consist[ed] solely of processing a single loan from [the Louisiana State Employees' Retirement System ("System")] to [the] [d]eveloper and, incidental thereto, entering into an agreement with System for the servicing of said loan."[67] To process the loan, the loan broker's representatives made two trips to Louisiana to inspect the subject property and the loan broker's president returned to Louisiana to pick up the loan commitment once it was accepted by the developer.[68] In fulfilling its obligations under the servicing agreement, the loan broker "made only one trip to Louisiana."[69] The court explained: "[s]uch limited activity is insufficient, in our

---

[63] *Id.* at 452-53.
[64] 337 So.2d 881.
[65] *Id.* at 886.
[66] *Id.* at 885.
[67] *Id.* at 882.
[68] *Id.* at 885.
[69] *Id.*

view, to constitute intrastate operation subjecting a foreign corporation to state licensing and regulation."[70]

To determine whether Plaintiff has met his burden of showing that Eastern Pacific has been transacting business in Louisiana, the Court may consider evidence outside the pleadings.[71] In this case, Plaintiff has submitted no evidence showing Eastern Pacific transacts intrastate business in Louisiana. In fact, even after being granted extensive jurisdictional discovery, Plaintiff's opposition to the motion to dismiss is almost devoid of any explanation as to how Eastern Pacific was transacting business in Louisiana at all. At most, in the complaint, Plaintiff alleges Eastern Pacific "regularly sailed upon the navigable waters of the State of Louisiana"[72] and points to the affidavit of Anil Arjun Singh, who attests:

> Eastern Pacific's activities and business in the Eastern District of Louisiana are limited to the management of international ocean-going vessels.[73]

Plaintiff offers no evidence that Eastern Pacific has offices, employees, or operations in Louisiana. Plaintiff has failed to establish that Eastern Pacific was transacting intrastate business in Louisiana.[74]

---

[70] *Id.* at 886 (citations omitted).

[71] *See, e.g.*, *Thomas v. New Leaders for New Sch.*, 278 F.R.D. 347, 351 (E.D. La. 2011) ("The Court may consider . . . affidavits when resolving a Rule 12(b)(5) challenge without converting the motion into a motion for summary judgment."); *Brown v. Hingle*, No. Civ. A. 02–1773, 2003 WL 548907, at *1 (E.D. La. Feb. 21, 2003) (discussing the evidence contained in the record in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and holding "there remains insufficient evidence to establish that service was properly completed on [the defendant] in compliance with Rule 4(m). Accordingly, [the plaintiff's]] claims against [the defendant] must be dismissed without prejudice."). *See also Sakallah v. Harahan Living Center, Inc.*, No. Civ. A. 05-5492, 2006 WL 2228967, at *1 (E.D. La. Aug. 2, 2006) (stating the court considered "the record" and the "evidence submitted" in deciding the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5)).

[72] R. Doc. 1 at ¶ 11.

[73] R. Doc. 116-1 at ¶ 9.

[74] *See Familia de Boom,* 629 F.2d at 1139-40 (finding the plaintiffs did not satisfy their burden or establishing the validity of the service of process because there was "no showing on the record of an agency relationship" between the defendant and the company that was served, "nor is there a showing of any connection" between the defendant and the address to which process was mailed); *Robertson v. City of Thibodaux*, Civil Action No. 15-1951, 2015 WL 7734095 (E.D. La. Nov. 30, 2015) (finding plaintiffs failed to

The evidence contained in the record actually demonstrates Eastern Pacific does not transact intrastate business in Louisiana. In support of its motion to dismiss, Eastern Pacific submitted the affidavit of Anil Arjun Singh in which he attests:

> Eastern Pacific has no operations, offices, or employees in the United States and has no agents in the United States that are authorized to receive service of process in connection with the Litigation.[75]
>
> . . .
>
> Eastern Pacific's activities and business in the Eastern District of Louisiana are limited to the management of international ocean-going vessels. Eastern Pacific has no employees, offices or operations in the Eastern District of Louisiana.[76]

