# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KHOLKAR VISHVESHWAR GANPAT,** | \* | **CIVIL ACTION** |
| *Plaintiff,* | \* | |
| | \* | **NO.  18-13556 "E" (4)** |
| **VERSUS** | \* | |
| **EASTERN PACIFIC SHIPPING PTE. LTD.,** | \* | **JUDGE SUSIE MORGAN** |
| **d/b/a "EPS",** | \* | |
| *Defendant.* | \* | **CHIEF MAGISTRATE JUDGE** |
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | | **KAREN WELLS ROBY** |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S
### MOTION FOR ISSUANCE OF A PERMANENT INJUNCTION

**MAY IT PLEASE THE COURT,**

Kholkar Vishveshwar Ganpat ("Plaintiff"), pursuant to Fed. R. Civ. P. 65(a), asks this

Honorable Court to issue a permanent injunction enjoining the prosecution by Eastern Pacific

Shipping Pte. Ltd. ("EPS") and its affiliates and subsidiaries of the litigation now pending in the

District Court of South Goa, Margao, Republic of India, styled and numbered *"Eastern Pacific*

*Shipping (India) Pte. Ltd. and Eastern Pacific Shipping Pte. Ltd. versus Vishveshwar Ganpat*

*Kholkar,"* Commercial Suit No. 2/2020, or any other prospective foreign litigation.[1]   The Fifth

Circuit has held that a district court has the power to enjoin a party from proceeding with litigation

concerning the same subject matter in a foreign court.[2]

Pursuant to Fed. R. Civ. P. 65(a)(2), Plaintiff also asks the Court to consolidate the injunction

---

[1]Mr. Kholkar has only sued his Jones Act employer, EPS.  He has <u>not</u> sued any other EPS affiliates or subsidiaries because they were <u>not</u> his employer.

[2]See *In re Unterweser Reederei Gmbh*, 428 F.2d 888, 889 (5th Cir. 1970); *aff'd en banc*, 446 F.2d 907 (5th Cir. 1971), *rev'd on other grounds sub nom The Bremen v. Zapata Offshore Co.*, 407 U.S. 1 (1972).

trial on the merits with the hearing on the preliminary injunction.

## I.  THE PERMANENT INJUNCTIVE RELIEF REQUESTED.

Plaintiff seeks a permanent injunction against EPS and its affiliates and subsidiaries, enjoining them from maintaining the lawsuit now pending against Plaintiff in the District Court of South Goa, Margao, Republic of India, styled and numbered *"Eastern Pacific Shipping (India) Pte. Ltd. and Eastern Pacific Shipping Pte. Ltd. versus Vishveshwar Ganpat Kholkar,"* Commercial Suit No. 2/2020, or instituting any new foreign lawsuits.

## II.  WHY THIS PERMANENT INJUNCTIVE RELIEF IS REQUESTED?

Permanent injunctive relief is requested because the Indian Court proceedings seek to pass upon *identical* liability and damage claims which were asserted here on December 12, 2018, about *fifteen months before* EPS filed its Indian lawsuit on March 2, 2020.  The jurisdiction and orders of this Court are directly challenged by this parallel foreign litigation, and Mr. Kholkar's freedom from prison and seizure of his personal financial assets are at risk in the foreign *ex parte* proceeding.[3]  This threat of abuse of Plaintiff's legal rights continues to the present date

## III.  THE IMMEDIATE THREAT OF HARM FACED BY MR. KHOLKAR.

The Indian Court injunction action is a blatant effort to *threaten* Plaintiff into dismissing his U.S. suit.  The extortionist nature of this proceeding is revealed in ¶ 14 of EPS' May 14, 2020 pleading which seeks to enforce the prior *ex parte* injunction.[4]  That paragraph states:

"The Plaintiffs submits (sic) that for the reasons articulated herein above, ***the***

---

[3]Mr. Kholkar has already been strip-searched and detained several times this year in an Indian medium security criminal prison where his safety and life were at risk because he refused to concede to EPS' deliberate misuse of the Indian courts.

[4]*See* Rec. Doc. 151-2 at pp. 13-14.

> ***Plaintiffs have made out a prima facie case for the Defendant to be punished with imprisonment and his assets attached/sequestered*** in a manner provided under Order XXXIX, Rule 2 A of the Code of Civil Procedure, 1908.  That said, the Plaintiffs at this point of is (sic) not pressing for any criminal/punitive sanctions to be inflicted upon the Defendant but is (sic) merely seeking to ensure that the Defendant purges his contempt of The Temporary Anti-Suit Injunction Order dated 7th March 2020 by subsequent obedience to the  Temporary Anti-Suit Injunction Order dated 7th March 2020 passed by this Hon'ble Court.  That said, *the **Plaintiffs reserve their rights to press for criminal/punitive sanctions*** in an event of the Defendant failing to purge his contempt of the Temporary Anti-Suit Injunction Order dated 7th March 2020."[5]

(Emphasis supplied.)

