UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KHOLKAR VISHVESHWAR GANPAT,            CIVIL DOCKET
   Plaintiff

VERSUS                                 NO.  18-13556

EASTERN PACIFIC SHIPPING, PTE. LTD,    SECTION: "E" (4)
   Defendant

ORDER AND REASONS

Before the Court is a "Motion to Dismiss on Grounds of Forum Non Conveniens" filed by Eastern Pacific Shipping, PTE. LTD ("Eastern Pacific Singapore").[1] Plaintiff filed an opposition.[2] Eastern Pacific Singapore filed a reply.[3]

BACKGROUND[4]

Plaintiff is a resident and citizen of the Republic of India.[5] Eastern Pacific Singapore is an international ship management company incorporated under the laws of the Republic of Singapore with its principal place of business in the Republic of Singapore.[6]

In his original complaint, Plaintiff brings claims under the Jones Act and the general maritime law, and a contractual claim for disability benefits under Article 24 of the "TCC" Collective Agreement, which is made part of the Seafarer's Employment Agreement entered into between Ventnor Navigation, Inc. and Plaintiff.[7] Plaintiff alleges

---

[1] R. Doc. 204.
[2] R. Doc. 214.
[3] R. Doc. 216.
[4] Unless noted otherwise, the background facts are based on the allegations set forth in Plaintiff's original complaint (R. Doc. 1) and Plaintiff's amended complaint (R. Doc. 212).
[5] R. Doc. 212 at p. 1.
[6] R. Doc. 1 at ¶ 2. *See also* R. Doc. 204-1 at p. 1, 18; R. Doc. 204-2 at ¶¶ 2, 4.
[7] *See* R. Doc. 1. The "TCC" Collective Agreement states the agreement "sets out the standard terms and conditions applicable to all seafarers serving on any ship listed in Annex I" and that the agreement "is deemed to be incorporated into and contain the terms and conditions of the contract of employment of any

1

he sustained injuries as a result of tortious conduct that occurred in Savannah, Georgia.[8] Plaintiff alleges he contracted malaria while working as a crew member aboard the M/V STARGATE, which Plaintiff alleges is owned and operated by Eastern Pacific Singapore.[9] Specifically, Plaintiff alleges Eastern Pacific Singapore (1) failed to provision the M/V STARGATE with sufficient anti-Malaria medication while the M/V STARGATE was docked at port in Savannah, Georgia, and (2) failed to administer prophylactic anti-Malaria medication to the crew of the M/V STARGATE before the vessel arrived in Gabon, a region with a high risk of contracting Malaria.[10] Plaintiff further alleges he began to suffer Malaria symptoms on the high seas as the vessel sailed from Gabon to Brazil,[11] was hospitalized and treated for Malaria in Rio de Janeiro, Brazil,[12] and was subsequently repatriated to India where he received further medical treatment for Malaria and complications arising therefrom.[13]

On December 12, 2018, Plaintiff filed suit in this Court, bringing claims against Eastern Pacific Singapore under the Jones Act, general maritime law, and for breach of the contractual duty to provide disability benefits in accordance with the "TCC" Collective Agreement. Eastern Pacific Singapore waived its objections to personal jurisdiction and venue in this Court.[14] Over a period of approximately two and a half years, Plaintiff

---

seafarer to whom this agreement applies." R. Doc. 1-22 at ¶¶ 1.1—1.2. Annex I lists the STARGATE as one of the vessels to which the "TCC" Collective Agreement applies. *See id.* at p. 14–15.

[8] *See generally* R. Doc. 1.

[9] R. Doc. 1. at ¶¶ 6, 32. Eastern Pacific Singapore disputes that it has ever owned the M/V STARGATE. R. Doc. 204-2 at ¶ 8. Through the affidavit of Anil Arjun Singh, director of Eastern Pacific Singapore, Eastern Pacific Singapore attests it "manages but does not own the M/V STARGATE." R. Doc. 204-2 at ¶ 8. Eastern Pacific Singapore attests Larchep Shipping Inc., a Liberian corporation, was the owner of the M/V STARGATE at the time Plaintiff worked aboard the vessel. *Id.*

[10] R. Doc. 1. at ¶¶ 17—10, 25–28.

[11] *Id.* at ¶ 30.

[12] *Id.* at ¶ 39.

[13] *Id.* at ¶ 45.

[14] R. Docs. 68 and 122.

attempted multiple times to perfect service upon Eastern Pacific Singapore. Eastern Pacific Singapore did not accept service and, instead, filed several motions to dismiss Plaintiff's claims under Rule 12(b)(5) for insufficient service of process.[15] On August 10, 2021, the Court entered an Order and Reasons holding that Plaintiff had perfected service upon Eastern Pacific Singapore at its headquarters in Singapore.[16]

On August 12, 2021, Plaintiff filed a motion for leave to file his first supplemental and amended complaint for damages against Eastern Pacific Singapore.[17] On August 24, 2021, Eastern Pacific Singapore filed the two pending motions to dismiss.[18] During a telephone status conference on September 14, 2021, the Court granted Plaintiff's motion for leave to amend his complaint,[19] and, on that same date, Plaintiff filed his first supplemental and amended complaint for damages ("amended complaint").[20] The parties agreed during the September 14, 2021 telephone status conference that Eastern Pacific Singapore's two pending motions to dismiss apply to the allegations of Plaintiff's amended complaint.[21]

Plaintiff's amended complaint retains his Jones Act, general maritime law, and contractual disability benefits claims set forth in the original complaint, and adds an additional claim against Eastern Pacific Singapore for "an intentional general maritime law tort."[22] Plaintiff's new claim arises out of a lawsuit filed in India against Plaintiff by Eastern Pacific Singapore and Eastern Pacific Shipping (India) Private Limited ("EPS

---

[15] *See* R. Docs. 16, 69, 187.
[16] *See* R. Doc. 196.
[17] R. Doc. 198.
[18] *See* R. Docs. 203 and 204. The Court will, by separate order, address Eastern Pacific Singapore "Motion to Dismiss — India Law Choice" (R. Doc. 203).
[19] R. Doc. 211.
[20] R. Doc. 212.
[21] R. Doc. 211.
[22] R. Doc. 212 at ¶¶ 101–102.

India"), a subsidiary of Eastern Pacific Singapore. Plaintiff alleges the actions of Eastern Pacific Singapore in the Indian court amount to "deliberate and malicious efforts to intimidate [Plaintiff] from seeking legal redress in this Court," and that these actions constitute an intentional general maritime law tort.[23] Eastern Pacific Singapore does not argue the addition of the malicious prosecution claim materially changes the analysis on this motion to dismiss, and the Court agrees it does not.

