UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KHOLKAR VISHVESHWAR GANPAT,

     Plaintiff,

v.

EASTERN PACIFIC SHIPPING PTE,
LTD., d/b// "EPS"

     Defendant.

Civil Action No.  18-13556 "E" (4)
 IN ADMIRALTY

JUDGE:  SUSIE MORGAN

CHIEF MAG. JUDGE:  KAREN
WELLS ROBY

**EASTERN PACIFIC'S  PRE-HEARING MEMORANDUM IN RESPONSE
OPPOSING PLAINTIFF'S MOTION FOR ISSUANCE
<u>OF PERMANENT INJUNCTION</u>**

## TABLE OF CONTENTS

**Contents**                                                                    **Page Nos.**

I. Statement of the Nature and Stage of the Proceedings…………………………        1

II. Statement of the Issues to be Ruled on by the Court…..……………………..        2

III. Standard of Review…………………………………………………………        2

IV. Summary of the Argument………………..………………………………...        3

V. Argument………………………………...…………………………………..        3

    Factual Background and Proceedings……………………………………        3

        A.  The Litigation in South Goa, India……………………………….        3

        B.  The Proceedings in this Court……………………………………..        5

        C.  Plaintiff Cannot Show that This Court Should Grant Him the
           Extraordinary Remedy of a Permanent Injunction……………………...        9

Conclusion…………………………………………………………………        22

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page Nos.**

*Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531 (1987)……..        3

*Canadian Filters Ltd. v. Lear Siegler, Inc.*, 412 F.2d 577 (1st Cir. 1969)………..        9

*Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health
Special Risk, Inc.*, 756 F.3d 356 (5th Cir. 2014)…………………………………..        20

*Chase Manhattan Bank v. State of Iran*, 484 F. Supp. 832 (S.D.N.Y. 1980)……..        9

*Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*, 373 F. Supp.
2d 645 (E.D. La. 2005)……………………………………………………………        9

*David v. Signal Int'l, LLC,* No. CIV.A. 08-1220, 2015 WL 105747 (E.D.La.
January 7, 2015) (Morgan, J.)……………………………………………………..        12

*DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir.1983)……………..        22

*Gau Shan Co. v. Bankers Trust co.*, 956 F.2d 1349 (6th Cir. 1992)………………   15

*Hager v. DBG Partners, Inc.*, 903 F.3d 460 (5th Cir. 2018)……………………...   20

*Howard v. Krull*, 438 F. Supp. 3d 711 (E.D. La. 2020)(Morgan, J., *citing Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981))……………………………………………………………………………   21

*In re Unterweser Reederei, Gmbh*, 296 F.Supp. 733 (M.D.Fla.1969)……………   10

*In re Unterweser Reederei Gmbh*, 428 F.2d 888 (5th Cir. 1970), *aff'd on rehearing en banc*, 446 F.2d 907 (1971), *rev'd on other grounds sub nom. Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)……………………………...   9

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996)……………………   15, 16, 18, 19

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357 (5th Cir. 2003)……………………………………………...   3, 9, 17, 18

*McCarthy v. Mullins*, No. 06-5150, 2007 WL 1100536 (W.D. Ark. Apr. 12, 2007)…………………………………………………………………………………   22

*Mertens* [*v. Hewitt Associates.*], 508 U.S. [248]…………………………………...   20

*Multnomah Legal Serv. Workers Union v. Legal Serv. Corp.*, 936 F.2d 1547, (9th Cir.1991)……………………………………………………………………………..   2

*Mungia v. Judson Indep. Sch. Dist.*, No. CIV.A SA-09-CV-395-X, 2009 WL 3431397 (W.D. Tex. October 19, 2009)…………………………………………….   10

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999)…….   21

*Peaches Ent. Corp. v. Ent. Repertoire Assocs., Inc.*, 62 F.3d 690 (5th Cir. 1995)..   2

*Philp v. Macri*, 261 F.2d 945, 947 (9th Cir. 1958)…………………………………   9

*Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205 (D.C.Cir.1989)…………………   16

*United States v. Ligas*, 549 F.3d 497 (7th Cir. 2008)…………………………….   22

| **Statutes** | **Page Nos.** |
|---|---|

| | |
|---|---|
| Fed. R. Civ. P. 65………………………………………………………. | 2, 10, 22 |
| Fed. R. Civ. P. 12(b)(5)……………………………………………… | 21 |
| Indian Merchant Shipping (Recruitment and Placement of Seafarers) Rules, 2016 | 19 |
| Liberian Code of Laws of 1956, Title 21………………………………. | 13, 15 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KHOLKAR VISHVESHWAR GANPAT,

      Plaintiff,

v.

EASTERN PACIFIC SHIPPING PTE, LTD.,
d/b/a "EASTERN PACIFIC"

      Defendant.

Civil Action No. 18-13556 "E" (4)

IN ADMIRALTY

JUDGE SUSIE MORGAN

CHIEF MAGISTRATE JUDGE
KAREN WELLS ROBY

**EASTERN PACIFIC'S PRE-HEARING MEMORANDUM IN RESPONSE
OPPOSING PLAINTIFF'S MOTION FOR ISSUANCE
OF PERMANENT INJUNCTION**

**I.   Statement of the Nature and Stage of the Proceedings**

This Court now should deny Plaintiff's Motion for Issuance of Permanent Injunction[1].

Plaintiff contends, without introducing a single citation to the record, that he will prevail

on the merits. He sweepingly contends that this Court should enter a permanent injunction

enjoining the sovereign courts of India from proceeding with litigation with zero attempt at

---

[1]    Eastern Pacific incorporates the Affidavits of Aditya Krishnamurthy, Esq. Exhibit A to ECF 203 [ECF 203-2] (Eastern Pacific Motion to Dismiss, India Law Choice), Exhibit B to ECF 204 [ECF 204-3] (Eastern Pacific Motion to Dismiss, *Forum Non Conveniens*)(herein, "**Krishnamurthy Aff.**"), and Anil Arjun Singh [Exhibit A, ECF 204-2]. Eastern Pacific further incorporates the arguments raised in its Memorandum Regarding Choice of Law and Opposition to Plaintiff's Memorandum [ECF 249].

