UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KHOLKAR VISHVESHWAR GANPAT,** | * | CIVIL ACTION |
| *Plaintiff,* | * | |
| | * | NO.  18-13556 "E" (4) |
| **VERSUS** | * | |
| | * | JUDGE SUSIE MORGAN |
| **EASTERN PACIFIC SHIPPING PTE. LTD.,** | * | |
| **d/b/a "EPS",** | * | CHIEF MAGISTRATE JUDGE |
| *Defendant.* | * | KAREN WELLS ROBY |

*******************************************

### REPLY IN SUPPORT OF MOTION FOR
### PRELIMINARY AND PERMANENT INJUNCTION

**MAY IT PLEASE THE COURT:**

### I.  INTRODUCTION

Pursuant to the Court's January 31, 2022 Scheduling Order for Preliminary and Permanent Injunction Hearing,[1] Kholkar Vishveshwar Ganpat ("Plaintiff") respectfully submits this Reply Memorandum in support of his August 19, 2022 Motion for Permanent Injunction.[2]

### II.  NEITHER EPS INDIA NOR EPS SINGAPORE
### HAVE STANDING TO SUE PLAINTIFF IN INDIA

Plaintiff observes that he has been sued in India by both EPS India ("Plaintiff 1") and EPS Singapore ("Plaintiff 2").  EPS complains at length that Plaintiff's request for an injunction runs afoul of principles of comity, yet what does the lawsuit in India do if not disregard comity?  To make matters worse, and as Plaintiff has shown repeatedly, neither of the parties suing him in India have standing to be plaintiffs in that foreign court.  That lack of standing justifies issuance of the

---

[1] See Rec. Doc. 227.

[2] See Rec. Doc. 199.

requested injunction. Let's look at the undisputed facts:

**A.     EPS India.**

1.     "EPS India is 99.99% owned by Eastern Pacific."[3]

2.     EPS India was *not a party to and is not in privity to* the December 27, 2016 Seafarers Employment Agreement (a contract) between Plaintiff and Ventnor Navigation, Inc.[4]

3.     Plaintiff signed his employment contract with Ventnor in a Mumbai, India, post office.[5] Plaintiff's Dep., p. 11, ll 16-20.

4.     EPS India is *not a party to and is not in privity to* the January 1, 2016, Collective Bargaining Agreement between the International Transport Workers Federation and Eastern Pacific Shipping Pte. Ltd.[6]

5.     EPS India is *not a party to and is not in privity to* the November 25, 2014, Special Agreement between the International Transport Workers Federation and Eastern Pacific Shipping Pte. Ltd.[7]

6.     EPS India is not a defendant in the above-captioned matter.[8]

7.     Plaintiff has not alleged any liability claims against EPS India.[9]

8.     EPS claims "At no time has Mr. Kholkar Vishveshwar Ganpat been an employee of Eastern Pacific. In connection with the Vessel he was an employee of Ventor Navigation Inc. ("Ventnor"), a Liberian corporation..."[10]

---

[3] See ¶ 11 of Capt. Anil Singh's August 23, 2021 Affidavit (Rec. Doc. 204-2).

[4] See Plaintiff's Injunction Hearing Exhibit 232-3.

[5] See transcript of Plaintiff's February 28, 2022 deposition at p. 11/16-20.

[6] See Plaintiff's Injunction Hearing Exhibit 232-6.

[7] See Plaintiff's Injunction Hearing Exhibit 232-7.

[8] EPS Singapore is the only defendant named in the Complaint (see Rec. Doc. 1) and in the First Supplemental Complaint (see Rec. Doc. 212).

[9] See Rec. Doc. 1 at ¶¶ 6-71 and Rec. Doc. 212 at ¶¶ 7-100.

[10] See ¶ 9 of Capt. Anil Singh's August 23, 2021 Affidavit (Rec. Doc. 204-2).

