# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KHOLKAR VISHVESHWAR GANPAT,**<br>    **Plaintiff** | **CIVIL DOCKET** |
| **VERSUS** | **NO.  18-13556** |
| **EASTERN PACIFIC SHIPPING, PTE. LTD,**<br>    **Defendant** | **SECTION: "E" (4)** |

## ORDER AND REASONS

Before the Court is a Motion for Preliminary and Permanent Injunction, filed by Plaintiff Kholkar Vishveshwar Ganpat ("Plaintiff").[1] Defendant Eastern Pacific Shipping, PTE. LTD ("Eastern Pacific Singapore") filed an opposition.[2]

On January 31, 2022, the Court issued a scheduling order setting a hearing on Plaintiff's motion for preliminary and permanent injunction and setting a briefing schedule for the parties to file pre-hearing memoranda.[3] On March 16, 2022, Plaintiff filed a pre-hearing memorandum in support of his request for injunction.[4] On March 21, 2022, Eastern Pacific Singapore filed a pre-hearing memorandum in opposition to Plaintiff's request for injunction. [5] On March 24, 2022, Plaintiff filed a reply memorandum.[6]

On March 28, 2022, the Court held a hearing on Plaintiff's motion for preliminary and permanent injunction. Plaintiff testified at the hearing.

---

[1] R. Doc. 199.
[2] R. Doc. 218.
[3] R. Doc. 227.
[4] R. Doc. 251.
[5] R. Doc. 253.
[6] R. Doc. 259.

## BACKGROUND

Plaintiff is a resident and citizen of the Republic of India.[7] Eastern Pacific Singapore is an international ship management company incorporated under the laws of the Republic of Singapore with its principal place of business in the Republic of Singapore.[8]

On December 12, 2018, Plaintiff filed suit in this Court, bringing claims against Eastern Pacific Singapore under the Jones Act, general maritime law, and for breach of the contractual duty to provide disability benefits in accordance with the "TCC" Collective Agreement.[9] Plaintiff alleges he sustained injuries as a result of tortious conduct that occurred in Savannah, Georgia.[10] Plaintiff alleges he contracted malaria while working as a crew member aboard the M/V STARGATE, which Plaintiff alleges is managed and operated by Eastern Pacific Singapore.[11] Specifically, Plaintiff alleges Eastern Pacific Singapore (1) failed to provision the M/V STARGATE with sufficient anti-malaria medication while the M/V STARGATE was docked at port in Savannah, Georgia, and (2) failed to administer prophylactic anti-malaria medication to the crew of the M/V STARGATE before the vessel arrived in Gabon, a region with a high risk of contracting malaria.[12] Plaintiff further alleges he began to suffer malaria symptoms on the high seas as the vessel sailed from Gabon to Brazil,[13] was hospitalized and treated for malaria in Rio

---

[7] R. Doc. 212 at p. 1.
[8] R. Doc. 1 at ¶ 2. *See also* R. Doc. 204-1 at p. 1, 18; R. Doc. 204-2 at ¶¶ 2, 4.
[9] R. Doc. 1.
[10] *See generally id.*
[11] *Id.* at ¶¶ 6, 32.
[12] *Id.* at ¶¶ 17—10, 25–28.
[13] *Id.* at ¶ 30.

de Janeiro, Brazil,[14] and was subsequently repatriated to India where he received further medical treatment for malaria and complications arising therefrom.[15]

Eastern Pacific Singapore waived its objections to personal jurisdiction and venue in this Court.[16] Over a period of approximately two and a half years, Plaintiff attempted multiple times to perfect service upon Eastern Pacific Singapore. Eastern Pacific Singapore did not accept service and, instead, filed several motions to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.[17] On August 10, 2021, the Court entered an Order and Reasons holding that Plaintiff had perfected service upon Eastern Pacific Singapore at its headquarters in Singapore.[18]

On August 12, 2021, Plaintiff filed a motion for leave to file his first supplemental and amended complaint for damages ("amended complaint") against Eastern Pacific Singapore.[19] Plaintiff's amended complaint retains his Jones Act, general maritime law, and contractual disability benefits claims set forth in the original complaint, and adds an additional claim against Eastern Pacific Singapore for "an intentional general maritime law tort."[20] Plaintiff's new claim arises out of a lawsuit filed in India against Plaintiff by Eastern Pacific Singapore and Eastern Pacific Shipping (India) Private Limited ("EPS India"), a subsidiary 99.99% owned by Eastern Pacific Singapore.[21] Plaintiff alleges the actions of Eastern Pacific Singapore in the Indian court amount to "deliberate and

---

[14] *Id.* at ¶ 39.
[15] *Id.* at ¶ 45.
[16] R. Docs. 68 and 122.
[17] *See* R. Docs. 16, 69, 187.
[18] *See* R. Doc. 196.
[19] R. Doc. 198.
[20] R. Doc. 212 at ¶¶ 101–102.
[21] R. Doc. 142-2 at p. 5–6, at ¶ 1–2.

malicious efforts to intimidate [Plaintiff] from seeking legal redress in this Court," and that these actions constitute an intentional general maritime law tort.[22]

Fifteen months after Plaintiff filed suit in this Court, Eastern Pacific Singapore and EPS India filed suit against Plaintiff in South Goa, India on March 2, 2020, for, among other things, an "injunction restraining vexatious and oppressive foreign legal proceedings."[23] Specifically, Eastern Pacific Singapore and EPS India applied for a temporary injunction seeking ex parte interim relief in the form of a temporary antisuit injunction to restrain Plaintiff from prosecuting this lawsuit in the United States.[24] Eastern Pacific Singapore and EPS India also seek a permanent prohibitory injunction in the nature of an antisuit injunction against Plaintiff, restraining him permanently from taking any steps in the United States proceedings.[25]

> In their application for injunctive relief, Eastern Pacific Singapore and EPS India
>
> submit that the US Proceedings have been instituted with an intention to circumvent the pre-existing contractual relationship between Plaintiff No. 1/EPS India and the Defendant [Kholkar Vishveshwar Ganpat] pursuant to the Mumbai Employment Agreement which expressly quantifies the maximum compensation payable to the Defendant [Kholkar Vishveshwar Ganpat] in the event of 100% disability resulting from an injury sustained on board the Vessel.[26]

The Court notes Eastern Pacific Singapore and EPS India allege in their filings in the Indian proceedings that there is a "contractual relationship" between Plaintiff and EPS India pursuant to the "Mumbai Employment Agreement."[27] In reality, however, the

