## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KHOLKAR VISHVESHWAR GANPAT,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-13556** |
| **EASTERN PACIFIC SHIPPING PTE, LTD.,**<br>    **Defendant** | **SECTION: "E" (4)** |

## <u>ORDER AND REASONS</u>

Previously, the Court deferred ruling on the choice of law arguments made by the parties because they were premature.[1] Since then, the discovery process has proceeded and concluded.[2] There are five pending motions for summary judgment based on the application of different nations' laws. [3] Accordingly, the Court must resolve the outstanding choice of law issues. To assist the Court, Kholkar Vishveshwar Ganpat ("Plaintiff") filed a "Memorandum Regarding Choice of Law."[4] Eastern Pacific Shipping, PTE., LTD., ("Eastern Pacific Singapore," "Defendant," or "EPS") filed a memorandum in response.[5] Plaintiff filed a reply memorandum.[6]

Plaintiff brings the following claims for relief: (1) tort claims under the Jones Act; (2) tort claims under the general maritime law; (3) a claim for breach of a contractual duty to provide disability benefits arising under a collective bargaining agreement; and (4) a claim for "an intentional general maritime law tort" arising out of a lawsuit filed in India against Plaintiff by Eastern Pacific Singapore and Eastern Pacific Shipping (India) Private

---

[1] R. Doc. 222.
[2] R. Doc. 337. Rule 30(b)(6) depositions and expert depositions and discovery also have now concluded. *Id.*
[3] R. Doc. 272 (applying Liberian law); R. Doc. 277 (applying Liberian law); R. Doc. 279 (applying Indian law); R. Doc. 311 (applying United States law); and R. Doc. 356 (applying United States law).
[4] R. Doc. 232.
[5] R. Doc. 249.
[6] R. Doc. 254.

Limited ("EPS India"), which Plaintiff alleges amounts to "deliberate and malicious efforts to intimidate [Plaintiff] from seeking legal redress in this Court."[7] The Court will decide the law applicable to each independent claim for relief.

## BACKGROUND

Plaintiff is a resident and citizen of the Republic of India. [8] Eastern Pacific Singapore is an international ship management company incorporated under the laws of the Republic of Singapore with its principal place of business in the Republic of Singapore.[9]

On December 12, 2018, Plaintiff filed his original complaint in this Court.[10] In his original complaint, Plaintiff brought claims under the Jones Act and the general maritime law, and a contractual claim for disability benefits under Article 24 of the "TCC" Collective Agreement, which is made part of the Seafarer's Employment Agreement entered into between Ventnor Navigation, Inc. and Plaintiff.[11] On September 14, 2021, Plaintiff filed his first amended and supplemental complaint ("first amended complaint").[12] Plaintiff's amended complaint retains his Jones Act, general maritime law, and contractual disability benefits claims set forth in the original complaint, and adds an additional claim against Eastern Pacific Singapore for "an intentional general maritime law tort." [13] Plaintiff's new claim arises out of a lawsuit filed against Plaintiff in India by Eastern

---

[7] R. Doc. 1; *see also* R. Doc. 212 at ¶¶ 101—102.

[8] R. Doc. 1 at ¶ 1; *see also* R. Doc. 212 at p. 1.

[9] R. Doc. 1 at ¶ 2; *see also* R. Doc. 204-1 at pp. 1, 18; R. Doc. 204-2 at ¶¶ 2, 4.

[10] R. Doc. 1.

[11] *See id*. The "TCC" Collective Agreement states the agreement "sets out the standard terms and conditions applicable to all seafarers serving on any ship listed in Annex I" and that the agreement "is deemed to be incorporated into and contain the terms and conditions of the contract of employment of any seafarer to whom this agreement applies." R. Doc. 1-22 at ¶¶ 1.1—1.2. Annex I lists the M/V STARGATE as one of the vessels to which the "TCC" Collective Agreement applies. *See id*. at pp. 14—15.

[12] R. Doc. 212.

[13] *Id*. at ¶¶ 101—02.

Pacific Singapore and Eastern Pacific Shipping (India) Private Limited ("EPS India"), a subsidiary of Eastern Pacific Singapore. Plaintiff alleges the actions of Eastern Pacific Singapore in the Indian court amount to "deliberate and malicious efforts to intimidate [Plaintiff] from seeking legal redress in this Court," and that these actions constitute an intentional general maritime law tort.[14]

On August 24, 2021, Eastern Pacific Singapore filed a "Motion to Dismiss – India Law Choice."[15] Plaintiff opposed the Motion.[16] In its motion to dismiss, Eastern Pacific Singapore argued the law of India governed this dispute and that, under the law of India, Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted.[17] In his opposition, Plaintiff argued Eastern Pacific Singapore's motion to dismiss should be denied because the law of the United States governs the dispute and that, under the law of the United States, he stated a claim under the Jones Act and general maritime law.[18] Eastern Pacific Singapore's "Motion to Dismiss – India Law Choice" was denied.[19] The Court deferred ruling on the choice of law issue, reasoning "determination of the choice of law in this case is premature and more development of the facts is necessary."[20] Accordingly, the Court put a briefing schedule in place to enable the parties to more fully flesh out the issues once the facts of the case were developed.[21] Eastern

---

[14] Hereinafter, the Court will refer to this claim as Plaintiff's "malicious prosecution" claim, for the sake of brevity.
[15] R. Doc. 203.
[16] R. Doc. 215.
[17] R. Doc. 203.
[18] R. Doc. 215.
[19] R. Doc. 222 at p. 6.
[20] *Id.*
[21] R. Doc. 252.

Pacific Singapore now argues the law of India, the law of Liberia, or the law of Singapore applies.[22] Conversely, Plaintiff argues United States law applies.[23]

## LAW AND ANALYSIS

## I.   Plaintiff's tort claims under the Jones Act and the general maritime law are governed by United States law.[24]

Plaintiff alleges he contracted malaria while working as a crew member aboard the M/V STARGATE.[25] Specifically, Plaintiff alleges Eastern Pacific Singapore (1) failed to provision the M/V STARGATE with sufficient anti-malaria medication while the M/V STARGATE was docked at port in Savannah, Georgia, and (2) failed to administer prophylactic anti-malaria medication to the crew of the M/V STARGATE before, during, and after the vessel arrived in Gabon, a country in Central Africa, which is a region with a high risk of contracting malaria.[26] Plaintiff further alleges he began to suffer malaria symptoms on the high seas as the vessel sailed from Gabon to Brazil,[27] was hospitalized and treated for malaria in Rio de Janeiro, Brazil,[28] and was subsequently repatriated to India where he received further medical treatment for malaria and complications arising therefrom.[29]

---

[22] R. Doc. 249.

