UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GANPAT VISHVESHWAR GANPAT,<br><br>    Plaintiff,<br><br>v.<br><br>EASTERN PACIFIC SHIPPING PTE, LTD.,<br>d/b/a "EASTERN PACIFIC"<br><br>    Defendant. | Civil Action No. 18-13556 "E" (4)<br><br>IN ADMIRALTY<br><br>JUDGE SUSIE MORGAN<br><br>CHIEF MAGISTRATE JUDGE<br>KAREN WELLS ROBY |

**EPS' LR 56.2 SEPARATE AND CONCISE STATEMENT OF MATERIAL FACTS WHICH EPS CONTENDS PRESENT GENUINE ISSUES OF MATERIAL FACT TO PLAINTIFF'S STATEMENT [DKT 415-18]: PLAINTIFF'S "GENERAL MARITIME NEGLIGENCE" MOTION [DKT. 415]**

NOW INTO COURT, through undersigned counsel, comes Eastern Pacific Shipping, Pte. Ltd ("EPS") and responds to Plaintiff's statement of uncontested material facts (Dkt. 415-18) as follows. (Exhibits refer to those filed with, or referred to, in EPS' Memorandum Opposing Plaintiff's Motion, and EPS' Material Facts Statement of Contested Facts, unless otherwise noted).

1. Plaintiff signed his Seafarer Employment Agreement on December 22, 2016 and shortly thereafter reported aboard M/V STARGATE as an Able Body Seaman ("AB").

**EPS RESPONSE:** Denied. Plaintiff signed his Seafarer Employment Agreement (SEA) and incorporated pages on December 27, 2016, to begin employment the next day. Ganpat Dep. 26:25-27:6 (**Ex. U**) ("Q. At the top of the page, this Annex 1 to the Seafarer Employment Agreement is dated December 27th, 2016, correct? A. Yes. Q. The commencement date for your employment was to be December 28th, 2016. Do you see that? A. Yes.").

2. During the week of April 1 - 7, 2017, the M/V STARGATE, a vessel managed by Eastern Pacific Shipping Pte Ltd, made a port call at Savannah, Georgia.

**EPS RESPONSE:** Denied. M/V STARGATE made a port call in Savannah, Georgia from April 2 to April 7, 2017. (**Ex. W**) (schedule). EPS provided shoreside technical management services for the vessel's owners. Singh Dep. (Jul. 27, 2022) (**Ex. V**) 80:24-81:3 ("Q. And then number 5: 'As a ship management company, EPS provides technical and commercial management services and support to vessels and their owners.' Right? A. Correct."); *see also* Capt. Nelick (EPS maritime expert) Dkt. 341-1 (Nelick Rep.) at 3.  ("M/V STARGATE was operating under an arrangement between the owners of the vessel (Larchep Shipping) and a ship management company (Eastern Pacific Shipping). This arrangement is quite common . . . [Owners] engage a ship management company to perform shoreside functions for the ship and owners."  "[M]odern seagoing shipmasters, and the crews under them, perform, *for the behalf of owners, operational functions aboard ship*, while shoreside managers take care of technical requirements . . . that are best handled ashore.")  (emphasis added).

3. Teodor Ivanoschi joined M/V STARGATE on April 4, 2017 as her Master.

**EPS RESPONSE:**  Admitted.

4. The Medical Chest Certificate was up for renewal and a request had [sic] made for a new one to be sent while the vessel was in Savannah.

**EPS RESPONSE:** Denied. The ship's Medical Chest Certificate was renewed and reissued on March 21, 2017. Ex. L; *see also* **Ex. H** at ¶ 5 (Ivanoschi Decl.).

5. The requisition was still pending when Captain Ivanoschi's predecessor left the M/V STARGATE.

**EPS RESPONSE:** Denied to the extent that "the requisition" refers to the Medical Chest Certificate. The ship's Medical Chest Certificate was renewed and reissued on March 21, 2017. **Ex. L**; *see also* **Ex. H** at ¶ 5 (Ivanoschi Decl.). The pending requisition in Savannah, Georgia was for medicines to replace medicines that would expire later in the year and did not

prevent M/V STARGATE receiving certification of its Medical Chest. **Ex. H** (Ivanoschi Decl.); *see also* **Ex. C -F**. The only malaria-related item on this list was a box of artemether injections to replace what was coming up for expiry in Aug. 2017. Perlstein Dep. (**Ex. G**) 88:2-92:8 ("Q . . . [T]he only identified item related to malaria prevention or treatment is the artemether injections; correct? A. Correct. . . . Q. Do you know why the artemether injections needed replacement? A. Coming up for expiry. Q When was that expiry going to occur? A. August.").

