IN THE HONOURABLE SUPREME COURT OF THE REPUBLIC OF LIBERIA
SITTING IN ITS MARCH TERM A.D. 2023

BEFORE HER HONOR: SIE-A-NYENE G. YUOH…..…………………CHIEF JUSTICE
BEFORE HER HONOR: JAMESETTA H. WOLOKOLIE…………ASSOCIATE JUSTICE
BEFORE HIS HONOR: JOSEPH N. NAGBE…………………..……ASSOCIATE JUSTICE
BEFORE HIS HONOR: YUSSIF D. KABA……………….…………ASSOCIATE JUSTICE
BEFORE HIS HONOR: YAMIE QUIQUI GBEISAY, SR.…………ASSOCIATE JUSTICE

| | |
|---|---|
| The Management of Fahnma Shopping Complex by and thru its Manager, Mohammed Kanneh, and all other authorized agents to be identified, of the City of Monrovia, Liberia....…………………………….Appellant | APPEAL |
| Versus | |
| J. Fallah Business Center by and thru its Proprietor/ CEO John Fallah of the City of Monrovia, Liberia …………………………………………………..………Appellee | |
| GROWING OUT OF THE CASE: | |
| J. John Fallah Business Center by and thru its Proprietor/CEO John Fallah of the City of Monrovia, Liberia……………………………………………………..Plaintiff | |
| Versus | ACTION OF DAMAGES FOR WRONG |
| The Management of Fahnma Shopping Complex by and thru its Manager, Mohammed Kanneh, and all other authorized agents to be identified of the City of Monrovia, Liberia……………………………………Defendant | |

Heard: April 5, 2023                    Decided: July 5, 2023

MADAM JUSTICE WOLOKOLIE DELIVERED THE OPINION OF THE COURT

This is an appeal from a final ruling in a declaratory judgment in the court below. When the case was called for hearing, one of counsels who appeared for the appellee, J. Fallah Business Center, made an application on the Court's record praying for a dismissal of the appeal on ground that the appellant Management of Fahnma Shopping Complex failed to perfect its appeal in keeping with Chapter 51.1 of the Civil Procedure Law, 1LCLR. The appellee's counsel stated in his application that final judgment in the case was rendered by the Civil Law Court on June 4, 2021, and the appellant excepted thereto and announced an appeal therefrom; that the appellant filed its bill of exceptions on June 15, 2021, a day outside the mandatory ten-day period for the filing of the bill of exceptions; that the notice of

completion of appeal was filed on June 17, 2021; that based upon the late filing of the bill of exceptions, the appellee filed a motion to dismiss the appeal in the court below but the trial judge denied the motion, ruling that the appellant had already filed its notice of completion of appeal, thereby divesting the court of jurisdiction to act on the motion. Appellee counsel therefore prayed this Court to dismiss the appellant's appeal for its failure to file a bill of exceptions within the time required by the appeal statute.

In resistance to the application of the appellee's counsel, the appellant counsel concurred that final judgment in the case was rendered on June 4, 2021, and it excepted and announced appeal therefrom, filing its bill of exceptions on June 15, 2021. Appellant counsel however stated that the bill of exceptions was filed on June 15, 2021 because on June 7, 2021, the Supreme Court issued a circular suspending court activities for five days for the conduct of the 4th National Judicial Conference which was held from June 7 - 11, 2021; that the five days period for which courts were suspended are not included in the ten days required for the filing of the bill of exceptions because the appellant could not have filed the bill of exceptions during that time when the Civil Law Court was closed for business; therefore, the appellant was within time when it filed the bill of exceptions on June 15, 2021. Appellant counsel prayed the Court to deny and dismiss the application made by the appellee counsel and hear the appeal on the merits.

Having heard arguments on the motion to dismiss, the Court noted the application and the resistance thereto and decided to proceed to hear the arguments on the merits of the appeal stating that it would consolidate its ruling on the motion to dismiss and the appeal.

