# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KHOLKAR VISHVESHWAR GANPAT, | * | CIVIL ACTION |
| *Plaintiff,* | * | |
| | * | NO.  2:18-cv-13556 "E" (4) |
| VERSUS | * | |
| | * | JUDGE SUSIE MORGAN |
| EASTERN PACIFIC SHIPPING PTE. LTD., | * | |
| d/b/a "EPS", | * | CHIEF MAGISTRATE JUDGE |
| *Defendant.* | * | KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM IN SUPPORT OF MOTION IN LIMINE - MEDICATION</u>

**MAY IT PLEASE THE COURT:**

## I.  INTRODUCTION

Vishveshwar Ganpat Kholkar ("Plaintiff") seeks an Order *in limine* excluding from trial all expert testimony, fact witness testimony, cross-examination questions, demonstrative evidence,  and opening/closing statements or argument by defense counsel that Eastern Pacific Shipping Pte  Ltd. ("Defendant") provided  prophylactic, curative, or emergency treatment  anti-malaria medication to Plaintiff while M/V STARGATE  (1) was en route to Owendo, Gabon, and (2) after departure from Gabon, when the vessel was en route to Rio de Janeiro, Brazil.

Treaties, Liberian law and Liberian regulations mandated that an accurate chronological medical log book be kept in which the Medical Officer duly recorded all medicines give to Plaintiff, the date, the medicine, and the dose.  No evidence exists that EPS provided Plaintiff with anti-malaria medications before or after the Owendo, Gabon, port visit.  Therefore, EPS should not be permitted to make that claim at trial.

## II.  APPLICABLE STANDARD OF LAW

"The purpose of a motion *in limine* is for the Court to rule on certain evidentiary issues before trial." *Robert v. Maurice*, No. CV 18-11632, 2020 WL 4035523, at *10 (E.D. La. July 17, 2020).  Motions *in limine* are not limited to jury trials. *Dauzat v. Weeks Marine, Inc.*, No. CV 14-3008, 2016 WL 3186900, at *2 (E.D. La. June 8, 2016)(Judge Morgan)("[m]otions *in limine* may be as useful in bench trials as they are in jury trials. The authority for the rulings is not limited to jury trials.").

"Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action." [1]  "While all relevant evidence is admissible, the Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of 'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'"

"While exclusion of evidence under should not used sparingly, "district courts are afforded wide discretion in determining the relevance and admissibility of evidence under Fed. R. Evid. 401 and 402, and a district court's ruling on admissibility under Rule 403's balancing test will not be overturned on appeal absent a clear abuse of discretion." [2]

Here, there is overwhelming evidence (*i.e.*, EPS' discovery responses, deposition transcripts, etc.) that no anti-malaria medication was provided before or after the early May 2017 Owendo, Gabon, port call where Plaintiff was infected with the virulent and often lethal *Plasmodium*

---

[1] *Babin v. Plaquemines Par.*, 421 F.Supp. 3rd 391, 395 (E.D. La. 2019).

[2] *Id.*

*falciparum* form of malaria. [3]

### III.  EPS WAS REQUIRED BY LAW TO KEEP A MEDICAL LOG

Plaintiff, in "bullet point" fashion, identifies below the evidence that an accurate medical log

be kept which documented by date, medicine, and dose all anti-malaria medications he received.

Following that evidence, Plaintiff will discuss discovery propounded to EPS which sought the

medical log book subsequent to the Savannah port call and EPS' several responses that "none" exist.

Further, Plaintiff will attach exhibits showing the factual and/or legal correctness of his argument..

- Title 21 of the Liberian Code of Laws of 1956 (Liberian Maritime Law) at § 296, Duties of the Master, provides:

  > **"The Master shall, among other, have the following duties:**
  >
  > (7)  **To see that the vessel's log books are properly and accurately kept"**;

- Title 21 Maritime Law, The Liberian Maritime Regulations, § 10.296 (2)(d), Master's Duties and Responsibilities, Required Log Books, Medical Log, provides:

  > **"Each such Liberian vessel shall keep a medical log book wherein shall be entered every case of illness or injury happening to any member of the officers, crew or passengers, the nature thereof and the medical treatment."** [4]

- The International Medical Guide for Ships, 3rd Ed., Administering medicines - basic principles, provides:

---

[3] In EPS' May 23, 2022 Answers to Interrogatories at p. 7, its corporate Director Anil Singh claimed five years after the fact and with no first hand knowledge that *"Typically, anti-malaria pill would be laid out on a table before lunch or dinner and be readily available to all crew members, if they wish to take them."* Unfortunately, Mr. Singh does not identify the vessel on which this alleged practice occurred, much less how he would ever know this actually happened five years earlier on one of over 100 vessels managed by EPS.

