UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KHOLKAR VISHVESHWAR GANPAT, | Civil Action No.   18-13556 "E" (4) |
| Plaintiff, | IN ADMIRALTY |
| v. | JUDGE:  SUSIE MORGAN |
| EASTERN PACIFIC SHIPPING PTE, LTD., d/b/a/ "EPS" | MAG. JUDGE:  KAREN WELLS ROBY |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE OR LIMIT
EXPERT TESTIMONY OF MR. STEWART, CAPTAIN PERLSTEIN, AND DRS.
FOURNIER, WISER, AND FIGLEY**

Defendant, Eastern Pacific Shipping Pte, Ltd. ("EPS"), submits this memorandum in
support of its motion *in limine* related to several of Plaintiff's designated experts and seeks to:

(1) Exclude the testimony of disbarred District of Columbia/New York attorney Mr. John
W. Stewart, Jr.; and

(2) Limit the testimony of Captain Jeffrey Perlstein, Dr. Arthur Fournier, Dr. Mark Wiser,
and Dr. Charles Figley as further detailed herein.

**I.      Background**

This Court is familiar with Plaintiff's allegations against EPS.  Briefly, for purposes of this
motion, Plaintiff served as an AB seafarer on the M/V STARGATE.  He contracted malaria while
in Gabon; and he became ill when the ship arrived in Brazil from Gabon.  Plaintiff claims that the
captain and/or second officer of the M/V STARGATE failed to provide him with anti-malarial
medication during a voyage from Colombia to Gabon, and further failed to diagnose and provide
proper medical treatment after he fell ill.  *See generally* Plaintiff's Complaint [Dkt. 411, also
adopting and incorporating Dkt. 1 and Dkt. 212].

As a complication of malaria, eight of Plaintiff's toes were partially amputated due to a gangrene infection. Over three years after contracting malaria, he complained of left hip pain and was diagnosed with avascular necrosis of the left hip. Plaintiff relates his left hip condition to the malaria exposure.

Liberian law control Plaintiff's maritime tort and contract claims. [Dkt. 406].

Plaintiff has retained a plethora of experts to testify at trial. *See* Plaintiff's Expert Witness Disclosure, attached hereto as **Exhibit 1.** This motion focuses on five proffered experts:

(1) Mr. John W. Stewart, Jr.: Mr. Stewart is Plaintiff's designated Liberian law expert. **Exhibit 2** – Stewart Expert Report and Resume. Mr. Stewart is a disbarred attorney in the District of Columbia and New York for acts of moral turpitude. *In re Stewart*, 953 A.2d 1034, 1034 (D.C. 2008); *In re Stewart*, 61 A.D.3d 60, 61, 872 N.Y.S.2d 328 (2009); *see also* **Exhibit 3**, DC and NY attorney look-up; **Exhibit 4**, DC Board of Professional Responsibility Ad Hoc Hearing Committee Report and the Report and Recommendation of the Board on Professional Responsibility.

Further, Mr. Stewart is only a Liberian "Attorney-At-Law" - a Liberian attorney with that is not authorized to practice before the Liberian Supreme Court – as opposed to a fully qualified "Counsellor-At-Law."

As detailed further herein, Mr. Stewart lacks the requisite qualifications to render an opinion on Liberian law, and even if qualified, his testimony and opinions are not trustworthy and should not be relied upon by this Court – even under the broad discretion afforded to the Court under Fed. R. Civ. P. 44.1 to determine foreign law.

EPS moves to exclude Mr. Stewart's opinion in its entirety.

(2) Captain Perlstein, a maritime expert; Dr. Fournier, an internal medicine physician; Dr. Wiser, a Ph.D; and Dr. Figley, a psychologist: Again, EPS does not move to exclude these expert

2

opinions in their entirety. The disclosed opinions, however, have flaws. Each expert gives impermissible legal conclusions - disguised as opinion - and otherwise invades the province of the Court. Further, Drs. Fournier and Dr. Wiser are not qualified to testify regarding the Liberian standard of care applicable to mariners aboard Liberian flagged ships. Plaintiff's expert psychologist, Dr. Figley, gives a medical opinion regarding Plaintiff's hip, which is obviously outside his field of expertise. Finally, Captain Perlstein apparently intends to give opinions that are not contained in his report, despite having adequate opportunity to supplement his opinions/report initially issued in July 2022 – which he never did.

Although EPS anticipates additional bases to exclude may be asserted at trial, at this time EPS only seeks exclusion of expert testimony in two areas.

First, it seeks an order prohibiting these experts from offering legal conclusions and otherwise invading the province of the Court and/or jury.

Second, it seeks an order prohibiting the medical experts from testifying outside their fields of expertise, including (1) regarding the standard of care applicable to the ship's crew; (2) that any crewmember's acts or omissions fell below the applicable standard of care; and  (3) directly or by implication testifying that any crewmember acted negligently. In other words, Dr. Fournier should be confined to internal medicine opinions, Dr. Wiser should be confined to malaria opinions, and Dr. Figley should be confined to psychological opinions. None should be giving opinions on negligence, fault, or liability as it relates to the crewmembers of the M/V STARGATE or EPS.

