# John W. Stewart, Jr., Esq.

12 Houses

12 Houses Road

Paynesville Liberia

Tel: +231.772.007.517, 888.300.512

+1.240.991.3334

WhatsApp: +1.301.825.3199

Jwstewartjr@wynstonstewart.com

Jwstewartjr@yahoo.com

October 10, 2024

**In Re: Kholkar Vishveshwar Ganpat**

**v.**

**Eastern Pacific Shipping Pte. Ltd.**

### Report of Liberian Maritime Law Expert

This Report provides my Opinions regarding Liberian Maritime Law. I have been retained by Plaintiff and asked to provide such Opinion to the Court in a Report that will explain to the Court my Opinions based on my education training, and experience as a Liberian attorney with knowledge of Liberian Maritime Law.

**Expert Witness Qualifications:**

I have approximately 36 years of Liberian Maritime Law Experience. I have collaborated with colleagues and other Liberian lawyers on matters associated with Liberian Maritime Law. I have collaborated with Members of the National Legislature in drafting amendments to the Liberian Maritime Law relating to maritime liens, the function of the Deputy Commissioner as Deputy Corporate Registrar, and I wrote the initial draft of the Liberian Maritime Authority Act. I also drafted numerous amendments to the Liberian Maritime Regulations.

My qualification for offering an expert opinion in this case are further detailed in my Curriculum Vitae (CV), a copy of which is attached to this affidavit.

**Methodology:**

In order to form my Opinions, I have reviewed the records listed below and performed legal research:

1. Defendant's expert, Benedict Sannoh's declaration dated August 8, 2022
2. Defendant's expert, Benedict Sannoh's declaration dated August 9, 2024
3. Defendant's Cross-Motion for Summary Judgment as to General Maritime Negligence
4. Defendant's Cross-Motion for Summary Judgement on Unseaworthiness Claim
5. Plaintiff's response to Defendant's Cross-Motion for Summary Judgment as to General Maritime Negligence
6. Plaintiff's response to Defendant's Cross-Motion for Summary Judgement on Unseaworthiness Claim
7. Case law: Konstantopoulos v. Diamante Cia. De Vapores_ S. A.

8. Case law: Markakis v. Liberian S_S The Mparmpa Christos
9. Case law: Pitsillos v. The S.S. George

In addition to the above I conducted my own research of and review of pertinent Liberian case law and Title 21 of the Liberian Code of Laws to reach my Opinions.

**Expert Testimony Experience:**

I have provided expert testimony in two arbitration cases dealing with Maritime issues in the 1990's; one in Hong Kong and the other in the United Kingdom. In both cases I testified on behalf of the Plaintiff. I have not been deposed nor provided testimony since those two cases. I have never been retained by Mr. Sotolongo or Mr. Martin in the past.

**Publications:**

In 2018 I published an article in the Liberian Maritime Monitor entitled, "Port State Control Reboot: Strengthening ISPS Code Compliance on-board Ships – A Legal Outlook," The Marine Monitor.

**Compensation:**

I will be compensated Three Thousand United States Dollars (US$3,000) to write this report, in addition to travel expenses to attend trial if I am asked and required to do so.

**Summary of Issues**

**(i)      Liberian law is silent on the issue of unseaworthiness which would then enable the General Maritime Law of the United States to be applied.**

The proscriptive Maritime policy of Liberia is that the Liberian Maritime Program is a national security interest. Through successive reviews and amendments of the Maritime Law dating as far back as 1962, Section 30 has provided in full, "Insofar as it does not conflict with any other provisions of this Title, the non-statutory General Maritime Law of the United States of America is hereby declared to be and is hereby adopted as the General Maritime Law of the Republic of Liberia." To date, no court of competent jurisdiction of Liberia, including the Honorable Supreme Court has ruled either directly or indirectly this provision inapplicable in any case. Section 30 remains unchallenged and fully enforceable.

On the question of whether any statute has been found to supersede Section 30, no case has arisen where the Supreme Court has had the occasion to rule any statute taking precedence over Section 30.

This case turns on the central issue of operational seaworthiness as opposed to certification or registration seaworthiness. In order for a seagoing ship[1] to be registered and meet statutory requirements for certification it must pass certain inspections. Similarly, for insurance and structural integrity, the vessel must obtain a class certification, which also allows it to navigate certain restricted maritime zones. Statutory seaworthiness certification license are condition-precedent licenses for registration purposes. These certificates purport to confirm at the time of registration, reregistration, or inspection, that the vessel meets the standards for seaworthiness. See Sections 56, 66, 74, and 82 of Title 21. The Liberian Maritime Regulations require vessels to undergo annual inspections. If a vessel passes

---

[1] Title 21 applies to all Liberian shipowners, which "shall mean the owner, charterer, manager and operator of a seagoing ship."

inspection but four (4) months into voyage develops rudder problems, is it still seaworthy? This is a question of "operational seaworthiness." Where the vessel passes inspection, but develops operational problems, it becomes unseaworthy during this transient period.

