# SANNOH & PARTNERS, PC

*Counsellors & Attorneys-At-Law*
*25 Benson Street*
*(Corner of Benson & McDonald Streets)*
*Monrovia, Liberia*
*Tel: 0886311151 l 0775494308 l 0775473023*
*Email: sannohb@aol.com*

Novembrer 12, 2024

J. Stephen Simms
Simms Showers LLP
201 International Circle
Baltimore, Maryland

Dear Mr. Simms:

**RE: Liberia Legal Opinion in the matter of the Civil Action
by Kholkar Vishveshwar Ganpat (Plaintiff)
Versus
Eastern Pacific Shipping Pte. Ltd (Defendant).**

1. On August 8, 2022, and August 9, 2024, I issued Legal Opinions including the issue of whether or not the alleged silence in the Liberian Maritime Law on Wages, Maintenance and Cure on the remedies available for a shipowner's failure to provide maintenance and cure warrants recourse to the United States General Maritime Law. There is no such silence. Liberian law addresses the issues fully. I reaffirm my August 8, 2022 and August 9, 2024 Legal Opinions, which continue to state Liberian Maritime Law current as of this date.

2. In my August 9, 2024 Opinion, we held that the Liberian Maritime Law having provided for "Wages, Maintenance and Cure for the sick and injured "under Section 336, cannot be said to be silent on the subject matter. Consequently, we concluded that the subject matter of "Wages, Maintenance and Cure" having been set forth in the Liberian Maritime Law as a subject matter, there is a legislative intent to address the subject matter fully especially so when Liberia itself as a leading Maritime Nation, has several of its citizens working as seamen on Liberian Registered Vessels. Hence, the silence on the remedies available for a shipowners failure to provide Maintenance and Cure does not warrant recourse to the United States General Maritime Law.

3. In Response to the aforesaid Opinions, Attorney John W. Stewart, a Liberian lawyer issued an Opinion dated October 16, 2024 in which he disagreed with my Opinions, setting forth the reasons thereof. Because we are of the view that Attorney Stewart's Opinion is legally

flawed, inconsistent, and contradictory in several of its conclusions, it cannot be taken to represent the correct statement of Liberian Law on the subject matter.

4. Attorney Stewart in his Opinion, makes the following conclusions of law:

   a) That "Liberian Law is silent on the issue of unseaworthiness which would enable the General Maritime Law of the United States to be applied."
   b) That the Plaintiff has a Right under Liberia Maritime Law to assert a General Negligence Claim
   c) That Liberian Maritime Law does not preclude Plaintiff's right to Punitive damages.
   d) That Liberian Maritime Law does not strictly mandate that all Collective Bargaining Agreements must be governed by Liberian Law.
   e) That Liberian Maritime Law allows for Maintenance and Cure for sick and injured seamen.

5. **Attorney Stewart's first legal conclusion is that "Liberia Law is silent on the issue of unseaworthiness which would enable the General Maritime Law of the United States to be applied**."

   5.1. This statement is legally and factually incorrect as the Liberian Maritime Law is not silent on the issue of seaworthiness. Liberian Maritime Law requires registration for all vessels of twenty or more net tonnage engaged in domestic or foreign trade or flying the flag of Liberia. <u>Section 50 of the Liberian Maritime Law, Title 21 of the Liberia Code of Laws Revised.</u> Liberia Maritime law also requires a Certificate of Seaworthiness as a condition precedent for Certificate of Registration to be issued under Section 50. <u>See Section 66 of the Liberian Maritime Law, Title 21 of the Liberia Code of Laws Revised. Further,</u> Section 122 of the Liberia Maritime Law, Subsection (1)(a) imposes a responsibility and liability that the carrier shall be bound, before and at the beginning of the voyage to exercise due diligence to make the ship seaworthy. Hence Liberian Maritime Law is not silent on the issue of seaworthiness.

   5.2. While, Liberia Maritime Law does not specifically use terms such as "<u>operational seaworthiness</u>" or "<u>certification or registration seaworthiness</u>, it does define when a vessel is seaworthy, and the distinctions "operational seaworthiness" or "certification or registration seaworthiness" are creations of Attorney Stewart especially so when he has not cited any law in support of these distinctions.

   5.3. Attorney Stewart states that if a Vessel passes inspection , but develops rudder problems 4 months into the voyage, this would render the Vessel operationally unseaworthy. Similarly, he states that if the Vessel had the required medicine chest at the time of the voyage , but did not have the required chest/ malaria medications at the time of the voyage to Gabon, this will also pose a question of operational unseaworthiness and render the vessel unseaworthy during the transient period. <u>Implicit in these statements</u>

<u>is an admission that that vessel was seaworthy under Liberian Law</u>. These statements are speculative and are not supported by any authoritative evidence. Further, by merely stating that the vessel was not operationally seaworthy without any supporting evidence from a proper authority is baseless and is nothing but an attempt to undermine EPS evidence of the inspection by the flag country before the vessel left Savannah. Hence the distinctions of "operational seaworthiness" or "certification or registration seaworthiness, must be disregarded.