Like the loan broker in *A. E. Landvoight*, there is no evidence in the record that Eastern Pacific maintains offices, employees, or agents in Louisiana.[77] Even if Eastern Pacific "sailed upon the navigable waters of the State of Louisiana" as Plaintiff alleges, and managed international ocean-going vessels, as Singh attests, such limited activity is insufficient to remove Eastern Pacific's sphere of operation from one in foreign or interstate commerce to a local state operation thus subjecting it to Louisiana's licensing requirements. As a result, Plaintiff has not carried his burden of proving Eastern Pacific was required to procure a certificate of authority from the Louisiana Secretary of State but failed to do so.

Because Eastern Pacific was not required to obtain a certificate of authority to do business in Louisiana, La. Code Civ. P. art. 1261(B)(2) does not apply and Louisiana Revised Statute 13:3471 does. La. R.S. 13:3471 provides rules that "supplement those

---

establish the validity of service where there was "no evidence" the person served was the authorized agent of the defendant); *Cross v. City of Grand Prairie*, No. CIV. A. 3-96-CV-0446-P, 1998 WL 133143, at *7 (N.D. Tex. Mar.17, 1998) (finding the plaintiff did not meet his burden to demonstrate validity of service when the plaintiff "failed to provide any explanation or evidence to show that service . . . was proper").

[75] R. Doc. 69-4 at ¶ 2.
[76] *Id.* at ¶ 9.
[77] *Id.* at ¶¶ 2, 9.

governing the service of citation and other legal process in a civil action or proceeding contained in the Code of Civil Procedure."[78] La. R.S. 13:3471(1)(a) provides:

> If the foreign corporation or the foreign limited liability company is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, or for any taxes due or other obligations arising therefrom, may be made on any employee or agent of the corporation or limited liability company of suitable age and discretion found in the state.[79]

For Plaintiff to make service on an employee of Eastern Pacific under La. R.S. 13:3471(1)(a), the corporation must have "engaged in a business activity" in Louisiana and the plaintiff's cause of action must have "resulted from such business activity."

Louisiana courts have referred to the business activity under this statute as being of a continuous, systematic, and substantial nature, as opposed to casual, single, or isolated activities.[80] For the same reasons Plaintiff has failed to produce evidence that Eastern Pacific transacted business in Louisiana, it also has failed to provide evidence establishing Eastern Pacific has engaged in business activity in Louisiana. In any event, it is not necessary for the Court to determine whether Eastern Pacific has engaged in a business activity in Louisiana because its employee or agent found in the state may be served only if the cause of action results from that business activity. The Fifth Circuit has explained the requirement that the cause of action "result[] from" a foreign corporation's "business activity" in Louisiana as follows:

> [T]he cause of action need not result from the acts of the corporation's employees in the state, but need result only from the 'business activity' of the corporation in Louisiana.[81]

---

[78] La. R.S. 13:3471.
[79] La. R.S. 13:3471(1)(a).
[80] *Johnson v. El Dorado Creosoting Co.*, 71 So.2d 613, 616 (La. App. 4 Cir. 1954).
[81] *Time, Inc. v. Manning*, 366 F.2d 690, 694 (5th Cir. 1966).

In this case, it is clear Plaintiff's alleged injuries could not have *resulted from* Eastern Pacific's business activities in Louisiana. To the contrary, Plaintiff alleges his injuries resulted from Eastern Pacific's activities well outside of Louisiana. Specifically, Plaintiff alleges the vessel on which Plaintiff was injured departed "Savannah, Georgia" where Plaintiff was not administered anti-Malaria medication and the vessel was not stocked with anti-Malaria medication,[82] Plaintiff began to suffer Malaria symptoms as the vessel sailed from "Gabon to Brazil,"[83] Plaintiff was hospitalized for the Malaria he contracted in "Rio de Janeiro,"[84] and Plaintiff was subsequently "repatriated to India."[85]