EPS' message to Mr. Kholkar is simple: abandon your U.S. suit and accept the paltry settlement we are trying to force down your throat or you will go to jail and forfeit your property.[6]

## IV.  THE INDIAN LAWSUIT CHRONOLOGY

On January 23, 2020, Plaintiff sought issuance of letters rogatory to begin the process of service upon EPS in Singapore.[7] That very same day, January 23, 2020, Mr. Kholkar was the subject of attempted service of process in India. *He was told that an Indian court had enjoined his lawsuit in the Eastern District*.  This prompted a "cease and desist" letter[8] as well as a request for a status conference.

On March 9, 2020, Plaintiff filed the first of a series of requests for extensions of time in

---

[5]In the Indian Court action, EPS is the Plaintiff and Mr. Kholkar is the Defendant.

[6]Since "day one" this foreign *ex parte* proceeding has been based upon the *uncorrected* misrepresentation that Your Honor does not have either subject matter jurisdiction or personal jurisdiction.

[7]See Rec. Docs. 123-126.

[8]See Rec. Doc. 151-2 at p. 47.

which to serve EPS in Singapore.[9]   As would be seen, the time thirteen month time period between March 2020 and service on April 13, 2021 created a stalemate which provided EPS and its Indian subsidiary, EPS India, with an opportunity to use the Indian judicial system to force Plaintiff to accept a lowball settlement and then have the Eastern District case dismissed.[10]

On March 9, 2020,  EPS filed a "non-opposition" response[11] which surprisingly attached copies of the two Indian Court documents its agents tried to serve on Plaintiff in India.  One was the so-called March 7, 2020 Restraining Order[12] by Judge D.V. Patkar of the District Court, South Goa at Margao, which at ¶ 24 states:

> "Pending the hearing and the disposal of the application for temporary injunction at Exbt. 4, **the defendant[13] is restrained from continuing/prosecuting/taking steps and/or any further steps in the proceeding before the United States District Court, Eastern District of Louisiana**, New Orleans, in the matter of Kholkar, Vishveshwar Ganpat v. Eastern Pacific Shipping Pte Ltd Civil Action No. 18-13556 SM-KWR."

> (Emphasis supplied.)

The other document EPS produced was its March 3, 2020 *"Suit For Declaration Under Section 34 Of The Specific Relief Act, 1963 And For Injunction Restraining Vexatious And*

---

[9]After no service via the U.S. State Department proved to be forthcoming, Plaintiff perfected private personal service upon EPS on April 13, 2021.  See Rec. Docs. 184 and 196.

[10]The Court was in the odd posture of having subject matter jurisdiction and EPS waived any objections to personal jurisdiction and venue.  However, until April 13, 2021 EPS had not yet been personally served with process.  This, Plaintiff believes, temporarily limited the Court's exercise of its full powers over the parties.

[11]See Rec. Doc. 142.

[12]See Rec. Doc. 142-1.

[13]The "defendant" in this Indian Court proceeding is Mr,. Kholkar, who is the Plaintiff in the above-captioned matter.

*Oppressive Foreign Legal Proceedings Under Sections 38 (3) (D) And 41 (A) Of The Specific Relief Act, 1963 Read In Conjunction With Sections 9 and 151 Of The Code Of Civil Procedure, 1908."*[14]

This is the document which Your Honor found contained a critical misstatement regarding this Court's jurisdiction over EPS.[15] At ¶ 29 of this document, EPS (which has American Counsel who knows better and could explain this issue to EPS' foreign lawyers in a matter of minutes) represented to the Indian Court that:

> ***It is further submitted that the Plaintiff has not submitted to the jurisdiction of the US Courts*** and appeared under protest to submit that the pleadings in the US Proceedings have not been served as per the US law. ***The contention of the Plaintiff has been accepted by the US Court,*** which accordingly, *vide* order dated 17th January 2020, directed the Defendant (Plaintiff in the US Proceedings) to serve Plaintiff in Singapore by way of Letter Rogatory through the Supreme Court of Singapore. **Accordingly, it is clear that the US Court is yet to be seized and hence, there is no violation of the principle of the comity of courts."**

(Emphasis supplied.)

After reviewing these documents, it became apparent that EPS was engaged in an *ex parte* foreign effort to enjoin Plaintiff's ability to have his lawsuit heard by this Court, and the Court *sua sponte* ordered a status conference on March 10, 2020.[16]

On June 10, 2020, another status conference was requested because Mr. Kholkar was the

---

[14]See Rec. Doc. 142-2.

[15]While it was true that EPS appeared specially in its January 2019 motion to dismiss, and EPS is presently the target of pending overseas service, it was ***not true*** on March 7, 2020 that EPS *"has not submitted to the jurisdiction of the US Courts."* In fact, EPS expressly submitted to personal jurisdiction and venue, through counsel *pro hac vice*, directly to Your Honor, *almost one year before the Indian Court injunctive action was filed.*

[16]This was the status conference where the Court characterized the allegations in ¶ 29 as "misleading, if not outright false statements" and "duplicitous." The Court observed that the Indian Court "was being led down a path regarding jurisdiction which was already decided."

target of further service in the Indian injunction proceeding as well as telephone contact by a person purportedly acting on behalf of "his employer," EPS.[17] The Court set a telephone status conference on June 15, 2020.[18] During this conference it was first learned that the service efforts on Mr. Kholkar were in fact connected to a motion to hold him in contempt of court.[19]  During the conference, undersigned counsel expressed Plaintiff's view of what is really behind EPS' *ex parte* tactics in India:

> "What we're on the phone here about today is they are using the threat of contempt and jail as an end run to influence Mr. Kholkar's participation in this lawsuit. Why are they doing it? ***As your Honor observed at the onset of this conversation, they are terrifically concerned about liability. They are also terrifically concerned about potentially being amenable to service at every port where one of their ships sails to in America. That's what's behind this.***"[20]

(Emphasis supplied.)