## LAW AND ANALYSIS

Before the Court addresses the merits of the motion to dismiss based on forum non conveniens, it must address a preliminary argument raised in Plaintiff's briefing. During an April 18, 2019 status conference, counsel for Eastern Pacific Singapore represented that Eastern Pacific Singapore "will not object to venue in this Court."[24] Plaintiff argues by consenting to venue in this Court, Eastern Pacific Singapore "abandoned any right to seek dismissal on ground[s] of forum non conveniens" and that Eastern Pacific Singapore's "motion to dismiss for forum non conveniens should be summarily denied because [Eastern Pacific Singapore] does not object to venue in New Orleans."[25] Plaintiff's argument is not correct. "[F]orum non conveniens is an entirely separate and distinct doctrine" from the rules and requirements of venue,[26] and "[t]he objection of forum non conveniens is not a defense to improper venue."[27] Under the doctrine of forum non conveniens, "the court may, in the exercise of its sound discretion, dismiss the case even

---

[23] Hereinafter, the Court will refer to this claim as Plaintiff's "malicious prosecution" claim, for the sake of brevity.
[24] R. Doc. 68.
[25] R. Doc. 214 at pp. 3–4.
[26] *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173 (10th Cir. 2009).
[27] *Fifth & Walnut v. Loew's, Inc.*, 76 F. Supp. 64, 67 (S.D.N.Y. 1948).

if jurisdiction and proper venue are established."[28] Thus, the fact that venue is satisfied—whether by waiver or otherwise—does not ipso facto establish that a forum non conveniens dismissal is unwarranted; were it so, the doctrine of forum non conveniens would apply only in cases in which venue was improper, and would be of no practical utility as such a case could already be dismissed on grounds of improper venue. Thus, the Court rejects Plaintiff's argument that Eastern Pacific Singapore should be precluded from asserting a forum non conveniens motion merely because it withdrew its objections to venue.[29]

The Court now turns to the merits of the motion to dismiss based on forum non conveniens. "Although the plaintiff's choice of forum should not ordinarily be disturbed, the doctrine of forum non conveniens permits a court to resist imposition upon its jurisdiction even when subject matter jurisdiction is conferred by statute or personal jurisdiction is conferred by minimum contacts or consent." [30] If the moving party establishes the convenience of the parties and the interests of justice indicate the case should be tried in a different forum, the district court should dismiss the case on forum non conveniens grounds.[31]

A court may decline to exercise jurisdiction pursuant to the doctrine of forum non conveniens only "in exceptional circumstances."[32] The Supreme Court has instructed that "[a] defendant invoking forum non conveniens ordinarily bears a heavy burden in

---

[28] *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)) (internal quotations omitted).

[29] For the same reasons, the Court rejects Plaintiff's judicial estoppel argument, as Plaintiff's judicial estoppel theory is also premised on Eastern Pacific Singapore having withdrawn its objections to venue.

[30] *Gonzalez v. Naviera Neptuno A.A*, 832 F.2d 876, 878 (5th Cir. 1987) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

[31] *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001).

[32] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947).

opposing the plaintiff's chosen forum,"[33] and that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[34] District courts possess considerable discretion in determining whether to dismiss a case on forum non conveniens grounds.[35]

In the exercise of its discretion, a district court should use the framework set forth by the Fifth Circuit in *In re Air Crash Disaster Near New Orleans, La.*[36] This framework involves a four-step analysis in which the defendant bears the burden of persuasion on all elements.[37] The four steps of the analysis are: (1) determining whether an alternative forum is available; (2) determining whether the alternative forum identified in step one is adequate; (3) considering the "relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum"; and (4) weighing the relevant public interest, if the private interests are either nearly in balance or do not favor dismissal.[38]

The Fifth Circuit has explained that "[i]n deciding whether to dismiss a case for forum non conveniens, the district court must first determine whether an adequate alternative forum is available."[39] Whether an adequate alternative forum is available is a two-part inquiry: (i) a foreign forum is available "when the entire case and all parties can come within the jurisdiction of that forum";[40] and (ii) a foreign forum is adequate "when

---

[33] *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).
[34] *Gilbert*, 330 U.S. at 508.
[35] *O'Keefe v. Noble Drilling Corp.*, 347 F. App'x 27, 30 (5th Cir. 2009).
[36] *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *reinstated except as to damages by In re Air Crash Disaster Near New Orleans, La.*, 883 F.2d 17 (5th Cir. 1989) (en banc).
[37] *Id.* at 1164–66.
[38] *Id.* at 1165–66
[39] *O'Keefe* 347 F. App'x at 31 (citing *In re: Air Crash*, 821 F.2d at 1165).
[40] *In re: Air Crash*, 821 F.2d at 1165.

the parties will not be deprived of all remedies or treated unfairly . . . even though they may not enjoy the same benefits as they might receive in an American court."[41]

If the district court finds an alternative forum is both adequate and available, it must then weigh various private interest factors, starting with the timeliness of the motion.[42] The Fifth Circuit has held the defendant "must assert a motion to dismiss for forum non conveniens within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the defendant."[43] Although the untimely submission of a motion to dismiss for forum non conveniens will not amount to waiver, untimeliness "weigh[s] heavily against the granting of the motion because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve."[44]

The other private interests to be considered include: (i) relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of premises, if a view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (v) enforceability of a judgment if one is obtained.[45] In evaluating the private interest factors, the district court should weigh in the balance the relevant deference given to the plaintiff's initial choice of forum, and should, as mentioned above, consider whether the defendant's motion was filed in a timely manner.[46]

---

[41] *Id.*
[42] *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002).
[43] *In re: Air Crash,* 821 F.2d at 1165.
[44] *Id.*
[45] *Id.* at 1162.
[46] *Id.* at 1165.

Next, the district court must weigh several public interest factors.[47] The public interest factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a case in a forum that is familiar with the law that governs the action; (iv) the avoidance of unnecessary problems and conflicts of law, or an application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.[48] If the district court concludes the moving party has established the private and public interests weigh heavily in favor of trial in a foreign forum, "it must finally ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum."[49]

"Ultimately, the inquiry is where the trial will best serve the convenience of the parties and the interests of justice."[50] No one private or public interest should be given conclusive weight. And, though a plaintiff's initial choice of forum is usually to be respected, a "plaintiff's choice of forum is not conclusive, and 'a foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home forum.'" [51] "The Defendant has the burden of proof on all elements."[52] In *In re: Air Crash*, the Fifth Circuit explained:

> This burden of persuasion runs to all the elements of the forum non conveniens analysis. Therefore, the moving defendant must establish that an adequate and available forum exists as to all defendants if there are several. If the moving defendant carries this initial burden, it must also

---

[47] *Gonzalez*, 301 F.3d at 380.
[48] *In re: Air Crash*, 821 F.2d at 1162–63.
[49] *Id.* at 1166.
[50] *O'Keefe*, 347 F. App'x at 31 (citing *DTEX, LLC, v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007)).
[51] *O'Keefe*, 347 F. App'x at 31 (citing *In re: Air Crash*, 821 F.2d at 1164).
[52] *O'Keefe*, 347 F. App'x at 31 (citing *DTEX, LLC*, 508 F.3d at 794).

establish that the private and public interests weigh heavily on the side of trial in the foreign forum. The Supreme Court had held that a moving defendant need not submit overly detailed affidavits to carry its burden, but it "must provide enough information to enable the district court to balance the parties' interests."[53]

The Court will now consider the facts and the arguments urged by the parties in the briefing, in light of the forum non conveniens framework set forth above, to determine whether this case should be dismissed on forum non conveniens grounds.