    Eastern Pacific notes that this is Mr. Kholkar Vishveshwar Ganpat's <u>third</u> attempt at a permanent injunction; his first was ECF 166, July 28, 2020. This Court, after a telephone status conference July 29, 2020, entered its Minute Order including that "The submission date of the Motion for Permanent Injunction is continued without a date. The Court will inform the parties when an opposition is due, if necessary." ECF 170. This Court did not require opposition to ECF 166. Plaintiff's second attempt was ECF 199, Eastern Pacific responded at ECF 218. This Court entered its minute order at ECF 202 and then entered its scheduling order on briefing of the preliminary and permanent injunction at ECF 227.

explaining how the record in this case supports that he will prevail on the merits without reference to the applicable law—Liberian and/or Indian.[2]

Mr. Kholkar Vishveshwar Ganpat cannot show that he is likely to succeed on the merits of his case and this Court therefore for this reason alone, should deny his motion.

## II.   Statement of the Issues to be Ruled on by the Court

Whether, given the evidence submitted by Plaintiff, this Court should, under Federal Rule Civ. Pro. 65(a) enjoin Defendant Eastern Pacific from proceeding with its litigation registered as Commercial Suit No. 2 of 2020, and thereafter transferred to Court of First Additional Senior Civil Judge, South Goa at Margoa wherein the proceedings had been re-registered as Special Civil Suit (Commercial) No.33/2020/I and thereafter transferred to the Court of Senior Civil Judge– III, South Goa at Margao where it has been re-numbered as Special Civil Suit No. 64/2020/III, CNR No. GASG02-003269-2020 (the "South Goa Suit").

## III.   Standard of Review

This Court decision will be reviewed for an abuse of discretion. A district court abuses its discretion if it (1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction, (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief.  "The standard of review over the district court's grant of a permanent injunction must, of course, be segmented according to the component functions performed by the district court." *Multnomah Legal Serv. Workers Union v. Legal Serv. Corp.,* 936 F.2d 1547, 1552 (9th Cir.1991).  Thus, the Fifth Circuit will review the district court's findings of fact under the clearly erroneous standard, and the conclusions of law under the *de novo* standard.  *Peaches Ent. Corp. v. Ent. Repertoire Assocs., Inc.,* 62 F.3d 690, 693 (5th Cir. 1995).

---

[2] Eastern Pacific incorporates by reference ECF 249, its Memorandum Regarding Choice of Law.

## IV.  <u>Summary of the Argument</u>

Plaintiff Mr. Kholkar Vishveshwar Ganpat has not carried, and cannot carry, his burden of persuasion to show that he is likely to succeed on the merits under the controlling Liberian and/or Indian law, that he will suffer irreparable harm (instead of receiving less monetary damages) if there is no injunction, and that there is any public policy reason that this Court should disregard Plaintiff's internationally-negotiated collective bargaining agreement and employment agreement subject to Liberian law.

Plaintiff cannot show and has not shown with his motion or otherwise – for this Court to grant a permanent injunction – proof that he will succeed on the merits, or proof of the three remaining factors that must be proved to obtain a preliminary injunction. *See  Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12 (1987), namely: (1) a substantial threat of irreparable harm if the injunction is not granted; (2) that the threatened injury outweighs any potential harm to the non-moving party; and (3) that the injunction will not undermine the public interest.  *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).[3]

This Court accordingly should deny plaintiff's permanent injunction motion.

## V.  <u>Argument</u>

### FACTUAL BACKGROUND AND PROCEEDINGS

#### A.  The Litigation in South Goa, India

On March 2, 2020, Eastern Pacific India and Eastern Pacific filed suit before the District

---

[3]     "We have cautioned, however, that a preliminary injunction is "an extraordinary remedy" which should only be granted if the party seeking the injunction has "clearly carried the burden of persuasion" on all four requirements." As a result, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."  *Karaha Bodas Co*, 335 F.3d 357, 363–64 (*quoting Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985)).

Court, South Goa at Margao where it was registered as Commercial Suit No. 2 of 2020 and

thereafter transferred to Court of First Additional Senior Civil Judge, South Goa at Margoa

wherein the proceedings had been re-registered as Special Civil Suit (Commercial) No.33/2020/I

and thereafter transferred to the Court of Senior Civil Judge– III, South Goa at Margao where it

has been re-numbered as Special Civil Suit No. 64/2020/III, CNR No. GASG02-003269-2020

(the "South Goa Suit").  **<u>Krishnamurthy Aff.</u>**  ¶2; South Goa Court Complaint, ECF 142-2, ECF

204-4.

      The South Goa Court, on March 7, 2020, in response to the Eastern Pacific India and

Eastern Pacific Complaint, issued its Order for preliminary injunction against Plaintiff

proceeding in this Court (ECF 142-1).  Instead of attempting to appeal or otherwise permissibly

oppose the South Goa Court's Order, Mr. Kholkar Vishveshwar Ganpat then for about a year

violated the injunction, in contempt of the South Goa Court's orders.

      On March 13, 2021 the South Goa Court consequently held him in contempt and jailed

him briefly. **<u>Krishnamurthy Aff</u>**., ¶20.

      Within 24 hours of Mr. Kholkar Vishveshwar Ganpat being sent to judicial custody the

South Goa Court displayed a lenient approach towards Mr. Kholkar Vishveshwar Ganpat and

immediately released him from judicial custody. In fact, the South Goa judge during the hearing

on 13th March 2021 made a statement in open court that she was extremely pleased that Mr.

Kholkar Vishveshwar Ganpat would now be receiving erudite advice on his rights and

obligations on Indian law by Mr. Harshad Arsekar, a senior lawyer in the South Goa bar.

      Mr. Harshad Arsekar, a very senior lawyer in the South Goa Bar, became counsel to Mr.