9.     EPS India's only connection to Plaintiff was its brief function as Ventnor Navigation's *agent* ("Kholkar Vishveshwar Ganpat on or about 27th December 2016 executed, along with EPS India *on behalf of Ventnor Navigation Inc. of Liberia* ("Ventnor"), a Seafarers Employment Agreement in Mumbai..." and "EPS India, *acting as agent* for Ventnor...").[11]

EPS India, which was merely Ventnor's post office "signing agent" vis-a-vis the Seafarers Employment Agreement, has no connection whatsoever to Plaintiff, the SEA, the CBA, or the Special Agreement. It was used by EPS as a "straw plaintiff" to obtain Indian jurisdiction where none properly exists. Nowhere has EPS explained this fact to the Indian Court, and EPS instead sowed confusion by pleading that:

> "Plaintiff No. 1/EPS India is a RPSL Licence holder issued by the Directorate General of Shipping, Government of India for recruiting Indian seafarers to work on board foreign flagged ships owned by foreigners. Plaintiff No.1/EPS India has assumed personal liability towards the Directorate General of Shipping, Government of India, to ensure repatriation of Indian Seafarers stranded in foreign countries and other welfare measures for seafarers."[12]

The foregoing is just so much legal "mumbo-jumbo" and it reveals that EPS India had no contractual relationship with Plaintiff. Regardless of whether EPS India recruits Indian seafarers "to work on board foreign flagged ships owned by foreigners" (i.e., seafarers who work on EPS Singapore-managed vessels), or has a *separate* repatriation arrangement with the Indian government (for those same seafarers), Plaintiff signed his SFA with Ventnor and not EPS India.

**B.**     **EPS Singapore.**

1.     "EPS India is 99.99% owned by Eastern Pacific."

2.     EPS Singapore was *not a party to and is not in privity to* the December 27, 2016 Seafarers Employment Agreement (a contract) between Plaintiff and Ventnor Navigation, Inc.

---

[11] Id. at ¶¶ 10 and 12.

[12] See Rec. Doc. 142-2 at ¶ 1.

3. EPS Singapore *was a party to* the January 1, 2016, Collective Bargaining Agreement (a contract) with the International Transport Workers Federation.

4. EPS Singapore was *a party to* the November 25, 2014, Special Agreement (a contract) with the International Transport Workers Federation.

5. The CBA between contains no choice of law or venue selection provisions.

6. The Special Agreement contains no choice of law or venue selection provisions.

7. EPS Singapore *is* a defendant in the above-captioned matter.

8. Plaintiff has alleged liability claims against EPS Singapore.

9. EPS Singapore does not "do business" directly in India.

EPS Singapore, attempts to dodge liability by separating its management and operation of the M/V STARGATE from Plaintiff's "employment" by Ventnor Navigation and vessel ownership by Larchep Shipping. In essence, which of the three cups moving in circles hides the bean? EPS requires overseas service of process, denies any U.S. presence,[13] and has filed multiple motions to dismiss during the last two years,[14] all while "managing" hundreds of port visits to the U.S.[15]

The objective of EPS' Indian lawsuit is a coerced settlement and forced dismissal of the above-captioned matter. This alone justifies the requested injunction.

---

[13] EPS claims it is headquartered in Singapore, has neither United States operations, offices, or employees nor any no agents in the United States that are authorized to receive service of process. See Rec. Doc. 16-1 at p. 3.

[14] For example, with respect to EPS' belated motion to dismiss for *forum non conveniens*, the Court found that "Instead, it appears Eastern Pacific Singapore kept its *forum non conveniens* argument tucked in its back pocket for two and a half years while it waited to see how its insufficient service of process defense played out, and, only after the Court found service to be proper did Eastern Pacific Singapore move to dismiss for *forum non conveniens*." See Rec. Doc. 221 at p. 29.

[15] See Rec. Doc. 232-2.

So why is EPS so desperate to kill Plaintiff's U.S. lawsuit in an Indian court? There are probably quite a few reasons, but here are some of the most likely ones:

1. The U.S. lawsuit threatens to collapse the Ventnor-Larchep-EPS set-up which is designed to obstruct litigants' efforts to obtain U.S. jurisdiction, prevent crew members from asserting U.S. law claims, require foreign service of process, and make taking depositions and discovery as difficult as possible. This has nothing to do with comity.

2. EPS seeks a foreign injunctions against the pre-existing U.S. lawsuit because EPS-managed vessels have made *hundreds* of U.S. port calls from which EPS profits. This intended immunity from litigation and U.S. port visit management profits are threatened by this lawsuit. This has nothing to do with comity.