---

[22] R. Doc. 212 at ¶ 101. Hereinafter, the Court will refer to this claim as Plaintiff's "malicious prosecution" claim, for the sake of brevity.
[23] R. Doc. 142-2 at p. 1.
[24] *See generally id.*
[25] *Id.* at p. 7.
[26] *Id.* at p. 23, at ¶ 15.
[27] *Id.*

parties to that agreement are Plaintiff and Ventnor Navigation, Inc. ("Ventnor").[28] EPS India signed the agreement on behalf of Ventnor as agent for Ventnor.[29]

On March 7, 2020, the court in South Goa, India issued an order temporarily restraining Plaintiff from "continuing/prosecuting/taking steps and/or any further steps in the proceedings before the United States District Court, Eastern District of Louisiana, New Orleans" pending the hearing and the disposal of the application for temporary injunction.[30] The Indian court's order granting the temporary antisuit injunction notes that

> [t]he plaintiffs [Eastern Pacific Singapore and EPS India] have instituted the instant suit for a decree of declaration that the convenience of the parties and ends of justice would be better served if any trial and adjudication relating to liability and quantum of compensation payable to the defendant [Kholkar Vishveshwar Ganpat] in relation to his purported disability/injury sustained by having contracted malaria working on board MV Stargate IMO No. 9493212 (Vessel) pursuant to Searer Employment Agreement dated 27.12.2016 signed in Mumbai is held before this Court [in South Goa, India] rather than the United States District Court, Eastern District of Louisiana, New Orleans.[31]

In this Court, on August 18, 2021, Plaintiff filed the instant motion for preliminary and permanent injunction.[32] Plaintiff asks this Court to issue a preliminary and permanent injunction "enjoining the prosecution by Eastern Pacific [Singapore] and its affiliates and subsidiaries," namely, EPS India, "of the litigation now pending in the District Court of South Goa, Margao, Republic of India."[33] Plaintiff argues a foreign antisuit injunction is appropriate "because the Indian Court proceedings seek to pass upon identical liability and damage claims which were asserted here on December 12,

---

[28] R. Doc. 215-1 at p. 1.
[29] R. Doc. 204-2at ¶¶ 10–12.
[30] R. Doc. 142-1 at p. 11, at ¶ 24.
[31] *Id.* at p. 2.
[32] R. Doc. 199.
[33] R. Doc. 199-1 at p. 1.

2018, about fifteen months before EPS filed its Indian lawsuit on March 2, 2020."[34] Plaintiff argues that, in addition to directly challenging the jurisdiction and orders of this Court, the foreign litigation places him at risk of imprisonment and of having his personal financial assets seized.[35] Plaintiff argues Eastern Pacific Singapore is using the proceedings in India as a means "to thwart this Court, to compel Plaintiff to abandon his rights under the Jones Act, and to force him to dismiss the above-captioned matter or go to jail."[36] Plaintiff characterizes the Indian lawsuit as an attempt to "ram a paltry foreign settlement down [his] throat," and to ultimately force Plaintiff to "dismiss his U.S. lawsuit because it was settled in India."[37] Plaintiff argues "[t]he Indian Court pleadings touch upon all of the issues raised in Plaintiff's complaint" filed in this Court.[38]

At the injunction hearing held in this Court on March 28, 2022, Plaintiff testified a bailiff came to his home in India three or four times attempting to serve him with papers connected to the lawsuit in India. Plaintiff testified the first time the bailiff came to his house was in March of 2020. Plaintiff testified he refused to accept the papers. Plaintiff further testified an EPS lawyer came to his house and told Plaintiff his case in the United States was "stopped," and that the case was to continue in Goa, India. The EPS lawyer attempted to provide Plaintiff with papers showing his suit in the United States was "stopped," but Plaintiff refused to accept the papers. Plaintiff testified he was told if he did not accept the papers the court in India would issue an arrest warrant and arrest him. Plaintiff testified that on or about March 16, 2021, the EPS lawyer, the bailiff, and police officers came to Plaintiff's house and informed him an arrest warrant was issued by the

---

[34] *Id.* at p. 2.
[35] *Id.*
[36] *Id.* at p. 12–13.
[37] *Id.* at p. 13.
[38] *Id.*

court in India. Plaintiff testified he was taken into custody that day in front of his wife and child. Plaintiff testified the police officer took him to the South Goa, India court where he was brought in front of a judge. Plaintiff testified there were three or four lawyers there on behalf of EPS and that he did not have a lawyer there to represent him. Plaintiff further testified the judge asked him why he would not accept the papers and told Plaintiff to sign the papers or hire a lawyer, and that, if he refused, he would go to jail. After that, Plaintiff testified the judge instructed one of the EPS lawyers to take Plaintiff outside the courtroom and advise him. Plaintiff testified the EPS lawyer told him there was no reason for this case to go forward in the United States, and that the case could be resolved in India, and they could possibly reach a settlement. Plaintiff testified when he and the EPS lawyer returned to the courtroom, the EPS lawyer told the judge Plaintiff did not want to cooperate and that he did not want to drop his lawsuit in the United States. Plaintiff further testified that the EPS lawyer told the judge Plaintiff did not want bail or a bond, despite the fact that Plaintiff never discussed bail or a bond with anyone and did not understand what those terms meant. Plaintiff testified the judge told him three or four additional times to sign the papers, take a bond, or hire a lawyer, but Plaintiff refused and the judge informed Plaintiff she was sending him to jail.

Plaintiff testified he was taken to a holding cell for some time and then transported to a prison, which Plaintiff characterized as a prison for murderers and rapists. Plaintiff testified he was strip searched upon arrival at the prison and was thereafter transferred to the I-block, which is the part of the prison used to incarcerate criminal defendants. Plaintiff testified he was placed in a four-by-five-meter cell with five other inmates.

Plaintiff testified the following morning he was transported from the prison back to the courthouse in South Goa, India. Plaintiff testified he was brought back before the

same judge who sent him to jail the day before and that he asked her for a bond, and she told him he lost his chance at a bond and that he needed to hire a lawyer to obtain bail. Plaintiff testified the judge gave him a short time to find a lawyer, and that he eventually found one. Plaintiff testified his lawyer informed the judge he was going to apply for bail.