[23] R. Doc. 232.

[24] Plaintiff's claim for an "intentional general maritime law tort" arising out of a lawsuit filed in India (i.e., the malicious prosecution claim) is analyzed separately.

[25] R. Doc. 1. at ¶¶ 6, 32. Eastern Pacific Singapore represents it has never owned the M/V STARGATE. R. Doc. 204-2 at ¶ 8. Through the affidavit of Anil Arjun Singh, director of Eastern Pacific Singapore, Eastern Pacific Singapore attests it "manages but does not own the M/V STARGATE." *Id.* Eastern Pacific Singapore attests Larchep Shipping Inc., a Liberian corporation, was the owner of the M/V STARGATE at the time Plaintiff worked aboard the vessel. *Id.* Additionally, the parties dispute whether Eastern Pacific Singapore is Plaintiff's borrowed employer, though neither party argues EPS is Plaintiff's direct employer. *See* R. Doc. 311; *see also* R. Doc. 317. Whether Defendant is Plaintiff's borrowed employer is not relevant to this Court's choice of law analysis.

[26] R. Doc. 1. at ¶¶ 17—30.

[27] *Id.* at ¶ 30.

[28] *Id.* at ¶ 39.

[29] *Id.* at ¶ 45.

Plaintiff argues the law of the United States governs his Jones Act and general maritime law tort claims, while, conversely, Eastern Pacific Singapore argues the law of India, Liberia, or Singapore governs. "Whether federal maritime law or foreign law should govern a maritime tort depends on an assessment of eight factors articulated by the Supreme Court in *Lauritzen v. Larsen* and *Hellenic Lines, Ltd. v. Rhoditis.*"[30] These factors are: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured worker; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations.[31] The factors are not exhaustive,[32] meaning courts should consider the totality of the circumstances to resolve choice of law issues.[33] Moreover, the weight given to the factors depends on the maritime activity engaged in by seamen. "Where seamen are not plying the world's seas in traditional international shipping activity, some contacts take on heightened significance and others diminished significance, for some of the rationales concerning the significance of the factors articulated in the *Lauritzen*" and *Rhoditis* opinions—both cases involving traditional, blue-water maritime activity—"do not apply with the same force in" non-traditional cases.[34] The difference in the weight given to the *Lauritzen* factors in a case involving traditional, blue-water activity lies in the transient, as opposed to fixed, nature of a blue-water seaman who plies the world's seas.[35]

---

[30] *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 282 (5th Cir. 1991). The Court refers to these factors as the *Lauritzen* factors and the *Lauritzen-Rhoditis* factors.

[31] *Id.* (citing *Lauritzen v. Larsen*, 345 U.S. 571, 582–93 (1953), and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970)).

[32] *Rhoditis*, 398 U.S. at 306 (considering the "totality of the circumstances").

[33] *Id.* at 309.

[34] *Neely v. Club Med. Mgmt. Servs., Inc.*, 63 F.3d 166, 182 (3rd Cir. 1995). Common sense tells us the case at bar involves traditional, blue-water maritime activities.

[35] *See Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (11th Cir. 1980).

The Court will now examine the factors outlined above to determine which factors are applicable in the instant case. Then, the Court will weigh those factors, as well as other factors of importance, to determine which law or laws apply.

## A. Identifying the applicable *Lauritzen* factors.

### 1. Factor one: place of the wrongful act, meaning the place of the injury.

As to the first factor, Plaintiff alleges in his complaint that tortious acts occurred in Savannah, Georgia while the M/V STARGATE was docked at a local port and before, during, or after the vessel arrived in Gabon.[36] Eastern Pacific Singapore, on the other hand, argues alleged torts occurred in either Gabon or somewhere on the high seas between Gabon and Brazil in the South Atlantic.[37]

The parties dispute whether this factor is determined by looking to the location where the wrongful *conduct* occurred or where the *injury* occurred. Circuits are split on this issue. "[F]ederal courts in [some] circuits have held the 'place of the wrongful act' is not necessarily where the accident occurs, but rather, [is] where the alleged negligence occurs."[38]

The Fifth Circuit, however, has "consistently found the place of injury, *not* the place of other alleged negligence is the place of the wrongful act."[39] Plaintiff began to suffer malaria symptoms on the high seas as the vessel sailed from Gabon to Brazil. Under this rubric, it is clear the injury did not occur in the United States, India, Liberia, Gabon, or

---

[36] R. Doc. 1 at ¶¶ 17–30.

[37] R. Doc. 203-1 at p. 2.

[38] *Blythe v. Offshore Serv. Vessels, L.L.C.*, 422 F. Supp. 3d 1156, 1167 n.93 (E.D. La. 2019) (citing *Rationis Enterprises, Inc. v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580 (2d Cir. 2005) ("it is the state where the negligence occurs that had the greatest interest in regulating the behavior of the parties")).

[39] For clarity, the Court will refer to this factor as the place of the injury factor. *Id.* at 1167 n.94 (collecting cases) (emphasis added).

Singapore. Accordingly, this factor does not weigh in favor of applying the laws of the United States or the laws of India, Singapore, Gabon, or Liberia.[40] Thus, this factor has no particular application to this case.