Admitted that Captain Ivanoschi's predecessor submitted a request on March 28, 2017 – unrelated to the Medical Chest – for unnecessary surplus mefloquine that was pending when Captain Ivanoschi's predecessor left the M/V STARGATE.

6. Several days before the M/V STARGATE departed Savannah, it was noted that certain antimalaria medical supplies were not aboard.

**EPS RESPONSE:** Denied. There were two requisitions.

The ship's Medical Chest Certificate was renewed and reissued on March 21, 2017. **Ex. L**; *see also* **Ex. H** at ¶ 5 (Ivanoschi Decl.). The pending requisition in Savannah, Georgia was for medicines to replace medicines that would expire later in the year and did not prevent M/V STARGATE receiving certification of its Medical Chest. **Ex. H** (Ivanoschi Decl.); *see also* **Ex. C -F**. The only malaria-related item on this list was a box of artemether injections to replace what was coming up for expiry in Aug. 2017. Perlstein Dep. (**Ex. G**) 88:2-92:8 ("Q . . . [T]he only identified item related to malaria prevention or treatment is the artemether injections; correct? A. Correct. . . . Q. Do you know why the artemether injections needed replacement? A. Coming up for expiry. Q When was that expiry going to occur? A. August.").

Captain Ivanoschi's predecessor also submitted a request on March 28, 2017 – unrelated to the Medical Chest – for unnecessary surplus mefloquine that was pending when Captain Ivanoschi's predecessor left the M/V STARGATE.

3

Admitted only that, on April 7, 2017, the Master noted that this requisition for expiring medicines had not arrived in Savannah, Georgia

7. EPS produced the M/V STARGATE's medical logbook for the January 21, 2017 through March 25, 2017 time period.

**EPS RESPONSE:** Admitted only that EPS produced Plaintiff's Exhibit 4 [Dkt. 415-5] during discovery.

8. The medical log book contains entries pertaining to M/V STARGATE's February-March 2017 voyage to Ivory Coast.

**EPS RESPONSE:** Denied. Plaintiff's Exhibit 4 [Dkt. 415-5] contains entries pertaining to M/V STARGATE's voyage to Abidjan, Côte d'Ivoire, from January to March, 2017, under command of Captain Hurcuneyt.

9. This document records that anti-malaria medicine was dispensed to the entire crew.

**EPS RESPONSE:** Denied. Admitted only that Plaintiff's Exhibit 4 [Dkt. 415-5], generated when Captain Hurcuneyt was in command of M/V STARGATE, and for which Plaintiff does not have an authenticating witness, has the words "given for all crew" on dates corresponding to the signature sheet, Exhibit 4 [Dkt. 415-5], which further reflects certain crew received "spray only" and potentially only on certain weeks.

10. No records have been produced by EPS which indicate that Plaintiff was administered anti- malaria medication during the March 18, 2017 to May 7, 2017 time period.

**EPS RESPONSE:** Denied.  EPS has produced an affidavit from Captain Ivanoschi stating that he made sure anti-malarial medicines were available to the crew in this period. **Ex. H**.  Further, EPS obtained Captain Perlstein's handwritten interview notes (Plaintiff's maritime expert), in which he documented Mr. Ganpat's statement to him that Mr. Ganpat took a dose of anti-malaria medication after departing Barranquilla, Colombia for Owendo, Gabon. **Ex. Q**; *see also* **Ex. G** (Perlstein Dep: 153:21-154:3)(Mr. Ganpat admitted to taking one dose of anti-malaria

4

medication on trip to Gabon).

11. No records have been produced by EPS which indicate that Plaintiff was administered anti-malaria medication during the May 7, 2017 and May 20, 2017 time period.