Relative to the appellee's motion to dismiss the appellant's appeal, this Court says that the appellant does not dispute that the bill of exceptions should have been filed on or before June 14, 2021 and that it filed the bill of exceptions on June 15, 2021, a day later, but contends that the Supreme Court suspended all court activities for five days as of June 7-11, 2021, for the conduct of the 4th National Judicial Conference held at the Ministerial Complex; that this suspension placed a five day toll on all courts activities and in actuality moved the deadline for the filing of the bill of exception to June 19, 2021, and the appellant having filed the bill of exceptions on June 15, 2021, it fell within the time allowed by statute.

The Civil Procedure Law, section 25.2, also provides that "The judge shall of his own motion take judicial notice of public historical facts that are so well known as not to be the subject of reasonable dispute."

The suspension of courts for five days by the Supreme Court for the period June 7-11, 2021, for the conduct of the 4th National Judicial Conference is not in dispute as all activities of the court were suspended for the period of five days. It is only but reasonable then that in such circumstances where the Supreme Court ordered all courts in Liberia closed for the 4th National Judicial Conference, this operated as a toll for the doing of any judicial act during the duration of the closure and the period for filing of the appellant's bill of exceptions was tolled for five days; that is, the appellant had up to June 19, 2021, to file its bill of exceptions. The appellant having filed its bill of exceptions on June 15, 2021, the appellee motion to dismiss the appellant's appeal is therefore denied, and we shall proceed to dispose of the appeal on its merits.

The certified records of this case reveal that on August 27, 2019, appellee J. Fallah Business Center, filed an eleven-count complaint against the appellant Management of Fahnma Shopping Center before the Civil Law Court, Sixth Judicial Circuit for Montserrado County. The appellee stated that it is engaged in the sale of assorted merchandise and complained that it rented a storeroom from the appellant to keep and sell its assorted merchandise; that its tenancy right and occupancy of the appellant's property ended September 2019; that before the expiration of the appellee's lease, that is, sometimes in the month of May, 2019, it informed the appellant about a serious leakage on the roof top of the store rented by the appellee and requested the appellant to carryout repair works on the leaking roof so as to avoid damages to the appellee's goods. Highlighting the urgency associated with repairing the roof and to ensure that appellee goods were not damaged, the appellee offered and elected to proceed with the repair works, but the appellant prevented the appellee from doing so, promising that it would carry out the repairs. In the meantime, the appellee stated that the appellee's proprietor, John Fallah, travelled to the People's Republic of China for additional shipment of goods and upon his return, he opened the premises where the goods were stored and realized that the repairs were not done and several of appellee's goods in the store were damaged from the reported leakage; that the appellee reported the damages to the appellant and turned over the damaged goods to the appellant which even then failed to repair the leakage and thereby caused the appellee to incur additional damages to its goods, including the new goods which the appellee's proprietor imported from the People's Republic of China. The appellee stated that it then filed a criminal action against the appellant before the West Point Magisterial Court where the appellant agreed to relocate the appellee to

another store, but the store in which the appellant relocated the appellee was smaller than the original store leased by the appellee and could not house all the appellee's goods which caused the appellee to leave some of its goods in the leaking store, leading to more damages of the goods in the store.

The appellee in its complaint concluded that as a consequence of the damages, its business operation was disrupted, resulting into its failure to liquidate a loan obligation with Access Bank, and prevented it from carrying out its normal business operation; thereby, leading to a huge loss of income and embarrassment, mental anguish, pain and emotional distress. The appellee therefore prayed the court to hold the appellant liable for general damages in the amount of Fifty Thousand United States Dollars (US$50,000.00) and special damages in the amount of Eighty Thousand United States Dollars (US$80,000.00) to be further increased based on the physical assessment of the appellee's business facility.