[4] *See* Exhibit 2 at p. 31.

> **"When medicine has been taken by the patient, record the date, time of day, name of the medicine, amount given, and route of administration."** [5]

- The International Medical Guide for Ships, 3rd Ed., Basic Rules for Managing the Medicine Chest - Keeping Records, provides:

  > **"A record of treatment given to any person on board, including the type and quantity of any medicines administered must be entered in the ship's log."** [6]

- The International Medical Guide for Ships, 3rd Ed., Specific Categories of Medicines - Antimalarial Medicines, provides:

  > **"As each tropical or sub-tropical region requires its specific malarial prophylaxis, the master and ship owner must decide, in planning the voyage to potentially malarious areas, what antimalarial medication should be carried on board. The WHO website ([http://www.who.int/en/](http://www.who.int/en/)) can be consulted for recommended malaria prophylaxis in specific countries."** [7]

- The International Medical Guide for Ships, 3rd Ed., Annex A, provides:

  > "**Information about a seafarer's injury or illness should be recorded** on standardized forms to ensure that all important medical details are provided to medical care providers, whether on board or shore-based, or to officials, such as coroners and the police." [8]

- The Republic of Liberia, Maritime Authority, in Maritime Notice MLC-005, Rev. 2/17, Purpose, provides:

  > **"This notice sets forth the Administration's requirements, to ensure that seafarers' work environment on board ships promotes occupational safety and health; to protect the health of seafarers and ensure their prompt access to medical care on**

---

[5] *See* Exhibit 3 at p. 323.

[6] *Id.*, at p. 423.

[7] *Id.*, at p. 427.

[8] *Id.*, at p. 455.

**board ship.....”** [9]

- The Republic of Liberia, Maritime Authority, in Maritime Notice MLC-005, Rev. 2/17, Medical Care on Board Ship and Ashore, at § 3.1.6, provides:

  **“Every ship shall maintain a medical log for recording all medical treatment on board and ashore.”** [10]

- The Republic of Liberia, Maritime Authority, in Maritime Notice MLC-005, Rev. 2/17, Medical Care on Board Ship and Ashore, at § 3.1.1.1 provides:

  **“All ships shall carry on board the current edition of the WHO publication ‘International Medical Guide for Ships’.....”** [11]

## IV. PLAINTIFF DIDN’T RECEIVE PRE-GABON ANTI-MALARIA MEDICATION

The above regulations required EPS to carefully log all medications dispensed to Plaintiff.[12] As the attached medical log book records show, Plaintiff received prophylactic anti-malaria medication before the Cote D-Ivoire port call in West Africa.  But EPS has produced no medical log book records for the time period after M/V STARGATE departed Savannah and until it arrived at Rio de Janeiro.  In response to several or Plaintiff’s record production requests, EPS said “none.” If no records exist documenting the administration of any anti-malaria medication to Plaintiff, EPS should not be permitted to claim at trial that it did provide medication to Plaintiff.

---

[9] *See* Exhibit 4 at p. 1/12.

[10] *Id*., at p. 2/12.

[11] *Id*., at p. 4/12.

[12] This means that even if the medication was left on tables in the crew mess area - which is absurd and did not happen - M/V STARGATE’s medical officer was still required to make entries in the medical log book detailing who got the medicine, the date, the dose, etc.  No such entries exist and, of course, EPS has claimed that “unseasonable dry and cool weather” during anticipated Gabon port call made the administration of anti-malaria medicine unnecessary.

- M/V STARGATE made a port call at Abidjan, Cote D'Ivoire, West Africa, from February 14, 2017 through March 8, 2017. [13]

- M/V STARGATE's medical log book is required to include a record of treatment given to any person on board, including the type and quantity of any medicines administered pursuant to the regulations cited *supra*.