In addition to being outside their fields of expertise, any such testimony would be unnecessarily cumulative of testimony from Plaintiff's expert mariner, Captain Perlstein and any Liberian law opinion that this Court might consider of Mr. Stewart (and EPS' Liberian law expert) – though again, EPS believes Mr. Stewart should be excluded in his entirety.

Third, EPS seeks exclusion of opinions of Captain Perlstein that were not in his original report.

## II.    Legal Standard

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter. *Wagoner v. Exxon Mobil Corp.,* 813 F. Supp. 2d 771, 779 (E.D. La. 2011). If the expert's qualifications are found to be sufficient, the Court then must examine whether the expert's opinions are reliable and relevant. *Daubert* provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Under *Daubert,* courts, as gatekeepers, are tasked with making a preliminary assessment of whether the expert's testimony is relevant and reliable. *Daubert,* 506 U.S. 579, 592-93 (1993). The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

Neither Rule 702 nor Rule 704 permits expert witnesses to offer conclusions of law. *Owen v. Kerr McGee Corp.,* 698 F.2d 236, 240 (5th Cir. 2001). While an expert witness is permitted to give his opinions on an "ultimate issue" of fact, assuming he is qualified to do so, he is not permitted to make credibility determinations or offer conclusions of law. Fed. R. Evid. 704. The Fifth Circuit has repeatedly held that Rule 704 does not authorize experts to render legal opinions or reach legal conclusions. *Spikes v. McVea,* 2018 WL 6448846 *1 (E.D. La. 2018). Moreover,

4

testimony that tells the jury what conclusion to reach or merely states a legal conclusion is not helpful to the jury. *Id.*

Additionally, Fed. R. Evid. 403 requires the exclusion of evidence that is needlessly cumulative.

## III.    Argument

### A.    Mr. John W. Stewart's purported expert testimony should be excluded.

Again, Mr. Stewart is a disbarred attorney. In describing Mr. Stewart's conduct that lead to disbarment, the DC Board of Professional Responsibility Ad Hoc Hearing Committee (at page 106) noted:

> **The scope of Respondent's [*i.e.* Mr. Stewart's] wrongdoing, including the number of instances of <u>dishonesty, misrepresentations</u>, and <u>gross incompetence</u> and negligence** in the handling of client matters, over a course of several years, **is breathtaking. Respondent** took clients' funds to which he was not entitled, <u>**altered documents and filed them with the court**</u>, <u>**lied to his clients**</u> **about the status of their cases**, failed to communicate and respond to his clients' inquiries, and **refused to comply with valid subpoenas and/or orders issued by** Bar Counsel, the Board, and **the Court**. He further submitted checks to the court knowing that he had insufficient funds in his trust account to cover them. **We take into account the number of serious ethical violations perpetrated, the lengthy time over which the wrongdoing occurred, and the number of clients prejudiced by Respondent's conduct**, among other factors, in determining that disbarment is the appropriate sanction

**Exhibit 3**, DC Board of Professional Responsibility Ad Hoc Hearing Committee Report

<u>*Mr. Stewart is not adequately qualified to serve as an expert*</u>

The above professional responsibility report [Exhibit 3] documented Mr. Stewart's "gross incompetence," as an attorney. While his disbarment relates to his unscrupulous conduct as a U.S. attorney, it is unclear why Mr. Stewart's practice as a "Liberian attorney," should be viewed any

differently.  *See also* **Exhibit 5**, EPS Liberian Law Expert Sannoh dated November 12, 2024 (noting Mr. Stewart cites to inapplicable non-maritime cases that are not related to the matters at issue here; identifying portions of Stewart's opinion that are "flawed, inconsistent, and contradictory" with other parts of Stewart's opinion).

The two expert opinions that Mr. Stewart apparently provided – "in the 1990s" (*i.e.* approximately 30 years ago) - occurred well before his 2008 disbarment.  Further, Mr. Stewart is silent on whether these past opinions specifically dealt with <u>Liberian</u> maritime law -as is at issue here.

Finally, Mr. Stewart is only an "Attorney-At-Law" and not a Liberian "Counsellor-At-Law". **Exhibit 2**, (Mr. Stewart signing report as "Attorney-at-Law"); compare **Exhibit 5**, (EPS Liberian law expert signing report as a "Counsellor-At-Law," and discussing the distinction in paragraph 10 including the requirement to pass a "moral and ethical fitness" examination).  This distinction also underscores why Mr. Stewart in not qualified to serve as an expert witness on Liberian law- he has not established the competence necessary to pass the Liberian Supreme Court Bar Examination. As the Liberian National Bar Association explains:

> Counsellors are those lawyers who after five years of practice of law in Liberia, have sat, and passed the Supreme Court Bar Examination; and have therefore, been qualified and admitted in the Honorable, the Supreme Court of Liberia Bar. Such a lawyer can practice law before all courts in Liberia including the Supreme Court. **Attorney, however are not permitted to practice before the Supreme Court of Liberia and thus cannot file any document in their own name(s) before that court.** [1]

In short, Mr. Stewart does not have the necessary skills or knowledge to appropriately

---

[1] **Exhibit 10,** Liberian National Bar Association webpage, available at https://www.lnba.org.lr/membership/ last visited November 18, 2024; *see also* Exhibit 5 at paragraph 10 (also detailing same information distinguishing a counsellor-at-law from an attorney at law).

advise this Court on Liberian law – including Supreme Court rulings and practices. *See generally Kranis v. Scott*, 178 F. Supp. 2d 330, 333–34 (E.D.N.Y. 2002)(disbarred Plaintiff's expert opinion was unreliable and would not help jury better arrive at the truth of the matter because "Plaintiff has not demonstrated to this court knowledge of the professional legal skills expected of a licensed attorney, which he no longer is, let alone the additional qualifications normally demonstrated by an expert witness.").