Similarly, as in this case, Liberia is party to the Maritime Labor Convention of 2007. The Convention states in pertinent part that seagoing ships shall carry a medicine chest, medical equipment and a medical guide that meet certain national standards based on the ship type, crew size, destination, duration of voyage, etc., and medical doctor on board responsible for medical care and administering medicine as part of their regular duties or at least one seafarer on board competent to provide medical first aid; persons in charge of medical care on board trained in medical care that meets the requirements of the International Convention on Standards of Training, Certification and Watchkeeping for Seafarers, 1978, as amended ("STCW"). Moreover, the Master must ensure the safety of the crew. See Section 296(4) of Title 21. The Vessel may have had the required medicine chest at the time of inspection, but if it did not have the medicine chest and/or malaria medications at the time of the voyage to Gabon, that would have rendered the vessel operationally unseaworthy during the voyage.

The Liberian Maritime Law is silent on the issue of operational unseaworthiness, therefore Section 30 of Title 21 is invoked it follows that such silence shall enable the application of the General Maritime Law of the United States to determine the question of liability of the vessel for the injury to the seafarer due to the absence of the malaria medications.

The seafarer had no reason to know or to inquire if the vessel had antimalaria treatment onboard. The seafarer had only the right to a seaworthy vessel once he signed on to the vessel's articles.

The Maritime Law does not bar a claim for unseaworthiness and, based on thorough research, and to the best of the writer's knowledge and experience, there is no Liberian caselaw where an unseaworthiness claim has ever been disallowed.

**(ii)      The plaintiff has a right under Liberian Maritime Law to assert a General Negligence Claim.**

Liberian Maritime Law permits a seafarer[2] to assert a general negligence claim despite the existence of Shipping Articles or a Collective Bargaining Agreement. Under Liberian law a negligence claim can be sustained outside a contract for service where the injury was the result of, or exacerbated by the employer's negligence.

Liberian law has long recognized the right of a Seafarer to file a negligence claim to recover general and special damages beyond the terms of an existing contract even where limits of liability are provided for injury occurring as a result of performance or non-performance under the contract. The Supreme Court stated in Kesselly et al v. SN Brussels, LRSC 4 (2009) that where the carrier was clearly negligent in its duty to its passenger, such negligence constituted a breach of its contractual duty, and liability for damages for negligence results if the act or omission to act was done with the intent to cause damage or with the knowledge that damage would probably result. In this case, sailing to a port with a high rate of

---

[2] "Seaman" or "seafarer" means any or all members of the crew and officers, including the master, employed or engaged in any capacity onboard any vessel. Section 291(2) of Title 21.
"Crew" means collectively the persons, other than the officers and the master, serving in any capacity onboard a vessel. Section 291(3) of Title 21.

malaria without a malaria prophylactic on board almost certain assures that a crew member will contract malaria and there will be no treatment available for this deadly ailment. See also, Air Maroc Inc v. Karngar, (March Term 2022) where the Court ruled that "the appellant did not exercise the degree of care required for the safety of the appellee carryon bag, especially given that the appellee had informed the appellant's agents of the need to have access to the contents of his bag during the flight and he was assured that his bag would be delivered to him at the transit point in Morocco" (pg.13).

The Liberian Maritime Law does not prohibit the assertion of a general negligence claim. An extensive search of the Supreme Court decisions has not revealed any cases which have overruled Kesselly, or Air Maroc, or prohibit the assertion of a General Negligence Claim beyond contractual duty due to negligence.

The assertion of a General Negligence Claim does not contravene, supersede, or invalidate the statute or contractual covenant. The legal analysis put forward by Legal Expert Cllr. Benedict Sannoh, states the basis for recovery under general contractual terms, however, the analysis fails to address the above question regarding the carrier's negligent act or omission to act which gives rise to the permissible general and special damages claim the Supreme Court of Liberia authorized in Kesselly, supra.

**(iii)     Liberian Maritime Law does not preclude a Plaintiff's claim for Punitive Damages.**

Liberian Maritime Law has long recognized the right to a plaintiff's claim for Punitive Damages beyond contractual obligations. In International Bank (Liberia) Ltd v Saba, LRSC 35 (2009) the Court held that "compensatory and punitive damages" may be recovered by any person who has suffered a loss or detriment, or injury, whether to his person, property or rights through the unlawful act or omission or negligence of another." See also, Kesselly and Royal Air Maroc, supra.