5.4. Attorney Stewart cites Section 30 of the Liberian Maritime Law which states that "*insofar as it does not conflict with any other provisions of this Title, the non-statutory General Maritime Law of the United States of America is hereby declared to be and is hereby adopted as the General Maritime Law of the Republic of Liberia.*" Relying on this citation, Attorney Stewart makes a number of sweeping conclusion all of which are legally flawed. Firstly, Attorney Stewart states that "to date, no Court of competent jurisdiction of Liberia has ruled either directly or indirectly this provision inapplicable in any case and hence Section 30 remains unchanged." In making this conclusion, Attorney Stewart overlooked the limiting phrase at the beginning of Section 30, "<u>*insofar as it does not conflict with any other provisions of this Title*</u>" which suggest that the General Maritime Law of the United States of America is not applicable if there is a provision in the Title 21 that conflicts with Section 30, which is Section 2. Section 2 of the Liberian Maritime Law states in clear and unequivocal terms that "all matters affecting the internal order and economy of Liberia flag ships, including labor relations shall be governed by this Title."

5.5. The phrase, "*insofar as it does not conflict with any other provisions of this Title, also re*-enforces the Reception Statute, which states that unless expressly contrary by the laws in vogue, the Common laws and usages of the Courts or England and of the United States, and other authoritative treaties, principal and Rules set forth in case law in Blackstone Kent Commentaries, when applicable are deemed as Liberian law. **Title 15, Section 40 of the Liberian Code of Laws Revised.** The Reception Statute, enacted in 1948 is the mother and foundation for Section 30 of the Maritime Law and have been upheld by the Honorable Supreme Court of Liberia in several opinions over the years, the latest being **Broh v Hon House of Rep. et al. [2014] LRSC 20 (24 January 2014)**.

5.6. Hence the statement by Attorney Stewart that no Court of competent jurisdiction of Liberia including the Honorable Supreme Court of Liberia has ruled either directly or indirectly this provision inapplicable in any case supports the position that Courts of Liberia support Section 30 with its limiting provisions <u>that is, that it is only applicable when the Liberia Maritime Law is silent on a particular subject.</u>

5.7 Attorney Stewart states that "on the question of whether any statute has been found to supersede Section 30, no case law has arisen where the Supreme Court has had the occasion to rule any Statute taking precedence over Section 30. This conclusion is erroneous. The Supreme Court of Liberia has held in several opinions that Statutes

take precedence over the Common law and that whenever a Liberian Statute, expressly provide for or addresses a given subject matter, or provides a remedy, the Common law shall remain silent and cannot be taken. **Broh v Hon House of Rep. et al. [2014] LRSC 20 (24 January 2014).** In the absence of statute or decisional laws on an issue, Liberian courts are permitted by the reception statute to refer to and apply the relevant authoritative treatises, digests and case law of either the United States or England in the determination of a case. **TRADEVCO v Mathies et al [1999] LRSC 32; 39 LLR 637 (1999) (16 December 1999)**

6. **On the issue of whether the Plaintiff has a Right under Liberia Maritime Law to assert a General Negligence Claim as set forth on Page 3 of the Opinion**

    6.1. Attorney Stewart asserts that Liberian Maritime Law permits a seafarer to assert a general negligence claim despite the existence of shipping Articles or a Collective Bargaining Agreement. He further asserts that under Liberian Law, negligence claim can be sustained outside a contract for service where the injury was the result of or exacerbated by the employer's negligence. In support of his position, Attorney Stewart cites two cases: Kesselly et al v, SN Brussels, LRSC 4 (2009); and Air Maroc , Inc v. Karnga, (March Term 2022. We disagree.

    6.2. A review of the two cases cited will show that they are neither maritime in nature nor do they partake of seafarers, covered under the Liberian Maritime law or the International Maritime Convention. The cases involve airline passengers covered under the Warsaw Convention. Hence these cases are inapposite. Hence , the fact that they have not been overruled by the Supreme Court is irrelevant and immaterial. Consequently, Attorney Stewart has not shown any law under which a seafarer can assert a general maritime claim outside the provisions of shipping Articles and or a Collective Bargaining Agreement.

    6.3. More importantly, the fact that Attorney Stewart has cited these cases, which were decided by the Liberian Supreme Court means that Liberian Court can exercise jurisdiction over cases involving Wages, Maintenance and Cure and the remedies available for a shipowner's failure to provide maintenance and cure without the need for recourse to the United States General Maritime Law.