Service of process on Eastern Pacific by service on Captain Bona was not proper under Rule 4(h)(1)(A) and Rule 4(e)(1).[86]

## II.     Rule 4(h)(1)(B)

Plaintiff alternatively argues service was proper under Rule 4(h)(1)(B), which provides:

> (h) Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
> . . .
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant . . .[87]

---

[82] R. Doc. 1 at ¶¶ 17-20.
[83] *Id.* at ¶ 30.
[84] *Id.* at ¶ 39.
[85] *Id.* at ¶ 45.
[86] Because Plaintiff's cause of action does not result from Eastern Pacific's business activities in Louisiana, the Court need not determine whether Captain Bona is an actual or borrowed employee of Eastern Pacific.
[87] Fed. R. Civ. P. 4(h)(1)(B).

Plaintiff does not contend the individual served, Captain Bona, is an "officer" of Eastern Pacific, a "general agent" of Eastern Pacific, or an "agent authorized by appointment or by law to receive service of process" for Eastern Pacific. Rather, Plaintiff argues only that Captain Bona is a "managing agent" of Eastern Pacific.[88]

Because Plaintiff has the burden of showing the service was proper,[89] he has the burden of showing Captain Bona is a "managing agent" of Eastern Pacific. A federal standard controls the question of whether a particular person is a managing agent for purposes of Rule 4(h)(1)(B).[90] State standards cannot dictate whether an individual qualifies as a "managing agent" under the Federal Rules of Civil Procedure.[91] "The correctness of this conclusion becomes apparent when it is realized that if state standards were to govern the application of Rule 4(h)(1)(B), that subdivision would be reduced to something roughly equivalent to . . . Rule 4(e)(1)[], since service pursuant to either would have to conform to state law."[92] While some courts have given a liberal construction to statutes providing for service of process upon a managing agent to facilitate the acquisition of jurisdiction over foreign corporations *doing business* in a state,[93] that liberal construction is not justified when the defendant is not doing business in the forum state.

---

[88] R. Doc. 116 at 14.

[89] *See supra* fn.34.

[90] *See National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964). *See also Vazquez-Robles v. CommoLoCo, Inc.*, 757 F.3d 1, 5 (1st Cir. 2014).

[91] *See id.*

[92] 4A C. Wright & A. Miller, Federal Practice and Procedure § 1103 at n.2 (4th ed. 2019).

[93] *Person or persons who may or must be served—Service on "managing agent," "business agent," "head agent," "superintendent," etc., other than executive officers—Particular applications of general rules* (2019), 18A Fletcher Cyc. Corp. § 8746. *See also Benham v. World Airways, Inc.*, 253 F. Supp. 588 (D. Haw. 1966); *Edwards v. Atlanta & West Point R. Co.*, 197 F. Supp. 686 (E.D.N.Y. 1961); *Satterfield v. Lehigh Val R Co.*, 128 F. Supp. 669 (S.D.N.Y. 1955).

In interpreting the meaning of a "managing agent," courts "begin 'where all such inquiries must begin: with the language of the statute itself.'"[94] In general, words of a statute are given their "ordinary meaning."[95,96] Unfortunately, the Federal Rules of Civil Procedure do not define "managing or general agent" as used in Rule 4(h)(1)(B).[97] Accordingly, the Court looks to case law for guidance.

To support his interpretation, Plaintiff relies most heavily on *Neset v. Christensen*.[98] There are obvious problems with Plaintiff's reliance on this case. First, *Neset* is a 1950 decision from a district court in New York, which is not controlling on this Court.[99] As a result, *Neset* may at the most be considered persuasive, but only if the facts are similar to the facts before the Court.[100] Second, as Eastern Pacific points out, *Neset* has never been cited for the proposition advocated by the Plaintiff.[101] Last, and most important, the facts if *Neset* are distinguishable from the facts in this case in important respects.[102]

---

[94] *Republic of Sudan v. Harrison*, 139 S.Ct. 1048, 1055-56 (quoting *Caraco Pharmaceutical Laboratories, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012)).