On June 16, 2020 EPS provided additional new documents showing that the Indian Court injunction action was now a blatant effort to *coerce* Plaintiff into dismissing his U.S. suit.[21] EPS' May 14, 2020 *"Application Under Order XXXIX, Rule 2A; Read In Conjunction With Section 150 Of The Code Of Civil Procedure, 1908 In Light Of Respondents/Original Defendant Brazen Disregard And/Or Fragrant (sic) Breach Of The Temporary Anti-Suit Injunction Order Dated 7th March 2020"* seeks to enforce a March 7, 2020 *ex parte* injunction.[22]  Paragraph 14 states:

---

[17] See Rec. Doc.148.

[18] See Rec. Doc. 149.

[19] See Rec. Doc. 159-1 at p. 11.

[20] See id. at p.13.

[21] See Rec. Doc.152.

[22] See Rec. Doc. 151-2.

"The Plaintiffs submits that for the reasons articulated herein above, **the Plaintiffs have made out a prima facie case for the Defendant to be punished with imprisonment and his assets attached/sequestered** in a manner provided under Order XXXIX, Rule 2 A of the Code of Civil Procedure, 1908.  That said, the Plaintiffs at this point of is not pressing for any criminal/punitive sanctions to be inflicted upon the Defendant but is merely seeking to ensure that the Defendant purge his contempt of the Temporary Anti-Suit Injunction Order dated 7th March 2020 by subsequent obedience to the  Temporary Anti-Suit Injunction Order dated 7th March 2020  passed by this Hon'ble Court. That said, **the Plaintiffs reserve their rights to press for criminal/punitive sanctions** in an event of the Defendant failing to purge his contempt of the  Temporary Anti-Suit Injunction Order dated 7th March 2020."[23]

(Emphasis supplied.)

During the July 15, 2020 telephone status conference, the Court again expressed concerns regarding the Indian Court's actual knowledge of jurisdictional in the Eastern District and noted  the interference caused by the parallel litigation in India.  The Court also inquired into the delay in making foreign service upon EPS, discussed anti-suit injunctions, and decided to revisit the "service of process" issue by permitting Plaintiff to serve jurisdictional discovery on EPS.[24]

On December 9, 2020, the Indian court entered an order directing Mr. Kholkar to discontinue his efforts to obtain reconsideration of a prior jurisdictional determination by Your Honor:[25]

"Defendant is directed to provide written instructions to his US attorneys in terms of the draft letter set out in schedule 1 instructing them to immediately discontinue/withdraw/abandon motion for reconsideration of the April 18, 2019 minute entry and for an order granting limited personal jurisdiction, discovery filed on 18.03.2020 in the Hon'ble United States, District Court, Eastern District of Louisiana, New Orleans in the matter of Kholkar, Vishveshwar Ganpat V/s Eastern Pacific Shipping Pte. Ltd. Civil Action No. 18-13556 SM-KWR till the disposal of the application for temporary injunction."

---

[23] See *id.* at pp. 13-14.

[24] See Rec. Doc. 164.

[25] See Exhibit 1.

This December 9, 2020 Indian court order, at ¶ 7, contained a complete misunderstanding about EPS India's employer-employee relationship to Mr. Kholkar.  That paragraph represented:

> "Plaintiff no. 1 is a Private Ltd. Company having office at Mumbai.  On 27.12.2016, a Seafarer's Employment Agreement was executed in Mumbai by the defendant **and the plaintiff no. 1 as employer."**

The foregoing statement is not only incorrect, but also it is contradicted by ¶ 5 of EPS' and EPS India's March 2, 2020 suit for injunctive relief[26] and the December 27, 2016 Seafarer's Employment Agreement between Mr. Kholkar and Ventnor Navigation, Inc.[27]  The initial lawsuit pleading clearly identified Ventnor Navigation, Inc., not EPS India, as Mr. Kholkar's employer:

> "On or about 27 December 2016, a Seafarers Employment Agreement had been executed in Mumbai by the Defendant and the Plaintiff No. 1/EPS India **on behalf of Ventnor Navigation Inc. of Liberia ("Ventnor Liberia") as employer,** pursuant to which the Defendant was to work aboard the Vessel for a period of 7 months in his capacity as an able body seaman...."

The heading on page 1 of the December 27, 2016 Seafarers Employment Agreement identifies Mr. Kholkar's employer, stating:

> "SEAFARER EMPLOYMENT AGREEMENT Between Ventnor Navigation, Inc. 80 Broad Street, Monrovia, Liberia (hereinafter called <u>The Employer</u>) and Mr. <u>KHOLKAR VISHVESHWAR GANPAT</u> of <u>H. No. 64/A, Saleri Cola Canacona</u> (hereinafter called <u>The Seafarer</u>)."