### *The Court will assume there is an alternative and adequate forum available in South Goa, India.*

Eastern Pacific Singapore seeks to have this action dismissed, with the ultimate aim of forcing Plaintiff to litigate the claims he presses in this Court in the action pending in South Goa, India.[54] Eastern Pacific Singapore argues the alternative forum in South Goa, India is available and adequate.

As mentioned above, an alternative forum is considered available if the entire case and all parties come within its jurisdiction. "When a defendant agrees to submit to the jurisdiction of an alternative forum, that forum is indisputably available,"[55] because a defendant's "submission to the jurisdiction of an alternative forum renders that forum available" in the context of the forum non conveniens analysis.[56]

Notwithstanding the fact that the defendant bears the overarching burden of proof in the forum non conveniens context, if the alternative forum is available the plaintiff faces, and must therefore overcome, a presumption that the alternative forum is

---

[53] *In re: Air Crash*, 821 F.2d at 1164-65 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)).

[54] The action pending in South Goa, India, is styled *Eastern Pacific Shipping (India) Private Limited  v. Vishveshwar Ganpat Kholkar*, Special Civil Suit No. 64/2020/III, CNR No. GASG02-003269-2020.

[55] *Tellez v. Madrigal*, 223 F. Supp. 3d 626, 635 (W.D. Tex. 2016) (*citing Adams v. Merck & Co. Inc.*, 353 F. App'x. 960, 962 n.2 (5th Cir. 2009) and *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983)).

[56] *Veba–Chemie*, 711 F.2d at 1243, 1245.

adequate. The presumption of adequacy stands unless the plaintiff makes a showing of inadequacy, such as when the plaintiff shows the alternative forum provides him no remedy at all or otherwise shows conditions existing in the foreign forum render it unlikely for plaintiff to obtain basic justice there.[57]

As mentioned above, Eastern Pacific Singapore argues India provides an available and adequate foreign forum. Eastern Pacific Singapore argues the South Goa Court in India is an available forum because Eastern Pacific Singapore and EPS India have, since March 2020, proceeded before the South Goa Court in an attempt to obtain a "declaration and decision on the same grounds" Plaintiff raises in this Court.[58] Eastern Pacific Singapore further argues "[l]itigation is already pending in the South Goa Court arising from the same facts in connection with this case and the South Goa Court has recognized its jurisdiction over all parties."[59] Eastern Pacific Singapore argues the Indian court also is an available forum, particularly if Plaintiff files a counterclaim in the suit already pending there.

On March 2, 2020, nearly a year and a half after the Plaintiff filed his complaint in this Court, Eastern Pacific Singapore and EPS India instituted proceedings against Plaintiff in India. Eastern Pacific Singapore argues the South Goa court has "itself already held that it is a proper, convenient forum for [Plaintiff's] claims."[60] On March 7, 2020, the South Goa, India Court issued an order preliminarily enjoining Plaintiff from proceeding with his lawsuit in this Court.[61] In its order, the Indian Court states as follows:

> The defendant [Kholkar Vishveshwar Ganpat] resides in Canacona, Goa and thus [is] amenable to the jurisdiction of this Court. The plaintiffs [Eastern

---

[57] *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254–55 (1981); *see also Tellez*, 223 F. Supp. 3d at 636.
[58] R. Doc. 204-1 at p. 15.
[59] *Id.* at p. 17.
[60] *Id.* at p. 16.
[61] R. Doc. 204-1 at p. 7.

Pacific Singapore and EPS India] have *prima facie* shown that if they are made to defend the US proceedings, they would have to incur huge expenditure and the costs might not be recoverable . . . [Eastern Pacific Singapore and EPS India] have prima facie shown that the Court in Goa is a *forum conveniens* for both parties and more particularly, the defendant [Kholkar Vishveshwar Ganpat] who resides in Goa and who on account of his health condition would have great difficulties in travelling to USA to prosecute the US proceedings. Further, the witnesses are also in Goa. Trial and adjudication of the claim for damages would be convenient to both the parties . . . No prejudice or injustice will be caused to the defendant [Kholkar Vishveshwar Ganpat] if [an] anti-suit injunction in temporary form is granted as the defendant [Kholkar Vishveshwar Ganpat] can pursue his claim for damages against the plaintiffs [Eastern Pacific Singapore and EPS India] by filing proceedings in Goa or file a counter claim in the instant suit itself.[62]

Eastern Pacific Singapore argues the South Goa Court in India is an adequate forum because India law provides a seaman a right of action against his employer for injuries incurred in the course of the seaman's employment.[63] Eastern Pacific Singapore argues Plaintiff, "on proper allegation and factual proof may recover against his employer, Ventnor, and EPS India, as RPSL agent, for his alleged injuries arising out of his employment aboard the vessel including the alleged failure to pay maintenance and cure."[64] Eastern Pacific Singapore further argues India law provides Plaintiff, on proper allegation and proof, an action for unseaworthiness against the vessel owner, Larchep Shipping, Inc.[65] Eastern Pacific Singapore argues Plaintiff cannot show the substantive law of India is inadequate, or that the conditions in the South Goa Court demonstrate that he is unlikely to obtain basic justice there.[66]

---

[62] *Id.* at pp. 7–9.
[63] R. Doc. 204-1 at p. 13.
[64] *Id.*
[65] *Id.*
[66] *Id.* at p. 17.

Plaintiff argues the court in South Goa, India is neither an adequate nor an available forum.[67] Plaintiff first points to Eastern Pacific Singapore's "Motion to Dismiss — India Law Choice," wherein Eastern Pacific Singapore argues India law applies, and that India law provides Plaintiff no cause of action against Eastern Pacific Singapore.[68] Eastern Pacific Singapore relies on an affidavit attached to its "Motion to Dismiss — India Law Choice,"[69] executed by its lead counsel in India, Aditya Krishnamurthy. In his affidavit, Aditya Krishnamurthy states Plaintiff has no cause of action against Eastern Pacific Singapore under the law of India, and that Plaintiff's causes of action under India law are against EPS India, Ventnor Navigation, and Larchep Shipping.[70] Plaintiff argues Eastern Pacific Singapore's contention in the Krishnamurthy affidavit that India law provides Plaintiff no cause of action against Eastern Pacific Singapore belies its assertion that India is an adequate forum, given that Plaintiff would have no cause of action there.[71] Plaintiff further argues that, although Eastern Pacific Singapore contends Plaintiff has causes of action under India law against Ventnor and Larchep, the court in India does not have jurisdiction over Ventnor or Larchep.[72] And, although Plaintiff recognizes the India court has jurisdiction over EPS India, Plaintiff argues EPS India has "absolutely no connection to duties owned [*sic]* to Plaintiff" by Eastern Pacific Singapore or any other

---

[67] R. Doc. 214 at p. 11.