Kholkar Vishveshwar Ganpat and has continued to represent him. MR. Arsekar, as an amply

qualified and experienced Indian lawyer, having now appeared multiple times before the South

Goa Court representing Mr. Kholkar Vishveshwar Ganpat, has shown himself fully capable of presenting the claims that Mr. Kholkar Vishveshwar Ganpat has for injury in the South Goa Suit. *Id*.

In fact, in his September 28, 2021 filings with the South Goa Court, assisted by his counsel Mr. Arsekar, Mr. Kholkar Vishveshwar Ganpat has put central questions of his case at issue (Exhibit B to ECF 216, Mr. Kholkar Vishveshwar Ganpat's written statement under oath responding to the Eastern Pacific and Eastern Pacific India South Goa complaint) – *see* in particular, paragraphs 16, 22, 23 and 24 of Exhibit B to ECF 216.  With his answer to the South Goa complaint, the case – and Mr. Kholkar Vishveshwar Ganpat's claims there - now is at issue in South Goa.

### B.  The Proceedings in this Court

Although Plaintiff initially filed his Complaint [ECF 1] in this Court on December 12, 2018, it was not until August 10, 2021 [ECF 196] that this Court held that Plaintiff by personal service on Eastern Pacific in Singapore, properly served Eastern Pacific with process.  *Id*. Plaintiff, only in the first part of 2020 and, after this Court held that Plaintiff's 2019 attempt to serve the captain of a separate vessel managed by Eastern Pacific was improper, then chose to serve process by Letter Rogatory.  Plaintiff apparently did not decide until mid-2021 to use personal service in Singapore, which this Court has held to be proper service.

Mr. Kholkar Vishveshwar Ganpat's Complaints in this Court allege facts and causes of action which have no connection with the United States, involve no witnesses who reside in the United States, and involve a potpourri of international players including Plaintiff, himself a resident of India.  His Supplemental Complaint attempts to collaterally attack the South Goa Court's orders contending that Eastern Pacific and Eastern Pacific India – have "no standing" to

bring their claims against Plaintiff in India in the Commercial Court Margoa, South Goa. *See* Plaintiff's First Supplemental Complaint, [ECF 212] at ¶¶28, 29. Standing, however, has never been raised by or to the South Goa Court; the Court's decision above makes clear that Eastern Pacific and Eastern Pacific India, as a matter of law recognized by the South Goa Court, have standing before the South Goa Court.

Mr. Kholkar Vishveshwar Ganpat then further tries to collaterally attack the South Goa Court's orders, that on May 14, 2020 Eastern Pacific and Eastern Pacific India engaged in "willful, wanton and intentional misconduct" to the India Court in "a deliberate effort to intimidate Mr. Kholkar from seeking legal redress". ECF 212, ¶¶ 37-38 (emphasis supplied).

Consequently, in addition to the fact that the United States has nothing to do with his claims, Mr. Kholkar Vishveshwar Ganpat wrongly tries to add claims further and directly connected to India, having this Court (stating no authority) engage in a collateral attack on the South Goa Court's orders.  The South Goa Court has made proper rulings, not appealed by Mr. Kholkar Vishveshwar Ganpat. **Krishnamurthy Aff**., ¶14

Unfortunately, despite being personally resident within the South Goa Courts' jurisdiction and subject to the South Goa Courts' orders, Mr. Kholkar Vishveshwar Ganpat chose to be in contempt of those orders and the South Goa Court responded.

It was always open for him to enter appearance in the proceedings before the South Goa Courts under protest and challenge, including appeal, the temporary anti-suit injunction order passed in the South Goa Suit.  Should Mr. Kholkar Vishveshwar Ganpat wish to raise a claim that the South Goa Courts or any party or counsel before them have wrongly decided matters or otherwise proceeded inappropriately, he upon proper allegation and proof also has opportunity for redress under India law either before the South Goa Courts or on appeal. *Id*. at ¶14.

Despite these unsupported allegations to the contrary in his motion for a permanent injunction, Eastern Pacific India and Eastern Pacific at no point of time asked the Indian Court to send Mr. Kholkar Vishveshwar Ganpat to jail and "brazenly false statements have been made in the U.S. Proceedings that the lawyers appearing on behalf of EPS India and Eastern Pacific at the hearing on 12th March 2021 purportedly made a statement in open court stating *"send him to jail right now.""  Id.* at ¶19.

As a matter of Indian law, the mere fact that a party appoints a lawyer in Indian proceedings does not automatically mean that the party has submitted to the jurisdiction of the Indian Court, and it is always open for a party to enter appearance in Indian proceedings under protest and file an application challenging the jurisdiction of the Indian Court. Mr. Kholkar Vishveshwar Ganpat – represented by Mr. Arsekar – nevertheless has not done that and has – as has Eastern Pacific and Eastern Pacific India – submitted without reservation to the South Goa Court's jurisdiction. Notably, he makes no claim to the South Goa Court that the South Goa Court is an inconvenient forum for him.

The fact is that Mr. Kholkar Vishveshwar Ganpat, represented by Mr. Arsekar, is now proceeding on the merits before the South Goa Court.  He is not subject to imprisonment. He has all rights under India law, including, of recovery as India law expressly permits him, on evidentiary proof (which again, he has put at issue in the South Goa Court), to have.

On February 28, 2022, Eastern Pacific took the deposition of the Plaintiff.  *See* Deposition Transcript of Plaintiff Kholkar Vishveshwar Ganpat ("Ganpat Dep." or "Plaintiff's Dep.") herewith, **Exhibit A**.