3. EPS knows that it is immaterial whether Ventnor is Plaintiff's employer or Larchep Shipping is the owner of M/V STARGATE because a seaman can have more than one Jones Act employer.[16] A Jones Act employer need not be the owner of the vessel,[17] and independent contractors can be liable under the Act.[18] Further, a third party which borrows a worker may become the Jones Act employer if it assumes sufficient control over the worker.[19] Only a foreign injunction would spare it this fate and the "featherweight" burden of proving causation which is part and parcel of the Jones Act. This has nothing to do with comity.

4. EPS does not want to be a Jones Act employer in a U.S. court, which would wreak havoc on the carefully constructed separation of vessel management, ownership, and manning. This has nothing to do with comity.

5. EPS also knows that being a Jones Act employer ultimately does not matter. EPS has been served[20] and has lost all of its subsequent motions to dismiss, certify, and stay.[21] It will remain before this Court through trial. EPS remains liable to Plaintiff under the general

---

[16] See *Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5th Cir. 1975), clarified, 546 F.2d 675 (5th Cir. 1977).

[17] *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972).

[18] *Mahramas v. American Export Isbrandtsen Lines, Inc.,* 475 F.2d 165 (2d Cir. 1973).

[19] *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969).

[20] See Rec. Doc. 196.

[21] See Rec. Docs. 221, 222, and 244.

maritime law[22] and under that law (unlike under the Jones Act) a seaman like Plaintiff may recover non-pecuniary damages.[23]  This has nothing to do with comity.

6. EPS also wants to avoid Fifth Circuit review of the issues of (A) service of process on Captain Owen Bona as a "managing agent") and (B) whether it is subject to nation-wide general jurisdiction under Fed. R. Civ. P. 4(k)(2).

EPS presents new choice of law arguments throughout its injunction pre-hearing brief, so Plaintiff must respond.  Plaintiff thanks EPS for describing at great length how Liberian law, if chosen by this Court, *borrows U.S. general maritime law.*[24]  Liberian law went unmentioned in EPS' memorandum supporting its Motion to Dismiss - India Law Choice[25] and is probably raised now only because that motion (exclusively urging choice of Indian law) was denied.[26]  Here's what EPS says it its *brand new position* on choice of law:

> "Under Title 21 of the Liberian Code of Laws of 1956 (as amended), Liberian Maritime Law:
>
> §30. Adoption of American General Maritime Law. **Insofar as it does not conflict with any other provisions of this Title, the non-statutory General Maritime Law of the United States of America is hereby declared to be and is hereby adopted as the General Maritime Law of the Republic of Liberia.**
>
> Liberian Code of Laws of 1956, Title 21 §30 (emphasis added). Thus, Plaintiff not only cannot prove success on the merits of his Jones Act claim, Plaintiff does not, under Liberian law, have a claim under the statutory law, including the Jones Act, of the United States."

---

[22] See *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 385 (5th Cir. 1985) quoting *Reed v. Pool Offshore Co.*, 521 F.Supp. 324 (W.D. La. 1981).

[23] See *Gerdes v. G&H Towing Co*., 967 F.Supp. 943 (S.D. Tex. 1997).

[24] See Rec. Doc. 253 at p. 17 of 23 (ECF page #).

[25] See Rec. Doc. 203-1.

[26] See Rec. Doc. 222.  Since then, the Court asked for additional briefing on the issue of choice of law.  See Rec. Doc. 228 at p. 3.

If the Court applies Liberian Law and excludes the Jones Act claim, what remain are claims which must be bench-tried under U.S. general maritime law. These include negligence and punitive damage claims.[27] Frankly, if the Court chooses to apply Liberian law, it will be *far easier for Plaintiff to try a bench case.*

### III.  PLAINTIFF WILL PREVAIL ON THE MERITS

EPS' central pre-hearing theme is the *ipse dixit* of defense counsel that Plaintiff hasn't or can't show why he will succeed on the merits, e.g.:

> "Plaintiff contends, without introducing a single citation to the record, that he will prevail on the merits. He sweepingly contends that this Court should enter a permanent injunction enjoining the sovereign courts of India from proceeding with litigation with zero attempt at explaining how the record in this case supports that he will prevail on the merits without reference to the applicable law—Liberian and/or Indian."

As Plaintiff has shown above, the two EPS entities appearing as plaintiffs in the Indian suit don't have actual standing. Instead, they have invented a fuzzy relationship between EPS India and Plaintiff where EPS India's actual relationship is with the Indian government. EPS Singapore presents no proof that it has standing. This problem means Plaintiff will prevail.