Plaintiff testified that because of the legal proceedings in India he is afraid he will be arrested again, and that he has fear and apprehension about testifying in open court because of what could happen to him in India. Plaintiff testified he has been to court eleven or twelve times in India, and that he hired an attorney to represent him in the proceedings in India. Plaintiff testified the EPS lawyers are asking the court in India to enforce 16 counts of contempt against him in connection with the proceedings in India. Plaintiff testified he has received threats of being sent back to jail in India if he does not drop his case in the United States. Plaintiff testified EPS is asking the Indian court to hold him in contempt and send him back to jail, and that EPS is threatening his freedom and his safety, threatening to separate him from his wife and child, and threatening to seize his property.

## **LEGAL STANDARD**

Ordinarily, to obtain a preliminary injunction, a movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any potential harm to the non-movant; and (4) the injunction will not undermine the public interest.[39] In most situations, for a court to grant a permanent injunction, a plaintiff must show actual success on the merits, in addition to demonstrating the other three factors.[40]

---

[39] *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).
[40] *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987).

On the other hand, "[a] foreign antisuit injunction is a special application of [the general] injunction rules,"[41] and the "suitability of such relief ultimately depends on considerations unique to antisuit injunctions."[42] "It is well established that 'federal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits.'"[43] The district court's decision to grant injunctive relief is reviewed for abuse of discretion.[44]

A court deciding whether to issue a foreign antisuit injunction must "balance domestic judicial interests against concerns of international comity."[45] In determining whether such a foreign antisuit injunction is necessary, the court "weigh[s] the need to prevent vexatious or oppressive litigation and to protect the court's jurisdiction against the need to defer to principles of international comity."[46] The Fifth Circuit has adopted an approach to antisuit injunctions which "emphasize[s] the need to prevent foreign or vexatious litigation," and rejects the approach employed by some other circuits which emphasizes principles of comity over other considerations.[47]

In the Fifth Circuit, antisuit injunctions have been granted when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles.[48]

---

[41] *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020) (citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003), for the proposition that a foreign antisuit injunction is a "particular subspecies of preliminary injunction.").

[42] *Karaha Bodas Co.*, 335 F.3d at 364.

[43] *Id.* (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996)).

[44] *Kaepa, Inc.,* 76 F.3d at 626.

[45] *Karaha Bodas Co.*, 335 F.3d at 366.

[46] *Id.*

[47] *Kaepa, Inc.* 76 F.3d at 627.

[48] *In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 890 (5th Cir. 1970*), on reh'g en banc sub nom. In the Matter of the Complaint of Unterweser Reederei, GmbH*, 446 F.2d 907 (5th Cir. 1971), *rev'd and vacated on other grounds sub nom. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

Over the past fifty years or so, the Fifth Circuit has addressed the propriety of antisuit injunctions on several occasions. In *In re Unterweser Reederei, Gmbh*, the Fifth Circuit reviewed the district court's order granting an antisuit injunction against a vessel owner in a limitation of liability action, thereby restraining the vessel owner from proceeding with litigation concerning the same subject matter in an English court.[49] Unterweser Reederei, Gmbh, ("Unterweser") entered a contract of towage with Zapata Off-Shore Company ("Zapata") which called for Unterweser's tug, the Breman, to tow Zapata's drilling barge from Venice, Louisiana to Italy.[50] While the towage was underway in the Gulf of Mexico, Zapata's drilling barge was damaged.[51] Thereafter, Zapata filed a complaint in admiralty in federal court against Unterweser and the tug, arrested the tug, and served a copy of its complaint upon the tug's master.[52] Unterweser filed a motion asking the district court to dismiss Zapata's complaint or stay further prosecution of the action, but the district court denied the motion.[53] Subsequently, Unterweser initiated suit against Zapata in England, claiming monies due under the contract of towage.[54] Thereafter, Unterweser filed a complaint in federal district court seeking exoneration from or limitation of liability, and Zapata filed its claim in the limitation action, asserting the same causes of action as in its original federal court action.[55] In the limitation action, Unterweser filed an objection to Zapata's claim and also filed a counterclaim against Zapata, asserting the same claims as in the English action.[56]

---

[49] *See generally id.*
[50] *Id.* at 889.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.* at 890.
[55] *Id.*
[56] *Id.*

Zapata filed a motion for an antisuit injunction in the limitation action, asking the district court to restrain Unterweser from continuing with its suit in England.[57] The district court granted the motion for antisuit injunction, and Unterweser appealed.[58] In granting the motion, the district court explained that, because suit was initially filed in the district court, and because the district court has jurisdiction over the parties and the subject matter, "[t]he proposition that the case should at the same time be prosecuted in another forum is not well received."[59] The district court further held that allowing the same action to be prosecuted simultaneously in a foreign country would cause inequitable hardship and would tend to frustrate and delay the speedy and efficient determination of the cause in the district court.[60] On appeal, the Fifth Circuit—observing that courts have the power to enjoin parties properly before it from litigating in another court—held that "[i]t was within the court's discretion to determine, as it did, that allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in inequitable hardship and tend to frustrate and delay the speedy and efficient determination of the cause."[61]

One year later, in *Bethell v. Peace*,[62] the Fifth Circuit "reemphasized the vexatiousness of parallel proceedings by approving the lower court's injunction."[63] In

---

[57] *Id.*
[58] *Id.*
[59] *In re Unterweser Reederei, Gmbh*, 296 F. Supp. 733, 735 (M.D. Fla. 1969), *aff'd*, 428 F.2d 888 (5th Cir. 1970), *on reh'g en banc sub nom. In the Matter of the Complaint of Unterweser Reederei, GmbH*, 446 F.2d 907 (5th Cir. 1971), *vacated on other grounds sub nom. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).
[60] *Id.*
[61] *In re Unterweser Reederei, Gmbh*, 428 F.2d at 896. The Supreme Court granted a writ of certiorari and vacated and reversed the decision of the Fifth Circuit, holding that a forum selection clause in the contract of towage providing for the litigation of any dispute under the contract to take place before the High Court of Justice in London, England, was valid and binding on the parties. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).
[62] 441 F.2d 495 (5th Cir. 1971).
[63] Steven R. Swanson, *The Vexatiousness of A Vexation Rule: International Comity and Antisuit Injunctions*, 30 GEO. WASH. J. INT'L L. & ECON. 1, 25 (1996).