## 2. Factor two: law of the flag.

With respect to the second factor—the law of the flag—Plaintiff alleges in his complaint, and states in his choice of law memorandum, that the M/V STARGATE bore a "Liberian flag of convenience."[41] In its choice of law memorandum, Eastern Pacific Singapore agrees the law of the flag is Liberia.[42] The country in which a ship is registered is called its flag state, and it is common parlance to say a ship sails "under the flag" of its country of registration.[43] "A merchant vessel on the high seas [belongs to] the country whose flag she flies."[44] In *Lauritzen v. Larsen*, in addressing the importance of the law of the flag factor, the Supreme Court explained as follows:

> Each state under international law may determine for itself the conditions on which it will grant its nationality to a merchant ship, thereby accepting responsibility for it and acquiring authority over it. Nationality is evidenced to the world by the ship's papers and its flag. The United States has firmly and successfully maintained that the regularity and validity of a registration can be questioned only by the registering state.[45]

It is undisputed that the M/V STARGATE was registered in the country of Liberia and flew a Liberian flag.[46] Ordinarily, this factor is accorded great significance in the choice of law analysis and "has traditionally been of cardinal importance in determining

---

[40] *Id.* at 1166–67.
[41] R. Doc. 1 at ¶ 6; *see also* R. Doc. 232 at p. 10; *Hellenic Lines Ltd. v. Rhoditis*, 412 F.2d 919, 923 (5th Cir. 1969) (acknowledging that courts are not bound by flags of convenience; a practice whereby shipowners, seeking to "avoid stringent shipping laws," fly the flag of another country with less stringent laws).
[42] R. Doc. 249 at p. 8.
[43] *See, e.g., Solano v. Gulf King 55, Inc.*, 30 F. Supp. 2d 960, 963 (S.D. Tex. 1998) (explaining that the vessel was registered in the United States and that "the law of the flag is undisputedly that of the United States.")
[44] 2 C.J.S. Admiralty § 13 (citing *Radovcic v. The Prince Pavle*, 45 F. Supp. 15 (S.D. N.Y. 1942)).
[45] 345 U.S. 571, 584 (1953).
[46] *See* R. Doc. 232 at p. 10; *see also* R. Doc. 249 at p. 8.

the law applicable to maritime cases."[47] However, as Plaintiff correctly points out in his memorandum,[48] the owner of the M/V STARGATE, Larchep Shipping, Inc. ("Larchep"), is not a party to this lawsuit. Plaintiff originally alleged in his complaint that Eastern Pacific Singapore owned and operated the M/V STARGATE;[49] however, in his choice of law memorandum, Plaintiff acknowledges the shipowner was Larchep and that Larchep's allegiance is to Liberia.[50] Through the affidavit of Anil Arjun Singh, director of Eastern Pacific Singapore, Eastern Pacific Singapore attests it "manages but does not own the M/V STARGATE."[51] Eastern Pacific Singapore attests Larchep was the owner of the M/V STARGATE at the time Plaintiff worked aboard the vessel.[52] Though Larchep owned the M/V STARGATE at all relevant times, Larchep is not a party. Overlooking this wrinkle in its argument that Liberian law applies, Defendant nevertheless relies on the fact that "[t]he law of the flag is undisputedly Liberian."[53]  If Larchep were a party, this factor would "not point to the application of U.S. law and instead would point to the application of Liberian law,"[54] but Larchep is not a party.

In *Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co*., the Second Circuit explained "[g]enerally, we look to the law of the ship's flag *only if* the shipowner is a party."[55] The *Rationis Enterprise* court reasoned that

> [w]hatever significance law of the flag may have in cases where the ship or its owner is a party and where other factors fail to point clearly to another jurisdiction's law, we see no reason to apply the law of the flag here in preference to that of another jurisdiction whose ties are more pertinent to

---

[47] *Fogleman v. ARAMCO* (*Arabian Am. Oil Co.*), 920 F.2d 278, 282 (5th Cir. 1991).
[48] R. Doc. 232.
[49] R. Doc. 1 at ¶ 6.
[50] R. Doc. 232 at p. 10.
[51] R. Doc. 204-2 at ¶ 8.
[52] *Id*.
[53] R. Doc. 249 at p. 15.
[54] *Id*.
[55] 426 F.3d 580, 586 (2d Cir. 2005) (emphasis added).

the dispute, especially given the fact that neither the ship nor the owner is a party.[56]

The Fifth Circuit similarly has held that, when the shipowner is not a defendant, the law of the flag factor has no specific application.[57] Thus, the Court finds the law of the flag factor has no specific application to this case because the shipowner is not a party to this litigation.

### 3. Factor three: allegiance or domicile of the injured worker.

As to the third factor, Plaintiff states he is a domiciliary of the Republic of India,[58] and Eastern Pacific Singapore does not dispute this fact. Thus, this factor points towards application of Indian law. However, this factor is given little significance in traditional, blue-water maritime shipping cases like this one where a seaman's work, given its transient nature, frequently takes him beyond the territorial boundaries of his place of domicile or allegiance.[59]

### 4. Factor four: allegiance of the defendant shipowner.

With respect to the fourth factor—the allegiance of the shipowner—as explained above, the shipowner is Larchep, not Eastern Pacific Singapore.

The only named defendant in this action is Eastern Pacific Singapore. The parties do not dispute that Eastern Pacific Singapore is an international ship management company incorporated under the laws of the Republic of Singapore with its principal place

---

[56] *Id.*

[57] *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1120 (5th Cir. 1995) ("The second factor is the law of the flag. . . . MIS is not a shipowner and therefore this factor has no specific application to it.").

[58] R. Doc. 1 at ¶ 1. R. Doc. 232 at p. 10.

[59] *Lauritzen v. Larsen*, 345 U.S. 571, 588 (1953) (recognizing "each nation has a legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support"); *see also Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1019 (5th Cir. 1981); *see generally Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 87 (11th Cir. 1980) (placing greater weight on the allegiance of the injured seaman in a non-traditional maritime context because "[t]he workers here were Trinidad nationals whose employment never took them beyond its territorial boundaries.").

of business in the Republic of Singapore.[60] Eastern Pacific Singapore's allegiance is to Singapore. The allegiance of Larchep, the shipowner, is to Liberia.[61] Thus, the question before the Court is whether, in this case, the "allegiance of the defendant shipowner" is relevant.

In this case, the shipowner is not named as a defendant. Instead, the only named defendant is not the shipowner. In *Rationis Enterprises,* a case in which the shipowner was not a defendant, the Second Circuit nevertheless considered the allegiance of the *named* defendants.[62] Similarly, in *Coats v. Penrod,* the Fifth Circuit, in analyzing the allegiance of the shipowner factor, stated "MIS is not a shipowner, but we still take into account its organization under the laws of the United Arab Emirates."[63] This Court adopts the approach employed by the Second Circuit in *Rationis Enterprises,* and by the Fifth Circuit in *Coats,* with respect to analysis of the fourth factor and will take into account Eastern Pacific Singapore's organization in Singapore. Accordingly, the Court concludes this factor points toward the application of Singapore law, as the only named defendant holds a Singaporean allegiance.