**EPS RESPONSE:** Denied.  EPS has produced an affidavit from Captain Ivanoschi stating that he made sure anti-malarial medicines were available to the crew in this period. **Ex. H**.  Further, EPS obtained Captain Perlstein's handwritten interview notes (Plaintiff's maritime expert), in which he documented Mr. Ganpat's statement to him that Mr. Ganpat took a dose of anti-malaria medication after departing Barranquilla, Colombia for Owendo, Gabon. **Ex. Q**; *see also* **Ex. G** (Perlstein Dep: 153:21-154:3)(Mr. Ganpat admitted to taking one dose of anti-malaria medication on trip to Gabon).

12. Due to the risk of severe disease and death, it is strongly recommended that visitors to areas endemic for P. falciparum malaria take chemoprophylaxis.

**EPS RESPONSE:** Admitted only that Plaintiff Expert Dr. Wisner opines in his report that anti-malarial chemoprophylaxis is recommended for visitors to areas in which malaria is endemic. *See also* **Ex H** (Ivanoschi Decl.) at ¶ 4 (stating that he made chemoprophylaxis available and warned the crew).

13. Chemoprophylaxis is the use of drugs to prevent an infectious disease, or to minimize its severity if a person becomes infected.

**EPS RESPONSE:** Denied as vague. Regarding Attachment A to Plaintiff Ex. 3 [Dkt. 415-4], see Response to Number 12 above.

14. Depending on the specific drug(s) used, anti-malarial chemoprophylaxis starts at least two weeks before traveling to a malaria endemic area, continues while in the endemic area, and continues for an additional 1-4 weeks after departing from the endemic area.

**EPS RESPONSE:** Denied as vague. Regarding Attachment A to Plaintiff Ex. 3 [Dkt. 415-4], see Response to Number 12 above.

15. No records have been produced by EPS showing between May 20, 2017 and May 27,

2017 Plaintiff was administered any emergency medications.

**EPS RESPONSE:** Denied as vague. Mr. Ganpat received emergency medical care on May 27, 2017, when Capt. Ivanoschi sent him to the hospital in Brazil less than 48 hours after learning of his condition. **Ex. R** (Medical SOF). Further, Mr. Ganpat took other medication, including Augmentin BID and Paracetamol Ecopharm, while on the ship. **Ex. X**.; *see also Id.*

16. Medical supplies were not delivered to M/V STARGATE prior to her arrival at Gabon on or about May 1, 2017.

**EPS RESPONSE:** Denied as vague. Various medical supplies, specifically including anti-malaria medications, were delivered to the M/V STARGATE prior to her arrival at Gabon on May 7, 2017 and M/V STARGATE had an adequate supply of anti-malaria medication. **Ex. K** (showing delivery of mefloquine on February 22, 2017).

Plaintiff cites to his Exhibit 7 [Dkt. 415-8] which discusses the Medical Chest. If "medical supplies" refers to the requisition that was pending during M/V STARGATE's port call in Savannah, Georgia related to the medical chest, then EPS responds:

The ship's Medical Chest Certificate was renewed and reissued on March 21, 2017. **Ex. L**; *see also* **Ex. H** at ¶ 5 (Ivanoschi Decl.). The pending requisition in Savannah, Georgia was for medicines to replace medicines that would expire later in the year and did not prevent M/V STARGATE receiving certification of its medical chest. **Ex. H** (Ivanoschi Decl.); *see also* **Ex. C -F**. The only malaria-related item on this list was a box of artemether injections to replace what was coming up for expiry in Aug. 2017. Perlstein Dep. (**Ex. G**) 88:2-92:8 ("Q . . . [T]he only identified item related to malaria prevention or treatment is the artemether injections; correct? A. Correct. . . . Q. Do you know why the artemether injections needed replacement? A. Coming up for expiry. Q. When was that expiry going to occur? A. August.").

18. At no time between M/V STARGATE's departure from Savannah, Georgia, on or about

> April 8, 2017 and her arrival at Rio De Janerio [sic], Brazil, on or about May 25, 2017 was Plaintiff administered any anti-malaria medication.