The appellant filed its answer to the appellee's complaint along with a motion to dismiss the appellee's case. The appellant stated in its answer that it regularly conducts inspection on its leased and rented properties and carries out routine maintenance and renovation works on these premises; that the appellant did not know of the leakage in the appellee's store until June 2019, when the appellee reported a leakage in its store; that the appellant immediately proceeded to conduct repair work on the roof of the store and thereafter visited the appellee's premises over five times for inspection regarding the success of the work but appellee's store was always closed; that when the appellee's proprietor returned from China and reported of continuous leakage, the appellant immediately relocated the appellee to two other stores, one of which was rent free, and the appellant again commenced renovation works on the leaking store.

The appellant contended further in its answer that the appellee's claim that it shipped goods from the People's Republic of China is supported by no evidence as the appellee did not furnish the appellant any import records to that effect; that upon his return from China, the appellee had filed a criminal action against the appellant at the West Point Magisterial Court claiming the amount of Eight Thousand United States Dollars (US$8,000.00) to Ten Thousand United States Dollars (US$10,000.00) for good said to have been damaged because of the leakage in the store; that the magistrate suggested that the case was not of a criminal nature and that it would be good that the parties sat and settle the matter; that the parties agreed and entered into a

Memorandum of Understanding in which the appellant had the appellee relocated to another store rent free in addition to the store which the appellee occupied and was being renovated; that the appellee's claim for damages is false, speculative and intended to embarrass the appellant; that the dispute between the parties has been settled by the execution of the Memorandum of Understanding that the parties signed and from which the appellee benefited. The appellant therefore averred that the appellee is estopped from acting contrary to the agreement executed by the parties and prayed the court to dismiss and deny the appellee's complaint and filed a motion to dismiss the appellee's action on the doctrine of lis pendis, arguing that though the parties had executed a memorandum of understanding under which the appellant provided the appellee additional stores and offered the appellee Three Thousand United States Dollars (US$3,000.00) growing out of the criminal case filed by the appellee before the West Point Magisterial Court, the case remains pending before the West Point Magisterial Court; hence, the action of damages filed before the Civil Law Court is a fit subject for dismissal.

The appellee filed a reply to the appellant's answer and a resistance to the motion to dismiss filed by the appellant. The reply reiterated and re-emphasized the substance of the appellee's complaint and denied the appellant's assertion about the signing of a memorandum of understanding between the parties and the pendency of another suit before the West Point Magisterial Court. According to the appellee, the Memorandum of Understanding which the appellant purports to have signed with the appellee constituted an admission by the appellant to the appellee's claim of damages and not an agreement between the parties; that there is only one case pending between the parties in a court of law in Liberia, and that is the action of damages filed by the appellee. The appellee prayed the court to grant its claim for damages as stated in its complaint and to also deny and dismiss the appellant's motion to dismiss.

The appellant motion to dismiss was heard by the trial judge and denied. The judge reasoned that the doctrine of lis pendis is inapplicable in the case because the case before the West Point Magisterial Court is a criminal case while the action of damages filed before the Civil Law Court is a civil suit both of which can simultaneously proceed by law. Law issues were subsequently disposed of by the court and the case ruled to a trial by jury to enable the parties present their respective evidence in support of the contentions raised in the pleadings.

At trial, the appellee placed four regular witnesses and three rebuttal witnesses on the stand to testify on its behalf, while the appellant produced four general witnesses on its behalf.