- This medical log book shows that the vessel's crew received anti-malaria medication from January 21, 2017 through March 23, 2017. This means that prophylactic anti-malaria medication began *three weeks before* the Cote d'Ivoire port call *and continued for one week after the vessel departed.* [14]

- Specifically, M/V/STARGATE's crew received Chloroquine from February 21, 2017 until February 25, 2017. From March 4, 2017 until March 23, 2017, the crew received Mefloquine. [15]

- M/V STARGATE departed Cote D'Ivoire on March 8, 2017 and arrived at Savannah, Georgia, on April 2, 2017. [16]

- M/V STARGATE departed Savannah on April 7, 2017, approximately one month before the Gabon port call. [17] No records exist showing that a course of prophylactic anti-malaria medications was provided to the crew.

- M/V STARGATE made a port call at Owendo, Gabon, West Africa, from May 7, 2017 through May 11, 2017, departed on May 11, 2017, and arrived at Rio de Janeiro on May 25, 2017. [18]

- If EPS had administered any anti-malaria medication to Plaintiff before, during, or after the Gabon port call, Liberian regulations required that it be duly recorded in the medical log book.

---

[13] *See* Exhibit 5.

[14] *See* Exhibits 6L and 6R, which are the left and right pages of the medical log book for the August 10, 2016 to March 23, 2017 time period.

[15] *Id.*

[16] See Exhibit 5.

[17] *Id.*

[18] *Id.*

### V. WHEN PLAINTIFF REQUESTED COPIES OF MEDICAL LOG BOOK RECORDS, EPS RESPONDED WITH THE ANSWER "NONE."

**A.      Production requests.**

EPS only produced portions of M/V STARGATE's medical log for the time period ending on March 23, 2017, a date 10 days before arrival at Savannah.  This document recorded the administration of anti-malaria medication for only the Cote D'Ivoire port visit.  The ending date of this record, March 23, 2017, was 44 days before the Gabon port visit.  Naturally, Plaintiff asked EPS to produce the medical records relating to that port visit. [19]

Indeed, when documents pertaining to the voyage to Gabon were requested, EPS' May 23, 2022, responses to Production Request Nos. 3, 4, and 5 were as follows: "none."

**REQUEST NO. 3:**

Please produce complete and legible copies of all documents/records showing Plaintiff was administered any of the stand-by emergency medication listed in Request No. 2 when he became ill aboard the M/V STARGATE.

**RESPONSE:**

Subject to EPS' General Objections, supra, EPS states, **none.**

**REQUEST NO. 4:**

Please produce complete and legible copies of all documents/records showing Plaintiff was administered Anti-malaria Medication during the time periods listed below:

a.      Between March 18, 2017 and May 7, 2017; and

b.      Between May 7, 2017 and May 20, 2017.

**RESPONSE:**

---

[19] See Exhibit 7 for these requests for production and EPS' responses.

Subject to EPS' General Objections, supra, EPS states, **none.**

**REQUEST NO. 5:**

Please produce complete and legible copies of all documents/records showing between May 20, 2017 and May 27, 2017, Plaintiff was administered any of the stand by emergency medications listed in Request No. 2.

**RESPONSE:**

Subject to EPS' General Objections, supra, EPS states, **none**.

**REQUEST NO. 8:**

Please produce complete and legible copies of M/V STARGATE's captain's and medical officer's logs for the January 1, 2017 to July 1, 2017 time period.

**RESPONSE:**

Subject to EPS' General Objections, *supra*, responsive non-privileged documents from January 1, 2017 through May 27, 2017 will be produced.

In EPS' July 22, 2022 response to Plaintiff's third set of production, requests, the

following response was made by EPS:

**REQUEST NO. 23:**

Please produce a complete copy of M/V STARGATE's ***Medical Log Book*** from April 2017 up to and including the period of Plaintiff, Vishveshwar Ganpat Kholkar's discharge in Brazil on May 27, 2017.

**RESPONSE:**

Subject to and without waiving its general objections, EPS states that it has produced all responsive documents. *See, e.g.*, EPS Response to Request for Production No. 8 (May 23, 2022).

This response was false and misleading. EPS stated "none" in its May 23, 2022 responses

(*See* Exhibit 7) to requests that it produce medical logs relating to the Gabon port call. Then on June

22, 2022, EPS stated that it has "produced all responsive documents." In fact, EPS had previously

produced no responsive documents whatsoever and had answered "none."

**B.    Requests for Admission.**

Plaintiff also propounded requests for admission to EPS.  In EPS' May 23, 2022 responses to one set of requests for admission, EPS admitted it had not given Plaintiff any anti-malaria medication before or after the Gabon port call. [20]

**REQUEST NO. 3:**

None of the stand-by emergency medication listed in Request for Admission No. 2 was administered to Plaintiff when he became ill in 2017 onboard the M/V STARGATE.