*Mr. Stewart's Opinions Lack Trustworthiness*

Mr. Stewart's history of dishonesty - to include making false representations to the Court (*i.e.* altering documents filed with the Court and presenting bad checks to the Court) – in addition to his gross incompetence and negligence while practicing law in the United States- make him an unsuitable expert witness.  In good conscience, this Court should not rely on Mr. Stewart's opinions.  They are inherently unreliable.

Plaintiff -in an apparent attempt to bolster Mr. Stewart's opinions- previously represented to the Court on that: "Plaintiff is also consulting an expert in Liberian law. This is the result of **painstaking process** to determine who by academic qualifications and experience is a *bona fide* expert." [Dkt. 448-1] (bold added, italics in original); *see also* [Dkt. 447-1](Plaintiff requests a two week extension "so that his African-based Liberian law expert will have reasonable time to produce his report.").   This raises the question of whether Mr. Stewart was forthcoming and disclosed his disbarment to Plaintiff during Plaintiff's "painstaking process" to determine a "*bona fide* expert."  After all, Mr. Stewart's disbarment is not reflected on his resume, despite first listing a Maryland address (while purportedly being "African-based"), and his U.S. based legal training on it. If disclosed to Plaintiff, it is hard to fathom how Plaintiff concluded that Mr. Stewart's experience – to include his "breathtaking" legal/ethical issues "over the course of several years" -

7

make him a "*bona fide* expert" that is appropriate for this Court to rely on here.

As with his past conduct – this Court cannot expect Mr. Stewart to be truthful and forthright, and not to mislead the Court, with his opinions. *See generally King v. Univ. Healthcare Sys., L.C.,* No. CIV A 08-1060, 2009 WL 2222700, at *1 (E.D. La. July 24, 2009)("Federal courts have allowed cross-examination concerning a witness's disbarment or suspension from the practice of law for 'conduct involving deceit or misrepresentation,'; and for 'misappropriating a client's funds' because such conduct 'was particularly probative of his truthfulness.'" (citing *United States v. Whitehead,* 618 F.2d 523, 528 (4th Cir.1980); *United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989)). Mr. Stewart's propensity and willingness to lie to clients and make misrepresentation to the Court in the past make him unqualified to serve as an expert witness. Plaintiff cannot meet his burden that Mr. Stewart's testimony is relevant and reliable. It should be excluded.

*Potential Ethical Issues Exist with Mr. Stewart's Continued Involvement in this Matter*

Louisiana Rules of Professional Conduct[2] – applicable in this proceeding thorough Local Rule 83.2.3 – provides in Rule 5.5 (e)(1) provides that:

A lawyer shall not:

(i) **employ, contract with as a consultant, engage as an independent contractor, <u>or otherwise join in any other capacity</u>, in connection with the practice of law, any person the attorney knows or reasonably should know is a disbarred attorney**, during the period of disbarment, or any person the attorney knows or reasonably should know is an attorney who has permanently resigned from the practice of law in lieu of discipline; or

Mr. Stewart's report indicates that he is being compensated for his work. ("I will be

---

[2] Available at https://www.ladb.org/Material/Publication/ROPC/ROPC.pdf last visited November 19, 2024.

compensated Three Thousand United States Dollars (US$3,000) to write this report, in addition

to travel expenses to attend trial if I am asked and required to do so."). Though Mr. Stewart's

employment/independent contracting is – according to Mr. Stewart - apparently with Plaintiff ("I

have been retained by Plaintiff"), and not Plaintiff's counsel, this arrangement – and Plaintiff's

counsel advancement of it – appear to still violate Rule 5.5 (e)(1) and its broad "join in any other

capacity" prohibition. *See generally In re Davenport, 326 So.3d 882 (La. 2021)* (reprimanding

lawyer for employing a disbarred attorney as a paralegal).

Similarly, because Mr. Stewart is disbarred- he too appears to be in violation of Louisiana

Rule 5.5 (c) which implicitly prohibits the provision of temporary legal services by a disbarred

attorney in this Court/Louisiana. (*i.e.* Rule permits temporary services in the jurisdiction only

from a lawyer "not disbarred or suspended from practice in any jurisdiction.").   Legal services -

as defined under Rule 5.5(e)(3) – includes "(ii) rendering legal consultation or advice to a

client."  Providing expert opinions on Liberian law to the Plaintiff, and ultimately testifying in a

Louisiana trial, on Liberian law for the benefit of Plaintiff and to assist the Court under Fed. R.

Civ. P. 44.1 appears to qualify as legal services. [3]

These potential ethical violations associated caution against Mr. Stewart's continued

involvement in this matter, and any reliance by the Court on his opinions.

### B. Several of Plaintiff's Experts Invade the Province of the Court

Again, legal conclusions and not permitted under Rule 702 or 704. *Owen v. Kerr McGee*

---

[3] See also Rule 8.5(a) "*Disciplinary Authority*. A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction."