As stated above, the Maritime Law does not preclude the recovery of Punitive Damages for General Negligence Claims.

**(iv)     Liberian Maritime Law does not strictly mandate that all Collective Bargaining Agreements must be governed by Liberian law.**

Between 1976 and 1979 several Liberian ships either went aground or experienced major collisions leading to massive oil spills and tragic loss of crew lives. National and global outcry was incessant. The Government of Liberian Registry undertook a massive overhaul to rebrand the Maritime Program and modernize the fleet. Chapter 10 of the Maritime Law was revised with significant enhancements in protections for Seafarers.

The Maritime law requires that shipping articles and Collective Bargaining Agreements entered into for service on board Liberian vessels must be consistent with the strict provisions of Liberian law. The following sections must be read together to gain a full understanding of the intent of the law protecting the rights of seafarers under Liberian law.

**Section 351A. Contracts for Seafaring Labor.**

(1)  The following clause shall appear, or be by force of law included, in all contracts for seafaring labor on board Liberian vessels:

"The parties to this contract hereby stipulate that the terms and conditions laid down herein shall be subject to the applicable provisions of the Liberian Maritime Law, Regulations, Rules, and Notices. Any dispute as to the terms and conditions of this contract shall be resolved in accordance with the Liberian Maritime Law Regulations, Rules, and Notices."

**§354. Bargaining and Execution of Labor Contract.**

(1) It shall be lawful for any employer or employer organization and any labor organization representing seamen to bargain and enter into a labor contract concerning wages and other terms and conditions of employment, provided that no labor contract provisions may be contrary to the laws of Liberia or deprive the Republic of Liberia of any jurisdiction over labor relations.

**§355. Provisions Authorized in Labor Contracts.**

It shall be lawful for any employer or employer organization and any labor organization to agree to be bound by any provisions in entering into a labor contract, provided that such provisions are not prohibited by Liberian laws or Regulations or Rules.

**§356. Provisions Prohibited in Labor Contracts.**

It shall be unlawful for any employer or employer organization or employee or labor organization to attempt to bargain for, or to enter into, any labor contract containing any provision which attempts to set aside the application of or is inconsistent with or is in violation of the laws of the Republic of Liberia, or which prescribes terms or conditions of employment less favorable to seamen than those set forth in this Chapter, or which discriminates as to terms and conditions of employment on the basis of race, color or creed; and any such prohibited provisions shall be deemed null and void.

When Section 351A is read in conjunction with Sections 355 and 356 it becomes clear that Liberian jurisdiction is not dispositive as a point of law.

Section 351A firstly insulates maritime labor contracts from interpretation by other Liberian statutes by subjecting them to the Maritime Law, Regulations and Notices. No other statute has superseded this Section and a diligent search has not found any case in which the Supreme Court invalidated it or declared it superseded by another statute. Therefore, it remains fully in force as stated. Secondly, Section 351A leaves open the invocation of Section 30 and thereby the application of US General Maritime Law to answer the question of general negligence, on which the Liberian Maritime Law is silent.

When read in conjunction with Sections 354(1), 355 and 356, Section 351A, in making seafarer contracts subject to, rather than strictly interpreted by, Liberian law, allows parties to choose their jurisdiction of substantive interpretation, provided Liberia retains concurrent jurisdiction, and the law of the chosen jurisdiction is either equally or more favorable to the seafarer than Liberian law.

**(v)    Liberian Maritime Law allows for Maintenance and Cure for sick and injured seamen.**

If a seaman or seafarer becomes disabled, sick or injured while he is a member of the crew, the seafarer would be entitled to "compensation for long-term disability due to occupational injury, illness or hazard in accordance with Liberian regulations and rules or pursuant to the provisions of the Collective Bargaining Agreement applicable to the seaman." Section 336(1)(d) of Title 21.

Moreover, "the shipowner or his representative shall provide evidence of financial security to assure compensation in the event of long-term disability of seafarers due to occupational injury, illness or hazard."

Respectfully Submitted:

John W. Stewart, Jr., Esq.
Attorney-at-Law

# RESUME

## JOHN W. STEWART, JR., ESQ.

E-MAIL: JWSTEWARTJR@YAHOO.COM
SKYPE: JWSTEWARTJR79

7105 JACOB SMITH PLACE
BRYANS ROAD, MARYLAND 20616
TEL: +1-240-991-3334,

12 HOUSES ROAD
PAYNESVILLE, LIBERIA
+231-772-007-517, 888-300-512

**PROFESSION:**

Legal Professional

**PROFESSIONAL EXPERTISE:**

**International Maritime and Corporate Consultant** – Provide maritime and corporate legal and regulatory assistance to companies engaged in private international maritime and corporate trade and investment, particularly in emerging economies in Africa. Assist corporations implement and comply with corporate social responsibility programs and policies.