7. **On the statement Liberian Maritime Law does not preclude a Plaintiff' right to Punitive damages, as set forth on Pag 4 of Opinion**.

    7.1. Attorney Stewart states that Liberian Maritime Law has long recognized the right to a Plaintiff's claim for Punitive Damages beyond contractual obligations. However, Attorney Stewart fails to cite the specific provisions of the Liberian Maritime Law under which this recognition has been given. In support of his position, he cites the case International Bank (Liberia) Ltd v. Saba, LRSC 35 (2009), which as in the two previous cases cited (Kesselly et al v, SM Brussels, LRSC 4 (2009) Air Maroc , Inc v. Karnga, (March Term 2022 ), does not arise out of a maritime claim. Hence Attorney Stewart

has failed to state a reliance for the claim of Punitive damages under the Liberian Maritime Law.

**8. That Liberia Maritime Law does not strictly mandate that all Collective Bargaining Agreements must be governed by Liberian Law, as set forth on Page 4.**

8.1. Attorney Stewart's position that "Liberia Maritime Law does not strictly mandate that all Collective Bargaining Agreements must be governed by Liberian Law" is inconsistent and in contradiction with his statement that " shipping articles and Collective Bargaining Agreements entered into for service on board Liberian Vessels must be consistent with the strict provisions of Liberian Law." In one breath he argues in support of Liberian Maritime Law and the governing law, and in the other, he argues against the very position he has advanced. He cites several provisions of the Liberian Maritime Law Sections 351(a), 354, 355 and 356 and asked that they be read together to "gain a full understanding of the intent of the law protecting the rights of seafarers under Liberia Law. However, his conclusion that Liberia Maritime Law does not strictly mandate that all Collective Bargaining Agreements must be governed by Liberian Law is not, and cannot be the correct statement of these laws when read together. This is especially true when Section 2 of the Liberian Maritime Law provides in clear and unequivocal Terms that the Liberian Maritime Law shall govern all matters affecting the internal order and economy of Liberia flag ships including labor relations.

8.2. The provisions of Sections 351A, 355 and 356, read singularly or together, appears to demonstrate a consistent and clear message that even though parties are at liberty to contract or negotiate the terms and conditions of their contract, all contracts must be consistent with Liberian Maritime Law. The conclusion, therefore, that "Section 351A leaves open the invocation of Section 30, and thereby the application of US General Maritime Law to answer the question of general negligence, as interpreted by Attorney Stewart is flawed and has no basis in law and in fact. Neither Section 351A nor any other provisions of the Liberian Maritime Law grant any party the option to select the US General Maritime Law as the Governing law in any contract involving a sea faring laborer on a Liberian flag vessel. Plaintiff's employment contract further specifies that his employment agreement was governed and interpreted by the "laws of the state of the ship flag aboard which the Seaman is employed" – Liberia.

**9. On the conclusion that Liberia Maritime Law allows for Maintenance and Cure for sick and injured seaman.**

9.1. Attorney Stewart, under this section of his opinion, appears to have finally accepted that Liberian Maritime Law allows for Maintenance and Cure for sick and injured seamen when he cites Section 336(1)(d) of the Liberian Maritime law which provides for entitlement for a seafarer in accordance with Liberian Regulations and Rules or pursuant to the provisions of the collective Bargaining agreement applicable to seamen under the Liberia Maritime law.

10. You have also asked me to clarify the difference between an Attorney-at-Law and a Counsellor-At-Law. Attorney Stewart has signed his opinion as "Attorney-At-Law." In the Liberian Bar Attorney-At-Law" is considered to have less knowledge and experience in Liberian law than Counselor-at Law. Under Liberia Law and practice, a Counsellor-At-Law is an Attorney who has practiced law for at least five years in Liberia, have passed the Bar examinations conducted by the Honorable Supreme Court of Liberia and admitted into the Supreme Court Bar as Counselor-at-Law. Only Counsellors-At-Law are permitted to appear before the Honorable Supreme Court of Liberia. Upon graduation from a recognized Law School, the graduate is admitted to the Bar as an Attorney-At-Law. After five years of practice, and examination of their moral and ethical fitness, the Attorney sits to a Bar examination conducted by the Honorable Supreme Court of Liberia, upon successful completion of which, the Attorney is then admitted as a Counsellor-at-Law. Generally, therefore, Counsellors-At-Law are expected to have more knowledge and experience in Liberian law than Attorneys-At-law.

Very truly yours
SANNOH & PARTNERS, PC

Benedict F. Sannoh, Esq.
**COUNSELLOR-AT-LAW & MANAGING PARTNER**