[95] *See id.* at 1060.

[96] Although not explicitly defined in the Federal Rules of Civil Procedure, this Rule could, in the usual sense of the words, be interpreted to mean that the managing agent or general agent must be an employee of the foreign corporation. Indeed, in most of the cases involving service under this Rule, the person served was an employee of the defendant. *See, e.g.*, *Hockenbergs Equipment and Supply Co., Inc. v. Team Contractors, LLC*, EP-18-CV-346-PRM, 2019 WL 1253576 (W.D. Tex. Mar. 11, 2019) (employee was a "managing agent" of the corporate defendant). In the final analysis, it is not necessary for the Court to determine whether a managing agent must be an employee of the defendant under the totality of the circumstances found in this case.

[97] *Hockenbergs,* 2019 WL 1253576 at *3.

[98] 92 F. Supp. 78 (S.D.N.Y. 1950).

[99] *See, e.g.*, *Lastie v. Travis*, Civil Action No. 08-189, 2008 WL 2794665, at *1 n.6. (E.D. La. July 18, 2008) ("[A]uthorities . . . from other jurisdictions [] are not binding in this Circuit.").

[100] *See, e.g.*, *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir. 1974) (rejecting argument that non-controlling case was "persuasive" because the "factual context" of the non-controlling case was not "similar" to the facts of *Brennan*). *See also Hollywood Park Humane Soc. v. Town of Hollywood Park*, No. Civ. A. SA03CA1312–XR, 2004 WL 390807, at *5 (W.D. Tex. Jan. 23, 2004) (finding cases from outside jurisdiction were "not persuasive" because they were "distinguishable").

[101] R. Doc. 118 at 11 n.13.

[102] Interestingly, Plaintiff argues that *Neset* is different from this case in only 2 respects: "First, 1950's Rule 4(d)(3)has evolved over time into 2019's Rule 4(h)(1)(B). Second, in *Neset* the district court found that it had general personal jurisdiction over the defendant under International Shoe whereas [here] EPS has

In *Neset*, the plaintiff served process on the owner and operator of the M/S Hermund, the vessel upon which the plaintiff was injured, through R. Christensen, the Hermund's captain, while the vessel was in New York.[103] Christensen was employed by the owner as the captain of the Hermund.[104] The vessel's owner moved to vacate service only on the ground that it was not doing business in New York and, as a result, service was not sufficient to confer jurisdiction over it.[105] The defendant owner had only one vessel, the Hermund, of which Christensen was the master.[106] New York was the Hermund's only port of call in the United States.[107] The time charter for the vessel was made in New York City and the plaintiff signed articles of employment in New York.[108] Some 14 calls were made by the Hermund at New York ports within a period of at least seventeen months,[109] which established a regular pattern of visits to New York rather than irregular or haphazard calls.[110] Christensen, as master, was presumed to have authority from the owner to procure supplies and other necessities for the Hermund in New York.[111]

The *Neset* court found it had jurisdiction over the subject matter of the complaint but explained that "in a personal action, service of process on a defendant is effective only if the court can acquire jurisdiction of the person of the defendant."[112] The focus of the

---

"conceded" to an unidentified form of personal jurisdiction which Plaintiff contends is Rule4(k)(2)." R. Doc. 116 at 13-14. The Court does not agree.
[103] *Neset,* 92 F. Supp. at 80.
[104] The complaint alleged that Christensen was employed by the owner of the vessel. The opinion references no evidence submitted by the owner to the contrary. In fact, the owner's motion to vacate the service is based only on the argument that it was not doing business in New York. This Court assumes Christensen was employed by the owner.
[105] *Neset*, 92 F. Supp. at 80.
[106] *Id.* at 82-83.
[107] *Id.* at 83.
[108] *Id.* at 81.
[109] *Id.* at 82.
[110] *Id.*
[111] *Id.*
[112] *Id.* at 80.