There is absolutely no mention of EPS India *anywhere* in the Seafarers Employment Agreement.  Further, while EPS' Indian lawsuit recites various duties and obligations allegedly owed by EPS India to Mr. Kholkar,[28] the Agreement makes these duties incumbent only upon Ventnor

---

[26]See Rec. Doc. 142-2 at pp. 7-8/58.

[27]See Exhibit 2.

[28]See Rec. Doc. 142-2 at pp. 7-9/58.

Navigation, Inc.   Nothing in the Seafarers Employment Agreement imposes these duties on EPS or EPS India, which further proves the deceptive nature of the March 2, 2020 suit for injunctive relief.

The Indian Court was mistaken in believing that EPS India employed Mr. Kholkar, and this misunderstanding probably led it to believe it had jurisdiction over the injunction action against Mr. Kholkar, *i.e.*, EPS India was an Indian corporate citizen litigant with standing to bring the injunction action because it supposedly had an employer-employee relationship with Mr. Kholkar.  There is no evidence in the Indian Court's record that EPS or EPS India corrected this misunderstanding.  After all, it was to their advantage to remain silent.

On January 11, 2021, the Indian court gave Mr. Kholkar one week to comply with its December 9, 2020 Order.[29]  Then, the Indian court's February 1, 2021 Order, following EPS' suggestion that Mr. Kholkar had engaged in "brazen disregard and/or *fragrant* (sp) breach and/or willful disobedience of the temporary Anti suit injunction order dated 07.03.2020" stated at ¶ 5:[30]

> "..... the court granting the injunction or making the order or any court to which the suit or proceeding is transferred, **may order the property of the person guilty of such disobedience or breach to be attached and may also order such person detained in the Civil prison for a term not exceeding 3 months**, unless in the meantime the court directs his release."

At ¶ 8, the Indian court determined that Mr. Kholkar would appear and show cause why a warrant for his arrest should not be issued against him.[31]   It is also interesting to note that ¶ 8 contains the Indian Court's mistaken belief that:

---

[29]See Exhibit 3.

[30]See Exhibit 4.

[31]Id.

**"It is also the case that the defendant has not taken any steps before the U.S. Court."[32]**

On March 12, 2021, the Indian Court granted EPS' and EPS India's application for police to assist the bailiff in execution of a warrant for Mr. Kholkar's arrest.[33]  On March 16, 2021, two police officers and a court Bailiff arrested Mr. Kholkar in front of his family and transported him away in a police vehicle.  Plaintiff was then escorted into the courthouse in Mangoa, India where Judge Sarika Fal Dessai was presiding. Once his case was called, Vijay Palekar identified himself as the lawyer representing EPS and informed the court that Mr. Kholkar was present.  The Judge began reading a report from an individual who purports to have served Mr. Kholkar with legal papers, which Mr. Kholkar denied.[34]

The Judge told Mr. Kholkar that he must hire a lawyer to represent him, but Mr. Kholkar did not have money or means to pay an attorney to represent him in India.  Mr. Kholkar explained to the court (the best way that he could) that he never had any intention of suing EPS India and that he had already filed suit against EPS in a United States court.  He also explained to the Indian court that he has no intention of pursuing the case against EPS in India.[35]

When Judge Dessai asked Mr. Kholkar why he filed suit against EPS in the U.S. when he is an Indian citizen, Mr. KHOLKAR explained that he had not sued EPS India, and, rather, had sued EPS (Singapore).  At this point Judge Dessai ordered him to hire a lawyer or go to jail. Immediately thereafter, EPS' lawyer, Mr. Palekar said "send him to jail right now."  Judge Dessai then ordered

---

[32]There are 198 record documents as of August 18, 2021.

[33]See Exhibit 5.

[34]See April 19, 2021 Affidavit of Alejandro Gonzales, Esquire (Rec. Doc. 180-2).

[35]Id.

Mr. Kholkar to Colvale Central Prison,  a maximum security prison for serious criminals imprisoned for murder and rape.[36]

When Mr. Kholkar's father asked Judge Dessai "what crime did my son commit here to send him to that prison," the Indian Judge became distraught and instructed the Bailiff to remove both Mr. Kholkar and his father from the courtroom.   Mr. Kholkar was placed under judicial custody and transported to the Colvale Central Prison where he was processed, booked and photographed.[37] Mr. Kholkar was then stripped searched in a corridor and escorted to I-BLOCK CELL #4 which was approximately 3 meters by 4 meters and contained five inmates who were laying on the cell floor. The prison guard informed the protesting inmates to make room for Mr. Kholkar. Two of the inmates repositioned themselves and provided Mr. Kholkar some room on the soiled floor. Mr. Kholkar observed the conditions of the cell and noted the spigot and shared container for drinking water next to the filthy toilet.[38]

The next morning, Kholkar was escorted to a police van with other inmates and traveled for approximately two hours to the same Margoa Court.  Mr. Kholkar was escorted to the same courtroom which had EPS' lawyers, including Mr. Palekar, with Judge Dessai presiding.  EPS' four lawyers presented themselves to the court and Mr. Palekar immediately told that court "it seems as though Mr. Kholkar was still not interested in hiring an attorney." The Judge said "Yes. it appears that is the case, and perhaps we need to send him away back to where he just came from."[39]

---

[36]Id.