[68] *See* R. Doc. 203.

[69] R. Doc. 203-2.

[70] *See* R. Doc. 203-2 at pp. 6, 9—10 (stating that Plaintiff may recover against "his employer, Ventnor and EPS-India as RPSL Agent, for his alleged injuries arising out of his employment aboard the Vessel including alleged failure to pay maintenance and cure," and that India law also provides Plaintiff " an action for unseaworthiness against the Vessel owner, Larchep Shipping.") The affiant states Plaintiff has a claim for malicious prosecution under Indian law once the proceedings are terminated in favor of Plaintiff. *See id.* at pp. 8—9.

[71] R. Doc. 214. at p. 10.

[72] Larchep Shipping and Ventnor Navigation are not parties to this lawsuit, and the Court cannot determine, as a theoretical matter, whether it would have jurisdiction over these two Liberian companies.

party.[73] Finally, Plaintiff argues the India court is not an adequate forum because he was imprisoned by the Indian Court in South Goa when he "refused to accept a forced low-ball settlement offer and dismiss his U.S. lawsuit,"[74] and that this demonstrates Plaintiff has been, and will continue to be, treated unfairly by the Indian court.

District courts within the Fifth Circuit, when confronted with disputed allegations of injustice in a foreign forum, have presumed the foreign forum is an available and adequate forum and moved on to considering the remaining forum non conveniens factors.[75] This Court adopts the same approach and assumes, without deciding, that India is an available and adequate forum. As a result, the Court will now weigh the private interest factors.

### ***Eastern Pacific Singapore has not met its burden of proof with respect to the private interest factors.***

This Court considers one of the most important private interest factors in the forum non conveniens analysis to be the timeliness of the motion. Eastern Pacific Singapore filed its forum non conveniens motion on August 24, 2021, over two and half years after the original complaint was filed. During that period, substantial activity has taken place this case, on the part of both the parties and the Court. Plaintiff's original complaint was filed in this Court on December 12, 2018.[76] Eastern Pacific Singapore filed its first motion to dismiss on January 5, 2019, seeking dismissal on the grounds of insufficient service of process and lack of personal jurisdiction.[77] The parties extensively briefed the motion over the next two months. On March 14, 2019, the Court granted the

---

[73] R. Doc. 214 at p. 11.
[74] *Id.* at p. 12.
[75] *See, e.g., Tellez v. Madrigal*, 223 F. Supp. 3d 626, 636 (W.D. Tex. 2016); *see also Festor v. Wolf*, 647 F. Supp. 2d 750, 755 (W.D. Tex. 2009).
[76] R. Doc. 1.
[77] R. Doc. 16.

parties leave to conduct jurisdictional discovery through April 24, 2019 and allowed Plaintiff to file a supplemental memorandum addressing the basis of this Court's personal jurisdiction over Eastern Pacific Singapore by April 24, 2019.[78] After disputes arose in the course of the jurisdictional discovery process, the Court held a status conference with the parties on April 18, 2019, wherein Eastern Pacific Singapore "withdrew its objection to venue" and represented that it "will not object to venue in this Court."[79] The Court granted Eastern Pacific Singapore leave to file an amended motion to dismiss, removing the defense of lack of personal jurisdiction, by April 25, 2019, and "withdrew its order granting Plaintiff the right to jurisdictional discovery with respect to personal jurisdiction."[80]

In compliance with the Court's April 18, 2019 Minute Order, Eastern Pacific Singapore filed an amended and restated Motion to Dismiss on April 25, 2019, moving to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.[81] On April 30, 2019, Plaintiff filed a Motion for Leave to Take Discovery, requesting discovery regarding the issue of whether Captain Bona is a managing agent of Eastern Pacific Singapore, authorized to receive service of process on Eastern Pacific Singapore's behalf.[82] Plaintiff contended Captain Bona is a managing agent of Eastern Pacific Singapore as contemplated by Federal Rule of Civil Procedure 4(h)(1)(B) and, as a result, service upon Captain Bona was sufficient service on Eastern Pacific Singapore.[83] On June 4, 2019, the Court issued an Order and Reasons granting

---

[78] R. Doc. 46.
[79] R. Doc. 68.
[80] *Id.*
[81] R. Doc. 69. Eastern Pacific Singapore waived the defense of lack of personal jurisdiction because it did not include the defense in its restated Motion to Dismiss. *See* Fed. R. Civ. P. 12(h)(1).
[82] R. Doc. 70.
[83] R. Doc. 23.

Plaintiff's motion for leave to take discovery on the managing agent question.[84] The Court gave the parties until July 1, 2019 to complete written discovery, and gave Plaintiff until July 31, 2019, to depose Captain Bona and a Rule 30(b)(6) representative of Eastern Pacific Singapore.[85] On July 2, 2019, the Court held a status conference to discuss the discovery schedule previously set forth by the Court, the scope of discovery, and the motion for protective order filed by Eastern Pacific Singapore.[86] The Court granted in part Eastern Pacific Singapore's motion for protective order, ordering that "Plaintiff will depose Defendant's representative pursuant to Fed. R. Civ. P. 30(b)(6) by video teleconference," and that Plaintiff "will depose Captain Bona by teleconference."[87]

The Court held additional status conferences with the parties on July 19,[88] July 31,[89] and August 2, 2019,[90] to discuss the progress of discovery, the relevant law, and the parties' briefing regarding the managing agent issue. After completing discovery on the managing agent issue, Plaintiff filed his opposition to Eastern Pacific Singapore's motion to dismiss for insufficient service on September 17, 2019.[91] On January 17, 2020, the Court issued an Order and Reasons holding, *inter alia*, that service of process on Eastern Pacific Singapore through service on Captain Bona was not proper under Federal Rules of Civil Procedure 4(h)(1)(B) because "Captain Bona does not qualify as a managing agent of Eastern Pacific."[92] Pursuant to Rule 4(m), however, the Court granted Plaintiff an

---

[84] R. Doc. 81.
[85] R. Doc. 82.
[86] R. Doc. 92.
[87] *Id.*
[88] R. Doc. 101.
[89] R. Doc. 106.
[90] R. Doc. 113.
[91] R. Doc. 116.
[92] R. Doc. 122 at p. 23.

extension of time to March 17, 2020 to serve Eastern Pacific Singapore in compliance with Rule 4, and denied Eastern Pacific Singapore's motion to dismiss as moot.[93]