In his deposition, Plaintiff testified that he signed his employment contract in Mumbai, India in the post office.  Plaintiff's Dep., p. 11, ll 16-20.  He further testified that he believes that

the collective bargaining agreement applies to his employment aboard the M/V STARGATE. *Id.*, p. 19, ll 7-10.  Plaintiff further admits that he evaded service in the India litigation and "didn't accept their papers."  *Id.*, p. 21, ll 6-7.  Plaintiff further testified that he refused service several, three or four, more times.  *Id.*, p. 22, ll 8-15.  Plaintiff testified that he was told by the Indian judge that he needed to retain an attorney.  *Id.*, p. 33, ll 10-13.  He further testified that he was told he needed to either hire a lawyer, sign a bond, or pay bail and that he "will not sign the bond" and "will not pay the bail" and "will not hire a lawyer because I don't have money."  *Id.* a 34, ll 16-18 (he later of course, hired and as he testified at his deposition, is paying Mr. Arsekar). He further testified that he was told by the judge that because he was not listening to her, would not post bail, sign a bond or hire a lawyer, he would be sent to jail.  *Id.* at 45-46, ll 15-21, 1-3. He further testified that his father "raised his voice" the Judge.  *Id.* at 47, ll 20-21.  He further testified that "the one judge offered me one attorney" and asked if he was willing to take this attorney and he refused this attorney also.  *Id.* at 69, ll 3-6.  He further testified that, as of March 16, 2001 [2021], he hired an attorney.  *Id.*, ll 7-19.

He also testified that he has been offered by Eastern Pacific the same amount—$95-100,000-- that is owed under the collective bargaining agreement.  *Id.* 73-74, ll 20-21, ll 1-2.  He testified that he sued Eastern Pacific in the United States because he thought he would get more money in the United States.  *Id.* 85, ll 15-18.  He further testified that Eastern Pacific is prepared to go forward on the exact claims in Goa that he raised in the United States.  *Id.* 85-86, ll 19-21, 1-2.  He testified that the court in Goa is approximately 28-30 kilometers from his house—about an hour by car and an hour and a half by bike, *Id.* at 87, ll 8-14, and that he is now appearing in the Goa litigation through his attorney.  *Id.*, ll 2-5.  Plaintiff also testified that there have been more hearings in Goa than in this Court.  *Id.* 88-89, ll 20-21, 1-3.

While Plaintiff references his deposition in his Memorandum the sum total of how it supports his Motion, which of course he bears the [heavy] burden on, is that "[i]t supports his request for preliminary and permanent injunctive relief."  ECF 251 at 26.  Indeed, the sum total of Plaintiff's discussion in his deposition regarding the provisioning of the M/V STARGATE is limited to the allegation, contradicted by the documents produced to date, that they failed to order malaria tablets and they failed to give him malaria tablets.  Plaintiff Dep., at 84, ll 8-17 This testimony is contradicted by the documents produced to date in this action.  ECF 213-4 at pp. 63, 67, 76-77, 213-5 at p. 1-2 , ECF 213-4, p. 76-77.

### C. Plaintiff Cannot Show that This Court Should Grant Him the Extraordinary Remedy of a Permanent Injunction

Injunctive relief is considered an extraordinary remedy, to be granted only when the movant has "clearly carried the burden of persuasion" on all four requirements.  *Karaha Bodas Co.*, 335 F.3d at 363; *Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 648–49 (E.D. La. 2005).   When foreign court proceedings are involved, there is the further caution that Federal District Courts are to use the power to enjoin foreign court proceedings "sparingly."  *Philp v. Macri*, 261 F.2d 945, 947 (9th Cir. 1958). "The issue is not one of jurisdiction, but one ... of comity." *Canadian Filters Ltd. v. Lear Siegler, Inc*., 412 F.2d 577, 578 (1st Cir. 1969); *see also Chase Manhattan Bank v. State of Iran*, 484 F. Supp. 832, 836 (S.D.N.Y. 1980).

The South Goa proceedings (1) do not frustrate any policy of this Court, (2) are not vexatious or oppressive, (3) do not threaten the issuing court's *in rem* or *quasi in rem* jurisdiction, or (4) and do not prejudice other equitable considerations.  *In re Unterweser Reederei Gmbh*, 428 F.2d 888 (5th Cir. 1970), *aff'd on rehearing en banc*, 446 F.2d 907 (1971), *rev'd on other grounds sub nom. Bremen v. Zapata Off-Shore Co*., 407 U.S. 1 (1972).  They do

not work any inequitable hardship on Mr. Kholkar Vishveshwar Ganpat.  They do not frustrate "the speedy and efficient determination of the cause.' " *Id.* at 896, *quoting In re Unterweser Reederei, Gmbh*, 296 F.Supp. 733, 735-36 (M.D.Fla.1969); in fact, again, Mr. Kholkar Vishveshwar Ganpat's claims are at issue in the South Goa Court.

The Court should appreciate that it has been Mr. Kholkar Vishveshwar Ganpat who has evaded and delayed the Goa Court proceedings – after proper service of process on him (which he also evaded).  The Court also should appreciate that it was the failure of Mr. Kholkar Vishveshwar Ganpat to properly serve Eastern Pacific with process which has delayed his proceedings before this Court (personal service, he contends, was always available to him on Eastern Pacific in Singapore, yet he chose otherwise).  The Goa proceedings could have, and still can, proceed with speed – including because many witnesses essential to Mr. Kholkar Vishveshwar Ganpat's claims (his fellow Indian crew members, those physicians who treated him in India, and all witnesses to his claims that Eastern Pacific mistreated him through India court process), are in India.