Plaintiff's claims against EPS arise from the bargained-for "CBA" and Special Agreement between the International Transportation Workers Federation and EPS. This means that EPS' can't sue Plaintiff in India if that action is prohibited by the CBA or if it interferes with Plaintiff's *contractual* right to redress. If the CBA prohibits such actions, then the Indian suit must be enjoined. Here are the critical provisions of the CBA:

---

[27] Plaintiff's seaworthiness-based GML punitive damage claim which was eliminated by *e Dutra Group v. Batterton*, 139 S.Ct. 2275 (2019).

§ 1.1   The CBA "sets out the standard terms and conditions applicable to all seafarers serving on any ship listed in Annex I in respect of which there is in existence a Special Agreement made between ITF and the owner or operator." The CBA lists the M/V STARGATE, the vessel on which Plaintiff served.  The CBA was made between "ITF…and the owner or operator" and there is no dispute that EPS was at least the operator of the vessel.

§ 1.2   The CBA states "this agreement is deemed to be incorporated into and to contain the terms and conditions of the contract of employment of any seafarer to whom this agreement applies." Thus, the CBA applies to Plaintiff and EPS and its terms control their relationship.

* * *

§ 1.5   The CBA states "each seafarer, in accordance with 1.1 above, shall be governed by the agreement with effect from the date on which they are engaged, whether they have signed articles or not… whether or not any employment contract is executed between the seafarer and the company…"

* * *

§ 32.1   The CBA states that "the company undertakes not to demand or request any seafarer to enter into any document whereby, by way of waiver or assignment or otherwise, the seafarer agrees or promises to accept variation to the terms of this Agreement…due to the seafarer under this Agreement and the company agrees that any such document already in existence shall be null and void and of no legal effect."

§ 33.1   The CBA empowers the seafarer to take measures against the company (EPS) when it breaches its obligations "as may be deemed necessary to obtain redress."

The Court must determine and apply the clear meaning of the terms of the CBA - which is a contract.  Because the CBA's controlling provisions authorize Plaintiff to seek redress against EPS, and simultaneously forbid EPS from demanding that Plaintiff enter into any document waiving his right to redress.  That is exactly what EPS attempts through its lawsuit in India and it is exactly why entry of an injunction is appropriate.

Plaintiff has presented and thoroughly discussed the Fifth Circuit law applicable to district courts enjoining a U.S. party defendant from pursuing a foreign lawsuit based on the very same facts against a U.S. litigation opponent.  He has presented his deposition transcript and video.  He has also

documented EPS' interference with his right to legal redress by using an after-the-fact *ex parte* Indian lawsuit, a jailing, and the threats of future property seizure and additional incarceration.  All of this is to secure a *de minimis* settlement in India which would then be used to force dismissal of the above-captioned matter.

## IV.  CONCLUSION

With regard to a *preliminary* injunction Plaintiff's testimony and evidence in the record shows he will succeed on the merits and, on the remaining three factors he has shown: (1) a substantial threat of irreparable harm if the injunction is not granted, (2) that the threatened injury outweighs any potential harm to EPS, and (3) that the injunction will not undermine the public interest.[28]  With regard to a *permanent* injunction, Plaintiff suggests he will carry his burden on all four factors.

                                                              Respectfully submitted,

                                                              */s/ Richard M. Martin, Jr.*
                                                             Richard M. Martin, Jr., TA, LA Bar #08998
                                                             Lamothe Law Firm, LLC
                                                            400 Poydras Street, Suite 1760
                                                            New Orleans, LA 70130
                                                            Telephone: (504) 704-1414
                                                           E-Mail: rmartin@lamothefirm.com

And:    Alejandro J. Gonzalez, FL Bar # 015293
            Law Office of Alejandro J. Gonzalez
            199 E. Flagler Street, Suite 610
            Miami, FL 33131
            E-Mail: alex@agonzalezlaw.com
            *Counsel for Plaintiff pro hac vice*

---

[28] *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has this day been forwarded to the following counsel of record to this proceeding by electronic transmission, facsimile and/or by depositing same in the United States Postal Service, properly addressed and postage prepaid, this 24TH day of March, 2022.

 /s/ Richard M. Martin, Jr.
RICHARD M. MARTIN JR.  (#08998)