*Bethell,* seven individuals co-owned land in the Bahamas.[64] Veronica Peace, a real estate broker in Florida, induced six of the seven co-owners to sign a contract to sell the Bahamian real estate to her.[65] In November 1967, Peace filed two lawsuits in the Bahamas, a quiet title action and an action for specific enforcement of the contract.[66] Edward Bethell, a successor in title to one of the six co-owners who signed the contract, filed suit in federal court seeking a declaration that the contract was invalid, damages based on Peace's fraudulent practices, and an injunction against Peace prosecuting her lawsuits in the Bahamas.[67] The district court granted Bethell's partial motion for summary judgment that the contract was invalid, and granted the antisuit injunction against Peace.[68] Issues relating to fraud and breach of a confidential relationship remained pending and were set to be resolved at trial.[69] Peace appealed the district court's order, alleging, among other things, that the district court erred in enjoining her from prosecuting her lawsuits in the Bahamas.[70] The Fifth Circuit, noting that in "certain circumstances it is proper for courts of equity to enjoin parties from prosecuting claims before courts of another jurisdiction," held that because the district court found the contract invalid on its face, the district court acted within its discretion in relieving Bethell from the "expense and vexation of having to litigate in a foreign court," and that the district court "could properly enjoin [Peace] from future harassment through litigation based on a contract that was inoperative."[71]

---

[64] 441 F.2d at 496.
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.* at 498.

In *Kaepa, Inc. v. Achilles Corp.*, the Fifth Circuit again affirmed the lower court's grant of an antisuit injunction.[72] A United States company, Kaepa, Inc., entered into an exclusive distributorship agreement with Achilles Corporation, a Japanese entity, pursuant to which Achilles was to market Kaepa's products in Japan. [73] The distributorship agreement contained a choice of law provision calling for the application of Texas law, and a forum selection clause specifying that litigation concerning the contract was to take place in Texas.[74] In July 1994, Kaepa sued Achilles in Texas state court, alleging breach of contract, fraudulent inducement, and negligent misrepresentation.[75] Achilles removed the action to federal court.[76] In February 1995, Achilles filed suit against Kaepa in Japan, "alleging mirror-image claims: (1) fraud by Kapea to induce Achilles to enter into the distributorship agreement, and (2) breach of contract by Kaepa."[77] Kaepa filed a motion in the district court, asking the court to enjoin Achilles from prosecuting its claims in Japan, and the district court granted the motion, ordering Achilles to refrain from litigating the Japanese action and to file its counterclaims in the federal district court.[78] Achilles appealed the grant of the antisuit injunction, arguing primarily that the district court erred in not giving proper deference to principles of international comity.[79] On appeal, the Fifth Circuit explained that in *Unterweser* and *Bethell*, the court, focusing on the need to prevent vexatious and oppressive foreign litigation,

---

[72] 76 F.3d 624 (5th Cir. 1996).
[73] *Id.* at 625–626.
[74] *Id.*
[75] *Id.* at 626.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*

concluded that a district court does not abuse its discretion by issuing an antisuit injunction when it has determined that allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in inequitable hardship and tend to frustrate and delay the speedy and efficient determination of the cause.[80]

The Fifth Circuit in *Kapea* distinguished its approach from that taken by other circuits which "have employed a standard that elevates principles of international comity to the virtual exclusion of essentially all other considerations."[81] The Fifth Circuit declined "to require a district court to genuflect before a vague and omnipotent notion of comity every time that it must decide whether to enjoin a foreign action."[82] The Fifth Circuit explained that, while the standard espoused in *Unterweser* and *Bethell* focuses on "the potentially vexatious nature of the foreign litigation," the standard does not exclude considerations of comity.[83] Turning to the circumstances of the case before it, the Fifth Circuit concluded that it could not be said that the lower court's antisuit injunction tramples on notions of comity, or threatens relations between the United States and Japan, for two reasons.[84] First, there were no public international issues involved in the case before it, which involved a private contractual dispute between private parties.[85] Second, the case had "long and firmly been ensconced within the confines of the United States judicial system."[86] The Fifth Circuit further concluded that the prosecution of the lawsuit in Japan would result in an absurd duplication of effort, vexation, and unwarranted inconvenience and expense.[87]

---

[80] *Id.* at 627.

[81] *Id.*

[82] *Id.*

[83] *Id.* (internal quotations omitted).

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.* In *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Nebara,* the Fifth Circuit reversed the district court's order granting the plaintiff's motion for foreign antisuit injunction. 335 F.3d 357 (5th Cir. 2003). In *Karaha Bodas Co.*, the Fifth Circuit based its decision on "the structure and purpose

In *MWK Recruiting Inc. v. Jowers*, MWK Recruiting, Inc., Robert Kinney, Kinney Recruiting Limited, Michelle Kinney, Recruiting Parties GP, Inc., Kinney Recruiting LLC, and Counsel Unlimited LLC (collectively, the "MWK parties") sued Evan Jowers ("Jowers") in Texas state court for misappropriation of trade secrets, among other claims, in connection with his former position as an employee of a predecessor entity of MWK Recruiting, Inc.[88] Jowers removed the action to federal court.[89] Jowers thereafter sued his former employer and its principal, Kinney Recruiting Ltd., H.K. and Robert Kinney for defamation in Hong Kong.[90] In response to Jowers's Hong Kong lawsuit, the MWK parties filed a motion for a foreign antisuit injunction and the district court granted the motion.[91] The Fifth Circuit, in an unpublished opinion, reversed the district court's order granting the antisuit injunction.[92] The Fifth Circuit confirmed that the test set forth in *Kaepa* governs whether a court may issue a foreign antisuit injunction.[93] Specifically, the court stated that

> [i]t is well established that federal courts are empowered to enjoin persons subject to their jurisdiction from prosecuting foreign suits. Generally, to obtain a preliminary injunction, a movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any potential harm to the non-movant; and (4) that the injunction will not undermine the public interest. For a court to grant a permanent injunction, a plaintiff must succeed on the merits, in addition to demonstrating the other three factors. Injunctive relief is considered an extraordinary remedy, to be granted only when the movant has clearly carried the burden of persuasion on all four requirements.

---

of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards," which, among other things, "necessarily envisions multiple proceedings that address the same substantive challenges to an arbitral award." *Id.* at 359–360, 367.

[88] *MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-444-RP, 2019 WL 5927288, at *1 (W.D. Tex. Nov. 12, 2019), *modified*, No. 1:18-CV-444-RP, 2019 WL 7759522 (W.D. Tex. Dec. 11, 2019), *vacated and remanded*, 833 F. App'x 560 (5th Cir. 2020).

[89] *Id.* at *6.

[90] *Id.* at *1.