### 5.  Factor five: the place of the contract.

Moving to the fifth factor—the place of the contract—the parties agree Plaintiff executed his Seafarer's Employment Agreement in Mumbai, India, with EPS India acting on behalf of Ventnor Navigation, Inc., a Liberian company.[64] In addition, the Seafarer's Employment Agreement contained a clause stating that "[t]his agreement shall be

---

[60] R. Doc. 203-1 at pp. 2, 3; R. Doc. 1 at ¶ 2; R. Doc. 203-3 at ¶¶ 2, 4.

[61] R. Doc. 232 at p. 10.

[62] *Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 588 (2d Cir. 2005) (stating that "[t]he citizenship of the defendants, Hyundai, is Korea.").

[63] *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1120 (5th Cir. 1995).

[64] R. Doc. 212 at ¶ 7; *see also* R. Doc. 215 at p. 5. The agreement calls for the application of Liberian law.

governed by and interpreted in accordance with the laws of the state of ships flag aboard which seaman is employed."[65]

The parties dispute whether this factor should be afforded any significance. Plaintiff argues this factor is irrelevant.[66] Eastern Pacific Singapore argues there is no support for Plaintiff's contention that the place of contract is unimportant in this context. However, in *Lauritzen v. Larsen,* the Supreme Court recognized that the place of contract

> often has significance in choice of law in a contract action. But a Jones Act suit is for tort . . . The place of contracting in this instance, as is usual to such contracts, was fortuitous. A seaman takes his employment, like his fun, where he finds it; a ship takes on crew in any port where it needs them. The practical effect of making the *lex loci contractus* govern all tort claims during the service would be to subject a ship to a multitude of systems of law, to put some of the crew in a more advantageous position than others, and not unlikely in the long run to diminish hirings in ports of countries that take best care of their seamen.
>
> . . .
>
> We do not think the place of contract is a substantial influence in the choice between competing laws to govern a maritime tort.[67]

Accordingly, the Fifth Circuit has stated the place of contract is "of little import due to its 'fortuitous' occurrence for the traditional seaman."[68]

In addition, the place of the signing of the Seafarer's Employment Agreement is not a substantial factor in this case because the only defendant—Eastern Pacific Singapore—is not a party to the Seafarer's Employment Agreement. The Seafarer's Employment Agreement is a contract between Plaintiff and Ventnor, and Ventnor is not

---

[65] R. Doc. 215-1 at p. 4, ¶ 26.

[66] R. Doc. 215 at pp. 7–9. Notably, Defendant has not argued at any point throughout these proceedings that an exception to the privity requirement exists in this case—even when Plaintiff raised the issue. Accordingly, that issue is not before the Court and Court does not pass on the issue here.

[67] 345 U.S. 571, 588–590 (1953).

[68] *See Fogleman v. ARAMCO (Arabian Am. Oil Co.),* 920 F.2d 278, 283 (5th Cir. 1991) (quoting *Lauritzen v. Larsen*, 345 U.S. 571, 589 (1953)).

a defendant in this lawsuit. Thus, in light of the reasoning in *Lauritzen*, and the nature of and parties to the Seafarer's Employment Agreement, the Court finds the place of the contract factor has no particular application to the facts of this case.

### 6. Factor six: the inaccessibility of the foreign forum.

The sixth factor—the inaccessibility of the foreign forum—is not applicable to resolution of the choice of law issue before the Court because this factor only applies in the *forum non conveniens* context,[69] on which the Court has ruled by separate order.[70]

### 7. Factor seven: the law of the forum.

The parties dispute whether the seventh factor—the law of the forum—is relevant in this case. Eastern Pacific Singapore, citing to *Lauritzen*, argues "the law of the forum is inapplicable where the defendant is involuntarily made a party."[71] Plaintiff argues the law of the forum supports application of United States law,[72] and that Eastern Pacific Singapore's argument is a misrepresentation of *Lauritzen*.[73] In *Fogleman v. ARAMCO*, the Fifth Circuit addressed this very issue, explaining that

> [w]hile the law of the forum factor is therefore given little weight in determining choice of law, we are nevertheless obliged to correct the district court's misapprehension that this factor requires an evaluation of the adequacy of the foreign forum's law. Although we can attribute the district court's misunderstanding to ambiguity in one of our previous opinions, the law-of-the-forum factor in the *Lauritzen* analysis is patently United States, rather than foreign, law. Nor is the law of the forum automatically "inapplicable when [the] defendant was involuntarily made a party," as some of our previous opinions have stated in dicta. We originally made this statement in the context of assessing personal jurisdiction. It was subsequently inadvertently transposed to the choice-of-law context. Very rarely, after all, is a defendant a voluntary party to any action against him, unless the suit is an attempt to validate a compromise. The [plaintiffs] brought their suit in federal district court. Whatever weight the law-of-the-

---

[69] *Id.; see also Blythe v. Offshore Serv. Vessels, L.L.C.*, 422 F. Supp. 3d 1156, 1169 (E.D. La. 2019).
[70] R. Doc. 221.
[71] R. Doc. 203-1 at p. 2.
[72] R. Doc. 215 at p. 18.
[73] *Id.* at p. 4 n.13.

forum factor has, therefore, tells on the side of the application of United States law.[74]

As in *Fogleman*, Plaintiff brought his suit in a United States federal district court, and this factor tilts in favor of applying United States law.

### 8.  Factor eight: the shipowner's base of operations.

The shipowner, Larchep, a Liberian company, is not a party to the instant litigation. In *Rationis Enterprises*, the Second Circuit concluded that, because the shipowner was not a party, "the shipowner's base of operations is not a determinative factor."[75] This Court agrees the shipowner's base of operations should not be considered in this case because the shipowner is not a party. Accordingly, this factor is not applicable.