**EPS RESPONSE:** Denied. Plaintiff told his own maritime expert Captain Perlstein that he took a dose of anti-malaria medication after departing Barranquilla, Colombia for Owendo, Gabon. **Ex. Q**; **Ex. G** (Perlstein Dep: 153:21-154:3). Captain Ivanoschi also made sure anti-malarial medicines were available to the crew in this period. **Ex. H** (Ivanoschi Decl.) at ¶ 4.

> 19. EPS decided it was unnecessary to administer prophylactic anti-malaria medicine to the crew of M/V STARGATE prior to its Gabon port call because

**EPS RESPONSE:** Denied as vague and incomplete. Plaintiff provides no citation to any authority. *See* Fed. R. Civ. P. 56. Further, Plaintiff told his own maritime expert, Captain Perlstein, that he took a dose of anti-malaria medication after departing Barranquilla, Colombia for Owendo, Gabon. **Ex. Q**; **Ex. G** (Perlstein Dep: 153:21-154:3). Captain Ivanoschi also made sure anti-malarial medicines were available to the crew in this period. **Ex. H** (Ivanoschi Decl.) at ¶ 4.

> 19. [No. 19 used a second time in original] On or about May 20, 2017, Plaintiff began experiencing symptoms consistent with a malaria infection.

**EPS RESPONSE:** Denied. Plaintiff first reported illness on May 25, 2017. **Ex. R** and **S** (Medical SOF); **Ex. H** (Ivanoschi Decl.) at ¶8. At sea from Gabon to Brazil, Mr. Ganpat never shared any complaints about being ill prior to arrival in Brazil on May 25, 2017. *Id.* at ¶7. Admitted only upon reporting his illness to the Captain on May 25, 2017 that Mr. Ganpat stated that his "headache and pain" started 4-5 days before. *Id.* at ¶9.

> 20. On or about May 27, 2017, Plaintiff was medically evacuated from M/V STARGATE and hospitalized at Rio De Janeiro, Brazil.

**EPS RESPONSE:** Denied that Plaintiff was "medically evacuated." Admitted that on May 27, 2017 Captain Ivanoschi had the ship's agent drive Plaintiff to the hospital. **Ex. H** (Ivanoschi

Decl.) at ¶10-11.

21. EPS was under a duty to provide "prompt and adequate medical care," which is a species of its absolute duty under the general maritime law to provide "cure" obligation to crew members like Plaintiff.

**EPS RESPONSE:** Denied.  States a legal conclusion and not a material fact.  To an extent a response is required, denied. Under U.S. law, seaman negligence claims are controlled by the statutory provisions of the Jones Act and not general maritime law. Liberia did not adopt U.S. statutory law – or otherwise implement its own statutory version of the Jones Act.   U.S. general maritime law – and therefore Liberian law (to the extent it adopts U.S. general maritime law) – does not – and never has - provided seamen – like Mr. Ganpat - with a general maritime negligence cause of action.  *See Stewart v. Dutra Const. Co., 543 U.S. 481* (2005).  Thus, there is no duty under the general maritime negligence law.

22. According to the M/V STARGATE's Medicines Lists dated March 11, 2017 and May 22, 2017, no malaria test kits were on board M/V STARGATE

**EPS RESPONSE:** Admitted, but none was required and there was no duty to have a malaria test kit onboard.  Dkt. 341-1 at 3 (Nelick Rep – EPS maritime expert.) ("[The] vessel had continuously maintained, . . . as required by various guidelines and regulations, a 'medicine chest' which contains medical supplies, equipment, and references . . . ."); **Ex. L**. (Medical Chest Certificate) (certifying the medical chest "in accordance with the guidelines established by the World Health Organization," and that the "medical chest is in compliance with the Maritime Labour Convention, 2006); **Ex. N** (Vessel classification renewal certificate dated April 6, 2017 confirming vessel compliance with class standards/Liberian law).

23. Due to the risk of severe disease and death, it is strongly recommended that visitors to areas endemic for *falciparum* malaria take chemoprophylaxis. Chemoprophylaxis is the use of drugs to prevent an infectious disease, or to minimize its severity if a person becomes infected. Depending on the specific drug(s) used, anti-malarial chemoprophylaxis possibly starts at least two weeks before traveling to a malaria

endemic area, continues while in the endemic area, and continues for an additional 1-4 weeks after departing from the endemic area."