The appellee witnesses essentially testified as follows:

(a)    That the appellee proprietor, John Fallah, observed leakage to the roof of the store he was renting from the appellant, and informed the appellant about said leakage, and the appellant promised to repair the leakage but did not do so until the appellee proprietor travelled to the People's Republic of China;

(b)    that upon the appellee proprietor's return from China, he opened the store and realized that the leakage to the store had not been repaired and that had caused damages to the goods which were in the store prior to his departure; that the appellee filed a criminal action against the appellant at the West Point Magisterial Court, and the magistrate of the court paid a visit to the appellee's store and saw the damaged goods; that the magistrate dismissed the criminal action, advising the appellee to file an action of damages; that though the appellant provided the appellee additional stores for his goods, but this came only after the appellee had suffered much damages to its goods;

(c)    That when the appellee's goods arrived from China, he placed the goods in the shops provided by the appellant but the shops did not have sufficient space to store all the goods, and this prompted the appellee to place the remaining goods in the leaking store which also caused damages to these goods;

(d)    That based upon a writ of eviction issued by the West Point Magisterial Court against the appellee, the sheriff and bailiffs of that court evicted the appellee from the appellant's premises and conducted an inventory of the appellee's goods, and the inventory was subpoenaed and testified to during trial.

In contrast to the appellee witnesses' testimonies, the appellant produced four general witnesses who testified on its behalf.

The appellant's witnesses' testimonies can be succinctly stated as follows:

(a)    That the appellee brought to the attention of the appellant's management that the store which the appellee occupied had a leakage and the appellant management immediately dispatched carpenters to repair the leakage. The appellant management also communicated with all tenants in the appellant complex to report to the management if they were experiencing any leakage after the carpenters' work;

(b)    That the appellee's store was persistently closed after the repair works were done and the appellee's proprietor only came to the appellant management months thereafter to complain that the appellee store still had leakage and that the appellee's goods had

been damaged in consequence thereof; that the appellee told the appellant's management that the total damages to its goods amounted to Two Thousand Five Hundred United States Dollars (US$2,500.00), but the appellant management agreed to make a payment of Three Thousand United States Dollars (US$3,000.00) to the appellee in settlement of the damages;

(c)  That before the payment of the settlement amount could be made to the appellee, the appellee filed a criminal action before the West Point Magisterial Court against the appellant claiming that US$8,000.00 to US$10,000.00 of his goods were damaged; that a settlement was reached at the magisterial court and a Memorandum of Understanding signed by the parties in which the appellant agreed to relocate the appellee to two additional stores with the appellee paying rent for only one of the stores;

(d)  That it is impossible for the appellee to lose the amount of goods claim as special damages since the premises that he rented was a shop and not a store and a shop could not have taken the amount of goods that the appellee claimed was damaged;

(e)  That the appellee continued to do business in the shop that was alleged to be leaking even after the memorandum of understanding was signed and it was not until the appellant, a year after the expiration of the appellee's lease period, sued to have the appellee evicted that he filed this action of damages alleging special damages in the amount of Eighty Thousand United States Dollars (US$80,000.00);

(f)  That there was no inventory of the appellee's goods taken at the time the appellant had the appellee evicted from the premises.

When the parties rested with the production of evidence, the presiding judge, His Honor Scheapolar R. Dunbar, conducted final argument in the case, and thereafter, instructed the trial jury on the points of law to consider in deciding the case. After deliberation, the trial jury returned a unanimous verdict of liable against the appellant, holding it liable to pay the amount of Five Thousand United States Dollars (US$5,000.00) as general damages and Fifty-seven Thousand United States Dollars (US$57,000.00) as specific damages. The appellant filed a motion for new trial contending that the jury verdict is against the weight of the evidence adduced at trial. The motion for new trial was resisted by the appellee and after argument on the motion, the trial court denied the motion and entered final ruling affirming the jury's verdict.

The appellant excepted to the court's final judgment and appealed to this Court for a review thereof. In its bill of exceptions, the appellant argues as follows:

(a) That the trial judge failed to take judicial notice of the fact that there existed a tenant and landlord relationship between the appellant and the appellee for a period of ten (10) years during which time it was the appellee's responsibility to protect the premises leased by it and avoid its goods from spoiling or from being damaged by heavy down pour of rain. Hence, the damages of the appellee's goods should not be attributed to the appellant.