**RESPONSE:**

**Admit.** The Plaintiff's health issues were reported on May 25th, but his symptoms were consistent with heatstroke, food poisoning, or a number of other conditions. He was not administered medication for the treatment of malaria, which were on board, because it was not known that he had contracted malaria.

**REQUEST NO. 4.**

Plaintiff was not administered Anti-malaria Medication during the time periods listed below:

a.    Between March 18, 2017 and May 7, 2017; and

b.    Between May 7, 2017 and May 20, 2017.

**RESPONSE:**

**Admit.** No prophylactic anti-malaria medication was administered between 19 March 2017 and 20 May 2017 because the Vessel was calling ports – namely New Amsterdam, Savannah, Barranquilla and Gabon - where the risk of malaria was low or advised to be low.  However, it is submitted that there were sufficient prophylactic malaria medicines on board and these were available to crew.

---

[20] *See* Exhibit 8.

**REQUEST NO. 5.**

Plaintiff was not administered with any of the stand-by emergency medication listed in Request for Admission No. 2 between May 20, 2017 and May 27, 2017.

**RESPONSE:**

**Admit.** See response to Request for Admission No. 3.

**C.    Deposition Testimony by EPS' own Medical Expert.**

EPS's own Rule 26 medical expert, Dr. Charlie Easmon, testified that there was no evidence that Plaintiff received any anti-malaria medication before or after M/V STARGATE made its port call at Gabon:

Q.    So did you see evidence of that, Doctor, between April of 2017 and May of 2017 that he was given malaria prophylaxis aboard ship? Yes or no?

A.    I don't recall seeing any evidence.

Q.    Okay. Why don't you recall? Wouldn't that be important in coming to your conclusion as to know whether Mr. Kholkar received medication for malaria on board before he got sick?

A.    The point is that he was diagnosed with malaria when he got to the hospital in Brazil; and, to my knowledge, the malaria was at a high level of parasite level, parasitemia for which intravenous medication was required.

To get to that level of malaria, that level of parasitemia, to be that sick, it's very unlikely that you were on prophylaxis prior. [21]

\*    \*    \*    \*    \*

Q.    Okay. But my question to you is -- I wanted to make sure, because I know once he got to the hospital in Brazil he got the proper treatment for malaria -- but my question to you. There is no evidence from any shipboard record that you are able -- that you reviewed that Mr. Kholkar received any prevention malaria medication or treatment malaria medication at any time between April of 2017 and May of 2017, correct, sir?

---

[21] See Exhibit 10 at pp. 64-65.

A.     That is correct. [22]

## VI. CONCLUSION

There is no evidence that Plaintiff was ever provided with any anti-malaria medication before or after M/V STARGATE's port call at Owendo, Gabon.  Therefore, an order *in limine* should be granted which prohibits EPS from introducing or seeking to introduce at trial any expert testimony, fact witness testimony, cross-examination questions, demonstrative evidence,  and opening/closing statements or argument that:

(1.)     EPS provided any prophylactic anti-malaria medication to Plaintiff while M/V STARGATE  was en route to Owendo, Gabon; or

(2.)     EPS provided any curative, or emergency treatment  anti-malaria medication to Plaintiff while M/V STARGATE was en route to Rio de Janeiro, Brazil.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Pedro P. Sotolongo*
Pedro P. Sotolongo, TA, FL Bar #0584101
SOTOLONGO, P.A.
1000 5th Street, Suite 402
Miami Beach, FL 33139
Telephone: (305) 415-0073
E-Mail: psotolongo@sotolongolaw.colm
**Trial Counsel for Plaintiff, pro hac vice**

*/s/ Richard M. Martin, Jr.*
Richard M. Martin, Jr., TA, LA Bar #08998
Lamothe Law Firm, LLC
400 Poydras Street, Suite 1760
New Orleans, LA 70130
Telephone: (504) 704-1414
E-Mail: rmartin@lamothefirm.com
**Local Counsel for Plaintiff**

</div>

---

[22] Id., at pp. 72-72

And:    */s Alejandro J. Gonzalez*
             Alejandro J. Gonzalez, FL Bar #015293
             Law Office of Alejandro J. Gonzalez
             199 E. Flagler Street, Suite 610
             Miami, FL 33131
             Telephone: (877) 413-4448
             E-Mail: alex@agonzalezlaw.com
             ***Counsel for Plaintiff pro hac vice***