*Corp.,* 698 F.2d 236, 240 (5th Cir. 2001) ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."); *Bergeron v. Great Lakes Dredge & Dock Company*, 2018 WL 4924021 *3 (W.D.La. 2018) (expert may not testify that a party was "negligent"); *Dennis v. ESS Support Servs. Worldwide*, 2016 WL 1408580, at *2 (E.D.La. 2016) (expert witness "not permitted to . . . offer conclusions of law."); *Spikes v. McVea,* 2018 WL 6448846 *1 (E.D.La. 2018)(" "it is the job of the Court – not the expert – to instruct the jury on the applicable law.").

Plaintiff's experts do just this - offer legal conclusions under the guise of expert opinions, and otherwise invade the province of the Court or the jury. For instance, Dr. Fournier, without knowing the Liberian standards applicable to crewmembers, concludes that "the medical officer of the Stargate was negligent" and espouses on the various "duties" of the crew. *See* **Exhibit 6,** Captain Perlstein Report and CV.  Similarly, Dr. Wiser says the treatment was not "prompt, proper, [or] adequate."  **Exhibit 7**, Dr. Wiser Report and CV.   And Captain Perlstein is the most egregious of Plaintiff's experts. Captain Perlstein opines on the rules "under maritime law," explains Liberian law applicable on STARGATE, and concludes that "negligence" of the crew "breached the general maritime duty" owed to Plaintiff.  *See* **Exhibit 8,** Captain Perlstein Report and CV.  By way of further explanation:

Captain Perlstein's report is replete with improper opinions that invade the province of the Court or the jury. First, he builds his opinions on his own crediting of Plaintiff's telling of events from the ship: "I have never heard a more *compelling and **truthful telling*** of failure in the lawful responsibility of duty of care and welfare to a seaman, of neglect, and abandonment as told by Plaintiff." Perlstein Report at 5 (emphasis added). But "[i]t is clearly established that expert testimony may not usurp the jury's authority to make credibility determinations."

*Charalambopoulos v. Grammer*, 2017 WL 930819 *17 (N.D.Tx. 2017); *see also* <u>Dennis v. ESS Support Servs. Worldwide,</u>, 2016 WL 1408580 *2 (E.D. La. 2016)(expert witness "not permitted to make credibility determinations"); *Henson v. Odyssea Vessels, Inc.*, 2008 WL 449726 *2 (E.D.La. 2008) (limiting maritime expert from "comment[ing] on the veracity or credibility of [Plaintiff].") This problem is compounded where an expert retained by the plaintiff is attempting to testify as to the plaintiff's own truthfulness. Further, it is well settled that an expert may not testify regarding a witness' state of mind. *Robinson v. American Multi-Cinema, Inc.*, 2021 WL 2213376 *5 (E.D.La. 2021).

Captain Perlstein, based upon his credibility determination regarding Plaintiff, then seeks to discredit what he calls contradictory records from the ship. He opines that Plaintiff's "time line contradicts the email of the afternoon of 26 May from the Captain to Eastern Pacific Shipping informing them of his condition and requesting their authorization to send him to a Doctor." Report at 7. But "[a]n expert 'opinion' stating that plaintiff's testimony is inconsistent with other parts of the record is both unhelpful to the factfinder, *see* Fed. R. Evid. 702(a), and also risks impermissibly invading the factfinding province of the Court." *Badeaux v. Eymard Bros. Towing Co., Inc.*, 2021 WL 4860300, *5 (E.D.La. 2021) (citing *In the Matter of M&M Wireline & Offshore Servs., LLC*, 2016 WL 4681196 *8 (E.D.La. 2016) (excluding maritime expert's "statements [that] involve weighing the veracity and credibility of Cormier's version of events against the testimony provided by Defendants' witnesses, [as] impermissibly infringing on the role of the factfinder . . .")).

Captain Perlstein then stacks on top of his opinion about the truthfulness of Plaintiff's timeline a further opinion that the crew's responsiveness was not timely. Report at 10. But these opinions are stacked on the underlying credibility determination already discussed. *Mounce v.*

11

*Doe*, 2014 WL 2587698 *7 (E.D.La. 2014) ("For a witness to stack inference upon inference and then state an opinion regarding the ultimate issue is even more likely to be unhelpful to the trier of fact." (quoting *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997)). Captain Perlstein summarily concludes that *as Plaintiff tells it*, the crew were "negligent" for not being prompt. Because he has disclosed no opinions as to what a reasonable response time would be, the opinion is not helpful, and impedes on the role of the finder of fact who must be left unfettered from finding a different timeline than what Plaintiff contends.

Last, Perlstein's rendering of legal conclusions is unmistakable.[4]  He opines that the ship's officer's "failure to promptly respond to the medical distress of an ill seaman is negligent, criminal and in violation of The Republic of Liberia Maritime regulations and International Codes and Conventions." Report at 9-10.[5] His testimony would check the proverbial boxes for the Court:

> Eastern Pacific Shipping, through the negligence and malfeasance of the Master of the M/V Stargate and the assigned Second Mate/ Medical Officer breached the general maritime duty to provide a sea-worthy vessel and a safe place to work for Plaintiff.