**Advisor, Global Energy Consultants** – As an advisor to Global Energy, assisted in the development of national petroleum policy for emerging oil and gas development state entities in Guyana, Sierra Leone and Liberia, proposed revisions to legislation, revised petroleum licensing documentation, assisted in drafting framework for the way forward post-commercial discovery with emphasis on corporate social responsibility.

**Legal Research and Legislative Drafting** – Research and draft complex legal treatises and legislation to enable public and private international trade, fleet management, legal liability and international cooperation; research complex legal issues including estate planning, marital property rights, intellectual property and civil procedure, and prepared depositions and memoranda of law.

**Legal Publishing** – Drafted legal articles, supplementations, and revisions for West Group publications, initiated and developed proposals for product development in assigned subject areas, supervised work product of regional and national external legal authors, and researched and implemented awareness applications of legal trends for the enhancement of multiple product lines.

**Public Policy and Private Business and Legal Negotiations** – Served as the senior maritime law advisor to the Government of Liberia; represented the Government of Liberia at diplomatic conferences and other international maritime meetings at the International Maritime Organization, International Labor Organization, International Oil Pollution Compensation Funds, INMARSAT, UNCTAD maritime shipping meetings, etc.; performed admiralty and maritime services for the Bureau of Maritime Affairs, including corporate research and review, international contract negotiations, and staff supervision, etc.; Conducted direct private business negotiation and facilitation of private international trade and investments. Facilitated intergovernmental cooperation in humanitarian disaster preparedness and conflict resolution at the United States Africa Command (USAFRICOM) Pandemic Response Program in partnership with the Center for Disaster and Humanitarian Assistance Medicine in Accra, 2012.

**Litigation and Corporate Compliance** – Successfully conducted litigation in a wide variety of high-profile criminal and civil cases; achieved favorable resolution of complex, and often difficult to win cases; practiced before administrative boards and arbitrators, and attained numerous credits in all phases of civil litigation in state and federal courts; also litigated public and private Admiralty and Maritime law matters, Real Estate, Immigration, Corporate Formations, Contract Negotiations, and Matrimonial law; developed and implemented new client sourcing strategy, research, client outreach, and revenue development; representation of corporate clients in Federal Securities and Exchange Commission filings and compliance hearings; worked with financial and tax experts on taxation compliance.

**Adjunct Professor of Law** – Developed syllabi, established required textbooks, and lectured on Legal Ethics, as well as the development, application, codification, and practice of Admiralty Law and Administrative Law.

**POSITIONS HELD:**

**Attorney and International Business Consultant (Current)**
Wynston Stewart & Associates, Monrovia, Liberia

**Advisor, Global Energy Consultants (Current)**
New York, NY, USA; Monrovia Liberia

**Deputy Commissioner for Legal Affairs 1991 – 1996, 2007**
Bureau of Maritime Affairs, Monrovia, Liberia

**Senior Attorney Editor  1997-2002**
West Group, Rochester, New York

**Managing Partner 1993-1996**
Stewart & Stewart Law Firm, Monrovia, Liberia

**Adjunct Professor, Legal Ethics, Admiralty Law and Administrative Law 1994-1996**
Louis Arthur Grimes School of Law
University of Liberia, Monrovia, Liberia

**Assistant Commissioner for Legal Affairs 1988-1990**
Bureau of Maritime Affairs, Monrovia, Liberia

**Legal Assistant 1986-1987**
Walker & Bailey Law firm, New York, NY 10027

**EDUCATION:**

World Maritime University, Malmo Sweden,
Master of Science, 1990

New York Law School, New York, NY, USA
Juris Doctor, 1987

Thiel College, Greenville PA, USA
Bachelor or Arts in Political Science, 1983

University of Liberia, Monrovia, Liberia
Read Political Science, 1980

**AFFILIATIONS:**

Vice President, African, Asian, American Amity Association; Vice President, African, Asian, American Chamber of Commerce

**IT SKILLS:**

Office automation:            MS Office Suite including Word, Excel, PowerPoint, Outlook
Specialized applications:     Westlaw, Lexis Nexus Legal Search Engine

**SCHOLASTIC HONORS:**

Lambda Sigma Honor Society 1982
Thiel College, Greenville, PA, USA

Who's Who Among Students in American Universities and Colleges 1987
New York Law School, New York, NY, USA

**PUBLICATION:**

Port State Control: A Contemporary Legal Study  1990
Dissertation toward Master of Science Degree, Malmo, Sweden

**PROFESSIONAL COURSES AND TRAINING**

Dispute Settlement, Client Management, and Employment Law

New York Law School/New York State Department of Labor/Center for Dispute Settlement