court in *Neset* was on whether the owner was doing business in New York such that service of process operated to confer personal jurisdiction over the owner. Only "finally," after determining the owner was doing business in New York,[113] did the court consider whether service on Christensen was valid so as to subject to the owner to the jurisdiction of the court.[114] Relying on Rule 4(d)(3), now Rule 4(h)(1)(B), the court found that Christensen was the managing agent of his employer, the owner, with respect to the Hermund. Most significantly, the court found the activities which established the owner's presence in New York were those within the usual authority of the master to act as managing agent for the owner with respect to the Hermund.[115] As the master of the vessel, the vessel's captain had "charge of the ship and of the selection and employment of the crew" and "authority from the owner to procure supplies and other necessaries for the vessel."[116] After the vessel would arrive in New York, "such matters as provisions, wages, ship's stores, hiring and discharging crew and other matters already referred to, were and are the responsibility of the owner under the time charter."[117] The district court held:

> [T]he activities which establish the defendant corporation's 'presence' are those within the usual authority of the master to act as managing agent for an absent principal. Consequently, under the rule established in the *International Shoe Co.*, case, . . . service of process upon [the captain] can be regarded as sufficient to confer jurisdiction over the corporate defendant.[118]

*Neset* is easily distinguishable from the instant case. In *Neset*, the captain who was served (1) was the employee of the defendant vessel owner, (2) was the master of the

---

[113] *Id*. at 82.
[114] It is important to note that "[an] analysis of personal jurisdiction is based on a combination of two elements, amenability to jurisdiction and service of process. By amenability we refer to the substantive reach of a forum's jurisdiction. Service of process is the physical means by which jurisdiction is asserted. These elements are related but distinct." *Terry*, 658 F.2d at 401. "Both service and amenability must be present to authorize a district court to adjudicate the rights of the parties." *Id*.
[115] *Neset*, 92 F. Supp. at 83.
[116] *Id*. at 82.
[117] *Id*.
[118] *Id*. at 83.

Hermund, the vessel upon which the plaintiff was injured, (3) was served in New York where the owner was found to be doing business, and (4) was served in his capacity as managing agent of the owner with respect to the operations of the vessel on which the plaintiff was injured. In contrast, Captain Bona was not an employee of Eastern Pacific,[119] was not master of the vessel upon which Plaintiff was allegedly injured,[120] was not served in a state in which Eastern Pacific was doing business, and was not served in his capacity as managing agent of the owner with respect to the vessel on which the Plaintiff was injured.[121] *Neset* is neither controlling nor instructive in this case.

Turning to the law in our circuit, "[t]he Fifth Circuit has not provided much guidance on who is a managing or general agent of a corporation."[122] In *Jim Fox Enterprises, Inc. v. Air France*, the plaintiff appealed the lower court's holding dismissing the suit for want of personal jurisdiction because of inadequate service of process under the Texas long-arm statute.[123] The Fifth Circuit explained: "[c]ompletely overlooked by both the [lower] [c]ourt and the parties is another possible, perhaps likely route to federal jurisdiction . . . Rule 4(d)(3) . . . establishes a purely federal means of service of process upon a domestic or foreign corporation."[124] The court provided a "managing or general agent" is defined as "one invested with general powers involving the exercise of independent judgment and discretion."[125] The court explained this definition to "merely point out that there is more than one way . . . that appellant perhaps can effectuate service

---

[119] R. Doc. 69-4 at ¶ 6 ("Captain Owen Bona is not and has never been an employee of Eastern Pacific.").
[120] *Id.* at ¶ 8 ("Captain Owen Bona's functions, responsibilities, and duties are to be the master of the M/V BANDA SEA, only.").
[121] *Id.*
[122] *Duncan v. City of Hammond*, Civil Action No: 08-5043, 2009 WL 10680059, at *1 (E.D. La. Mar. 31, 2009).
[123] 664 F.2d 63, 63 (5th Cir. 1981).
[124] *Id.*
[125] *Id.* at 64.

by using the federal service of process authority, Rule 4(d)(3)."[126] The Fifth Circuit remanded the case to permit the plaintiff to try to make valid service on the defendant.