[37]See Exhibit 6.

[38]See April 19, 2021 Affidavit of Alejandro Gonzales, Esquire (Rec. Doc. 180-2).

[39]Id.

When Mr. Kholkar raised his hand and requested permission to apply for a bail bond, EPS' lawyer mocked Mr. Kholkar saying "Look now he is ready." The Judge refused Mr. Kholkar's request and informed him "That option was offered the day before and was not possible right now." Mr. Kholkar again requested bail at which point the Judge conceded but only if he hired an attorney. Mr. Kholkar requested time to find a lawyer, at which point the Judge denied his request, and ordered him to hire a lawyer immediately or go back to prison.[40]

Mr. Kholkar's obtained a lawyer who had no knowledge of his client or the case, the Judge presented Adv. Arsekar with a stack of documents. This new lawyer spoke briefly with Mr. Kholkar, who mentioned that EPS was trying to pressure him to abandon his Jones Act case in the United States. Subsequently, EPS' lawyers stated to the Indian court that Mr. Kholkar was in contempt of a court order and requested that the court note EPS' intention to proceed with the injunction. The Judge then ordered that a hearing on the case would be set for March 31, 2021.[41]

Mr. Kholkar was not released, but instead was transported back to the central prison and handed over to prison guards. He was again processed, screened, stripped naked and ordered to squat before a prison guard was placed back in I-BLOCK, CELL #4. Mr. Kholkar was finally released from prison at 5:00 PM on March 17, 2021.[42]

EPS intends to force Mr. Kholkar to abandon his U.S. lawsuit or be imprisoned again. EPS has used an *ex parte* "injunction" proceeding in India to thwart this Court, to compel Plaintiff to abandon his rights under the Jones Act, and to force him to dismiss the above-captioned matter or

---

[40]Id.

[41]Id.

[42]Id.

go to jail.  These actions by EPS and EPS India constitute willful, wanton, and *intentional* misconduct through a deliberate effort to intimidate Mr. Kholkar from seeking legal redress in this Court.[43]

The Indian court proceedings are intended to ram a paltry foreign settlement down Mr. Khilkar's throat and *force* him to "dismiss" his U.S. lawsuit because it was "settled" in India.  The Indian Court pleadings touch upon all of the issues raised in Plaintiff's complaint and even upon inadmissible matters.[44] Indeed, the Indian court record features a "kitchen sink" potpourri of Eastern District pleadings, orders, and  written discovery which demonstrate that this Court's proceeding *started first,* that the Indian Court is traversing previously plowed ground, and that U.S. counsel for EPS may well have known about the Indian injunction lawsuit before it was filed.[45]

EPS' attempt to obtain injunctive relief grossly intrudes upon this Court's subject matter and personal jurisdiction, and threatens interference with this Court's enforcement of its own rulings.  If this was an action pending in a U.S. state court, it could be summarily enjoined.[46]   Critically, it

---

[43]See, e.g., *Smith v. Atlas Offshore Boat Service, Inc.*, 653 F.2d 1057, 1062-64 (5th Cir. 1981).

[44]For example, although compromise offers and negotiations are inadmissible in federal courts under F.R.E. 408(a)(1) and in Louisiana courts under La. C.E. Art. 408, the Plaintiff's settlement demand – *made in this case at EPS' invitation* – was identified as to amount and described as "unreasonable, oppressive and vexatious."  See Rec. Doc.142-2 at p. 7.  It was used by EPS *on the merits* as a justification for the Indian Court to grant an anti-suit injunction. See Rec. Doc.142-1.

[45]See Rec. Doc. 142-2 pp 51-58 where EPS' lists "annexures" which are copies of numerous Eastern District documents it placed into the Indian Court's record.

[46]See 28 U.S.C. § 2283 which permits a U.S. district court to grant an injunction to stay state court proceedings "when necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

contains EPS' express statement that the "ends of justice" are "better served" if the Indian Court adjudicates liability and damages, and not Your Honor.[47]   If this does not blatantly challenge Your Honor's jurisdiction, Your Honor's prior orders, and this Court's ability to determine liability and damages on the merits, what would?

## VI.  APPLICABLE LAW

It is undisputed that this Court has the power to enjoin a party properly before the court from prosecuting a parallel action in a foreign jurisdiction.[48]  Here, that party is EPS.  It is also within this Court's discretion to grant an injunction that prohibits EPS from prosecuting its compulsory counterclaim in a subsequently filed suit in a foreign jurisdiction.[49]

When faced with the issue of a second similar action initiated in a foreign country, the Fifth Circuit and other courts have adopted a two-part test to determine whether the parties may be enjoined.  Within this two-part test, it must first be found that the actions in the second litigation meet the Rule 13 requirement that the claims asserted arise out of the transaction or occurrence that is the subject matter of the first litigation.[50]  The U.S. Supreme Court has noted:

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.... Essential facts alleged by appellant enter into and

---

[47]See *id.* at ¶ 4 "reliefs sought."

[48]*Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981).

[49]*Bethell v. Peace*, 441 F.2d at 498 (5th Cir. 1971) (decision to grant injunction within district court's discretion).