On January 23, 2020, Plaintiff began the process of serving Eastern Pacific Singapore in Singapore pursuant to a letter rogatory.[94] Plaintiff's motion[95] for issuance of a letter rogatory was granted by the Court on January 27, 2020.[96] Plaintiff requested an exemplification certificate be issued by the Court in furtherance of international service of process,[97] which the Court issued on February 27, 2020.[98] The letters rogatory were delivered to the United States Department of State on April 6, 2020, and were received in Singapore on August 6, 2020, but were delayed due to Covid-19 issues.[99] On March 9, 2020, Plaintiff petitioned the Court to grant him an extension of time to effect foreign service of process in Singapore upon Eastern Pacific Singapore.[100] Eastern Pacific Singapore did not oppose the motion, and the Court granted the motion, giving Plaintiff until July 15, 2020, to serve Eastern Pacific Singapore.[101] Plaintiff moved for a second extension of time,[102] and the Court granted him until November 16, 2020, to serve Eastern Pacific Singapore.[103] Plaintiff moved for a third extension of time,[104] and the

---

[93] *Id.* at p. 26.
[94] R. Doc. 127-1 at 8 ("Plaintiff is complying fully with the Court's January 17, 2020 Order that he undertake prompt Rule 4 service upon EPS (in Singapore).   He has requested Letters Rogatory (Rec. Docs. 123 and 126) and has asked the Clerk to issue Summons (Rec. Doc. 124).").
[95] R. Doc. 123. On January 24, 2020, Plaintiff filed an amended motion for issuance of a letter rogatory. R. Doc. 126.
[96] R. Doc. 130.
[97] R. Doc. 135. Plaintiff asserted he sought an exemplification certificate "in furtherance of international service of process as *ordered* by the Court's January 17, 2020 Order and Reasons." R. Doc. 135 at 1 (emphasis added). The Court did not *order* Plaintiff to serve Eastern Pacific Singapore but granted him an extension of time for him to do so, if he desired.
[98] R. Doc. 136.
[99] R. Doc. 176-1 at p. 1–2.
[100] R. Doc. 141.
[101] R. Doc. 143.
[102] R. Doc. 153.
[103] R. Doc. 156.
[104] R. Doc. 173.

Court granted him until March 16, 2021, to serve Eastern Pacific Singapore.[105] On March 12, 2021, Plaintiff filed a motion for a fourth extension of time to effect service.[106] The Declaration of Nelson Tucker, CEO of Process Network Service, Inc., was attached thereto.[107] As to the process of serving the letters rogatory, Tucker's declaration states the "estimated time of completion of service is June–July 2021; the estimated time of return of Proof of Service is August–September 2021."[108] The Court therefore granted Plaintiff's motion for a fourth extension of time, giving Plaintiff until September 15, 2021, to serve Eastern Pacific Singapore.[109]

Through no fault of Plaintiff, service of process on Eastern Pacific Singapore through letters rogatory was never effected. Instead, on April 20, 2021, Plaintiff filed into the record his purported proof of service upon Eastern Pacific Singapore—namely, an "Affidavit of Service Upon Defendant Eastern Pacific Shipping PTE. LTD."[110] The affidavit was made by a process server in Singapore, who attested he served Eastern Pacific Singapore through personal delivery at its registered headquarters address in Singapore.[111] On May 4, 2021, Eastern Pacific Singapore filed another motion to dismiss for insufficient service of process, arguing Plaintiff's attempt at personal service through the Singaporean process server is insufficient.[112] On August 10, 2021, the Court issued an Order and Reasons finding that "Eastern Pacific was properly served at its headquarters

---

[105] R. Doc. 174.
[106] R. Doc. 176.
[107] *See* R. Doc. 176-1.
[108] R. Doc. 176-1 at p. 2.
[109] R. Doc. 177.
[110] R. Doc. 184.
[111] *Id.*
[112] *See* R. Doc. 198 at p. 1.

in Singapore, in a manner consistent with Singapore law and with Federal Rules of Civil Procedure 4(h)(2) and 4(f)(2)(A)."[113]

Two weeks after the Court issued its August 10, 2021 Order and Reasons finding Eastern Pacific Singapore had been properly served, and over two and a half years after this lawsuit was filed, Eastern Pacific Singapore filed its motion to dismiss for forum non conveniens. The facts Eastern Pacific Singapore relies on in support of its forum non conveniens motion have been available to Eastern Pacific Singapore since Plaintiff's original complaint was filed in December 2018. There has been no change of circumstances during the pendency of the case so as to materially alter the calculus regarding the convenience of the forum. Consequently, Eastern Pacific Singapore may be faulted for its delay in filing its motion to dismiss for forum non conveniens, and this delay weighs against granting the motion, particularly because the Court has familiarized itself with the facts of the case, held many lengthy and contentious status conferences with the parties' counsel, dealt with complicated questions pertaining to discovery and service of process, and issued several lengthy opinions.

Both the Court and the parties have invested considerable time and resources into this case during the three years it has now been pending here. As a result, considerations of judicial economy also counsel against granting Eastern Pacific Singapore's forum non conveniens motion. "[E]ncouraging parties to file motions to dismiss based on forum non conveniens at an earlier stage of litigation promotes judicial economy" because the parties and the Court "will spend less time, costs, and efforts in front of a court that will ultimately dismiss the case."[114] Granting Eastern Pacific Singapore's motion to dismiss for forum

---

[113] R. Doc. 196 at p. 15.
[114] *Est. of I.E.H. v. CKE Restaurants, Holdings, Inc.*, 995 F.3d 659, 664–65 (8th Cir. 2021) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007) for the proposition that judicial

non conveniens at this stage of the litigation would not serve the interests of judicial economy.

The Court will now consider the parties' arguments with respect to the remaining private interest factors. Eastern Pacific Singapore argues the balance of the private interest factors weighs in favor of dismissal. With respect to obtaining witness testimony, Eastern Pacific Singapore argues several witnesses it will call are located in India, and that the cost to bring willing Indian witnesses to this district to testify is high.[115] Eastern Pacific Singapore further argues this Court is unable to call unwilling Indian witnesses "as there is no compulsory process for bringing these witnesses to the District."[116]

Eastern Pacific Singapore asserts that Plaintiff, whose testimony will be necessary, lives in India. Eastern Pacific Singapore also points out that Plaintiff's amended complaint mentions his father will be a witness, and that Plaintiff's father also lives in India.[117] Eastern Pacific Singapore argues it may need to call as witnesses various crew members of the M/V STARGATE who reside in India and who served on the vessel at relevant times.[118] Eastern Pacific Singapore argues it may need to call its own employee, Captain AK Bhasin, who resides in Mumbai, India, to testify on the provision of medical treatment and maintenance and cure to Plaintiff.[119] Eastern Pacific Singapore argues it may also need to call the Indian medical professionals who treated Plaintiff after his repatriation to India, and that these medical professionals also reside in India.[120]

---

economy is disserved by continuing litigation when a district court would inevitably dismiss the case based on forum non conveniens (internal quotations omitted)).