Mr. Kholkar Vishveshwar Ganpat presents no evidence supporting his motion for permanent injunction.  Fed. R. Civ. P. 65(a)(2) (requiring evidence to be presented to support issue of an injunction.); *see also Mungia v. Judson Indep. Sch. Dist.*, No. CIV.A SA-09-CV-395-X, 2009 WL 3431397, at *2 (W.D. Tex. October 19, 2009) (allegations of injuries not supported by evidence fail to clearly establish irreparable harm).  Plaintiff submits no documents or testimony supporting its contention that there were no anti-malarials aboard the M/V STARGATE or that the anti-malarials aboard were inadequate.  He attaches no documents or testimony to support his contention.  Plaintiff has made no attempt, no citations to Plaintiff's deposition transcript or documents, to show success on the merits—namely that there were

- 10 -

inadequate anti-malarials aboard or that those anti-malarials were not administered.  Indeed, the evidence in the record in this case is to the contrary.  Namely, that there were adequate anti-malarials aboard.  ECF 213-4 at pp. 63, 67, 76-77, 213-5 at p. 1-2 , ECF 213-4, p. 76-77. Specifically, the M/V STARGATE's Medical Report, dated 8/1/2019, prepared by Dr. Charlie Easmon opines that the M/V STARGATE "had adequate malaria prevention medication" and that "in terms of treatment for malaria the ship had the appropriate amounts as advised by the quoted international guidelines for a crew of 22 as the next increased recommendation is for a crew of 30."  ECF 213-4, pg. 63; *see also* Medication List, ECF 213-4, 67-77, and medication administration log, ECF 213-5, pg. 1-4.  Indeed, Plaintiff himself alleges that he received medical care in India and Brazil.  He also alleges that he was repatriated to India where he received further treatment paid for by Eastern Pacific.  ECF 1, paragraphs 39, 43, 45-46, and 71.

 Despite Plaintiff's contention that "(1) he will prove actual success on the merits…." ECF 251 at 5-6, his admission that "For a court to grant a permanent injunction, a party must prove actual success on the merits,…" ECF 251 at 28, the sum total of Plaintiff's "evidence" is the sweeping and general statement that "Plaintiff is entitled to the preliminary injunction made permanent because through his February 28, 2022 deposition testimony, his March 14, 2022 Declaration, and the law cited in this memorandum" ECF 251 at 26, Plaintiff provides no citations to these materials[4] and makes no attempt to explain <u>how</u> his testimony, deposition, or affidavit, supports his likelihood of success on the merits.  The only reference in his deposition to provisioning of the M/V STARGATE occurs on pg. 84 of his deposition and is limited to his

---

[4]     Plaintiff's convenient claim that the deposition transcript has not been "delivered to undersigned counsel" despite requests, ECF 251 at 26 does not abrogate his heavy burden of proving success on the merits including how his deposition testimony allows him to prove success on the merits.  Clearly, this does not rise to the level of proving success on the merits sufficient to enjoin Eastern Pacific from proceeding in its India litigation.

allegation that Eastern Pacific failed to order malaria tablets and failed to provide these tablets, and these allegations are contradicted by the documents produced in connection with this litigation.

Under the law—Liberian and Indian—likely to govern Plaintiff's claims, Plaintiff has failed entirely to show a substantial success on the merits.  As an initial matter, Plaintiff's Supplemental Complaint claim is likely to be governed by the law of India.  This claim which Plaintiff captions as a "general maritime" claim is (a) not maritime in nature at all, and (b) arises out of conduct solely occurring in India and indeed implicates the conduct of India's judges, lawyers and court personnel;[5] (c) is governed by India law.  *David v. Signal Int'l, LLC,* No. CIV.A. 08-1220, 2015 WL 105747, at *1 (E.D.La. January 7, 2015) (Morgan, J.).  In *David*, this Court held, in an action also involving non-maritime claims, "[m]oreover, Plaintiffs' injuries were primarily suffered in India.  Accordingly, the law of India governs Plaintiffs' [intentional tort] claims."; "[B]ecause the Plaintiffs' injuries were also primarily suffered in India, the law of India governs Plaintiffs' [negligence] claims."  *Id*.  As Mr. Krishnamurthy has already testified by affidavit, while there is a cause of action under Indian law for malicious prosecution, because the Goa suit has not terminated in favor of Mr. Ganpat, there is no malicious prosecution claim under India law.  Krishnamurthy Aff., 203-2, at ¶ 10.  Furthermore, Indian law would not recognize the claims of Mr. Kholkar in the First Supplemental Complaint as a cause of action for intentional maritime tort or otherwise.  *Id*.  Thus, enjoining the India litigation would have the effect, under India law, of enjoining the India Court from deciding a claim arising out of India law, of which one element is termination in favor of the party seeking relief, arising solely out of facts and allegations occurring in India.

---

[5] In addition to the fact that there is no claim under India law for this type of conduct, Krishnamurthy Aff.(ECF 203-2) at ¶ 10, enjoining the India Court's ability to decide this completely India related claim arising out of the Court's own conduct could have serious implications on international comity.

Plaintiff also has failed to carry his burden on showing success on the merits of his other claims under Liberian law which is likely to govern as explained in more detail in Eastern Pacific's Memorandum on Choice of Law, ECF 249.

Under Title 21 of the Liberian Code of Laws of 1956 (as amended), Liberian Maritime Law[6]:

> §30. Adoption of American General Maritime Law. Insofar as it does not conflict with any other provisions of this Title, the non-statutory General Maritime Law of the United States of America is hereby declared to be and is hereby adopted as the General Maritime Law of the Republic of Liberia.

Liberian Code of Laws of 1956, Title 21 §30 (emphasis added).  Thus, Plaintiff not only cannot prove success on the merits of his Jones Act claim, Plaintiff does not, under Liberian law, have a claim under the statutory law, including the Jones Act, of the United States.

 Under Liberian law the following sections are also applicable:

> §320. Shipping Articles Required. Before the Master of any Liberian vessel of 75 net tons or more shall sail from any port, there shall be in force Shipping Articles (sometimes referred to as Articles) with every seaman on board his vessel, except with persons who are apprenticed to, or servants of, himself or the vessel's owner, who are not deemed to be seafarers. The Shipping Articles shall be written or printed and shall be subscribed by every seaman shipping on the vessel and shall state the period of engagement or voyage or voyages and the term or terms for which each seaman shall be shipped, and the rate of pay for each, and such other items as may be required by Regulation.

> \* \* \*

> §336. Wages, Maintenance and Cure for Sick and Injured Seaman.

> (1) In the event of disabling sickness or injury, occurring between the date the seaman sign the Shipping Articles reporting for duty and the termination of the engagement, or while the seaman is off the vessel pursuant to an actual mission assigned to him by, or by the authority of the Master under signed Shipping Articles, the seaman shall be entitled to:

---

[6] https://www.liscr.com/sites/default/files/RLM-107%20Series%202018.pdf and regulations https://www.liscr.com/sites/default/files/RLM-108_Rev.2013.pdf.