[91] *Id.*

[92] 833 F. App'x at 561.

[93] *Id.* at 562.

A foreign antisuit injunction is a special application of these injunction rules. Thus, the suitability of such relief ultimately depends on considerations unique to antisuit injunctions. The Fifth Circuit has adopted a test that weighs the need to prevent vexatious or oppressive litigation and to protect the court's jurisdiction against the need to defer to principles of international comity. An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles. In applying the test, this court has rejected the approach taken by some other circuits, which elevates principles of international comity to the virtual exclusion of essentially all other considerations. Instead, the Fifth Circuit has noted that notions of comity do not wholly dominate the analysis to the exclusion of these other concerns.

To determine whether proceedings in another forum constitute vexatious or oppressive litigation that threatens the court's jurisdiction, the domestic court considers whether the following interrelated factors are present: (1) inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and (3) the extent to which the foreign suit is duplicative of the litigation in the United States.[94]

In light of the Fifth Circuit precedent set forth above, the Court must now determine whether Plaintiff has demonstrated the factors specific to antisuit injunctions weigh in favor of granting an injunction in this case.

## LAW AND ANALYSIS

At the outset, because "federal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits," the Court briefly address personal jurisdiction. During a telephone status conference on April 18, 2019, Eastern Pacific Singapore's counsel expressly withdrew its objections to personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[95] As a result, the Court has personal jurisdiction

---

[94] *Id.* (internal quotations and citations omitted).
[95] R. Doc. 68.

over Eastern Pacific Singapore. Turning to the merits of the instant case, Plaintiff argues the lawsuit in India is vexatious and oppressive litigation that threatens this Court's jurisdiction.

## **The lawsuit in India constitutes vexatious and oppressive litigation that threatens this Court's jurisdiction.**

The Fifth Circuit has identified three interrelated factors showing that foreign litigation is vexatious or oppressive: (1) inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and (3) the extent to which the foreign suit is duplicative of the litigation in the United States.[96]

With respect to the first factor, this Court has personal jurisdiction over Eastern Pacific Singapore and subject matter jurisdiction over this dispute. The Court finds it would "entail an absurd duplication of effort and would result in unwarranted inconvenience, expense, and vexation"[97] to require that the dispute be litigated in two courts thousands of miles apart. The Court has the power to restrain the parties before it from litigating the same matters elsewhere in order to protect its jurisdiction. [98] Furthermore, the Court has already determined the balance of convenience weighs in favor of litigation in this forum,[99] and the Court has the power to protect Plaintiff from

---

[96] *Karaha Bodas Co.*, 335 F.3d at 366.

[97] *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996).

[98] *In re Unterweser Reederei, Gmbh*, 296 F. Supp. 733, 735 (M.D. Fla. 1969), *aff'd*, 428 F.2d 888 (5th Cir. 1970), *on reh'g en banc sub nom. In the Matter of the Complaint of Unterweser Reederei, GmbH*, 446 F.2d 907 (5th Cir. 1971), *vacated on other grounds sub nom. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). *See also Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984*)* (stating that "[c]ourts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants. Thus, when the action of a litigant in another forum threatens to paralyze the jurisdiction of the court, the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in the foreign proceedings.")

[99] *See* the Court's January 25, 2022 Order and Reasons denying Eastern Pacific Shipping's motion to dismiss for forum non conveniens, at R. Doc. 221.

the expense and burden concomitant to prosecuting the same action in the courts of two countries thousands of miles apart.[100]

Furthermore, unlike the plaintiff in *Karaha Bodas,* Plaintiff has not initiated foreign proceedings related to this dispute.[101] "Such voluntary invocation of a foreign forum, which is absent here, would militate against a finding that litigating a foreign action amounts to an inequitable hardship."[102] Far from voluntarily invoking a foreign forum, Plaintiff not only filed his claims in this Court, he has refused to bring his claims before the Indian court and has not willingly participated in the Indian proceedings. Eastern Pacific Singapore's action in suing Plaintiff in India was taken in direct response to Plaintiff filing this case here. Eastern Pacific Singapore's stratagem "smacks of cynicism, harassment, and delay."[103] The Court finds that the suit in India has caused, and threatens to continue to cause, inequitable hardship to Plaintiff.[104]

Turning to the second factor the Indian lawsuit has a real ability to frustrate and delay the speedy and efficient determination of the cause in this Court.[105] There is a scheduling order in place and this matter is set for trial in November 2022.[106] The antisuit

---

[100] *In re Unterweser Reederei, Gmbh,* 428 F.2d 888, 896 (5th Cir. 1970).

[101] *Karaha Bodas Co.,* 335 F.3d at 368 (stating that "it is difficult to envision how court proceedings in Indonesia could amount to an inequitable hardship. Not only did KBC contract to arbitrate its dispute in a foreign country (Switzerland), but it also instituted enforcement proceedings in several countries, including the United States.").

[102] *Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.,* 373 F. Supp. 2d 645, 649 (E.D. La. 2005).

[103] *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 628 (5th Cir. 1996).

[104] Plaintiff's testimony at the hearing detailed the injustice and hardship he has experienced as a result of Eastern Pacific Singapore's actions in the Indian proceedings. Plaintiff has already been jailed once for violating the ex parte antisuit injunction, and Plaintiff faces a real possibility of being sent back to jail and having his property seized, as Eastern Pacific Singapore seeks to have the Indian court enforce sixteen counts of contempt against Plaintiff

[105] *See, e.g., Ericsson Inc. v. Samsung Elecs. Co.,* No. 2:20-CV-00380-JRG, 2021 WL 89980, at *6 (E.D. Tex. Jan. 11, 2021) (concluding that proceedings in a court in China which had issued an antisuit injunction against the plaintiff in the United States case "would frustrate and delay the speedy and efficient determination of legitimate causes of action before this Court.")

[106] R. Doc. 228.

injunction issued by the Indian court against Plaintiff complicates his prosecution of the action in this Court, and this action cannot continue without Plaintiff's participation. With Plaintiff hamstrung by an injunction from the Indian court, this Court's ability to reach a final determination is not only delayed but is seriously frustrated. Not only do the Indian proceedings have a real potential to frustrate and delay the determination of the matter in this Court, the Indian proceedings also threaten the integrity of this Court's jurisdiction.