### 9.  Summary of applicable factors.

In sum, factor one—the place of the wrongful injury—has no particular application to the fact of this case. Factor two—the law of the flag—is not given any weight by the Court. Factor three—the allegiance or domicile of Plaintiff—points towards application of Indian law, though it is given little weight in traditional maritime cases like this one.[76] Factor four—the allegiance of the defendant—points towards application of Singapore law. Factor five—the place of the contract—is not applicable. Factor six—the inaccessibility of the foreign forum—is not relevant. Factor seven—the law of the forum— points towards application of United States law. And factor eight—the shipowner's base of operations—has no application to this case.

---

[74] *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 283 (5th Cir. 1991).
[75] *Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 587 (2d Cir. 2005).
[76] *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1019 (5th Cir. 1981).

**B.  Weighing the relevant factors.**

Factors identified, the Court now turns to weighing the substantiality of the contacts between the countries at play under a strict application of the delineated *Lauritzen* factors—India, Singapore, and the United States—and the instant controversy to determine which nation's laws apply to which claims. The test to determine the correct choice of law is not a mechanical "one in which the court simply counts the relevant contacts [and calls it a day]; instead, the significance of each factor must be considered within the particular context of the claim and the national interest that might be served by the application of United States law, particularly the Jones Act." [77] Indeed, the underlying objective of *Lauritzen*'s choice of law inquiry in a case in which recovery under the Jones Act is asserted is to effectuate the Jones Act's liberal purposes.[78] To effectuate its liberal purposes, courts must take a "cold objective look" at the facts of the case to properly weigh the substantiality of contacts between a country and a controversy.[79] Moreover, "the significance of each factor in a nontraditional maritime context like offshore oil production may vary from that in the traditional shipping context in which the *Lauritzen-Rhoditis* test arose."[80]

In *Lauritzen*, the Supreme Court recognized the difficulty of setting forth a general methodology for deciding choice of law issues in the maritime context. The Court

---

[77] *Fogleman*, 920 F.3d at 282.
[78] *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 310 (1970) (citing *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 441 (2d Cir. 1959)). In *Rhoditis*, the Supreme Court was particularly troubled by situations in which, for example, companies attempt to shield themselves from Jones Act liability by setting up shop in foreign countries, all the while making hundreds of port visits in the United States. To avoid such an outcome, the Supreme Court instructed, courts must keep in mind the need to effectuate the liberal purposes of the Jones Act.
[79] *Id.*
[80] *Id.*

explained the choice of law question in the context of a maritime tort dispute is ultimately decided by

> ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved. The criteria, in general, appear to be arrived at from weighing of the significance of one or more connecting factors between the shipping transaction regulated and the national interest served by the assertion of authority.[81]

The *Lauritzen-Rhoditis* test, at bottom, seeks to resolve conflicts of law in maritime tort cases by identifying the laws of the nation with the greatest national interest in the underlying dispute.[82]

With respect to the instant controversy between Plaintiff and Eastern Pacific Singapore, most of the delineated *Lauritzen-Rhoditis* factors are not applicable, to wit: the place of the injury (factor one); the law of the ship's flag (factor two); the place of contract (factor five); the inaccessibility of the foreign forum (factor six); and the base of the shipowner's operations (factor eight). The factors which do, in fact, constitute contacts between the transaction and the interests of the nations whose competing laws are involved include: the allegiance of the Plaintiff (India); the allegiance of the Defendant (Singapore); and the law of the forum (United States).

As a result, under a strict application of *Lauritzen*,[83] the Court is left with three factors[84] to determine the choice of law—none of which clearly resolves the issue. In terms of weighing these three factors, Fifth Circuit precedent teaches us that "[f]actors that have

---

[81] 345 U.S. 571, 582 (1953).

[82] *See Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86, 90 (2d Cir. 1996) (stating that the Supreme Court in *Lauritzen* adopted an "interest analysis" for resolving choice of law issues in maritime tort disputes); *see also* Restatement (Second) of Conflict of Laws § 145 (1971).

[83] The Fifth Circuit has held "[t]he district court should rely on the eight *Lauritzen-Rhoditis* factors developed by the Supreme Court in making its initial determination of whether United States or foreign law applies." *McClelland Engineers, Inc. v. Munusamy*, 784 F.2d 1313, 1317 (5th Cir. 1986).

[84] Factors three, four, and seven.

little significance in one factual setting may warrant greater weight in another."[85] In a traditional, blue-water maritime shipping context like this one, the Fifth Circuit has stated "such factors as place of [injury], *allegiance or domicile of the injured*, and place of contract," may be less substantial.[86] As such, out of the gate, the importance of the allegiance of Plaintiff is discounted in the analysis and *Lauritzen* and Fifth Circuit precedent leave this Court with only two factors to resolve the choice of law issue in this case: allegiance of the Defendant (Singapore) and law of the forum (United States).[87]

The Fifth Circuit has recognized that "[t]he list of seven factors in *Lauritzen* was not intended as exhaustive."[88] The U.S. Supreme Court has emphasized that "there may well be other[]" factors "of importance" beyond the identified *Lauritzen* factors.[89] Though the delineated *Lauritzen* factors narrow the choice of law decision to the laws of Singapore and the United States, these factors alone do not squarely resolve the choice of law issue in this case. "The [*Lauritzen*] analysis is . . . imbued with a flexibility that permits courts to take account of the context of any incident that American law is alleged to govern."[90] As a result, the Court will look to other contacts between the instant controversy and Singapore and the United States for help in resolving the choice of law issue.

---

[85] *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 85 (9th Cir. 1980); *see also Solano v. Gulf King 55*, 212 F.3d 902, 906 (5th Cir. 2000) ("[t]he weight accorded the choice of law factors in the context of those cases was dictated by the" context of the case.).

[86] *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1019 (5th Cir. 1981) (emphasis added).

[87] The Court is cognizant that the law of the forum factor is often not given substantial weight in the choice of law analysis. However, this factor, buttressed by the additional significant contacts between the instant controversy and the United States detailed below, supports the application of United States law to Plaintiff's maritime tort claims.

[88] *Solano*, 212 F.3d at 905. While the factors are not exhaustive, the Court is cognizant of "[t]he fact that the law of another forum may be more or less favorable to a plaintiff . . . does not determine choice of law." *Id.* at 907 (internal quotations omitted).