**EPS RESPONSE:** Denied as vague and duplicative with Plaintiff Material Facts 12-14. Admitted only that Plaintiff Expert Dr. Wisner opines in his report that malarial chemoprophylaxis is recommended for visitors to areas in which malaria is endemic. *See also* **Ex. H** (Ivanoschi Decl.) at ¶ 4 (stating that he made chemoprophylaxis available and warned the crew).

24. According to EPS' Fleet Captain/Director Anil Singh, "Due to the unreasonably dry and cool weather at Gabon at the time, local agents advised that the risk of malaria was low. Antimalarial pills were therefore not required to be distributed during the voyage to Gabon."

**EPS RESPONSE:**  Admitted.

25. Malarial test kits are a required item in M/V STARGATE's medical chest when the vessel entered designated malaria risk zones.

**EPS RESPONSE:**  Denied.  Cited authority – Plaintiff's Exhibit 7 [Dkt. 415-8] - does not support proposition stated. Plaintiff Exhibit 7 is only an inventory of medication onboard the M/V STARGATE.  Malaria test kits were not required on M/V STARGATE.

Princeton Pharmacy did not identify any malaria test kits as a required item necessary for M/V STARGATE's medical chest when it reviewed the list before renewing the M/V STARGATE Medical Chest. *See supra;* **Exhibit D-G**; *see also* Dkt. 341-1 at 3 (Nelick Rep – EPS maritime expert.) ("[The] vessel had continuously maintained, . . . as required by various guidelines and regulations, a 'medicine chest' which contains medical supplies, equipment, and references . . . ."); **Ex. L**. (Medical Chest Certificate) (certifying the medical chest "in accordance with the guidelines established by the World Health Organization," and that the "medical chest is in compliance with the Maritime Labour Convention, 2006); **Ex. N** (Vessel classification renewal certificate dated April 6, 2017 confirming vessel compliance with class

9

standards/Liberian law).

26. Gabon is a year-round malaria "designated risk zone" dominated by the *P. falciparum* malaria strain.

**EPS RESPONSE:** Denied. Cited reference does not exist. In a good-faith search of website Plaintiff apparently intended to cite:

(https://wwwnc.cdc.gov/travel/yellowbook/2024/preparing/yellow-fever-vaccine-malaria-prevention-by-country/gabon#seldyfm1118).

The page does not contain the cited term "designated risk zone."  Further, the cited reference appears to be relevant only to 2024 (i.e. "CDC Yellow Book 2004") and is irrelevant to that material time at issue in this litigation when Mr. Ganpat contracted malaria– 2017.

27. Title 21 of the Liberian Maritime Regulations requires that "Every Liberian Vessel shall carry and maintain an adequate medicine chest bearing in mind the number of persons aboard and the nature and duration of the voyage."

**EPS RESPONSE:** Admitted only a section of Title 21 of the Liberian Maritime Regulations reads as cited.

Dated:  August 6, 2024.

Respectfully Submitted,

| | |
|---|---|
| Michael H. Bagot, Jr., T.A. (#2665) | /s/ J. Stephen Simms |
| Thomas A. Rayer, Jr. (#20581) | J. Stephen Simms (*pro hac vice*) |
| WAGNER, BAGOT & RAYER LLP | Catherine M. Benson (*pro hac vice*) |
| Pan American Life Center – Suite 1660 | Gary C. Murphy (*pro hac vice*) |
| 601 Poydras St. | Simms Showers LLP |
| New Orleans, Louisiana 70130 | 201 International Circle, Suite 230 |
| Telephone: 504-525-2141 | Baltimore, Maryland 21030 |
| Facsimile: 504-523-1587 | Tel: 410-783-5795 |
| E-mail: mbagot@wb-lalaw.com | Fax: 410-510-1789 |
| trayer@wb-lalaw.com | Email: jssimms@simmsshowers.com |
| | cmbenson@simmsshowers.com |
| | gcmurphy@simmsshowers.com |

Counsel for Eastern Pacific Shipping Pte, Ltd.

10