(b) That the trial judge erred by not taking judicial notice that when the appellee informed the appellant of the leakage, the appellant management immediately dispatched its maintenance crew to have the leakage fixed but the appellee closed its store and travelled to the People's Republic of China thereby creating additional gap for rain to damage its goods.

(c) That the trial judge failed to take judicial notice of the court's records to the effect that the appellee had previously instituted an action of criminal mischief against the appellant at the West Point Magisterial Court for the same damaged goods, claiming US$8,000 to US$10,000; that the case at the magisterial court contained the same averments as the appellee's complaint before the Civil Law Court; and that the parties reached a settlement at the magisterial court and signed a Memorandum of Understanding in which the appellant agreed to provide two additional stores to relocate the appellee business but the appellee refused to relocate but rather expanded its business to three stores.

(d) That the appellee was estopped by law from seeking a judgment before the Civil Law Court because the said appellee had benefitted from the Memorandum of Understanding signed by the parties.

(e) That the appellee did not mention in its complaint that an inventory was taken of its goods nor did the appellee attach such inventory to its complaint; that the inventory on which the jury reached their verdict was filed in response to a bill of information filed by the appellant after pleading had rested and the said bill of information was denied, therefore, the denial of the bill of information amounts to a denial of the inventory which was filed in response thereto.

(f) That there was no evidence that the appellant received damaged goods from the appellee.

(g) That the Sheriff's report showed that no inventory of the appellee's goods was taken during the eviction of the appellee from the appellant's premises;

(h) That the appellee did not prove with particularity the special damages allegedly suffered by it to support the jury award.

The determinative issue in this appeal is whether the appellee, plaintiff in the court below, proved by the preponderance of evidence its claim of special and general damages against the appellant, defendant in the court below. We begin our analysis with the appellee's claim of Special Damages and the evidence adduced in support thereof.

The principles controlling the disposition of action of damages are well established in this jurisdiction. The Supreme Court has held that it is not sufficient merely to allege an injury and claim damages therefor, but that the plaintiff seeking an award of damages must prove the injury complained of by the preponderance of the evidence, and that he has been damaged to a sum commensurate with the amount claimed as damages; that absent the best evidence being produced, even the best laid down action will be defeated. *Lonestar Cell Corporation v. Jimmy Wright,* Supreme Court of Liberia, March Term, 2014; *The Management of Comium/Nofavone v. Sumo Flomo,* Supreme Court Opinion, October Term, 2014; *Meridian BIAO Bank v. Mano Industries,* Supreme Court Opinion, October Term, 2012; *Kwaplah International (Liberia) v. The Management of Ecobank (Liberia),* Supreme Court Opinion, October Term, 2022.

With regards to special damages, the Supreme Court has held that special damages are award made through judicial determination with the intent to restore a person who has suffered an injury to the state he was previously situated before the injury. And it is a requirement that to sustain an award of special damages the injury must be measurable and that the plaintiff must specifically plead and prove the damages suffered. *Firestone Liberia Inc. v. G. Galimah Kollie,* Supreme Court Opinion, March Term, 2012; *Firestone Liberia, Inc. v. MARDCO,* Supreme Court Opinion, March Term, 2016.

Our review of the records, including the testimonies and evidence adduced by the parties at trial, leaves no dispute that the appellee's had some goods in his rented shop which were damaged as a result of the leakage to the rented store. The appellant devoted a substantial portion of its pleadings in the court below as well as its bill of exceptions and brief on the fact that a Memorandum of Understanding was signed between it and the appellee in settlement of the case, and pursuant to that memorandum of understanding, the appellee was relocated to two additional stores. The appellant therefore argues that despite the relocation of the appellee to the two stores, the appellee chose to continue to operate in the store said to be leaking, placing additional goods brought in from China in the store after the Memorandum

was signed; that it was not until the appellant sought to have the appellee evicted from the shop in July 2020, that the appellee filed the damage action claiming special damage of US$80,000.00. The appellant claims that the appellee is estopped by law from asserting any further claim against it because the appellee and the appellant had settled the matter. We reproduce below the Memorandum of Understanding executed by the parties and referred to by the appellant:

"MEMORANDUM OF UNDERSTANDING

JULY 8, 2019

Know ye all men by these presents that we the undersigned in person of John Fallah for and on behalf of the John Fallah Business Center and Mohammed Kanneh, on behalf of Fahmah Shipping Center, do hereby agree on the following to wit:

1.  That, the Fahmah Shopping Center have agreed to relocate Mr. John Fallah from where he is currently to another store that is in a better condition since the store he is now occupying is leaking as a result of the heavy down pour of rain.

2.  That Mr. John Fallah has agreed that he be relocated to another store as of the signing of this memorandum of understanding; this relocation is intended to mitigate further damages to his goods.

3.  That, Mr. John Fallah is to remain in the store which he will be given until his rent expires in December 2019.

Signed: John Fallah (Customer)

Signed: Mohammed Kanneh for Fahmah Shopping Complex

**Note:** That the area to be relocated must meet the condition of Mr. John Farmah previous store which he had already paid for."

A review of the referenced memorandum of understanding confirms and supports the conclusion that indeed the appellee suffered damages to its goods on account of leakage to its store. The opening paragraph of the Memorandum of Understanding recites that the appellant management "agreed to relocate Mr. John Fallah from where he was to another store that was in a better condition since the store he was occupying was leaking as a result of heavy down pour of rain."

The Memorandum further states that the relocation of the appellee was intended *"to mitigate further damages to his goods."* [emphasis ours]. Thus, the Memorandum admits two things: 1. That the appellee store was leaking

and as a result thereof, the appellee goods were damaged. This fact was confirmed by His Honor Ernest Bana, who was Magistrate at the West Point Magisterial Court when the appellee filed its criminal action against the appellant. Testifying as the appellee's rebuttal witness, he stated that he along with the parties' lawyers visited the appellee store to have an appreciation of the actual situation complained of by the appellee. He said further that when he entered the appellee store he saw a stack of feet wear molded as a result of rain water and he asked who owned the molded sneakers and was told that they belonged to the appellee; and 2. The Memorandum also confirms that the appellee was given a store where he was to relocate because of the leakage. The appellee's proprietor, John Fallah, testified that after he filed the case at the Magisterial court of West point, the appellee relocated him to another store but the store space was small as compared to the store he occupied and was leaking. We see no evidence that he protested at the time the store was given.

What we must decide is whether the special damages awarded by the trial court conform to the evidence adduced at trial?

The records show that a substantial portion of the special damages claimed by the appellee is based on damages allegedly done to goods which the appellee imported from China after the execution of the Memorandum of Understanding on July 8, 2019. The appellee contends in its complaint that after entering the Memorandum of Understanding with the appellant under which it was provided two additional stores, one of which was rent free, its consignment of new goods arrived from China and was placed in the two shops but the goods exceeded the storage capacity of the shops, and because it had no other alternative storage facility, this compelled the appellee to place the remaining new goods in the leaking shop. The new goods placed in the leaking shop which the appellee alleged was damaged was set and claimed by the appellee in the tune of United States Sixty Three Thousand Dollars (US$63,000.00), and the cost of the previous damaged goods before the Memorandum of Understanding was entered was now set at Seventeen Thousand United States Dollars (US$17,000.00) in the complaint of damages filed. The special damage done to the new goods in addition to the damaged goods which the appellee's proprietor met in the shop upon his return from China, brought the appellee's total special damages claims to the amount of United States Eighty Thousand (US$80,000.00) .