Report at 10-11; *contra Shell Offshore, Inc.*, 2018 WL 1705527 *8-9; *Matter of Tara Crosby, LLC*, 2022 WL 1567086 *3 (E.D.La. 2022) ("[The expert] may not testify as to legal conclusions, including, for example, that the vessel was unseaworthy or Crosby negligent. These opinions

---

[4] Captain Perlstein even refused to disclaim an ability to give legal conclusions to the Court. **Exhibit 10, herein,** Perlstein Deposition at 52:11-14. ("Q You agree that you're not testifying in this case to give legal conclusions to the court; correct? A No, I can provide legal conclusions.").

[5] To take a more inflammatory example, built again on Mr. Kholkar's telling of events, Captain Perlstein argues: "Disregard for [Mr. Kholkar's] health and value as a human being and criminal inaction by the ships Master nearly cost Mr. Kholkar his life and left him permanently disabled, bereft of the ability to support his family and lead a normal and healthy life." After lengthy examination on the point during deposition, Mr. Kholkar's counsel offered to stipulate that Captain Perlstein would not use the word "criminal" at trial. **Exhibit 10,** Perlstein Deposition at 59:22-60:4.

invade the province of the Court as keeper of the law, the jury as factfinder, or both."). Captain

Perlstein even offers a lesson on the requirements "under maritime law":

> Under maritime law, a vessel's owner must provide a sick or injured seaman with prompt
> and adequate medical care, since delays in getting the proper treatment could make the
> seaman's condition worse. Ship owners and management companies are negligent in this
> duty, either by providing substandard medical treatment or unreasonably delaying access
> to effective treatment.

Report at 10; *contra Spikes*, 2018 WL 6448846 at fn. 14. These legal conclusions must be

excluded. *Owen,* 698 F.2d at 240.

### C.  Plaintiff's Expert Attempt to Provide Opinions Outside of Their Area of Expertise.

*I.    Plaintiff's medical providers are not qualified to give maritime opinions related to the shipboard standard of care or the action of M/V STARGATE's crew:*

The two crewmembers at issue, the captain and the second officer, are not licensed

physicians. They were certified to provide first aid and medical care aboard the ship in accordance

with international convention standards as required by the laws of Liberia, the flag state of the

vessel and the governing law here. Liberia is a signatory to the International Maritime

Organization's Convention on Standards of Training, Certification, and Watchkeeping (STCW

Code). See Captain Nelick Report at p. 4 (Dkt. 341-1]; *see also* [Dkt. 421-18] (Liberian Maritime

Regulation Section 10.296 (3)(a))("**Standard of competence for Medical First Aid/Medical

Care.** Seafarers designated to provide medical first aid or designated to take charge of medical

care shall meet the standard of competence respectively specified in the applicable sections of the

International Convention on Standards of Training, Certification and Watchkeeping, 1978, as

amended, and as established by the agent."). The STCW Code, at Chapter VI, sets forth mandatory

minimum requirements related to training for mariners who will be designated as the crewmembers

designated to provide first aid and medical care aboard a ship. *Id.*

Here, the second officer, German Kudieiarov, was issued a certificate of proficiency by Ukraine Odessa Maritime Training Centre for "Medical Care on Board Ship" based on IMO Model Course 1.15 and in accordance with provisions of Regulation VI/4, paragraph 2 on the STCW Convention. [Dkt. 441-32 at pg. 24, Response to Material Facts 47](Plaintiff admitting second officer had required medical certificate). The captain, Nicolae Ivanoschi, possessed a similar certificate from the Romanian Training Centre, as approved by the Romanian Naval Authority. [Dkt. 441-32 at pg. 24, Response to Material Facts 46](Plaintiff admitting Captain had required medical certificate). Both the captain and the second officer held valid, current certifications for the required shipboard first aid and medical care training as specified in STCW Code. The M/V STARGATE was in full compliance with the STCW Code and with Liberia Maritime Authority regulations regarding the training of the designated crewmembers on board. Nelick report at p. 4; [Dkt 441-32 at pg. 24].

Again, Liberian Maritime Regulations (section 10.296) establish that that the land based standard of care applicable to a U.S. licensed physician – apparently applied by Plaintiff's U.S. experts - is not applicable to the Liberian flagged ship's crew under Liberian law.

Even if U.S. law were to apply here – which it doesn't – the standard of U.S. shore-based care is not the same or applicable to a ship's crew. *Barlow v. Pan Atlantic S.S. Corp.,* 101 F.2d 697, 698 (2nd Cir. 1939)("!a ship's officer cannot be held to the same standard of skill as a professional medical man"); *Carleno v. Marine Transport Lines., Inc.,* 209 F. Supp. 859, 865 (E.D. Va. 1962); *MacQueen v. CG-40527,* 287 F. Supp. 778,782 (E.D. Mi. 1968)(ship personnel "not required to have, the skill or discernment of a surgeon"); *The Van Der Duyn*, 261 F. 887, 890 (2nd Cir. 1919); *Sawyer v. California Tanker Co.*, 147 F.Supp. 324, 329 (D.N.J. 1957). A land-based

physician is not qualified to resnder an opinion regarding the standard of care or the negligence of a non-physician crewmember. *Tindle v. Hunter Marine Transport Inc.,* 2016 WL 270481 (W.D. Ky. 2016).