Plaintiff cites *Jim Fox* as providing the definition of "managing agent" and argues that "Captain Bona's 'unfettered discretion to exercise judgment' makes him a 'managing agent'" of Eastern Pacific.[127] Because the issue of whether service on a particular individual was service on a "managing agent" was not before the Fifth Circuit, the utility of *Jim Fox* is limited in this case. Interestingly, in defining "managing agent," the *Jim Fox* court cited a Sixth Circuit decision, *Scholnik v. National Airlines, Inc.*, in which a non-employee of a corporate defendant was served.[128] The *Scholnik* court held service on the non-employee of the corporate defendant was proper under Rule 4(d)(7), now Rule 4(e)(1), which authorized service upon a foreign corporation in the manner prescribed by the law of the state in which the service was made, because the non-employee who was served was a "managing agent" of the corporate defendant under Ohio law.[129] *Scholnik* thus interpreted the meaning of "managing agent" as used in an Ohio statute, not under Rule 4(h)(1)(B). Because a federal standard controls the question of whether a particular person is a managing agent under Rule 4(h)(B),[130] *Scholnik* is not helpful in this case.

Following *Jim Fox*, few courts in this circuit have applied the definition of a "managing agent" in the context of Rule 4(h)(1)(B). Eastern Pacific points to one such decision, *Duncan v. City of Hammond*.[131] In *Duncan*, another section of this Court found

---

[126] *Id.* at 65.
[127] R. Doc. 116 at 16-24 and 31-35. Plaintiff recites the deposition testimony of Captain Bona and quotes portions of the documents produced by Eastern Pacific, but this evidence established Captain Bona's discretion to exercise his judgment only with respect to the M/V BANDA SEA, which is not the vessel on which Plaintiff was injured.
[128] *Jim Fox*, 664 F.2d at 64-65, 65 n.7.
[129] 219 F.2d 115, 116 (6th Cir.), *cert. denied*, 349 U.S. 956, (1955)).
[130] *See supra* pp. 16-17.
[131] Eastern Pacific also points to *Peter-Takang v. Dep't of Children & Family Servs.*, Civil Action No. 14–1078, 2015 WL 4097157 (E.D. La. July 6, 2015). In that case, the summons was delivered to "Diane Rhodes,

personal service upon Jordan Cole, the sales manager at the Blockbuster store in Hammond, Louisiana, was insufficient service of process upon his employer, Blockbuster, a Delaware corporation with its principal place of business in Texas that "does business in Louisiana."[132] The Court held there was no evidence "a person fitting the role of 'managing or general agent' actually received the summons and complaint," and explained service was insufficient under Rule 4(h)(1)(B) because:

> Cole is not a 'responsible party in charge of any substantial phase' of Blockbuster, Incorporated's activity. He is the sales manager for the Hammond Blockbuster location. Cole does not have the authority to bind Blockbuster, Inc. in a contract, hire or fire employees, or accept service of process on behalf of Blockbuster. Cole does not have executive responsibilities for Blockbuster, Inc. and is not responsible for a substantial aspect of Blockbuster's operations. Cole reports to the store manager, who reports to the district manager for southeastern Louisiana.[133]

The facts supporting a finding that Captain Bona is not a managing agent of Eastern Pacific are stronger than the facts presented in *Duncan*. The sales manager in *Duncan* had an employer-employee relationship with the corporate defendant. Plaintiff has not established that Captain Bona is an employee of Eastern Pacific.

Looking to the law outside our circuit, few cases address Rule 4(h)(1)(B) in general or, more specifically, the issue of whether a non-employee may be served on behalf of a corporate defendant. In *Calandra v. National Broadcasting Co. Inc.*, the Eastern District of Missouri considered delivery of service on an employee of an independent contractor in Missouri hired by a foreign corporation, National Broadcasting Company, Inc.