[50]*Seattle Totems*, 652 F.2d at 854-855; see also *American Home Assur. Co. V. Ins. Corp. of Ireland,* 603 F.Supp. 637, 643 (S.D.N.Y. 1984) ("parties must be the same in both matters, and resolution of the first action must be dispositive of the action to be enjoined").

constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations... does not matter.  To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are in all particulars, the same as those constituting the defendant's counterclaim.[51]

This Court should be guided by the pronouncement of the Fifth Circuit that "... allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in 'inequitable hardship' and 'tend to frustrate and delay the speedy and efficient determination of the cause.'"[52]  Because all of the problems likely to occur and engender considerable vexation and injustice to Plaintiff by EPS, this Court had due cause to enjoin the Indian Court suit.[53]

EPS' Indian Court pleadings concede this is a "simultaneous prosecution of the same action in a foreign forum" because at Rec. Doc. 142-2, page 42, ¶  30, EPS states "The pendency of the US Proceedings and the proceedings before this Hon'ble Court *on the same cause of action* would undubtly be multiplicity of proceedings."

In *Unterweser Reederei* the Fifth Circuit held that the district court had the power to enjoin the owner of a deep sea tug from proceeding with litigation concerning the same subject matter in a foreign court.[54]  There, Unterweser attempted to draw this Court's attention to an earlier opinion

---

[51]*Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926).

[52]*In re Unterweser Reederei Gmbh*, 428 F.2d 888, 896 (5th Cir. 1970); aff'd en banc, 446 F.2d 907 (5th Cir. 1971), rev'd on other grounds sub nom *The Bremen v. Zapata Offshore Co.*, 407 U.S. 1 (1972); see also *Allendale Mut. Ins. v. Bull Data Systems*, 10 F.3d 425, 430-31 (7th Cir. 1993) (parallel lawsuits proceeding in two tribunals 4,000 miles apart at the same time is absurd duplication of efforts)."

[53]*American Home Assur. Co. v. Insurance Corp. Of Ireland*, 603 F.Supp. 637, 643 (S.D. N.Y. 1984).

[54]*In re Unterwester Reederei Gmbh*, 428 F.2d at 889.

out of the Eastern District of Louisiana that "an injunction against suits being filed in foreign jurisdictions would be ineffective unless comity required its recognition."[55]   The Fifth Circuit determined that this was not pertinent because Unterweser was not merely a *potential claimant outside the jurisdiction of the district* but was instead a party which has invoked. albeit reluctantly, that very jurisdiction.[56]

Similarly, in *Bethell* a federal district court held that a land-sale contract executed in Florida between Florida residents involving land in the Bahamas was invalid, and issued an injunction restraining the defendant from prosecuting an action in the Bahamas to quiet title.[57]   The Fifth Circuit affirmed and held that it was within the district court's discretion to enjoin the foreign suit where the action would relieve the moving party "of the expense and vexation of having to litigate in a foreign court."[58]

Federal Rule of Civil Procedure 13(a) requires a defendant to bring any counterclaim it may have against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim in the pending action.[59]   The purpose of requiring a defendant to assert its claim as

---

[55]*Id*. at 892.

[56]Does this sound familiar?  EPS reluctantly conceded to personal jurisdiction rather than answer Plaintiff's March 19, 2019 written personal jurisdiction discovery.

[57]*Bethell v. Peace*, 441 F.2d 495. 498 (5th Cir. 1971) (affirming issuance of anti-suit injunction).

[58]*Id*. at 498; see also *United Broadcasting Company, Inc. v. Armes*, 506 F.2d 766, 771 (5th Cir. 1975) (enjoining second suit in subsequent jurisdiction because it clearly arose from same transaction as original suit and should have been plead as a counterclaim).

[59]Fed. R. Civ. P. I3(a): see *Seattle Totems*, 652 F.2d at 856 (stating that granting injunction furthers purpose of Rule 13(a)).

a counterclaim in a pending action is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."[60]   The Rule bars a party that failed to assert a compulsory counterclaim in one action from instituting a second action in which that counterclaim is the basis of the complaint.[61]   It is well-settled that in order to enforce this bar, a federal court may enjoin a party from bringing its compulsory counterclaim in a subsequent federal court action.[62]

The Fifth Circuit grants district courts with jurisdiction over the parties the power to enjoin them from proceeding with a second action based on the same transaction in the courts of a foreign country.[63]   Though this Court has no power to restrain the courts of a foreign nation, *it has power to deal with litigants properly before it.*   This power now encompasses EPS, which has been served, has several times conceded personal jurisdiction, has several times conceded venue, and has both local counsel and counsel *pro hac vice* representing it before this Court.[64]   It is now within this

---

[60]*Southern Construction Co. v. Pickard*, 371 U.S. 57, 60 (1982).

[61]*Id.*

[62]*Warshawsky & Co. v. Arcata Nat. Corp.,* 552 F.2d 1257 (7th Cir. 1977): *United Broadcasting Co. v. Armes*. 506 F.2d 766, 771 (5th Cir. 1975), cert. denied, 421 U.S. 965 (1976); *National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43 (2nd Cir. 1961).