[115] R. Doc. 204-1 at p. 22.
[116] *Id.* at p. 22.
[117] *Id.* at p. 17.
[118] *Id.* at p. 18.
[119] *Id.*
[120] *Id.*

While Eastern Pacific Singapore attempts to paint the picture that all relevant witnesses reside in India, this clearly is not the case. The M/V STARGATE was provisioned in Savannah, Georgia, and there likely are witnesses there. Eastern Pacific Singapore admits that Plaintiff was first treated in Brazil and his treating physicians are located there. While Eastern Pacific Singapore argues it may call as witnesses members of the crew of the M/V STARGATE who reside in India, Eastern Pacific Singapore also states it may call as witnesses members of the crew of the M/V STARGATE who reside in Romania, Ukraine, Bulgaria, the Philippines, Russia, and Turkey. Given that the M/V STARGATE was owned by Larchep Shipping, a Liberian corporation, and that Plaintiff was employed by Ventnor Navigation, also a Liberian corporation, it is likely relevant witnesses also reside in Liberia. Finally, given that Eastern Pacific Singapore's headquarters are located in Singapore, any corporate representative of or witness for Eastern Pacific Singapore likely resides in Singapore. With respect to costs and difficulties, Eastern Pacific Singapore has not shown that India is any more convenient than the United States in terms of obtaining witness testimony.[121]

Many of the witnesses Eastern Pacific Singapore asserts reside in India are employees of Eastern Pacific Singapore, and Eastern Pacific Singapore may arrange for the attendance in court of its own employees.[122] That leaves the Plaintiff, his father, and Plaintiff's physicians as non-Eastern Pacific Singapore witnesses residing in India whom Eastern Pacific Singapore asserts it will call. With respect to Plaintiff, he has chosen to

---

[121] It is likely some witnesses necessary to prosecute Plaintiff's malicious prosecution claim reside in India, but this does not change the Court's balancing of the factors.

[122] *Raytheon Engineers & Constructors, Inc. v. H L H & Assocs. Inc.*, 142 F.3d 1279 (5th Cir. 1998) (unpublished opinion) (stating that the private interest factors did not favor dismissal because, among other reasons, "most if not all of the witnesses located in Panama and identified by Defendant are its employees and therefore will be readily available to attend court in Houston.").

litigate in this Court, and, while the Court recognizes a foreign plaintiff's choice of forum receives less deference than a plaintiff at home in the jurisdiction, the fact that Plaintiff chose this forum demonstrates Plaintiff will make himself available to testify and litigate here, and he will be required to do so, having chosen this forum. To be sure, the Court may, if necessary, compel Plaintiff's appearance because he is subject to the jurisdiction of this Court. The Court also may safely assume Plaintiff will make his father available to testify during proceedings in this district, if necessary. Finally, with respect to Plaintiff's doctors in India, to the extent live testimony is needed from these physicians or others in India or any other country, the video-conferencing format is readily available, and the Court expects physicians, as some of the most sophisticated members in any society, will be equipped to provide testimony via videoconference. As stated by the Ninth Circuit in a 2015 opinion reversing the district court's forum non conveniens dismissal in favor of adjudication in India, "in this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale."[123] This statement  rings even more true in 2022, in the age of Covid-19, when persons and institutions throughout the world, including this Court, have amassed experience in conducting business via ZOOM and similar video conferencing technologies. In addition, the parties to this case already have taken depositions via video conferencing technologies, and there is no indication the parties cannot do the same in the future.

As to third-party witnesses who may be unwilling to testify, Eastern Pacific Singapore has not identified any essential witnesses who are, in fact, unwilling. A

---

[123] *Salebuild, Inc. v. Flexisales, Inc.*, 633 F. App'x 641, 643 (9th Cir. 2015) (quoting *In re Herbert*, Nos. CIV. 13–00452 DKW, CIV. 13–00705 DKW, 2014 WL 1464837, at *6 (D.Haw. Apr. 14, 2014)).

defendant's failure to identify essential witnesses who are unavailable or unwilling to testify in this Court militates against dismissal for forum non conveniens.[124] Additionally, the United States, India, Singapore, and Brazil all are signatories to the Hague Convention on the Taking of Evidence Abroad. The significance of this is that, if third party witnesses are unwilling to appear voluntarily, testimony may be compelled by letter rogatory or similar procedure under the Hague Convention on the Taking of Evidence Abroad. Thus, compulsory processes are "available."[125]

With respect to physical evidence, Eastern Pacific Singapore argues Plaintiff's hospitalization and medical records from his surgeries and other treatments are located in India. The physical evidence relevant to Plaintiff's negligence and unseaworthiness claims is primarily documentary evidence, including the vessel's records from the time period surrounding the vessel's presence in and departure from Savannah, Georgia, to its trek across the Atlantic Ocean to Gabon, Africa, and then to Brazil. Plaintiff's medical records from his treatment in Brazil and India also are relevant to his claims. In addition, any documents showing amounts paid by Eastern Pacific Singapore in favor of Plaintiff's treatment, repatriation, and wages paid to him, if any, while he was undergoing treatment will be relevant to Plaintiff's failure to pay maintenance and cure claim. Relevant documentary evidence also may be found in the United States.

This factor—the relative ease of obtaining physical evidence—does not favor adjudication in India for several reasons. First, advancements in technology render

---

[124] *See, e.g.*, *Prevision Integral de Servicios Funerarios, S.A. v. Kraft*, 94 F. Supp. 2d 771, 777–79 (W.D. Tex. 2000); *see also Tellez v. Madrigal*, 223 F. Supp. 3d 626, 637 (W.D. Tex. 2016).