(a) Full wages excluding bonus, as long as he is sick or injured and remains on board the vessel; Back to Table of Contents 84 RLM-107 07/2018

(b) Medical and surgical treatment and supply of proper and sufficient medicines and therapeutical appliances, until medically declared to have reached a maximum cure or to be incurable, but in any event, it shall not be less than 16 weeks from the day of the injury or commencement of the sickness;

(c) An amount equal to board and lodging up to a maximum period of 30 weeks, and one-third of his base wages during any portion of such period subsequent to his landing from the vessel and no longer on board but not to exceed a maximum period of 16 weeks commencing from the day of injury or commencement of the sickness; and

(d) Compensation for long-term disability due to an occupational injury, illness or hazard in accordance with Liberian Regulations and Rules or pursuant to the provisions of a Collective Bargaining Agreement applicable to the seaman.

(e) Repatriation as provided in Section 342 including, in addition, all charges for his transportation, accommodation and food during the journey and his maintenance up to the time fixed for his departure

\* \* \*

(4) The seaman shall not be entitled to any of the foregoing benefits: (a) If such sickness or injury resulted from his willful act, default or misconduct;

\* \* \*

§351A. Contracts for Seafaring Labor.

(1) The following clause shall appear, or be by force of law included, in all contracts for seafaring labor on board Liberian vessels: "The parties to this contract hereby stipulate that the terms and conditions laid down herein shall be subject to the applicable provisions of the Liberian Maritime Law, Regulations, Rules and Notices. Any dispute as to the terms and conditions of this contract shall be resolved in accordance with the Liberian Maritime Law Regulations, Rules and Notices."

(2) All contracts relating to service aboard a vessel registered under this Title shall be governed in interpretation and application by the Laws of the Republic of Liberia, including this Title and any Regulations, Rules and Notices thereunder.

\* \* \*

§354. Bargaining and Execution of Labor Contract. (1) It shall be lawful for any employer or employer organization and any labor organization representing seamen to bargain and enter into a labor contract concerning wages and other terms and conditions of employment, provided that no labor contract provisions may be contrary to the laws of Liberia or deprive the Republic of Liberia of any jurisdiction over labor relations. A copy of any labor contract between the employer and an organization representing seamen employed on a vessel shall be placed on board the said vessel and shall be made available to maritime or judicial authorities when requested.

\* \* \*

§360. Time Bar. (1) The following rights of action are subject to one year's prescription: (a) Claims arising out of the Shipping Articles. . .

§361. Rules and Regulations. The Commissioner, acting alone in accordance with section 11, may make Regulations not contrary to the provisions of this Title relating but not limited to conditions and terms of employment, wages, vacations and leave, hours of work, repatriation, minimum age, compensation for sickness, injury abandonment or death of masters, seamen, and seagoing laborers employed on vessels documented under the Maritime Law, Title 21, and the laws of the Republic of Liberia and the Deputy Commissioner duly appointed and designated for this purpose, acting in accordance with section 12, may make such Regulations and Rules and the agent, acting in accordance with section 13, may promulgate any Notice necessary and appropriate to ensure the administration and compliance with the provisions and the requirements of this Law and Regulations made by the Commissioner.

Liberian Code of Laws of 1956, Title 21 §§320, 336, 351A, 354, 360, 361.  Thus, under Liberian law, Plaintiff is entitled at most, to the damages amounts that his employment contract, and incorporated Collective Bargaining Agreement permits under Liberian law.

For total disability (and Plaintiff has made no showing that he is totally disabled), that is a cap of (United States Dollars) $102,308.

The Jones Act does not apply and Plaintiff can show no likelihood of success that it does, or that, applying Liberian law, he could have any recovery on his injury claims greater than $102,308.

In an effort to circumvent this, Plaintiff puts all of his eggs in one basket—*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996) and argues that he must only show multiplicity of

proceedings, ECF 251 at 28.  He mistakenly cites *Gau Shan Co. v. Bankers Trust co.*, 956 F.2d

1349 (6th Cir. 1992), a <u>Sixth</u> Circuit case, as standing for the proposition that the <u>Fifth</u> Circuit

requires only duplication of parties and issues, alone, as sufficient to justify a foreign anti-suit

injunction.  ECF 251 at 22.  As noted in the dissent in *Kaepa*, however, "[t]he inconvenience,

expense and vexation, however, are factors likely to be present whenever there is an exercise of

concurrent jurisdiction by a foreign court.  *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205,

1213–14 (D.C.Cir.1989). Under this standard, concurrent jurisdiction involving a foreign

tribunal will rarely, if ever, withstand the request for an antisuit injunction." *Kaepa, Inc. v.*

*Achilles Corp.*, 76 F.3d 624, 629–32 (5th Cir. 1996) (Garza, J. dissenting).

> Accordingly, I believe that the standard followed by the Second, Sixth, and D.C. Circuits more satisfactorily respects the principle of concurrent jurisdiction and safeguards the important interests of international comity. Under this stricter standard, a district court should look to only two factors in determining whether to issue an antisuit injunction: (1) whether the foreign action threatens the jurisdiction of the district court; and (2) whether the foreign action was an attempt to evade important public policies of the district court.[10] *Gau Shan Co.,* 956 F.2d at 1355; *China Trade,* 837 F.2d at 36; *Laker Airways,* 731 F.2d at 927. Neither of these factors are present in this case.

*Kaepa*, 76 F.3d at 632.

 Plaintiff makes no attempt at showing that the suit in India threatens the jurisdiction of

this Court and that it was an attempt to evade important public policies of this Court.

There are **<u>no</u>** public policies of this Court involved - **<u>except</u>** – the essential issue of

international comity.  What the plaintiff is asking this Court to do directly violates principles of

international comity – which violation is in itself a violation of the important public policy of this

Court: to honor international comity principles.