The Court must now address the third factor, which examines the extent to which the foreign suit is duplicative of the litigation in the United States. Eastern Pacific Singapore concedes that "[l]itigation involving the same facts has been proceeding for over a year and a half in the South Goa Court."[107] However, the Fifth Circuit has recently held, in *MWK Recruiting Inc. v. Jowers*, that factual similarity alone is not sufficient for a foreign lawsuit to be duplicitous; instead, the lawsuits must involve the same legal bases for the suits to be duplicitous.[108] In *MWK Recruiting*, the Fifth Circuit, in an unpublished opinion, reversed the district court's grant of an antisuit injunction because the district court applied an inappropriate test—the logical relationship test—for determining whether the foreign suit was duplicative of the domestic suit.[109] The district court granted the plaintiff's motion for antisuit injunction because it found that adjudication of the issues in the Hong Kong defamation suit necessarily would duplicate determinations that the district would make on the merits in the domestic case filed by the MWK parties.[110]

---

[107] R. Doc. 204-1 at p. 1.
[108] *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560 (5th Cir. 2020).
[109] 833 F. App'x at 561.
[110] *MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-444-RP, 2019 WL 5927288, at *4–*5 (W.D. Tex. Nov. 12, 2019), *modified*, No. 1:18-CV-444-RP, 2019 WL 7759522 (W.D. Tex. Dec. 11, 2019), *vacated and remanded*, 833 F. App'x 560 (5th Cir. 2020).

Although the district court determined the Hong Kong proceedings would not pose an inequitable hardship to the MWK parties and that the Hong Kong proceedings would not frustrate and delay the district court's determination of the domestic case, it granted the motion for foreign antisuit injunction because the claims in the Hong Kong suit "substantially and logically duplicate" the issues in the domestic case.[111] The district court reasoned that "the Hong Kong [defamation] suit appears to *exclusively* involve claims about Jowers's conduct during his employment—the precise subject of the domestic [trade secret misappropriation] case. The same operative facts serve as the basis of both sets of claims; a logical relationship exists between them."[112] Jowers appealed the district court's order granting the foreign antisuit injunction.[113]

On appeal, the Fifth Circuit concluded, "for two reasons, that the court erred in applying the logical-relationship test."[114] First, the Fifth Circuit explained the logical-relationship test is inconsistent with Fifth Circuit precedent because, under that test, two claims are duplicative so long as they share underlying operative facts.[115] The Fifth Circuit explained, under Fifth Circuit precedent, the "duplicative factor is about *legal* not *factual*, similarity," meaning that the Fifth Circuit finds suits to be duplicative when they involve the same or similar legal bases or identical claims.[116] As an example, the Fifth Circuit cited to its prior decision in *Kaepa, Inc. v. Achilles Corp.*,[117] wherein the court found the two suits involved mirror-image claims because both the United States suit and the lawsuit in

---

[111] *Id.* at *3.
[112] *Id.* at *5 (emphasis in original).
[113] *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 563 (5th Cir. 2020).
[114] *Id.* at 564.
[115] *Id.*
[116] *Id.*
[117] 76 F.3d 624, 626 (5th Cir. 1996).

Japan claimed fraudulent inducement and breach of contract.[118] Second, the Fifth Circuit explained the logical relationship test would, contrary to Fifth Circuit precedent, lower the bar for antisuit injunctions and render antisuit injunctions commonplace.[119]

The instant case is distinguishable from *MWK Recruiting* on two separate grounds. First, in *MWK Recruiting,* the Fifth Circuit found that the district court incorrectly "based its injunction *solely* on the premise that the two suits shared some operative facts, even where the two other factors that help to establish vexatious or oppressive litigation—inequitable hardship along with frustration and delay—were admittedly absent."[120] In this case, not only do this action and the Indian action share the same operative facts, the Court has found there is inequitable hardship resulting from the Indian suit and the Indian suit has the ability to frustrate and delay the speedy and efficient determination of this case.

Second, unlike in *MWK Recruiting*, this suit and the Indian suit involve the same or similar legal bases. The Fifth Circuit in *MWK Recruiting* cited the following out of circuit cases as applying a higher bar than the logical-relationship test: *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,[121] *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,[122] and *E. & J. Gallo Winery v. Andina Licores S.A.*[123] In *Allendale Mutual*, the Seventh Circuit concluded the district court properly issued a foreign antisuit injunction because it would be an "absurd duplication of effort" for the

---

[118] *MWK Recruiting Inc.*, 833 F. App'x at 564.
[119] *Id.* at 564–565.
[120] *Id.* at 564 (emphasis added).
[121] 10 F.3d 425 (7th Cir. 1993).
[122] 369 F.3d 645 (2d Cir. 2004).
[123] 446 F.3d 984 (9th Cir. 2006).

parties to litigate "parallel lawsuits" in the United States and France.[124] The *Allendale* court also noted that "ordinarily a [party] who obtains a final judgment in a mirror-image suit uses the judgment as the basis for a plea of res judicata in the parallel proceeding."[125] In *Paramedics Electromedicina Comercial, Ltda.*, the Second Circuit held that "an anti-suit injunction may be proper if resolution of the case before the enjoining court would be dispositive of the enjoined action."[126] In *E. & J. Gallo Winery*, the Ninth Circuit explained that the claims in the United States lawsuit were the same as the claims in the Ecuadorian lawsuit because "[i]n the Ecuadorian court, Andina sued [Gallo] for breach of contract. In the district court, Gallo sought, among other things, a declaration that Gallo did not breach the distributorship agreement. Therefore, all the issues before the court in the Ecuador action are before the court in the California action."[127]

Applying the standard set forth in *MWK Recruiting* and the above-cited out-of-circuit cases, the proceedings in this Court and the proceedings in India are duplicative because they share the same or similar legal bases. First, the Court notes that Eastern Pacific Singapore has conceded, in its filings in the Indian court, the two proceedings involve the same legal bases by stating that "[t]he pendency of the US Proceedings and the proceedings before this Hon'ble Court [in India] on the *same cause of action* would

---

[124] *Allendale Mut. Ins. Co.*, 10 F.3d at 431. In that case, two insurers of equipment destroyed by a fire in France filed suit against the insured in federal district court, seeking a declaration that they were not liable under the policy because the insured intentionally set the fire. The insured, seeking to enforce the insurance policies, filed a separate action in federal district court against one of the insurers and the insurance broker, and initiated litigation against the second insurer in the Commercial Court of Lille, France. The federal district court consolidated the two United States lawsuits, and the insured filed additional counterclaims against the insurance companies in the consolidated action. The insurers sought and received an antisuit injunction from the federal district court, restraining the insured from taking steps in the litigation in France. *Id.* at 425–28.