[89] *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970).

[90] *Neely v. Club Med. Mgmt. Servs., Inc.*, 63 F.3d 166, 182 (3rd Cir. 1995).

The Fifth Circuit has interpreted the first *Lauritzen* factor—the place of the wrongful act—as being the place where the injury occurred and not where the negligence occurred.[91] But the *Lauritzen* factors are not exclusive, and the Court may consider other contacts between the instant controversy and interested nations. The first additional factor the Court will consider is where the alleged negligence occurred. This is supported by decisions of other circuits.[92] As an example, the Second Circuit has recognized the importance of, and placed significant weight on, the location of the negligence in the choice of law analysis because "it is the [nation] where the negligence occurs that has the greatest interest in regulating the behavior of the parties."[93] Indeed, the Fifth Circuit has relied on the reasoning of the Second Circuit when reviewing a district court's choice of law decision.[94] For example, in *Kriti Filoxenia Special Maritime Enterprise v. Yasa*, two vessels "were involved in a maritime accident in the Port of Lagos, Nigeria."[95] The district court found seven of the eight *Lauritzen* facts were not determinative, and resolved the choice of law decision by looking to where the wrongful act occurred—Nigeria—and applying Nigerian law.[96] The negligence in *Kriti* occurred in Nigeria, and the injuries occurred in Nigeria and Turkey.[97] In affirming the district court, the Fifth Circuit recognized "the state where the negligence occurred holds the greatest interest in

---

[91] To be sure, the Court *did* consider where the injury occurred in reaching its ultimate conclusion. Plaintiff's injury occurred over the high seas, meaning the factor did not weigh in favor of applying the laws of either the United States, India, Singapore, or Liberia.

[92] *See, e.g., Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 587 (2d Cir. 2005); *see also Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1175 (11th Cir. 2009) (recognizing where the negligence occurred is not fortuitous—unlike the place of the injury, "a remote area in the sea where the ship happened to have been at the time the effects of the defect came to fruition.").

[93] *Rationis Enterprises, Inc.*, 426 F.3d at 587.

[94] *See Kriti Filoxenia Special Maritime Enterprise v. Yasha H. Mehmet Motor Vessel*, 442 Fed.Appx. 167, 169 (5th Cir. 2011) (quoting the Second Circuit for the proposition that "the state where the negligence occurred holds the greatest interest in regulating the behavior of the parties.").

[95] *Id.* at 168.

[96] *Id.* at 169.

[97] *Id.* at 168-69.

regulating the behavior of the parties."[98] Consistent with this Fifth Circuit precedent, the Court finds where the negligence occurs is an important connection that may properly be considered.

In this case, at least one of the alleged acts of negligence, failure to properly provision the vessel, occurred in the Savannah, Georgia port.[99] The Court is particularly sensitive to the national interests served by the assertion of American maritime law in cases of this kind.[100] Specifically, the United States has a substantial interest in regulating shipboard behavior in its ports and ensuring that ships leaving its ports are properly provisioned. This is a substantial connection that tips the scale in favor of applying United States law.

Second, the Court also considers as an additional factor Plaintiff's undisputed assertion that "there is evidence that EPS-managed vessels, including the M/V STARGATE, made hundreds of visits to U.S. ports during the time period surrounding Plaintiff's injury" and that these port visits should be considered in the Court's choice of law analysis.[101] The Court agrees: because the courts may consider the totality of the circumstances and the Supreme Court considers whether or not a tortious party is a casual

---

[98] *Id.* at 169 (internal quotations omitted).

[99] Plaintiff also alleges in his complaint that Defendant was negligent for failing to provide anti-malaria medicine to Plaintiff before arriving in Gabon, during the stay in Gabon, and after departing Gabon. R. Doc. 1 at p. 19. The allegation that negligence occurred before, during, or after arriving in Gabon is so vague as to encompass the entirety of the Plaintiff's voyage. As such, it is unclear from this allegation exactly where Plaintiff alleges this negligence occurred. The parties do not argue the laws of Gabon should apply to Plaintiff's negligence claims. Moreover, none of the *Lauritzen* factors point toward application of the laws of Gabon. The Court has narrowed its choice of law decision to the United States and Singapore by first applying the delineated *Lauritzen* factors. *See McClelland Engineers, Inc.*, 784 F.2d at 1317.

[100] *Schexnider v. McDermott Intern., Inc.*, 817 F.3d 1159, 1161 (5th Cir. 1987) (recognizing it is appropriate for a district court to consider the national interests served by applying American law) (citing *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970)).

[101] Plaintiff has produced evidence of hundreds of port visits to the United States by Defendant. *See* R. Doc. 232 at p. 16; *see also* R. Doc. 80-1 at pp. 5-17. Conversely, Defendant has not presented any evidence to dispute Plaintiff's evidence.

visitor to the United States, [102] the port visits constitute another contact between the transaction at issue and the United States that may be considered. Because there is evidence of hundreds of port visits in the United States by Defendant, the Court finds Defendant is not a "casual visitor" to the United States.[103] This connection points toward application of United States Law.

Conversely, the only connection Defendant argues exists between the instant controversy and Singapore is Defendant's allegiance to that country. "[I]n light of the national interest served by the assertion of Jones Act jurisdiction," [104] Defendant's allegiance to Singapore, standing alone, does not outweigh the interests of the United States as outlined above. The lack of connection between this controversy and Singapore is apparent: (1) Plaintiff is not a citizen of Singapore; (2) neither the negligence nor the injury occurred in Singapore; (3) EPS, a Singaporean company, did not own the vessel on which Plaintiff worked and suffered injury; (4) EPS, a Singaporean company, was not Plaintiff's direct employer nor was it a party to Plaintiff's employment agreement; (5) EPS is an international ship management company with operations all over the world;[105] and (6) the vessel on which Plaintiff worked did not operate under the flag of Singapore.

Under the *Lauritzen-Rhoditis* analysis, the nation with the greatest interest in the dispute is the nation with the most substantial contacts with the dispute.[106] "There is little doubt that sufficient American interest in a particular transaction can rest on the presence

---

[102] *Rhoditis*, 398 U.S. at 310.

[103] *Id.*

[104] *Id.* at 309.