We see that the records are devoid of any evidence of the total monetary value of the goods which the appellee imported from China. The appellee furnished no verifiable instrument that indicates the quantity and monetary value of the goods imported from China. The appellee only attached to its complaint the loading invoice and the bill of lading of the container in which the appellee and many other businesses had goods for importation to Liberia. These instruments confirm that the appellee did import goods to Liberia, but they do not provide a detailed inventory of these goods along with their monetary value. It is important to stress that the appellee is not alleging that all of the goods which it imported from China was damaged since it placed some of the goods in the two shops given by the appellant as per the parties Memorandum of Understanding, and allegedly placing the remaining goods in the store said to be leaking after the two shops were filled. The appellee's core contention is that the remaining portion of the goods that were placed in the shop that was leaking amounted to US$63,000.00.

The question that comes to mind, in view of this contention by the appellee, is how was the total value of this left over portion of the imported goods stored in the leaking shop established? None of the appellee's witnesses give any clue on the total value of goods imported by the appellee from China and the total value of goods that were stored in the leaking store due to the unavailability of sufficient space in the additional shops provided by the appellant. The appellee also adduced no documentary instrument to establish this important aspect of its case.

The law in this jurisdiction is that mere allegations are not proof; such allegations must be substantiated by evidentiary proof at the trial, for it is evidence alone that enables a court to decide with certainty the matter in dispute. *Universal Printing Press, v. Blue Cross Insurance Company, Supreme Court Opinion, March Term 2015, Morgan v. Barclay, [2004] LRSC 22; 42 LLR 259 (2004); American Life Insurance v. Holder et al. 29 LLR 143 (1981).*

More beside, we find it difficult to accept the appellee's argument that it was compelled to store its imported goods in the leaking store because there were no more space left in the store provided to it by the appellant for the storage of its goods. In this case, the appellee proprietor was aware that the roof of the shop which he rented from the appellant was leaking before his departure for the People's Republic of China, and upon his return he saw that the leakage had not been repaired and that some of the goods that

were in the shop were damaged. The parties thereafter entered an understanding that the appellee be relocated and the appellant did give to the appellee another shop to move into. That means that the appellee was to move away from the leaking shop and operate in the new shop, but it opted instead to keep both shops, placing more goods into the shop that leaked and operating therefrom, and it was not until the appellant sought to dispossessed the appellee in a summary proceeding action six months after the appellee's lease expired did the appellee file its claim for damages for loss of its goods in Sixth Judicial Circuit.

We are perplexed by this action of the appellee and wonder why the appellee proprietor even placed new goods in a shop that it was fully aware was leaking and in fact should have moved from? It is inconceivable that the appellee would deliberately elect to place its goods in a store in which it had already suffered damages. Assuming that the additional store provided by the appellant were smaller than the original store as the appellee alleged, this should have been raised at the time the shop was given; this does not exonerate  the appellee from exerting reasonable efforts to prevent further damage to his goods.

Besides, this Court has held that it is a general rule in this jurisdiction that recovery for damages will be denied where persons against whom wrongs have been committed passively suffer economic loss which could have been averted by reasonable efforts, or increased by activity such loss where prudence would require that such activity cease. Air Maroc Inc. v. Counselor Finley Y. Karngar, Supreme Court Opinion, March Term, 2022. Saleh v. Montgomery, 21 LLR, 125, 131 (1972).

We hold therefore that appellee was under a legal duty to exercise reasonable effort in mitigating the damages it had already suffered and not to pursue a course that it knew would only exacerbate and increase the damages suffered by it. Its failure to employ prudence in averting a foreseeable damage to it in addition to the lack of sufficient evidence in the records to support its claim of special damage of United States Sixty Three Thousand Dollars (US$63,000.00) for the new goods said to be imported from China renders its claim for US$63,000 untenable.