In *Tindle,* the plaintiff argued that the crew of a vessel failed to properly diagnose and treat the decedent's physical condition and retained a medical expert to testify as such. The *Tindle* court correctly found that the medical expert may be qualified to give testimony regarding the decedent's medical condition but could not give an opinion regarding the standard of care of a "reasonably prudent maritime outfit" such as "operating vessels, training vessel crewmembers, or developing emergent care plans for river towboats." *Id* at *5. The Court reasoned that those opinions "are not medical opinions" and "should be left to a maritime expert." *Id.* The Court noted that the physician was attempting to "articulate the standard of care to which the law holds a maritime transportation outfit." *Id* at *6. The court excluded the physician's opinions, and held that he was "unqualified to offer an expert testimony on Hunter Marine's obligation (or non-obligation) to develop and implement a plan for emergent care and first aid related to Tindle's asthma." *Id.*

Again, Plaintiff's designated Captain Jeffrey A. Perlstein, "a professional mariner" as his "expert in maritime affairs." Captain Perlstein has disclosed opinions regarding the crew's actions. Plaintiff's medical experts with no maritime – or Liberian law - expertise should not give maritime opinions regarding the crew's actions.

Drs. Fournier, Dr. Wiser, and the remainder of Plaintiff's U.S. based medical experts are not qualified to testify about the standard of care applicable to the captain and second officer of the M/V STARGATE or the appropriateness of the diagnosis or treatment rendered by the crew under Liberian law.  By way of further explanation:

<u>*Dr. Fournier*</u>

15

Dr. Fournier purports to be "a medical doctor with expertise in internal medicine, global, and community health." See report of Dr. Fournier, attached hereto as Exhibit "E," and CV of Dr. Fournier, attached hereto as Exhibit "F." His CV and report are completely devoid of any experience, education, training, certifications, or published works reflecting any special knowledge of the maritime industry and the requirements of shipboard personnel who provide first aid and medical care under Liberian law. Based on his CV and report, Dr. Fournier has never served as, or been certified as, the designated crewmember to provide first aid and medical care aboard any ship – yet alone a Liberian flagged vessel. Dr. Fournier has disclosed no work experience aboard a ship in any capacity. Despite his lack of education, training, and experience, Dr. Fournier, however, clearly intends to opine on purported "medical negligence of onboard personnel" and issued the following opinions (quoting from page 2-3):

5.   These horrible complications of malaria could have been prevented if Plaintiff had received prophylactic therapy according the World Health Organization and CDC guidelines. <u>MV Stargate had a duty</u> to offer him malaria prophylaxis, starting two weeks before arrival in Gabon and continuing four weeks afterwards with agents effective against falciparum.

6.   It is my opinion that MV Stargate's <u>vessel owner and employer had a duty</u> to order and administer malaria prophylaxis. . . [the crew] <u>either knew or should have known</u> the need for prophylaxis . . .

7.   The <u>Stargate's owner and employer had the duty</u> to evacuate Plaintiff to the nearest medical facility on or about May 20th, 2017, immediately upon being informed of symptoms consistent with malaria.

8.   It is my opinion that <u>the care rendered by the medical officer of Stargate was negligent and fell below the standard of care</u> in the following ways.

    a.   Failure to document his illness with an adequate history and physical examination.
    b.   Failure to diagnose and treat his malaria.
    c.   Failure to transfer him to a medical facility in a timely manner.

9.   As a result of these <u>failures</u>, Plaintiff suffered a long and complicated illness with

16

permanent deficits.

10.     As a result of the <u>failure</u> to prevent or to treat falciparum malaria, Plaintiff suffers permanent impairment in neurological, orthopedic, vascular and immune functions. . . (emphasis added).

While Dr. Fournier *may* be qualified to testify regarding some medical issues, he is not qualified to render opinions regarding the standard of care applicable to a ship's crewmember designated to provide first aid and medical care or the "duties" or "negligence" of the crew of the M/V STARGATE under Liberian law, or to render opinions regarding the duty, feasibility, or safety of performing an evacuation from a ship.  Further, any such opinions intrude on the province of this Court.  Dr. Fournier is, respectfully, a U.S. land-based internal medicine physician, now a teacher, not a mariner or an expert qualified to give an opinion on the respective duties and standards of care applicable to the crewmembers of this Liberian ship.  Simply put, Dr. Fournier's testimony should be limited to medical opinions.

Further, while Dr. Fournier's medical opinions may be appropriate, he also lacks an adequate basis for his medical opinion that Plaintiff  has avascular necrosis (also known as aseptic necrosis) of both hips and will need left and right hip replacements.   Page 4 of Report.

Dr. Fournier's report disclosed no records or treatment to Plaintiff for any right hip condition.  His diagnosis and treatment for avascular necrosis is limited to his left hip. Even if the Court allows an internalist – Dr. Foley - to testify outside of his reas of practice about treatment for Plaintiff's hip, the Court should confine his testimony to the actual hip that is symptomatic and being treated as reflected in records reviewed by Dr. Fournier.  Because there is no disclosed basis supporting any opinion about the right hip, any such testimony must be excluded.