---

Secretary [of the corporate defendant]." *Id.* at *5. The court did not discuss whether the secretary could qualify as a "managing agent" of the corporate defendant. Rather, the court held: "[p]laintiff has made no showing that 'Diane Rhodes' was an officer, a managing or general agent, or authorized by appointment or law to receive service of process on behalf of Touro Hospital." *Id.* As a result, *Peter-Takang* provides limited guidance as to whether Captain Bona qualifies as a "managing agent" of Eastern Pacific under Rule 4(h)(1)(B).

[132] *Duncan*, 2009 WL 10680059 at *1.

[133] *Id.*

("NBC"), to be a sales representative only in "certain areas" in Missouri.[134] The court held service was insufficient to confer jurisdiction over NBC. NBC was a broadcasting corporation that was "not qualified to do business within the state of Missouri," the state where the independent contractor was served, and did "not have an office, telephone listing or resident agent within the state of Missouri."[135] NBC "never designated [the independent contractor] as its general agent or its agent for the purpose of accepting service of process within the State of Missouri."[136] "None of the employees of [the independent contractor] are paid by defendant NBC nor are they responsible to NBC for their conduct." The court held that neither the individual served, nor his independent contractor employer, could be considered a "managing or general agent" of NBC because the individual and his employer "are only involved in one aspect of defendant's business, and not even that aspect which relates to the cause of action herein."[137]

Applying the reasoning of these cases, Captain Bona does not qualify as a managing agent of Eastern Pacific. Singh, the Chief Operating Officer of Eastern Pacific, attested that Captain Bona "is not and has never been an employee of Eastern Pacific."[138] Plaintiff offers no evidence to the contrary.[139] Plaintiff has not established that Eastern Pacific has

---

[134] 440 F. Supp. 13 (E.D. Mo. 1977).
[135] *Id.* at 14.
[136] *Id.*
[137] *Id.* at 15.
[138] R. Doc. 69-4 at ¶ 6.
[139] Plaintiff argues Captain Bona is Eastern Pacific's actual employee "[b]ecause [Eastern Pacific] is hiding behind a straw Jones Act 'employer' (Ventnor)." R. Doc. 116 at 41. However, Plaintiff has submitted no evidence establishing Ventnor and Eastern Pacific are in fact the same entity. Plaintiff alternatively argues that, even if Captain Bona is not Eastern Pacific's *actual* employee, Captain Bona may be considered Eastern Pacific's *borrowed* employee under the borrowed servant doctrine. *Id.* at 40. As Plaintiff admits, the borrowed servant doctrine is a principle ordinarily used to confer workers compensation immunity upon an entity who is not a plaintiff's actual employer. *See, e.g., Melancon v. Amoco Prod. Co.* , 834 F.2d 1238 (5th Cir. 1988). The doctrine is also used in cases brought under the Jones Act, 46 U.S.C. § 688, to determine a plaintiff's real employer. *See, e.g., Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d 447 (5th Cir. 1980). Plaintiff cites no cases, and the Court is aware of none, in which this doctrine was applied when determining whether the individual served is a "managing or general agent" under Fed. R. Civ. P. 4(h)(1)(B). As a result, the Court finds that the borrowed servant doctrine is inapplicable in this case.

any "operations, officers, or employees" in Louisiana, the state where Captain Bona was served.[140] Eastern Pacific never designated nor authorized Captain Bona to accept service of process for Eastern Pacific. [141] Ventnor, not Eastern Pacific, pays Ventnor's employees,[142] which include Captain Bona.[143] Moreover, Captain Bona, to the extent he has any general powers involving the exercise of independent judgment and discretion, is not involved in any aspect of Eastern Pacific's business which relates to the vessel on which the cause of action arose. Rather, Captain Bona is the captain of the M/V BANDA SEA, a different vessel from the one aboard which Plaintiff was allegedly injured.[144]

Plaintiff's argument is, in essence, that service of process under Rule 4(h)(1)(B) may be made on a foreign corporation (1) not shown to be transacting intrastate business or engaging in business activities in Louisiana, (2) through a non-employee captain of a vessel on which the accident did not occur and in a state in which the accident did not occur, (3) who, to the extent he has control over any operations of the Defendant corporation in the forum state, did not have control over operations related to the Plaintiff's cause of action. The Court concludes that this expansive interpretation of Rule 4(h)(1)(B) is not supported by the Rule or the cases interpreting it.[145]

As a result, Plaintiff has failed to establish service on Eastern Pacific through service on Captain Bona was valid.