[63]See. e.g., *Seattle Totems*, 652 F.2d at 856 (enjoining Defendant from prosecuting its contract claim in Canadian court); *Bethell v. Peace*, 441 F.2d 495, 498 (5th Cir. 1971) (injunction against Defendant prosecuting suit in Bahamas); *Unterweser Reederei & Gmbh*. 482 F.2d 888. 892 (5th Cir. 1970) (owner of barge enjoined from proceeding further with litigation concerning same subject matter in English court), aff'd on rehearing en banc, 446 F.2d 907 (1971), rev'd on other grounds sub nom, *The Bremen v. Zapata Off-shore Co.,* 407 U.S. 1 (1972).

[64]It is interesting to note that both the Fifth Circuit and the Ninth Circuit invoke the standard that a duplication of parties and issues, alone, is sufficient to justify a foreign anti-suit injunction. *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1355 (6th Cir. 1992).

Court's discretion to determine whether allowing simultaneous prosecution of what EPS admits is **the same action** in a foreign forum thousands miles away will result in an inequitable hardship and tend to frustrate and delay the speedy and efficient determination of this cause.  Generally, to obtain a *preliminary* injunction, a party must demonstrate:

  (1)     a substantial likelihood of success on the merits;

  (2)     a substantial threat of irreparable harm if the injunction is not granted;

  (3)     that the threatened injury outweighs any potential harm to the non-movant; and

  (4)     that the injunction will not undermine the public interest.[65]

For a court to grant a *permanent* injunction, a party must prove actual success on the merits, and it must also prove the three remaining factors that must be proved to obtain a preliminary injunction.[66]

Injunctive relief is considered an extraordinary remedy, to be granted only when the movant has "clearly carried the burden of persuasion" on all four requirements.[67]  A foreign anti-suit injunction, such as the one requested here, is a special application of these injunction rules.[68] Thus, the Fifth Circuit has held that "the suitability of such relief ultimately depends on considerations

---

[65]*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir.2003).

[66]*Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

[67]*Karaha Bodas Co.*, 335 F.3d at 363.

[68]See *id*. at 364 (noting that a foreign anti-suit injunction is a "particular subspecies of preliminary injunction").

unique to anti-suit injunctions."[69]

It is well established that federal courts are empowered to enjoin persons subject to their jurisdiction from prosecuting foreign suits.[70] Before issuing an injunction against a foreign lawsuit, however, the Court must "balance domestic judicial interests against concerns of international comity."[71] The Fifth Circuit has adopted a test that weighs "the need to `prevent vexatious or oppressive litigation' and to `protect the court's jurisdiction' against the need to defer to principles of international comity."[72] In applying the test, the Fifth Circuit has rejected the approach taken by some other circuits, which "elevates principles of international comity to the virtual exclusion of essentially all other considerations."[73]   Instead, the Fifth Circuit has noted that "notions of comity do not wholly dominate [the] analysis to the exclusion of these other concerns."[74]

To determine whether proceedings *in another forum* constitute vexatious or oppressive litigation that threatens the Court's jurisdiction, this Court must consider whether the following interrelated factors are present:

(1)     Inequitable hardship resulting from the foreign suit;

(2)     The foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and

---

[69]*Id.*

[70]*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir.1996).

[71]*Karaha Bodas* Co*.*, 335 F.3d at 366.

[72]*Id*. (citing *Kaepa, Inc*., 76 F.3d at 627).

[73]*Kaepa, Inc*., 76 F.3d at 627.

[74]*Karaha Bodas Co.*, 335 F.3d at 366.

(3)     The extent to which the foreign suit is duplicative of the litigation in the United States.[75]

This Court must weigh its domestic judicial interests against the interests of international comity. Although the importance and sensitivity of principles of international comity must be recognized, the instant request for an anti-suit injunction against foreign litigation in this case does not implicate these concerns. First, this case involves a maritime tort dispute between two private parties that does not implicate any public international issues.[76]  Second, the litigation between the parties has "been long and firmly ensconced within the confines of the United States judicial system," and no prior litigation has taken place in international fora, all of which indicates that international comity concerns are less salient.[77]

It is well established, however, that normally "federal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits."[78]  This is not an extraordinary circumstance because EPS is "subject to  the Court's jurisdiction" thanks to its April 18, 2019 concession to personal jurisdiction and personal service upon it on April 13, 2021. Moreover, "absent the clearest  command to the contrary from Congress, federal courts retain their equitable

---

[75]*Id.*

[76]See *Kaepa, Inc*., 76 F.3d at 627 (stating that no public international issue was implicated by the case because it was a contractual dispute between two private parties).

[77]See *id.*; cf. *Karaha Bodas*, 335 F.3d at 371 (distinguishing Kaepa on ground that prior steps in resolving dispute had taken place in international fora).