[125] The Court recognizes that this process can be time consuming and expensive; nevertheless, the inquiry is whether compulsory processes are "available." The cost of obtaining the attendance of unwilling witnesses is not a private interest factor to be considered. *See Prevision Integral de Servicios Funerarios*, 94 F. Supp. at 779.

documentary evidence easily portable and transferrable. Documentary evidence is likely to be located in Brazil, India, the United States, Liberia, and Singapore. The location of documents "is not a compelling consideration" when records are easily portable.[126] Second, Plaintiff will, presumably, be able to obtain his own medical records and produce them during discovery. Third, as already mentioned, the United States, India, Singapore, and Brazil, all are signatories to the Hague Convention on the Taking of Evidence Abroad, "which provides a way to obtain evidence from entities and individuals in foreign jurisdictions."[127] Thus, regardless of the forum, the parties will be able to obtain documentary evidence. Fourth, it is evident from positions taken by Eastern Pacific Singapore in filings in the South Goa, India proceedings, that Eastern Pacific Singapore is in possession of a copy of the M/V STARGATE's 'Medicines List/Inventory' as of March 11, 2017.[128] It is clear Eastern Pacific Singapore also is in possession of medical log books prepared by the second officer of the vessel, and of certain medication declarations allegedly signed by Plaintiff showing that Plaintiff had been provided anti-Malaria medication at certain times during the voyage.[129] The fact that Eastern Pacific Singapore already has these documents, and has made them a part of the South Goa, India Court's record, demonstrates it will not be burdensome for Eastern Pacific Singapore to make these same documents available as part of this Court's electronic record. With respect to any other relevant documents in the possession of Eastern Pacific Singapore relating to

---

[126] *See In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp. 2d 1020, 1035 (C.D. Cal. 2011), *amended on reconsideration in part sub nom. In re Air Crash at Madrid, Spain*, No. 2:10-ML-02135-GAF, 2011 WL 2183972 (C.D. Cal. May 16, 2011), *and aff'd sub nom. Fortaner v. Boeing Co.*, 504 F. App'x 573 (9th Cir. 2013); *see also Medisim Ltd. v. BestMed LLC*, No., 2010 WL 2697073, at *2 (S.D.N.Y. July 7, 2010).

[127] *In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp. 2d at 1034.

[128] R. Doc. 204-4 at p. 28.

[129] *Id.* at p. 29.

the management of the M/V STARGATE, "the Court has jurisdiction over [Eastern Pacific Singapore], and, thus, the Court could compel [Eastern Pacific Singapore] to produce such [documents] in this Court."[130]

Moving to the remaining private interest factors, a view of the premises of the M/V STARGATE is not relevant in this case. However, the enforceability of a judgment obtained in a United States court, if one is obtained, is uncertain. While Eastern Pacific Singapore admits certain vessels it manages call on the Port of New Orleans from time to time, Eastern Pacific Singapore does not have any property permanently situated in the United States. Thus, obtaining a lien or judgment mortgage on property of Eastern Pacific Singapore may be impossible, and obtaining a maritime lien or seizing a vessel managed by Eastern Pacific Singapore may be very challenging. In addition, Eastern Pacific Singapore does not employ persons who are regularly situated in the United States.[131]

With respect to the private interest factors, Eastern Pacific Singapore has not met its burden of showing that India is a significantly more convenient forum than the United States. Eastern Pacific Singapore admits some relevant documents and witnesses are located in locales other than India. Additionally, Eastern Pacific Singapore identifies witnesses from around the globe, including Ukraine, Russia, Romania, and several other countries. Furthermore, Ventnor Navigation, Plaintiff's employer, and Larchep Shipping, the owner of the M/V STARGATE, are Liberian corporations, so it is likely evidence and witnesses are located in Liberia, as well. It is clear some inconvenience will result to either party with respect to access to sources of proof, transportation and other costs, and the

---

[130] *Prevision Integral de Servicios Funerarios, S.A. v. Kraft*, 94 F. Supp. 2d 771, 778 (W.D. Tex. 2000).
[131] As laid out in the parties' briefing, the parties dispute who, if anyone, owed obligations to Plaintiff and who would be liable for any judgment obtained against the Plaintiff. Potential liable parties include Eastern Pacific Singapore, EPS India, Ventnor Navigation (Liberia), and Larchep Shipping (Liberia). The Court cannot fully address the "enforceability of judgment" factor because of this complication.

like, whether trial is held in India, the United States, or elsewhere. This is not surprising, as this dispute is transnational in nature and, as explained, implicates several countries.

The Fifth Circuit has noted that, even in the absence of "any specific interests favoring retention of jurisdiction, plaintiff [nevertheless] retains the general presumption in favor of his choice of forum."[132] The Court is also mindful of the fact that, ordinarily, the plaintiff's choice of forum should not be disturbed. And, to justify a forum non conveniens dismissal, the relevant public and private interest factors must *strongly* favor a specific, adequate, and available alternative forum.[133] On balance, particularly in light of the timing of Eastern Pacific Singapore's motion, the Court cannot conclude that Eastern Pacific Singapore has met its heavy burden of demonstrating that the private interest factors weigh strongly in favor of dismissal.

### *Eastern Pacific Singapore has not met its burden of proof with respect to the public interest factors.*

Because the private interest factors do not weigh strongly in favor of dismissal, the Court now moves to an examination of the public interest factors. The first factor for consideration is "the administrative difficulties flowing from court congestion."[134] The Court must first consider its own docket and any "[a]dministrative difficulties [which] follow for courts when litigation is piled up in congested centers instead of being handled at its origin."[135] The Court takes judicial notice there is no court congestion in the Eastern

---

[132] *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1250 (5th Cir. 1983).
[133] *Id.* at 1245.
[134] *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1162 (5th Cir. 1987), *cert. granted, judgment vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989).
[135] *Prevision Integral de Servicios Funerarios, S.A.*, 94 F. Supp. 2d at 780–81 (quoting *In re Air Crash*, 821 F.2d at 1158).

District of Louisiana at this time. As a result, Eastern Pacific Singapore has not met its burden of proof with respect to this factor.[136]

The second factor is "the local interest in having localized controversies resolved at home."[137] Eastern Pacific Singapore has the burden of showing this case involves a localized controversy that is "at home" in India, such that India has a local interest in resolving this controversy. The Court notes this dispute involves an Indian Plaintiff, employed by either a Liberian company (Ventnor) or a Singaporean company (Eastern Pacific Singapore).[138] Eastern Pacific Singapore is beneficially owned by Mr. Idan Ofer, an Israeli businessman.[139] The terms of Plaintiff's employment are set forth in an employment contract governed by Liberian law but signed in India by Plaintiff and an Indian company (EPS India) as agent for Ventnor. The vessel is a Liberian flag vessel owned by a Liberian corporation (Larchep Shipping). Plaintiff's injury occurred as the vessel sailed over the Atlantic Ocean between Gabon and Brazil. Hence, it is difficult to

---

[136] Defendant relies on Pratt v. United Arab Shipping Co. where this Court stated "[n]o statistics need to be cited to show that the Eastern District of Louisiana has one of the busiest trial dockets in the country." However, Pratt is inapposite, as it was decided in 1984, and, "[n]o statistics need to be cited to show" that the docket in Eastern District of Louisiana is not the same as it was 38 years ago. More importantly, the record contains no information as to the congestion of this Court relative to the South Goa, India Court. When presented with a similar lack of information regarding relative court congestion, the court in *Prevision Integral de Servicios Funerarios, S.A. v. Kraft* reasoned as follows:

> Here, although a trial in this matter will theoretically burden the Court's already crowded docket, the Court is amiss to give this factor undue weight. Defendant offers no evidence to support her bald contention that "this Court suffers from a severely congested docket not experienced by the Mexic[o] Courts." While this Court does have a crowded docket, Defendant's description of the alternative is not sufficiently detailed to permit the Court to make an informed comparison or balance. 94 F. Supp. 2d 771, 781 (5th Cir. 2000).