Plaintiff asks this Court to approve his attempt to end-run the internationally-negotiated

Collective Bargaining Agreement (CBA) and his employment agreement, which Liberian law

controls.

Plaintiff asks this Court to approve of his repeated contempt and evasion of the Goa Court, which has proper subject matter and personal jurisdiction over him.  He asks this Court to approve his collateral attack of the Goa Court's orders, which he has chosen not to appeal.  He asks this Court to intervene in and stop the Goa Court's proceeding, where the disputes Plaintiff raises have far more to do to with India and the Goa Court (including his attempt to raise in this Court, supposed misconduct in – or by the Goa Court) than the non-existent connection of his disputes to this Court.

This case has – but for the presence of Eastern Pacific-managed vessels occasionally in this District – no connection at all to this District, as this Court has already noted several times.

The case is about a Plaintiff who is Indian, residing in South Goa, India, a defendant and ship management company, Eastern Pacific that is Singaporean, a Liberian flagged vessel, an employment contract governed by Liberian law, a Liberian ship owner, a contract for employment signed in the Mumbai post office by Plaintiff and Eastern Pacific India on behalf of Ventnor Navigation, Plaintiff's employer, per the terms of his seaman's employment agreement ("SEA"), a Liberian company.  *See Karaha*, 335 F.3d at 373.   There is no part of Plaintiff's injury, or the alleged wrongs, which occurred in this District, no witnesses resident in this District, and no United States law decisive of any of Plaintiff's claims.

Plaintiff has failed to carry his heavy burden and show both a substantial threat of irreparable harm if the injunction is not granted, and that the threatened injury to him vastly outweighs potential harm to Eastern Pacific.  Indeed, the sum total of Plaintiff's argument centers on the fact that he was jailed over a year ago when he was in willful and knowing (as he testified in his deposition) contempt of court and chose – in contempt of the Court's direction – to be unrepresented by counsel.  Plaintiff is now represented by counsel.

On the other hand, the potential harm to Eastern Pacific of enjoining the India litigation is immense.  Significant issues of international comity that require consideration in this case that were not present in *Kaepa*.  *Cf.*, *Karaha*, 335 F.3d at 372–73.  As in *Karaha*, and perhaps most importantly, allowing an injunction here could set an undesirable precedent under the Collective Bargaining Agreement ("CBA"), permitting a secondary jurisdiction, the Courts of the United States, to impose penalties on a party when it disagrees with the framework of the CBA itself and a foreign Court's enforcement of that framework.

In sum, an injunction here is likely to have the practical effect of showing a lack of mutual respect for the judicial proceedings of other sovereign nations and demonstrate an assertion of authority not contemplated by the International Transport Workers Federation ("ITF") - the CBA that it and hundreds if not thousands of maritime employers around the world have negotiated - or the signatory parties thereto.  *Id*. at 373.

 As Plaintiff conceded in his memorandum on choice of law, Plaintiff's employment agreement "a Special Agreement between the International Transport Workers' Federation ('the "ITF") and EPS made the SEA [Seafarer Employment Agreement] subject to the "TCC" Collective Agreement between the IT and EPS."  ECF 232 at 9, n. 28.  He also testifies to this in his deposition.  Plaintiff Dep., at 19, ll 7-10.  In this way, this case is very different than the *Kaepa* case and is much more similar to *Karaha*.

The CBA is sacrosanct in the international shipping industry and it is not difficult to imagine the global ramifications which would arise if the collective bargaining agreement is upended.  It also sets forth the framework upon which seaman aboard numerous international ocean going ships are compensated.  *Id*. at 19, ll 12-16.

Furthermore, Eastern Pacific India, who signed Plaintiff's employment contract on behalf of Ventnor, has obligations under the Indian Merchant Shipping (Recruitment and Placement of Seafarers) Rules, 2016 and the steps taken by the Republic of India to give effect to the Maritime Labour Convention, 2006 and Eastern Pacific (Singapore) is "<u>as required pursuant to the provisions of the ILO Maritime Labour Convention 2006</u>, the Shipowner is Eastern Pacific Shipping Pte Ltd.  ECF 232-3 at 6, paragraph 1 (emphasis added).  As Mr. Krishnamurthy testified to in his affidavit, ECF 203-2, ¶ 4 under India law, a foreign company cannot employ an Indian national to work on board a foreign flag ship without the involvement of a Recruitment & Placement Service Provider having a Recruitment and Placement Service License.  The Government of India has promulgated the Merchant Shipping (Recruitment and Placement of Seafarers) Rules, 2016 ("RPSL Rules") which apply to Plaintiff's SEA.  The RPSL Rules is a delegated legislation promulgated under the Merchant Shipping Act, 1958, a parent statute passed by the India Parliament.  This is not, as Plaintiff wishes to argue, a private maritime tort between two private parties and is extensively governed by Rules promulgated by the Indian government.

Mr. Kholkar Vishveshwar Ganpat provides no evidentiary support for the allegations that the South Goa litigation is "vexatious or oppressive" or will "cause prejudice or offend other equitable principles."  *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627, n. 9 (5th Cir. 1996), citing *In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 890 (5th Cir. 1970), *on reh'g en banc sub nom. In the Matter of the Complaint of Unterweser Reederei, GmbH*, 446 F.2d 907 (5th Cir. 1971), *vacated sub nom. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).[7]

---

[7]      In a telephone conference between counsel for Mr. Kholkar Visheveshwar Ganpat, Mr. Arsekar, and counsel for Eastern Pacific and Eastern Pacific India, on or about September 20, 2021, Mr. Arsekar advised Eastern Pacific's counsel that despite Judge Sarika Fal Dessai

It is the Plaintiff's forum shopping that offends equitable principles: he chose suit in a United States District Court because he hopes to receive more money in this Court than he would proceeding before the Goa Court.  His desire to get more money damages in the U.S. than he can in Goa does not involve principles of equity.  "Restitution in the form of money is not equitable relief unless it was traditionally available in equity, such as a via constructive trust or equitable lien.  These examples do not "exhaust[ ] the universe" of equitable relief, but a remedy that only seeks to impose liability and require the defendant to pay the plaintiff a  sum of money is a legal remedy, not an equitable one."  *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 469–70 (5th Cir. 2018) "Equitable relief is contrasted with "legal relief," which constitutes claims seeking "nothing other than compensatory damages." *Mertens* [*v. Hewitt Associates.*], 508 U.S. [248] at 255 [(1993)]. The classic form of purely legal relief is money damages. *Id*."  *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 360 (5th Cir. 2014).