[125] *Id.* at 433.

[126] *Paramedics Electromedicina Comercial, Ltda*, 369 F.3d 645, 653 (2d Cir. 2004).

[127] *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006).

undoubtly (sic) be multiplicity of proceedings."[128] Moreover, in the proceedings in this Court, Plaintiff alleges he is a seaman suing his purported employer, Eastern Pacific Singapore, and asserts tort claims under the Jones Act and general maritime law, and a claim for breach of the collective bargaining agreement.[129] In its Answer to Plaintiff's complaint and first amended complaint in this Court, Eastern Pacific Singapore includes an affirmative defense that "Plaintiff has agreed to limit his damages as a part of his contractual agreement to be employed aboard the Vessel."[130] Eastern Pacific Singapore puts Plaintiff's tort claims and his claim under the collective bargaining agreement directly at issue in the Indian proceedings by asking that court to rule that Plaintiff's tort claims and his claims under the collective bargaining agreement are circumscribed by the Seafarer Employment Agreement.[131] Specifically, in the complaint and application for injunction filed with the Indian court, Eastern Pacific Singapore and EPS India expressly ask the court to "grant a decree of declaration that the Defendant's [Kholkar Vishveshwar Ganpat] purported claim for compensation of disability for having contracted malaria working on board MV Stargate cannot exceed the sum contractually due under the Seafarer Employment Agreement dated 27 December 2016."[132] At the injunction hearing held in this Court, counsel for Eastern Pacific Singapore stated that Eastern Pacific Singapore argues in the U.S. proceedings that the Jones Act and collective bargaining agreement do not apply, that the law of India and the employment agreement apply, and that, as a result, Plaintiff's damages are limited to $120,860. Counsel for Eastern Pacific Singapore further stated that the argument lodged by Eastern Pacific Singapore and EPS

---

[128] R. Doc. 142-2 at p. 42 (emphasis added).
[129] *See generally* R. Doc. 1 and R. Doc. 212.
[130] R. Doc. 230 at p. 16.
[131] R. Doc. 142-2 at p. 46.
[132] *Id.*

India in the Indian proceedings is that Plaintiff's recovery is limited by the terms of the employment agreement. The logical inference of Eastern Pacific Singapore's argument, made both in this Court and in the Indian court, is that the employment contract applies *to the exclusion of* the Jones Act, the general maritime law, and the collective bargaining agreement. Although Plaintiff has not brought any claims in the Indian proceedings, his claims here, as described above, are brought under the Jones Act, general maritime law, and the collective bargaining agreement. As a result, this action and the Indian action involve the same legal bases.

In sum, whether Plaintiff may proceed on his tort claims and his claim for breach of the collective bargaining agreement, or whether Plaintiff's recovery is limited by the employment contract, is an ultimate legal question at issue in both this case and in the suit in India. A ruling by this Court that Plaintiff is entitled to recover under the Jones Act, general maritime law, and under the collective bargaining agreement against Eastern Pacific Singapore would be dispositive of the merits in the Indian case, because such a ruling would preclude Eastern Pacific Singapore's contention that the employment agreement is Plaintiff's exclusive remedy. Additionally, pursuit of the litigation in India could result in inconsistent rulings in the two suits on the question of whether the employment agreement provides Plaintiff's exclusive remedy, further demonstrating that the two suits involve the same legal bases. The party to first obtain a favorable judgment, either this Court or the Indian court, on the question of the exclusivity of the remedy under the employment contract, would thereafter use that judgment as the basis for a plea of res judicata in the court which had not yet reached final judgment.[133]

---

[133] *See, e.g., Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 10 F.3d 425, 433 (7th Cir. 1993) (explaining that "[o]rdinarily a plaintiff who obtains a final judgment in a mirror-image suit uses the judgment as the basis for a plea of res judicata in the parallel proceeding. If Allendale obtained a judgment [from the federal

As a result, the Court—having found that the Indian suit threatens to cause inequitable hardship, has a real ability to frustrate and delay the determination of the instant case, and has the same legal bases as instant case—concludes the Indian proceedings are vexatious and oppressive. The Court now turns to the issue of international comity.

## Concerns of international comity do not counsel against the issuance of a foreign antisuit injunction.

The Fifth Circuit has impliedly recognized the importance of international comity when a case implicates public international issues and when prior steps in resolving a dispute have taken place in the foreign forum.[134] Although the facts of this case reflect contacts with several nations, this is a private dispute between private parties, and no public international issues are implicated in this case. Furthermore, it cannot be said that the grant of the antisuit injunction actually threatens relations between the United States and India.[135] This lawsuit has been pending in the United States for almost three and a half years and is now "firmly ensconced within the confines of the United States judicial system." [136] The Fifth Circuit, elevating the need to prevent vexatious or oppressive litigation over concerns of international comity, has advised that district courts are not required to "genuflect before a vague and omnipotent notion of comity every time that it must decide whether to enjoin a foreign action."[137] Granting Plaintiff's motion for antisuit injunction will not unduly trample on notions of comity, particularly in light of the Indian

---

district court] that its and FMI's policies do not cover the fire loss . . ., it would interpose the judgment in BDS's suit against FMI in the [French court.]")

[134] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 371 (5th Cir. 2003).

[135] *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996).

[136] *Id.*

[137] *Id.*

court's preliminary ex parte injunction restraining Plaintiff from prosecuting his claims in this Court.

Accordingly, the Court concludes that, in this case, the need to prevent vexatious or oppressive litigation and to protect the Court's jurisdiction is significant and outweighs the need to defer to principles of international comity. As a result, the Court concludes Plaintiff's motion for antisuit injunction should be granted.

## Plaintiff is not required to post security under Federal Rule of Civil Procedure 65(c).

Federal Rule of Civil Procedure 65(c) states that the court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[138] "In holding that the amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial court," the Fifth Circuit has ruled that the court "may elect to require no security at all."[139] In *Kaepa*, the Fifth Circuit, after affirming the district court's issuance of a foreign antisuit injunction, held the district court did not violate Rule 65(c) by failing to require the movant to post a bond.[140] Noting that it was appropriate not to require the movant to post security because it was the enjoined party who created the "risk of damages for delay or duplication by filing the second, mirror-image suit in Japan," the Fifth Circuit stated that the district court did not abuse its discretion in refusing to require the movant to post security because the antisuit injunction could "only work to avoid damages, not cause them."[141]

---

[138] Fed. R. Civ. P. 65(c).
[139] *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citing *Corrigan Dispatch Company v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir.1978)).
[140] *Id.*
[141] *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 n.20 (5th Cir. 1996).