[105] *Home Page*, E. Pac. Shipping, https://www.epshipping.com.sg/ (last visited Nov. 15, 2022).

[106] *See Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 441 (2d Cir. 1959) (stating that the decision to apply United States law to a particular tort claim by a seaman against his employer "involves the ascertainment of the facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are substantial.").

of one or more important contacts between that transaction and this country," [107]

particularly since the underlying objective of *Lauritzen*'s choice of law inquiry in a case

where recovery under the Jones Act is asserted is to effectuate the Act's liberal

purposes.[108] Considering the totality of the circumstances presented in this case,[109] the

Court concludes the United States has the most substantial contacts with, and the greatest

national interest in, this dispute because: (1) the law of the forum is the United States; (2)

important national interests are advanced by application of United States general

maritime law and the Jones Act; (3) at least a portion of the alleged negligence occurred

in the United States; and (4) Defendant made a significant number of port visits to the

United States. Accordingly, the law of the United States shall govern Plaintiff's Jones Act

and general maritime tort claims.

## II.   Plaintiff's claim for breach of the contractual duty to provide disability benefits under the CBA is governed by the law of the United States.

Plaintiff brings a claim under the January 1, 2016 Collective Bargaining Agreement

("CBA") entered between the International Transport Workers Federation ("ITF") and

Eastern Pacific Singapore.[110] The CBA provides that it applies to persons working aboard

vessels listed in Annex 1.[111] Annex 1, in turn, lists the M/V STARGATE, on which Plaintiff

worked.[112] At the outset, to determine which choice of law analysis should apply, the Court

must determine whether the CBA is a maritime contract.

---

[107] *Phillips v. Amoco Trinidad Oil Co*., 632 F.2d 82, 86 (9th Cir. 1980).
[108] *See Blanco v. Carigulf Lines*, 632 F.2d 656, 657 (5th Cir. 1980) (recognizing "each fact or group of facts must be tested in the light of the underlying objective which is to effectuate the liberal purposes of the Jones Act.") (internal quotations omitted).
[109] *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 310 (1970) (considering the "totality of the circumstances").
[110] The CBA was incorporated by reference into Plaintiff's Seafarer Employment Agreement.
[111] R. Doc. 232-6 at p. 2.
[112] R. Doc. 232-3 at p. 8.

"To ascertain whether a contract is a maritime one, . . . the answer depends upon the nature and character of the contract."[113] The instant contract "set out the standard terms and conditions applicable to all seafarers serving on any ship listed in Annex I."[114] The CBA provides for, *inter alia*, a seafarer's duration of employment, hours of duty, overtime pay, rest periods, and manning duties.[115] Notably, the CBA provides that "[a] seafarer shall be entitled to immediate medical attention when required."[116] The nature of the CBA is directly related to commerce on navigable waters and can be properly classified as a maritime contract. In fact, courts have consistently classified collective bargaining agreement of this kind as "maritime contracts."[117]

Where a contract is "maritime" in nature and there is a dispute as to the choice of law, "[i]n the absence of a contractual choice-of-law clause, federal courts sitting in admiralty apply federal maritime choice-of-law principles derived from the Supreme Court's decision in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and its progeny."[118] The CBA at issue does not include a choice of law provision.[119] Accordingly, the Court's analysis of the choice of law principles derived from *Lauritzen*, *supra*, governs the choice of law determination, resulting in the application of United States law to Plaintiff's claim under the CBA.

---

[113] *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 680 (5th Cir. 2019) (internal quotations omitted).
[114] R. Doc. 232-6 at p. 2.
[115] *Id.* at pp. 3-4, 6.
[116] *Id.* at p. 9.
[117] *See, e.g.*, *U.S. Lines Co. v. Int'l Longshoremen's Ass'n (AFL-CIO)*, 265 F.Supp. 666 (D. Mass. 3/22/1967).
[118] *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) (citing *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296 (9th Cir. 1997)). The Fifth Circuit adopted this analysis in *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.2d 236 (5th Cir. 2009) when deciding the choice of law for contract claims.
[119] *See* R. Doc. 232-6.

### III. Plaintiff's "malicious prosecution" claim against Eastern Pacific Singapore is governed by the law of India.

Plaintiff brings a claim for "an intentional general maritime law tort" arising out of a lawsuit filed in India against Plaintiff by Eastern Pacific Singapore and EPS India, which Plaintiff alleges amounts to "deliberate and malicious efforts to intimidate [Plaintiff] from seeking legal redress in this Court."[120] Plaintiff argues this claim amounts to a maritime tort and the *Lauritzen* factors should apply to resolve the choice of law dispute, which Defendant disputes.[121]

"The test to determine the existence of a cause of action in maritime tort is identical with that applied to determine jurisdiction in admiralty. The Supreme Court, in *Foremost Insurance Company v. Richardson*, held that, as indicated in *Executive Jet*, it is requisite to proof of a maritime tort that there be an injury on navigable waters (the traditional 'locality' test) and, in addition, that the alleged wrong bear a significant relationship to traditional maritime activity."[122] Further, "[i]n applying the first part of the *Executive Jet* test," the Fifth Circuit has instructed courts to "look to where the alleged wrong took effect," rather than to the locus of the allegedly tortious conduct.[123]

Applied to the case at bar, the alleged tort took place in India when Defendant brought a lawsuit against Plaintiff as part of its "deliberate and malicious efforts to intimidate" him from "seeking legal redress in this Court."[124] Because the alleged tort took place on land in India, not on navigable water, it is not a maritime tort.[125] Accordingly,

---

[120] R. Doc. 212 at ¶¶ 101-02.
[121] *See* R. Doc. 232; *see also* R. Doc. 249.
[122] *Wiedemann & Fransen, A.P.L.C. v. Hollywood Marine, Inc.*, 811 F.2d 864, 865 (5th Cir. 1987) (quoting *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1265 (5th Cir. 1986)).
[123] *Id.* at 866.
[124] R. Doc. 212 at ¶¶ 101-02.
[125] *Wiedemann & Fransen, A.P.L.C.*, 811 F.2d at 866.

the maritime tort choice of law analysis under *Lauritzen* is not applicable to Plaintiff's

malicious prosecution claim.[126] Instead, the presumptive rule is that the law of the place

where the wrong occurred applies to tort claims.[127] Because the alleged injury occurred in

India, Indian law applies to Plaintiff's malicious prosecution claim.