The appellee's next claim of special damages pertains to the US$17,000.00 (Seventeen Thousand United States Dollars) damages alleged to have been done to its goods which were in its shop prior to the proprietor's trip to China. The appellee claims that the US$17,000.00 worth of damaged goods was turned over to the appellant and still remains in the appellant's

possession. In response to the appellee's claim, the appellant asserts that the appellee is overstating the amount of damages done to its goods because when the appellee proprietor informed the appellant about the damages that had occurred to its goods, the appellant inquired from the appellee on the total amount of goods that were damaged, and the appellee replied US$2,500.00 (Two Thousand Five Hundred United States Dollars); that the appellant decided to offer the appellee US$3,000.00 (Three Thousand United States Dollars); however, prior to making this payment, the appellee filed a criminal action before the West Point Magisterial Court, stating in the writ that the total damages to its goods amounted to US$8,000.00 to US$10,000.

The records do confirm that the appellee filed an action of criminal mischief against the appellant before the West Point Magisterial Court in which it substantially alleged that the appellant failed to repair the leakage over the appellee's store and this led to damages to the appellee's goods in the tone of US$8,000 to US$10,000; that the parties indeed executed a Memorandum of Understanding in which the appellant agreed to provide the appellee additional store for the appellee's use until the appellee's rent expired in December 2019. The Memorandum states that the purpose for the appellant providing the additional store was to mitigate further damages to the appellee's goods.

While we acknowledge that the criminal action was the wrong form of action chosen by the appellee under the circumstance, yet the averments in that action provides an insight of the appellee's own assessment of the damages done to the goods which were in its store prior to the departure of its proprietor to China. This modicum of evidence in the records reflects the appellee's claim of special damages suffered by the leakage at the time and which writ the West Point Magisterial Court judge threw out as an improper writ, without proof made of the actual amount of goods damaged, especially when the claim was not definite but an assumption of damages between US$8,000 to US$10,000 (United States Dollars Eight to Ten Thousand Dollars). Besides, the appellant states that the appellee had said to it at the time that its loss was US$2,500, and appellant was prepared to offer US$3,000 as settlement before the appellant filed its writ at the magisterial court claiming US$8,000 to US$10,000.

The legal principle controlling the disposition of action of damages is that it is not sufficient merely to allege an injury and claim damages therefor, but that the plaintiff seeking an award of damages must prove the injury

complained of by the preponderance of the evidence, and that he has been damaged to a sum commensurate with the amount claimed as damages. That in the instant case, the appellee also presented no evidence supportive of his claim of Seventeen Thousand United States Dollars and therefore the award of special damages of United States Fifty Seven Thousand Dollars (US$57,000) awarded by the jury as total damages cannot lie.

As states *supra,* special damages are award made through judicial determination with the intent to restore a person who has suffered an injury to the state he was previously situated before the injury. And it is a requirement that to sustain an award of special damages the injury must be measurable and that the plaintiff must specifically plead and prove the damages suffered.

In the instant case, the evidence not been supportive of the trial jury's award of special damages in the amount of United States Fifty Seven Thousand Dollars (US$57,000), said award cannot be upheld.

However, the records having established that the appellant conceded that an unspecified quantity of appellee's goods was damaged as a result of the leakage and the appellee having suffered inconvenience and mental anguish as the result of the damage to his goods, the jury's award of general damages of US$5,000.00 (Five Thousand United States Dollars) is upheld but with the modification that the amount is increased to US$10,000.00 (United States Ten Thousand Dollars).

WHEREFORE AND IN VIEW OF THE FOREGOING, the final ruling of the lower court is affirmed but with the modification stated above. The Clerk of this Court is ordered to send a Mandate to the trial court to resume jurisdiction and give effect to this Judgment. Costs are ruled against the appellant. AND IT IS HEREBY SO ORDERED.


**WHEN THIS CASE WAS CALLED FOR HEARING COUNSELLORS IDRIS S. SHERIFF, ANTHONY D. MASON AND HERBERT GLASGOW APPEARED FOR THE APPELLANT. COUNSELLORS JAMES N. KUMEH AND AUGUSTINE C. FAYIAH APPEARED FOR THE APPELLEE.**