*Dr. Wiser seeks to testify outside of his area of expertise.*

Dr. Wiser is a Ph.D and appears to be tendered as an expert on malaria.  See Dr. Wiser's

17

Report, attached hereto as Exhibit "G," Dr. Wiser's CV, attached hereto as Exhibit "H," and Expert Disclosure. Like Dr. Fournier, Dr. Wiser, too, gives opinions outside his area of expertise concerning the standard of care on ships, especially in Section 2(j) at page 4 wherein he states that Plaintiff's injuries were "foreseeable," that the care was not "prompt, proper, [or] adequate," that the crew "completely disregarded" symptoms and "unnecessarily prolonged his suffering," and that the crew's "failures" caused a long and complicated illness. He also opines that "malaria should always be considered anytime a person exhibits flu like symptoms within a few weeks after visiting a malaria endemic region." (p. 3)  Dr, Wiser also comments on the requirements of Liberian law with respect to medications aboard the ship.  (p. 2)

Respectfully, Dr. Wiser has no expertise on shipboard care provided by a crewmember or the knowledge that a crewmember should have. His report and CV show that he has no experience in shipboard care. Dr. Wiser's testimony should be limited to his knowledge of malaria, and he should not be permitted to testify regarding the adequacy of care or standards (including Liberian law) that would apply to the ship's crewmembers.

### *Dr. Figley is a psychologist not qualified to give opinions of Plaintiff's hip(s).*

Dr. Figley is a psychologist. Report and CV, attached as **Exhibit 9**. He was retained to testify about Plaintiff's psychological condition after the malaria. See **Exhibit 1,** Expert Disclosure**.** With regard to his opinions on Plaintiff's psychological condition, EPS will reserve its critiques for cross-examination. Dr. Figley, however, abandons his field of expertise and the Expert Disclosure, and steps well out of bounds, when he opines:  "He [Kholkar] will require future hip surgery to correct his aseptic necrosis, which is a complication of malaria." (p. 10) Dr. Figley is not an orthopedic surgeon or even a medical doctor, and so is not qualified to render opinions regarding Plaintiff's physical condition. His testimony should be limited to psychological

18

opinions. *Snider v. New Hampshire Ins. Co.*, 2016 WL 3193473 *2 (E.D.La. 2016)(MD/PhD lifecare planner not permitted to give expert testimony regarding PTSD diagnosis or chronic pain syndrome); *Bright v. Ohio Natl Life Assurance Corp.*, 2013 WL 12130388 *2 (N.D. Ok. 2013)(psychologist not permitted to give expert testimony on plaintiff's physical condition).

### D.    Cumulative

Plaintiff has disclosed nine experts (excluding treating physicians), many of which appear to be retained to give the same or at least overlapping opinions.  Plaintiff's expert overkill is a far cry from the "one expert to testify per subject, per side" rule espoused in *Bright.*  2013 WL 12130388 at *1.   Plaintiff also lists two (excluding the one deceased physician also listed) of his treating physicians on his expert disclosures and witness list. **Exhibit 1**; *see also* [Dkt. 470].

If Plaintiff's treating doctors testify at trial as anticipated, further expert testimony regarding the diagnosis, past and future treatment, prognosis, and restrictions for Plaintiff's physical injuries would be cumulative and improper.  *See Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 410-411 (5th Cir. 1989)(discouraging parties from "parading" multiple experts to give cumulative testimony in the same area).  Likewise, if Captain Perlstein testifies, there is no need for Plaintiff's medical experts to testify regarding the purported acts and omissions of the crew.

Similarly, testimony on Liberian law and its requirements on ships should be left to- and only testified to – by Liberian law experts and mariners – not doctors.

EPS respectfully reserves the right to object to the testimony of Plaintiff's experts - - to the extent the Court allows them to testify at all - - as cumulative, recognizing that this objection is often more appropriately made at trial.  *See* Fed. R. Evid. 403.

### E. Captain Perlstein cannot give opinions not contained in his report nor rely on documents he did not disclose in his report.

At his September 2022 deposition, Plaintiff's counsel elicited opinions from Captain Perlstein not contained in his report and that were based on a swath of records that Captain Perlstein never disclosed considering. [6]  For example:

> Q [By Plaintiff's counsel] Did it -- based on the information that we have in
>
> the emails, does it appear that the ship left Savannah, Georgia without a medicine
>
> chest; yes or no?
>
> [EPS COUNSEL]: Object to form; improper disclosure. Move to strike.
>
> A Yes, sir.
>
> Perlstein Dep. 116:14-20; and:
>
> Q [By Plaintiff's counsel] Based on this email, sir, Captain, does it appear
>
> that the Stargate had a medicine chest on board as of May 12th, 2017?
>
> [EPS COUNSEL]: Form; improper disclosure. Move to strike.
>
> A No.
>
> *Id.* at 135:22-136:8.