---

[140] R. Doc. 69-4 at ¶ 2.
[141] *Id.* at ¶ 6.
[142] R. Doc. 118-5 at 91.
[143] R. Doc. 69-4 at ¶ 6.
[144] *Id.* at ¶ 8 ("Captain Owen Bona's functions, responsibilities, and duties are to be master of the M/V BANDA SEA, only.").
[145] The Court is not deciding that a non-employee can never be a "managing agent" of a corporate defendant.

### III. Plaintiff is Granted An Extension to Properly Serve Eastern Pacific

Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.[146]

Under Rule 4(m), the Court must first determine whether "good cause" exists to extend the time for service.[147] If "good cause" does exist, the Court must extend the time requirement for service of process.[148] "If 'good cause' does not exist, the Court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service."[149] The party responsible for serving process has the burden of showing the service was valid or that good cause existed for its failure to serve process properly.[150] "The district court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process."[151]

"Good cause" requires "'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'"[152] Establishing good cause typically requires some evidence of "good faith on the part of the party seeking an enlargement of time and some reasonable

---

[146] Fed. R. Civ. P. 4(m).

[147] *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996).

[148] *Id.*

[149] *Id.*

[150] *Sys. Signs Supplies*, 903 F.2d at 1013; *see also Jacob v. Barriere Constr. Co., LLC*, No. 08-3795, 2009 WL 2390869, at *3 (E.D. La. July 30, 2009).

[151] *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986).

[152] *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x. 688, 692 (5th Cir. 2008) (quoting *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)).

basis for noncompliance within the time specified."[153] To determine whether "good cause" exists, the Court looks at the plaintiff's actions within the specified period of time.[154]

If a dismissal under the discretionary provisions of Rule 4(m) will likely bar future litigation, the dismissal should instead "be reviewed under the same heightened standard used to review a dismissal with prejudice."[155] Under this heightened standard, dismissal "is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice."[156]

Plaintiff failed to serve Eastern Pacific within the 90-day period. However, Plaintiff's failure was not the result of simple inadvertence or lack of diligence. Rather, Plaintiff appears to have served Captain Bona on December 15, 2018 under the belief that Captain Bona was an employee of Eastern Pacific. Plaintiff has been defending his case since Eastern Pacific filed its first motion to dismiss for insufficient service of process on January 5, 2019.[157] Plaintiff requested leave to take discovery on the issue of whether Captain Bona is a "managing agent,"[158] which the Court granted.[159] Accordingly, the Court finds good cause exists to extend the time for service.

## **CONCLUSION**

**IT IS ORDERED** that, pursuant to Rule 4(m), Plaintiff's time to serve Eastern Pacific in compliance with Rule 4 of the Federal Rules of Civil Procedure is extended to **March 17, 2020**.

---

[153] *Lambert*, 44 F.3d at 299 (citations omitted).
[154] *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985).
[155] *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325-26 (5th Cir. 2008) (citing *Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 213 (5th Cir. 1976)).
[156] *Id.* at 326 (quoting *Gray v. Fid. Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir. 1981)).
[157] R. Doc. 16.
[158] R. Doc. 70.
[159] R. Doc. 81.

**IT IS FURTHER ORDERED** that Eastern Pacific's Motion to Dismiss for Insufficient Service of Process[160] is **DENIED AS MOOT**.

New Orleans, Louisiana, this 17th day of January, 2020.

_Susie Morgan_
SUSIE MORGAN
UNITED STATES DISTRICT JUDGE

---

[160] R. Doc. 69.