[78]*Kaepa, Inc.,* 76 F.3d at 626; see also *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1352 (6th Cir.1992); *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2nd Cir.1987); *Laker Airways Ltd. v. Sabena*, 731 F.2d 909, 926 (D.C. Cir.1984); *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 855 (9th Cir.1981).

power to issue injunctions in suits over which they have jurisdiction."[79]

Federal Rule of Civil Procedure 65( c ) provides, in pertinent part:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

However, the Fifth Circuit has held that this Rule requires security only in "such sum as the court deems proper."[80]  The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all.[81]

The district court also has discretion whether to hold a hearing before ruling on a party's request for injunctive relief. The district court also has discretion to decide whether a hearing should be held on motions for preliminary injunction entirely on the basis of affidavits and with or without oral argument.[82]

## VII.  ARGUMENT

With regard to his request for issuance of a *preliminary* injunction, Mr. Kholkar has demonstrated:

(1)    A substantial likelihood of success.  The Indian Court itself stated:

---

[79]*Karaha Bodas*, 335 F.3d at 364;  *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); *Scripps-Howard Radio v. FCC*, 316 U.S. 4, 9-11, 62 S.Ct. 875, 86 L.Ed. 1229 (1942)).

[80]Fed. R. Civ. P. 65(c).

[81]*Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978).

[82]See Fed. R. Civ. P. 43(e) and Fed. R. Civ. P. 78.

"The pendency of the US Proceedings and the proceedings before this Hon'ble Court *on the same cause of action* would undubtly (sic) be multiplicity (sic) of proceedings." [83]

(2)    A substantial threat of irreparable harm if the injunction is not granted because EPS' May 14, 2020 application to enforce the Indian Court's March 7, 2020 *ex parte* injunction against Mr. Kholkar asks that he be thrown into jail and his property confiscated:

"The Plaintiffs submits that for the reasons articulated herein above, *the Plaintiffs have made out a  prima facie case for the Defendant to be punished with imprisonment and his assets attached/sequestered* in a manner provided under Order XXXIX, Rule 2 A of the Code of Civil Procedure, 1908.  That said, the Plaintiffs at this point of is not pressing for any criminal/punitive sanctions to be inflicted upon the Defendant but is merely seeking to ensure that the Defendant purge his contempt of the Temporary Anti-Suit Injunction Order dated 7th March 2020 by subsequent obedience to the  Temporary Anti-Suit Injunction Order dated 7th March 2020  passed by this Hon'ble Court. That said, *the Plaintiffs reserve their rights to press for criminal/punitive sanctions* in an event of the Defendant failing to purge his contempt of the  Temporary Anti-Suit Injunction Order dated 7th March 2020."[84]

(3)    That the threatened injury to Mr. Kholkar vastly outweighs any potential harm to EPS.

Mr. Kholkar has already been imprisoned, and faces further imprisonment and property seizure if the Indian Court proceeding runs its course.  EPS faces only the prospect of defending a lawsuit in this Court.

(4)    That an anti-suit injunction entered by this Court will not undermine the public interest.

By definition, ending the simultaneous prosecution of  *the same action* in a foreign forum thousands miles away will *prevent* equitable hardship, will prevent duplicate litigation (and perhaps different rulings) which would certainly frustrate and delay the speedy and efficient determination of the cause.

For a court to grant a *permanent* injunction, a party must prove actual success on the merits,

and it must also prove the three remaining factors required to obtain a preliminary injunction.  Mr.

Kholkar suggests that he can easily prove all four factors needed for issuance of a preliminary

---

[83]See Rec. Doc. 142-2, page 42, ¶ 30

[84]See Rec. Doc. 151-2, ¶ 14 at pp. 13-14.

injunction, and the proof that he will prevail on the merits vis-a-vis issuance of a permanent injunction comes directly from EPS which has conceded that the US Court and Indian Court proceedings are "*on the same cause of action*" and will undoubtedly be a  multiplicity of proceedings.[85]   The real parties in interest in both suits are identical (Plaintiff and EPS) and the salient facts all arise out of the same nucleus of operative facts.  These suits are "the same cause of action" and are so irrevocably intertwined that each is a defense to the other.  There are no material disputed fact issues requiring a hearing and therefore, the granting of the requested injunction on the basis of this briefing is more than sufficient.[86]

## VIII.  CONCLUSION

Here, the Court has before it Plaintiff's Complaint[87] and EPS' Indian Court pleadings[88] which admit the foreign proceeding to be "the same cause of action."  This admission by EPS provides more than adequate information and provides a basis for this Court to grant the injunction pursuant to the Federal Rules of Civil Procedure and the Court's sound discretion.

This Court should grant Plaintiff's motion and permanently enjoin EPS (and its subsidiaries and affiliates) from suing Plaintiff in any other court or jurisdiction.

---

[85]See Rec. Doc. 142-2, page 42, ¶ 30.

[86]*Landmark Land Co., Inc. v. Office of Thrift Supervision*, 990 F.2d 807, 812 (5th Cir. 1993).

[87]See Rec. Doc. 1.

[88]See Rec. Docs. 142-1, 142-2, 151-2, and 151-3.

Respectfully submitted,

_/s/ Richard M. Martin, Jr._
Richard M. Martin, Jr., TA, LA Bar #08998
Lamothe Law Firm, LLC
400 Poydras Street, Suite 1760
New Orleans, LA 70130
Telephone: (504) 704-1414
E-Mail: rmartin@lamothefirm.com

And:   _/s/ Alejandro J. Gonzalez_
Alejandro J. Gonzalez, FL Bar # 015293
Law Office of Alejandro J. Gonzalez
199 E. Flagler Street, Suite 610
Miami, FL 33131
E-Mail: alex@agonzalezlaw.com
_Counsel for Plaintiff pro hac vice_