So too, here, there is insufficient information to permit the Court to make an informed comparison or balance in respect to relative court congestion. Accordingly, this factor weighs against dismissal because Eastern Pacific Singapore failed to show, and, indeed, cannot show, there is court congestion in the Eastern District of Louisiana.

[137] *DTEX, LLC v. BBVA Bancomer,* S.A., 508 F.3d 785, 802 (5th Cir. 2007).

[138] The question of who, as among several entities, was Plaintiff's employer at the time of his injuries, is disputed by the parties, and the answer to this question is not clear to the Court at this time. For example, Plaintiff argues Eastern Pacific Singapore was his borrowing employer pursuant to the Jones Act, and Eastern Pacific Singapore argues it never employed Plaintiff, whether as his borrowing employer or otherwise. Eastern Pacific Singapore argues Plaintiff was, at all times, employed by Ventnor Navigation.

[139] R. Doc. 204-4 at p. 32.

discern where this controversy is "at home." Eastern Pacific Singapore argues India has the greatest interest in resolving this dispute because Indian courts have "the greater interest in resolving a legal matter revolving around a controversy involving one of its own citizens."[140] While the Court agrees India has an interest in resolving disputes concerning injuries to its own citizens, the Court does not agree with Eastern Pacific Singapore that this dispute is "at home" in India. Many countries, including the United States, have an interest in this dispute. For example, Liberia has an interest because the vessel flew a Liberian flag and was owned by a Liberian company, Plaintiff signed an employment agreement with a Liberian company, and the employment contract provides it is governed by Liberian law. Singapore also has an interest because Eastern Pacific Singapore is a Singapore corporation with its headquarters in Singapore. Brazil and Gabon also potentially have an interest, as Plaintiff alleges relevant events occurred there. Accordingly, there is no clear "home" for this dispute, which has multiple international contacts. Eastern Pacific Singapore has not met its burden of establishing this is a localized controversy which should be decided "at home" in India.[141]

The third public interest factor is the interest in having the trial of a case in a forum that is familiar with the controlling law. Eastern Pacific Singapore filed a "Motion to Dismiss — India Law Choice," arguing India law applies and that pursuant to the law of India, the action should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[142] In considering Eastern Pacific Singapore's motion to dismiss based on the law of India, the Court, accepting Plaintiff's allegations as true,

---

[140] R. Doc. 204-1 at p. 23.
[141] Plaintiff's malicious prosecution action may be governed by the law of India, but, even if it is, this does not change the Court's conclusion regarding the public interest factors.
[142] R. Doc. 203.

denied the motion.[143] As a result, Eastern Pacific Singapore has not met its burden of establishing the case should be heard in India because India law applies.

This case does not have any local connections, so the fourth public interest factor weighs in favor of dismissal.

The Court concludes Eastern Pacific Singapore has not met its burden of showing the public interest factors weigh strongly in favor of dismissal. Accordingly, Eastern Pacific Singapore's motion to dismiss on forum non conveniens grounds[144] is denied.

## **CONCLUSION**

"A court may dismiss a case on forum non conveniens grounds only in exceptional circumstances.[145] "A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum,"[146] and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[147] In this case, the balance is not strongly in favor of Eastern Pacific Singapore.

This case is a classic example of untimeliness "weighing heavily against the granting of the motion because a defendant's dilatoriness promote[d] and allow[ed] the very incurrence of costs and inconvenience the doctrine is meant to relieve." [148] Considering the timeliness of a motion to dismiss based on forum non conveniens "prevents defendants from engaging in impermissible gamesmanship.[149] The timing of

---

[143] R. Doc. 222.

[144] R Doc. 204.

[145] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947).

[146] *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

[147] *Gilbert*, 330 U.S. at 508.

[148] *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. 1987), *cert. granted, judgment vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989).

[149] *Est. of I.E.H. v. CKE Restaurants, Holdings, Inc.*, 995 F.3d 659, 665 (8th Cir. 2021) (explaining how considering timeliness in a forum non conveniens decision prevents gamesmanship because, "[o]therwise, defendants could keep an ace up their sleeve by adopting a wait-and-see approach, asserting forum non conveniens only after they have determined that litigation in a U.S. court is going poorly.").

Eastern Pacific Singapore's motion renders a dismissal on forum non conveniens grounds itself *inconvenient* due to the length of time and the amount of work already expended by the Court in this case. Eastern Pacific Singapore knew of the facts supporting its forum non conveniens motion for two and a half years before the motion was filed, and, if Eastern Pacific Singapore truly believed New Orleans to be an inconvenient forum, it should have moved to dismiss for forum non conveniens within a more reasonable time.[150] Eastern Pacific Singapore's delay gives the appearance of gamesmanship, as it did not file its motion to dismiss for forum non conveniens until after the Court denied the May 4, 2021 motion to dismiss for improper service,[151] despite the fact that the circumstances serving as the basis for Eastern Pacific Singapore's forum non conveniens motion have been reasonably knowable since this case was filed.[152] Instead, it appears Eastern Pacific Singapore kept its forum non conveniens argument tucked in its back pocket for two and a half years while it waited to see how its insufficient service of process defense played out, and, only after the Court found service to be proper did Eastern Pacific Singapore move to dismiss for forum non conveniens.[153] While Eastern Pacific Singapore did not meet its heavy burden of showing the balance of private and public interest factors weigh heavily in favor of dismissal, Eastern Pacific Singapore's dilatoriness in filing its forum non conveniens motion is most influential on the Court's decision.

---

[150] "The longer litigation continues in a U.S. court and the parties incur expenses before the defendant moves to dismiss on forum non conveniens grounds, the less the defendant can legitimately claim that litigation in a U.S. forum is so inconvenient as to be oppressive or harassing." *Est. of I.E.H.*, 995 F.3d at 665 (quoting *Shi v. New Mighty U.S. Tr.*, 918 F.3d 944, 948 (D.C. Cir. 2019)).

[151] *See* R. Doc. 196 at p. 15.

[152] *See, e.g. Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.,* 104 F. App'x 376, 384 (5th Cir. 2004) (recognizing Plaintiff correctly argues defendants' actions "might give the appearance of gamesmanship because they did not file their motions until after the court denied Cuisine's motion to preclude much of [Plaintiff's] evidence.").

[153] *See, e.g, Est. of I.E.H*, 995 F.3d at 665.

**IT IS ORDERED** that Eastern Pacific Singapore's "Motion to Dismiss on Grounds of Forum Non Conveniens"[154] is **DENIED WITH PREJUDICE.**

New Orleans, Louisiana, this 25th day of January, 2022.

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[154] R. Doc. 204.