Indeed, it is difficult to conceive of how litigation in Plaintiff's state of residence, near his home, in the same time zone, involving no international air travel for him or many of his witnesses, would be "vexatious and oppressive" when litigation half a world away in this Court is apparently not "vexatious or oppressive."  Wanting to have his cake and eat it too, Plaintiff argues, having just argued in its Memorandum on Choice of Law that Plaintiff's SEA incorporates the ITF's CBA and was somehow signed in London, England, Plaintiff now changes his tune and argues that this is a "maritime tort dispute between two private parties that does not implicate any public international issues."  ECF 251 at 25 (emphasis supplied).  This

---

informing the parties that she is happy to recuse herself so that the case would be heard by an alternative judge, Mr. Kholkar Vishveshwar Ganpat has no objection to Judge Sarika Fal Dessai adjudicating the Indian lawsuit.

contradicts Plaintiff's own statements in his deposition.  Yet, as explained above, allowing the
Courts of the United States to come in and award damages could have huge ramifications on the
international shipping industry and the statutory compensation scheme set forth in Plaintiff's
SEA in conjunction with the involvement of the ITF and incorporation of the CBA.

If a precedent is set that allows a seafarer to circumvent the terms of his employment
contract, sue in the Unites States solely on the basis of a vessel calling at a port in the United
States, and obtain higher compensation that he is not entitled to under the terms of his
employment contract, this could have a chilling effect on international commerce and could force
shipowners, charterers and operators to increase freight rates to reflect the additional risks and
costs, which will ultimately must be borne by consumers in the United States.  These complex
issues of trade are better left to Congress than decided piece-meal, and perhaps inconsistently
within the Circuits, by the Federal Courts.

While Plaintiff argues that the litigation has "been long and firmly ensconced within the
confines of the United States judicial system," Plaintiff only served Eastern Pacific in August
2021.  "Before a ... court may exercise personal jurisdiction over a defendant, the procedural
requirement of service of summons **must be satisfied**." *Murphy Brothers, Inc. v. Michetti Pipe
Stringing, Inc*., 526 U.S. 344, 350 (1999)(emphasis added); "In the absence of valid service of
process, proceedings against a party are void."  *Howard v. Krull*, 438 F. Supp. 3d 711, 714 (E.D.
La. 2020)(Morgan, J., *citing Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design*, 635
F.2d 434, 435 (5th Cir. 1981)).  This case has not proceeded on the merits; it is not "esconced"
nor could it start be, as this Court has held, until and if there was "valid service of process."  *Id.*

Prior to being served, as is well established, Eastern Pacific had the right pursuant to Fed.
R. Civ. P. 12(b)(5), and was required pursuant to that Rule prior to filing any pleading (and the

case proceeding on the merits), to oppose Plaintiff's improper service of process.  No substantive

discovery on the merits has taken place in this case instead all proceedings until August of 2021

were of a procedural nature involving Plaintiff's attempts as service of process.  It can hardly be

said that the litigation was "firmly ensconced" within the confines of the United States judicial

system under service of process was complete:

> In the first instance, it is somewhat regrettable that we are squabbling over service of process; Ligas was clearly dodging service and gaming the system.  <u>But service of process represents  an important value  on  the  whole— notice to defendants that they are being sued—even if it seems like a frustrating formality from time to time (as in this case where Ligas *knew* the government was after him).</u> *See United States v. Jiles,* 102 F.3d 278, 282 (7th Cir.1996) ("[S]ervice of process laws are designed to ensure defendants receive notice in accordance with concepts of due process."); *cf. McMasters v. United States,* 260 F.3d 814, 817 (7th Cir.2001) ("Actual notice to the defendant is insufficient; the plaintiff must comply with the directives of Rule 4.").

*United States v. Ligas*, 549 F.3d 497, 504 (7th Cir. 2008) (Evans J., dissenting) (*emphasis*

*added*); *see also McCarthy v. Mullins*, No. 06-5150, 2007 WL 1100536, at *1 (W.D. Ark. Apr.

12, 2007)(Proper service of process is important because "[i]f a defendant is improperly served, a

federal court lacks jurisdiction over the defendant."); *DeMelo v. Toche Marine, Inc.,* 711 F.2d

1260, 1264 (5th Cir.1983) ("Personal jurisdiction is a composite notion of two separate ideas:

amenability to jurisdiction, or predicate, and notice to the defendant through valid service of

process.").

## VI.  <u>Conclusion</u>

Mr. Kholkar Vishveshwar Ganpat has failed to "clearly carry" his burden of persuasion,

which Fed. R. Civ. P. 65 unequivocally requires him to do, with evidence—evidence that he will

prevail on the merits and evidence on all elements necessary under Rule 65.  This Court now

should deny his motion.

Dated: March 21, 2022.

Respectfully Submitted,

/s/ J. Stephen Simms                    MICHAEL H. BAGOT, JR., T.A. (#2665)
J. Stephen Simms                      WAGNER, BAGOT & RAYER, LLP
Simms Showers LLP                  Pan American Life Center – Suite 1660
201 International Circle, Suite 230     601 Poydras Street
Baltimore, Maryland 21030         New Orleans, Louisiana 70130
Tel:  410-783-5795                    Telephone: 504-525-2141
Fax: 410-510-1789                   Facsimile: 504-523-1587
Email: jssimms@simmsshowers.com    E-mail: mbagot@wb-lalaw.com

Eastern Pacific Shipping Pte. Ltd. Counsel