The Court finds the reasoning employed by the Fifth Circuit in *Kaepa* to be applicable to the instant case. Furthermore, in the case *sub judice*, the foreign litigation to be enjoined is an action for declaratory and injunctive relief; Eastern Pacific Singapore and EPS India are not seeking damages as a form of relief in the Indian litigation. Pursuant to Rule 65(c), the Court finds no security is required for this antisuit injunction.[142]

### Under Federal Rule of Civil Procedure 65(d)(2), Eastern Pacific Singapore is required to give notice of this order to EPS India.

Federal Rule of Civil Procedure 65(d)(2) provides that every order granting an injunction

> binds only the following who receive actual notice of it by personal service or otherwise:
>
> > (A) the parties;
> >
> > (B) the parties' officers, agents, servants, employees, and attorneys; and
> >
> > (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).[143]

Subpart (C) "contemplates two categories of persons who may be bound by an injunction."[144] First, a nonparty may be held in contempt if he aids or abets an enjoined party in violating an injunction"; second, "an injunction may be enforced against a nonparty in privity with the enjoined party."[145] "Ultimately, a determination that privity

---

[142] *See id.* at 628.
[143] Fed. R. Civ. P. 65(d)(2)(A)–(C).
[144] *Texas v. Dep't of Lab.*, 929 F.3d 205, 211 (5th Cir. 2019).
[145] *Id.* (quoting *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 848–49 (7th Cir. 2010) (internal quotations omitted).

exists 'represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close.'"[146]

The antisuit injunction is binding upon Eastern Pacific Singapore under Rule 65(d)(2)(A) because Eastern Pacific Singapore is a party to this action. In addition, this antisuit injunction is binding on EPS India under Rule 65(d)(2)(C) because EPS India is in active concert or participation with Eastern Pacific Singapore, and the relationship between Eastern Pacific Singapore and EPS India is "sufficiently close."[147] EPS India is a subsidiary of Eastern Pacific Singapore; EPS India is 99.99% owned by Eastern Pacific Singapore.[148] Additionally, in the Indian lawsuit, there is a complete identity of interests and positions between EPS India and Eastern Pacific Singapore, *vis-à-vis* Plaintiff. The United States Supreme Court has explained that Rule 65(d)(2) is "derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control."[149] Both EPS India and Eastern Pacific Singapore are parties-plaintiff in the Indian lawsuit, and both EPS India and Eastern Pacific Singapore seek to restrain Plaintiff from prosecuting his claims in this Court, and to require Plaintiff to litigate his claims in the Indian court. Unless EPS India is also subject to this Court's antisuit injunction order, the order will be of no practical utility, as EPS India may be able

---

[146] *Id.* (quoting *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977)).

[147] *See, e.g., Teas v. Twentieth Century-Fox Film Corp.*, 413 F.2d 1263, 1269 (5th Cir. 1969) (noting that "the control relationship between parent and subsidiary might be proved sufficient for a determination of privity or even alter ego.").

[148] R. Doc. 204-2 at ¶ 11, at p. 4. *See, e.g., Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006) ("Where parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement [that the parties are the same in both matters] is met."), *aff'd*, 246 F. App'x 73 (2d Cir. 2007).

[149] *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010) (citing *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945)).

to continue the Indian lawsuit with no participation by Eastern Pacific Singapore. It follows that, if Plaintiff believes EPS India "as an entity acting in concert with Defendant [Eastern Pacific Singapore] is violating this Order, Plaintiff may file a motion for contempt."[150]

Because Rule 65(d)(2) requires that persons to be bound by an injunction order must receive actual notice, Eastern Pacific Singapore is required—immediately upon receipt of this Order—to provide actual notice of this order to EPS India. To ensure that such notice is provided, Eastern Pacific Singapore must file into the record of the Indian lawsuit, a notice of this order, attaching a copy of this order to said notice.

## **CONCLUSION**

**IT IS ORDERED** that Plaintiff's Motion for Preliminary and Permanent Injunction[151] is **GRANTED.** Eastern Pacific Shipping, PTE. LTD, and its affiliates, subsidiaries, and all persons in privity or active concert or participation with Eastern Eastern Pacific Shipping, PTE. LTD, who have actual notice of this injunction, specifically Eastern Pacific Shipping (India) Private Limited, shall dismiss their claims in the litigation now pending in the District Court of South Goa, Margao, Republic of India, styled and numbered as *Eastern PacificShipping (India) Pte. Ltd. and Eastern Pacific Shipping Pte. Ltd. versus Vishveshwar Ganpat Kholkar*, Special Civil Suit No. 64/2020/III, CNR No. GASG02-003269-2020.

**IT IS FURTHER ORDERED** that Eastern Pacific Shipping, PTE. LTD, and Eastern Pacific Shipping (India) Private Limited are **HEREBY ENJOINED** from further prosecuting the litigation now pending in the District Court of South Goa, Margao,

---

[150] *M-I LLC v. FPUSA, LLC*, No. SA:15-CV-406-DAE, 2015 WL 6738823, at *17 n.7 (W.D. Tex. Nov. 4, 2015), *adhered to*, No. SA:15-CV-406-DAE, 2016 WL 6088344 (W.D. Tex. Oct. 17, 2016).
[151] R. Doc. 199.

Republic of India, styled and numbered as *Eastern PacificShipping (India) Pte. Ltd. and Eastern Pacific Shipping Pte. Ltd. versus Vishveshwar Ganpat Kholkar*, Special Civil Suit No. 64/2020/III, CNR No. GASG02-003269-2020.

**IT IS FURTHER ORDERED** that Eastern Pacific Shipping, PTE. LTD, shall, immediately upon receipt of this Order, provide a copy of this Order to Eastern Pacific Shipping (India) Private Limited.

**IT IS FURTHER ORDERED** that Eastern Pacific Shipping, PTE. LTD, shall, on or before April 6, 2022, file a Notice of this Order, attaching a copy of this Order, into the record of *Eastern PacificShipping (India) Pte. Ltd. and Eastern Pacific Shipping Pte. Ltd. versus Vishveshwar Ganpat Kholkar*, Special Civil Suit No. 64/2020/III, CNR No. GASG02-003269-2020.

**New Orleans, Louisiana, this 5th day of April, 2022.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**