## IV.    The Court certifies this Order & Reasons for interlocutory appeal.

A court's decision on choice-of-law is not a final order appealable under 28 U.S.C.

§ 1291.[128] However, a court may order certification of an interlocutory appeal under 28

U.S.C. § 1292(b).[129] Section 1292(b) provides as follows:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order
> involves a controlling question of law as to which there is substantial ground
> for difference of opinion and that an immediate appeal from the order may
> materially advance the ultimate termination of the litigation, he shall so
> state in writing in such order. The Court of Appeals which would have
> jurisdiction of an appeal of such action may thereupon, in its discretion,
> permit an appeal to be taken from such order, if application is made to it
> within ten days after the entry of the order: Provided, however, That
> application for an appeal hereunder shall not stay proceedings in the district
> court unless the district judge or the Court of Appeals or a judge thereof
> shall so order.[130]

---

[126] Relatedly, in his opposition to Defendant's motion for summary judgment on Plaintiff's "malicious prosecution" claim, Plaintiff argues the Court should extend *Smith v. Atlas Off-Shore Boat Service, Inc.* to the facts of this case to apply United State Law. *See* R. Doc. 284. In *Smith*, the Fifth Circuit found a maritime cause of action for wrongful discharge exists, holding that a maritime employer may not "discharge in retaliation for the seaman's exercise of his legal right to file a personal injury action against the employer," and such misconduct constitutes a maritime tort. *Smith v. Atlas Off-Shore Boat Service, Inc.*, 655 F.2d 1057, 1062 (5th Cir. 1981). Plaintiff acknowledges the facts of *Smith* are wholly inapposite to the case at bar. The Court agrees. The limited holding of *Smith* does not apply to this case because Plaintiff does not bring a maritime wrongful discharge claim against Defendant.
[127] *Lykes Bros. S.S. Co. v. Esteves*, 89 F.2d 528, 530 (5th Cir. 1937).
[128] *See Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 385-86 (N.D. Tex. 2020).
[129] *See id.*
[130] 28 U.S.C. § 1292(b).

Under § 1292(b), three criteria must be met before the Court may properly certify an interlocutory order for appeal: (1) there must be a controlling question of law;[131] (2) there must be a substantial ground for difference of opinion; and (3) an immediate appeal from the order must materially advance the ultimate termination of the litigation.[132] It is within the Court's discretion to certify an order for interlocutory appeal under Section 1292(b).[133]

In terms of Section 1292(b)'s requirements, first, this Court's choice of law decision is a controlling question of law because it will "materially affect the outcome of th[is] case." [134] There are five pending motions for summary judgment applying different nations' laws.[135] The laws of the United States, India, Singapore, and Liberia provide vastly different outcomes on summary judgment and Plaintiff's eventual recoveries under his claims. Second, there is substantial ground for difference of opinion in light of the unique and complicated facts of this case. And, third, the Fifth Circuit has recognized one purpose of Congress's adoption of the discretionary mechanism for interlocutory appeals of controlling questions of law is to avoid a situation in which "a district court gets a choice of law question wrong . . . [resulting in the parties being forced to] proceed through

---

[131] A controlling question of law is "one that would require reversal on appeal from a final judgment or would materially affect the outcome of the case." *Jesclard v. Babcock & Wilcox*, No. CIV.A. 82-1570, 1990 WL 182315, at *1 (E.D. La. Nov. 21, 1990) (citing *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)).

[132] 28 U.S.C. § 1292(b); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981).

[133] *Waste Mgmt. of Louisiana, L.L.C. v. Parish*, No. CIV.A. 13-6764, 2014 WL 5393362, at *3 (E.D. La. Oct. 22, 2014) ("This Court has the discretion to certify its Order and Reasons for interlocutory appeal under 28 U.S.C. § 1292(b)."); *In re Chinese Manufactured Drywall Products Liab. Litig.*, No. 09-4115, 2012 WL 4928869, at *7 (E.D. La. Oct. 16, 2012) (same); *Copelco Capital, Inc. v. Gautreaux*, No. CIV. A. 99-850, 1999 WL 729248, at *1 (E.D. La. Sept. 16, 1999) ("The trial judge has substantial discretion in deciding whether or not to certify questions for interlocutory appeal."); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals.").

[134] *Jesclard v. Babcock & Wilcox*, No. CIV.A. 82-1570, 1990 WL 182315, at *1 (E.D. La. Nov. 21, 1990) (citing *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)).

[135] R. Doc. 272 (applying Liberian law); R. Doc. 277 (applying Liberian law); R. Doc. 279 (applying Indian law); R. Doc. 311 (applying United States law); and R. Doc. 356 (applying United States law).

summary judgment and trial—using the wrong law—only to have to do it again once a court of appeals decides the choice-of-law question."[136] As a result, the Court finds an immediate appeal will materially advance the ultimate termination of the litigation—the third requirement under Section 1292(b). In sum, all three requirements for interlocutory appeal exist in this case.

## CONCLUSION

**IT IS ORDERED** that the law of the United States shall govern Plaintiff's tort claims under the Jones Act and the general maritime law.

**IT IS FURTHER ORDERED** that the law of the United States shall govern Plaintiff's claim for breach of the collective bargaining agreement.

**IT IS FURTHER ORDERED** that the law of India shall govern Plaintiff's malicious prosecution claim.

**IT IS FURTHER ORDERED** that this Order & Reasons be certified for interlocutory appeal pursuant to 18 U.S.C. § 1292(b), and that this case be **STAYED** and **ADMINISTRATIVELY CLOSED** pending resolution of an appeal of this Court's choice of law decision. Any party may file a written motion to reopen these proceedings within thirty days after the Fifth Circuit's refusal to allow the appeal to be taken or within thirty days after final judgment is entered in an appeal of the instant choice of law decision.

**New Orleans, Louisiana, this 22nd day of November, 2022.**

_Susie Morgan_

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[136] *Consumer Financial Protection Bureau v. All American Check Cashing, Inc.*, 33 F. 4th 218, 243 (5th Cir. 2022) (Oldham, J., concurring).