Captain Perlstein never supplemented his July 2022 report despite ample time to do so – either before his September 8, 2022 deposition (as ordered by this Court [Dkt. 342]), or in the

---

[6] Captain Perlstein testified to seeing each of these records after his report, but weeks before deposition:
• Inspection in Owendo of, *inter alia*, medical chest certificate (Perlstein Dep. 72:23-76:2);
• Receipt in Abidjan of Mefloquine (*Id.* at 77:18-25; 80:7-11);
• Receipt in Las Palmas of malaria medications (*Id.* at 79:18-80:24);
• List of medications needed to renew medical certificate (*Id.* at 87:2-11);
• Email about Plaintiff's health with photograph of thermometer (*Id.* at 100:20-101:5);
• Master's Medical Certificate (*Id.* at 84:22-85:6);
• Second Officer's Medical Certificate (*Id.* at 82:2-23; 84:15-20);
• Declaration about the Second Officer's unavailability in Ukraine (*id.* at 71:22-72:5); and
• Photograph of Plaintiff at an outdoor bar in Owendo (*Id.* at 67:2-7).

subsequent two years since his deposition. [Dkt. 454; 410; 342]; *see also. Red Dot Bldgs. v. Jacobs Tech., Inc*., No. CIV.A. 11-1142, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012)("The failure to meet a court-ordered deadline for supplementing an expert report is no trifling matter.").

In September 2022, EPS' counsel were prepared to depose Captain Perlstein based on his disclosed opinions, and specifically with the understanding that he had no supplementation to make because he had not done so as ordered by this Court before the deposition.  Because his report was never supplemented, EPS had no reason- or obligation – to again depose Captain Perlstein on opinions he only disclosed during a previous deposition or to demand a supplement report from Plaintiff. *See Hosp. Operations, LLC v. AmGUARD Ins. Co.,* No. 1:19-CV-00482, 2021 WL 9334274, at *1 (E.D. Tex. May 7, 2021)("Plaintiff has had ample time to properly supplement [expert's] written report to provide his opinions and basis as to causation….Defendant is not required to demand a supplemental report from Plaintiff or vigorously depose an expert on a previously undisclosed issue")

Captain Perlstein should not be permitted to testify as to the undisclosed records he considered, any opinions related to them, or any opinion not set forth in his report. Fed. R.  Civ. P. 37(c); *see also Jeanes v. McBride*, No. 16-cv-1259, 2019 WL 2622460, at *1 (W.D. La. June 18, 2019) (excluding expert testimony under Rule 37(c)(1)); *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, 2019 WL 1436659 at *25 (N.D. 2019) ("An after-the-fact deposition is not a substitute for what Rule 26(a)(2)(C) requires before-the-fact as far as an expert witness is concerned." (quotations omitted)). Again, EPS had *no* requirement to ferret out how Captain's undisclosed opinion and incur costs of a second deposition when Captain Perlstein never supplement his report. *See Beane v. Util. Trailer Mfg. Co.,* 934 F. Supp. 2d 871, 877 (W.D. La. 2013) (Louisiana Court agreeing with *R.C. Olmstead, Inc. v. CU Interface, LLC,* 606 F.3d 262 (6th Cir.2010) that under

Rule 26(a), a "report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." (citations omitted)).

Captain's Perlstein's testimony and opinions related to records he considered – but did not disclose before his deposition – must be excluded. *See Red Dot Bldgs.* at *3 ("Exclusion of the evidence is mandatory and automatic unless the party demonstrates substantial justification or harmlessness. ")(citing *Caskey v. Man Roland, Inc.,* 83 F.3d 418 (5th Cir.1996) (district court abused its discretion in failing to invoke mandatory exclusion sanction of Rule 37(c)(1))).

## <u>Conclusion</u>

EPS respectfully requests the Court exclude or limit the testimony of Plaintiff's experts as follows:

(1) Exclude the testimony of Mr. John W. Stewart, Jr.

(2)  Limit Dr. Figley's testimony to his opinions regarding Plaintiff's psychological condition and specifically prohibit him from giving opinions regarding Plaintiff's physical condition and purported need for hip surgery;

(3)  Limit Plaintiff's medical experts – including specifically Drs. Fournier (internal medicine) and Dr. Wiser (malaria) - to their specified disciplines, and prohibit them from giving opinions regarding the standard of care, duties, applicable laws, or that any actions or omissions of any crewmember or EPS fell below any standard of care, was a breach of any duty, or was in any way negligent;

(4)  Prohibit all experts, especially Captain Perlstein and Dr. Fournier, from invading the province of the Court and the trier of fact by giving legal conclusions (such as

22

duties, negligence, breach of duties), opinions on credibility, and opinions on a

party's state of mind;

(5) Prohibit the testimony of any expert that is cumulative;

(6) Exclude testimony and opinions of Captain Perlstein based on undisclosed records he

considered, or any opinion not set forth in his report.

Dated: December 3, 2024

Respectfully Submitted,

| | |
|---|---|
| /s/ J. Stephen Simms | MICHAEL H. BAGOT, JR., T.A. (#2665) |
| J. Stephen Simms | THOMAS A. RAYER, Jr. (#20581) |
| Catherine M. Benson | WAGNER, BAGOT & RAYER, LLP |
| Gary C. Murphy | Pan American Life Center – Suite 1660 |
| Simms Showers LLP | 601 Poydras Street |
| 201 International Circle, Suite 230 | New Orleans, Louisiana 70130 |
| Baltimore, Maryland 21030 | Telephone: 504-525-2141 |
| Tel:  410-783-5795 | Facsimile: 504-523-1587 |
| Fax: 410-510-1789 | E-mail: mbagot@wb-lalaw.com |
| Email: jssimms@simmsshowers.com | |

Eastern Pacific Shipping Pte. Ltd. Counsel