UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KHOLKAR VISHVESHWAR GANPAT, | Civil Action No.   18-13556 "E" (4) |
| Plaintiff, | IN ADMIRALTY |
| v. | JUDGE:  SUSIE MORGAN |
| EASTERN PACIFIC SHIPPING PTE, LTD., d/b/a/ "EPS" | MAG. JUDGE:  KAREN WELLS ROBY |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION
FOR FINDING OF SPOLIATION UNDER FED. R. CIV. P 37(e) AND DISMISSAL
WITH PREJUDICE**

Plaintiff failed to preserve his personal cell phone and the electronically stored information ("ESI") therein.   Plaintiff cherry-picked communications and photos from his cell phone supporting his case, provided them to his counsel, and then – purportedly - traded-in his cell phone "after 2018" - long after litigation was reasonably foreseeable, and after Plaintiff filed his December 2018 complaint.  [Dkt. 1]; *see also* **Exhibit 1,** Ganpat Deposition ("Ganpat Dep.), August 18, 2022 (Ganpat Dep. 178:19-180:19).

Undisputedly, Plaintiff's phone contained communications, and photos- material and relevant to issues in this litigation. Plaintiff attached one of his hand-selected phone communications as an exhibit to his complaint. [Dkt. 1-7, Exhibit 6 to Complaint [Dkt. 1]]. Plaintiff's counsel, however, never instructed Plaintiff of his legal obligations to save the phone and its data. Ganpat Dep. (239:25-241:23). Plaintiff also never conducted a full search for relevant evidence – to include evidence favorably to EPS - on his phone.  (Ganpat Dep. 181:10-20; 191:20-192:23).

Plaintiff, therefore, did not – and could not - produce relevant ESI when requested in

discovery by EPS.  Nor EPS could forensically exam the phone itself to (1) identify other relevant communications and photos (including deleted electronic data); and (2) test the credibility of Plaintiff's testimony because, again, Plaintiff failed to safeguard it, and the relevant electronic evidence contained in the phone's data and applications.

EPS asks this Court to find that Plaintiff acted with the "intent to deprive" EPS of the electronic information's use in this litigation and dismiss the action with prejudice under Fed. R. Civ. P. 37(e)(2)(C).  If the Court does not dismiss this matter under Fed. R. Civ. P. 37(e)(2)(C), EPS requests that this Court presume that the lost information was unfavorable to Plaintiff pursuant to Fed. R. Civ. P. 37(e)(2)(A).

In the alternative, if this Court does not find an "intent to deprive" under Fed. R. Civ. P. 37(2)- which it should -, EPS requests that this Court find prejudice to EPS from the loss of electronic stored information on Plaintiff's phone and grant relief necessary to cure to prejudice under Fed. R. Civ. P. 37(e)(1).   At a minimum, appropriate relief necessary to cure the overwhelming prejudice to EPS includes prohibit Plaintiff from entering into evidence or otherwise using: (1) all photos and communications that originated from Plaintiff's cell phone; and (2) any photo or communication that may have originated from Plaintiff's cell phone and for which Plaintiff cannot identify or recall the independent source.[1] EPS should also be awarded costs for

---

[1]    Granted relief, however, should not prohibit EPS's use of any evidence favorable to the Defense, and the use of any such evidence by the Defense, should not be deemed to open the door to other evidence on Plaintiff's phone not specifically introduced by the Defense. Specifically, as detailed further herein, Defense independently discovered **Exhibit 2,** Gabon bar photo of Plaintiff in Gabon Bar.  As further detailed herein, while Plaintiff used his phone to post this photo (and may have even taken the photo himself with his phone) – Plaintiff did not produce it in discovery. EPS independently discovered it and EPS should not be prohibited in any manner from using this photo – even if at some point it was on Plaintiff's phone.

this motion.

### Background and Timeline

As this Court is aware, Plaintiff served as a seafarer on the M/V STARGATE.  Plaintiff had a Lenovo Vibe K5 cell phone – and access to it - on STARGATE. (*i.e.*  the "cell phone" as referenced throughout herein). (Ganpat Dep. 67:1-68:9; 178:19-179:6).   The Lenovo Vibe K5 model has a camera, internet access, and significant memory capabilities (RAM: 2GB; 16GB eMCP storage; Card slot for up to 32 GB microSD). [2]

While on STARGATE, Plaintiff used his cell phone to communicate with others, including though the WhatsApp application. (Ganpat Dep. 181:1-3).

### Plaintiff Failed to Preserve Electronic Evidence – on his Cell Phone – Related to the Gabon Bar Where Plaintiff Likely Acquired Malaria

Plaintiff alleges that he was exposed to malaria (*Plasmodium falciparum)* while in Gabon, Africa in May 2017.  [Dkt. 411 at paragraph 28].  Mr. Ganpat most likely contracted malaria in Gabon when he went ashore at night – after work hours - during the May 2017 port call in short sleeves.  Plaintiff failed to apply mosquito repellent before or during his time onshore. While shoreside, he traveled to a downtown Owendo, Gabon bar, sat down at an outdoor patio (despite taking no precautions against mosquitos), and had a beer before returning, hours later, to STARGATE.

While at this Gabon bar, Plaintiff used his cell phone to post a photo of himself at the bar and to leave a Google review for the establishment. (Ganpat Dep. 183:12-185:20); see also **Exhibt 2**, Gabon bar photo of Plaintiff.

---

[2] *See* https://support.lenovo.com/us/en/solutions/pd104260-overview-for-lenovo-vibe-k5-k5-smartphone ; last visited November 22, 2024

This photo, and the events, circumstances, and communications surrounding it, are material and highly relevant to EPS' defense as it concerns when, where, and how Plaintiff acquired malaria.

In his deposition, Plaintiff – unfathomably - denied having _any_ photos/pictures on his phone. (Ganpat Dep. 180:20-23). When later impeached, however, with the subject bar photo, Mr. Ganpat implicitly acknowledged that his phone had photos on it – at a minimum – the one from the bar he posted on a Google review from his cell phone. (Ganpat Dep. 183:12-185:21).[3]  Mr. Ganpat, however, still claimed that he did not know whose phone took the bar photo (_i.e._ if his phone took the photo or it was sent to his phone in a communication). _Id._ Either way, the subject photo – and likely other photos or communications related to the key trip to the Gabon bar, were on the Plaintiff's cell phone.  But, because Mr. Ganpat voluntarily and intentionally traded in his cell phone (during this litigation and while represented by counsel), that critical evidence – and other relevant evidence on the phone - is lost to the prejudice of EPS.

Equally important to the sanctions analysis here, Plaintiff did not produce this exculpatory photo in discovery. Rather, EPS fortuitously found it thought an independent search for material evidence.

**Plaintiff Failed to Preserve Electronic Evidence – on his Cell Phone –**
**Related to his Hospitalization in Brazil**

Plaintiff fell ill when the STARGATE arrived in Brazil from Gabon. He was transferred on May 27, 2017 - within 48 hours of reporting his illness – from the STARGATE to the local

---

[3] Plaintiff's initial denial having photos on his phone also appears to be contradicted by some Facebook posts produced by Plaintiff in discovery.  **Exhibit 3** – mobile uploads dated Nov. 23, 2017 and Mar. 29, 2018 appearing to show a "selfies" that were apparently uploaded by Plaintiff's phone.

hospital.  Plaintiff – days later – was ultimately diagnosed with malaria.  He remained in the Brazilian hospital until August 10, 2017.  Plaintiff had access to his phone in the hospital and used it – including the WhatsApp application- to communicate with other crew members from the STARGATE and family. (Ganpat Dep. 45:15-49:2; 49:20-50:5; 181:4-9).

These communications contain Plaintiff's statements during the onset of his illness and during his month's long treatment.  Plaintiff likely discussed the events that led up to his illness, but Plaintiff did not produce (or search for) any communications from this period – including those he admits to having on WhatsApp before trading-in his cell phone.

Plaintiff also produced in discovery photos from his time in the hospital (both in Brazil and his subsequent stay in the Goa hospital upon return in August 2017).  While like the bar photo, it is unclear if these photos were taken by Plaintiff or sent to him on his phone.  They are, however, likely a collection of both as at least one appears to be a selfie, while a second depicts him holding his phone.  **Exhibit 4.** A reasonable inference is the Plaintiff used his phone to send and receive, and/or take other photos while in the hospital. But no one has ever searched for these photos, and they are now lost.

These lost photos – and communications- are relevant to: (1) establishing a timeline of events on STARGATE before Plaintiff's transfer to the Brazilian hospital; (2) to confirm his treatment timeline of his treatment and diagnosis in the Brazil hospital; and (3) to refute Plaintiff's meritless claims that EPS abandoned him in the Brazilian hospital. [Dkt. 411 at paragraph 6, incorporating paragraphs 41, 49, 87, 102 of original complaint [Dkt. 1]]. But again, because Mr. Ganpat voluntarily traded in his phone, this ESI is lost.

### Communications with Able Barretto Related to the GOA newspaper article about Plaintiff Were Not Produced

Not long after repatriation to India (on an EPS funded first-class business ticket) in August 2017, Plaintiff commenced communications with Goa (India) Herald newspaper reporter Able Barretto.  Mr. Barretto interviewed Plaintiff and published an article on November 7, 2017. **Exhibit 5,** Goa Herald Article.

The article reveals that Plaintiff provided statements to Mr. Barretto about: (1) when he "started getting a fever"; (2) his experience on the STARGATE when he fell ill to include, the actions of the Second Officer and his treatment of Plaintiff (*e.g.* "[t]he Second Officer … administered him some powder to bring his temperature down."); (3) his medical diagnosis and disability; and (4) who he "blame[d]" for his illness.  *Id.*   The article closes by stating:

"The young man [Plaintiff] who has escaped the jaws of death is now getting ready to regain total health and a **long legal battle with his company for a fair compensation."**

This representation in the article establishes that litigation was not only reasonably foreseeable to a reasonable party – but that Plaintiff –foresaw and was "getting ready" for litigation with EPS- **in November 2017.**  This triggers a clear duty to preserve relevant information as of this date.

Plaintiff's statement – via communications with Mr. Barretto are– most likely – the most complete and contemporaneous version of the events that are at issue in this litigation. His statements to Mr. Barretto were made over a year before Plaintiff filed his December 2018 complaint [Dkt. 1], and almost four years before his August 2022 deposition.

Plaintiff communicated with Mr. Barretto via WhatsApp. *See* **Exhibit 6** Plaintiff Response to Request No. 7 dated October 18, 2024 (producing WhatsApp chat between Plaintiff and Abel Barretto in response to request for any document, communication, statement provided to, or with, or received from Abel Barretto); *see also* **Exhibit 7** Plaintiff Response to EPS Second Set of

6

Interrogatories dated October 18, 2024, at Interrogatory No. 3 (Plaintiff met with Abel Barretto in person and explained "what he recalled occurred before he became unconscious and hospitalized in Brazil).

But Plaintiff's production related to Able Baretto does not include any documents or communication from 2017 -dispute a valid request for them. (Plaintiff did not object to Request No. 7 in its October 19, 2024 response). **Exhibit 8**, Abel Barretto WhatsApp Chat.[4]  Plaintiff's produced WhatsApp Chat with Abel Barretto starts on March 12, 2020 – over 2 years after the subject article's November 2017 publication – and appear to coordinate a call between Mr. Barretto and Plaintiff's lawyer. *Id.*

Again, because Mr. Ganpat voluntarily traded in his phone, his statements and communications with Abel Barretto are lost to the prejudice of EPS.

### Plaintiff Saved Communications with Captain Bhasin in November and December 2017 – But Not Others - and Strategically Attached them to his Complaint

Again, Plaintiff attaches to his complaint purported communications between him and Captain A.K. Bhasin – of non-party EPS India – related to his sick pay. [Dkt. 1 at paragraph 49]; *see also* [Dkt. 469 at 11, Plaintiff Exhibit Number 177].

Plaintiff admits that he used his cell phone to exchange the messages – via WhatsApp- with Captain Bhasin that are attached to his complaint. (Ganpat Dep. 191:2 – 191:8).[5]

EPS, however, to its prejudice, does not have access to the reminder of the conversations with Captain A.K. Bhasin before or after the selected ones saved by Plaintiff for the benefit of his

---

[4] For example, Plaintiff has not even provided any documentation or correspondence related to the scheduling of the alleged "in-person" meeting. Plaintiff's production also appears to be incomplete/cut-off, without providing the complete exchange between Mr. Barretto and Plaintiff.
[5] The conversations appear to have a picture of Plaintiff on a ship in the background – further calling into dispute Plaintiff's sworn testimony that there were no photos on his phone.

complaint because again, Mr. Ganpat voluntarily traded-in his phone.

## Plaintiff Represented  by Sotolongo Law Before Trading In His Phone

EPS does not know the exact date Sotolongo Law began to represent Plaintiff, but it appears to be on or about November 2017 – around the same time frame that:

- Plaintiff communicated with Abel Barretto for the November 2017 Goa Herald article.

- Plaintiff contacted Captain Bhasin (EPS India) via WhatsApp on his since traded-in cell phone on November 14, 2017.  This is the conversation – through December 2017 – Plaintiff attached to his complaint.

This conclusion is further supported by the Sotolongo Law medical release form – attached to Plaintiff's complaint [Dkt. 1-8 at 4]- that Plaintiff signed on December 5, 2017 authorizing Sotolongo law to obtain "all [of Plaintiff's] medical records, accident reports, employment contracts, personnel fil, and medical card," from non-party EPS (India).  *See also* Ganpat Dep (154:14-155:2)(Plaintiff retained Mr. Sotolongo "[s]omewhere at the end of 2017 or 2018."); [Dkt 1-8 at 1](Letter from Sotolongo Law dated January 12, 2018 and signed by Peter Sotolongo)("My office has the pleasure of representing [Plaintiff]…").

## Plaintiff Prepared for Litigation in 2018

In addition Plaintiff's actions in 2017 detailed above, Plaintiff's took steps in 2018 that further establish that litigation was reasonably anticipated before Plaintiff traded in his phone. By way of further explanation, these actions include:

- Correspondence with EPS' P&I  where the parties disputed Plaintiff's right to payment outside the scope of Plaintiff's employment agreement. [Dkt. 1-9 and 1-10](Sotolongo law indicating it "disagree[s] with [EPS'] position" on January 30,

2018)

- Correspondence with EPS counsel where the parties disputed U.S. jurisdiction and application of U.S. law. [Dkt. 1-11; 1-15](Sotolongo Law discussing dispute of location of treatment and that "I fail to understand you reasoning…").

- Plaintiff obtained a declaration of Dr. James M. Losition [Dkt. 1-15 at 1] – a designated expert in this case[Dkt. 454 at 1-2]- to support assertions as to Plaintiff's medical conditions and need for treatment in the United States.

- Plaintiff directed on April 13, 2018 that all correspondence go through his counsel. [Dkt. 1-17]; *see also* [Dkt. 1-18].

*See also generally* [Dkt 1-10 through 1-21].

*Plaintiff Trades-In His Cell Phone Containing Critical Electronic Evidence*
*"Sometime after 2018"*

Plaintiff admits to trading in his working cell phone "after 2018 or something like that." (Ganpat Dep. 180:12-19).

Plaintiff's produced WhatsApp chat with Mr. Barretto (from 2020) contains a notification date August 2019 that read, "Your security code with abel bareto [sp in original] changed." Exhibit 8. WhatsApp provides the following explanation for these security code change notifications:

> "At times, the security codes used in end-to-end encrypted chats between you and one other person might change. **This is likely because you** or your contact reinstalled WhatsApp, **changed phones**, or added or removed a paired device". [6] (emphasis added).

A reasonable inference from the 2020 WhatsApp chat with Mr. Barretto is that Plaintiff traded in

---

[6] **Exhibit 9,** WhatsApp FAQ "about security code change notifications." Available at https://faq.whatsapp.com/1524220618005378/?cms_platform=web ; last visited November 25, 2024.

his cell phone in August 2019 – approximately 10 months after litigation commenced here.

Regardless, as detailed above, when Plaintiff traded in his phone litigation (even assuming it was January 1, 2019- *i.e.* the earliest possible time "after 2018") it was not only long foreseeable (and anticipated by Plaintiff and others as early as November 7, 2017 as reflected in the Goa Herald article), but Plaintiff had already filed his complaint on December 12, 2018.

Before trading in the phone, Plaintiff did not preserve a forensic copy of the ESI on it. No one – including his attorneys to whom he had sent selected phone data from – told him that he needed to preserve or save his phone. (Ganpat Dep. 241:20-23; 239:25-241:5).

Further, Plaintiff did not – and could not conduct a full search for – and produce - relevant evidence – to include evidence favorably to EPS - on his phone it's because he traded it in.  (Ganpat Dep. 181:10-20; 191:20-192:23; 239:25-241:23).  By way of further explanation:

**Plaintiff Requested – and EPS Did Not Receive - the Lost Electronic Evidence in Discovery**

EPS issued requests for production to Plaintiff on May 6, 2022.  This request encompasses not only the cell phone itself, but the electronic data on the cell phone that Plaintiff did not preserve. **Exhibit 10,** Plaintiff's Responses to EPS' Request for Production dated June 6, 2022**.** See Response to Requests 24-29 (requesting cell phone used by Plaintiff, cell phone records, and various electronic communications and documents that would be on Plaintiff's traded-in cell phone).

Again, in summary, despite a valid request, Plaintiff has failed to produce or search for - relevant communications and photos on his cell phone related to – at a minimum: (1) his bar visit in Gabon; (2) with crew members and family – including during his stay in the Brazilian hospital – concerning the events on the STARGATE leading up to his illness, actions of the crew; and his treatment on STARGATE and afterwards; (3) Able Barretto's November 2017 newspaper article

published in the Goa Herald about Plaintiff; and (4) with EPS India related to his wages because the ESI is lost.

### Plaintiff Only Saved Hand-Selected Electronic Evidence

As detailed above, Plaintiff hand selected – and saved for use in his complaint- his 2017 communication with Captain Bhasin from his cell phone – before apparently trading in his phone.

This may not be the only evidence Plaintiff hand selected from his phone. By way of further information Plaintiff also produced photographs labeled as:

- "Photographs of the MV STARGATE."

- "Photographs of Feet."  The photos appear to be from his hospital treatment (in both Brazil and India) in 2017.  One of these photos was also attached to Plaintiff complaint. [Dkt. 1-14].

- "Photographs of Before Illness." Two appear to be on a ship, and include a "selfie" that appears to be taken by Plaintiff.

While Plaintiff does not detail where these photos originated, they likely originated from or were sent to his cell phone. For example, the STARGATE photos appear to be from when individuals were boarding the STARGATE and from on STARGATE's decks. **Exhibit 11.** Similarly, some of the photos – in addition to the one attached to Plaintiffs complaint [Dkt. 1-14] of Plaintiff's feet appear to be "selfies." **Exhibit 12.**  Finally, at least one of photographs of Plaintiff before his illness appears to be a selfie taken by the Plaintiff aboard a vessel. **Exhibit 13.** A reasonable inference is that these photographs were also on Plaintiff's cell phone and the original photos – and associated data - was not preserved with them.

### Legal Standard

Rule 37(e) of the Federal Rules of Civil Procedure governs sanctions for a party's failure

to preserve electronically stored information ("ESI"). *Disedare v. Brumfield*, No. CV 22-2680, 2024 WL 1526699, at *3 (E.D. La. Apr. 9, 2024)(Judge Morgan); *see also* Fed. R. Civ. P. 37(e); *Grant v. Gusman*, No. CV 17-2797, 2020 WL 1864857, at *8 (E.D. La. Apr. 13, 2020)

> Specifically, Fed. R. Civ. P. 37(e) states:
>
> [i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment

*Id.*

The "four predicate elements [that] must exist" before a court may sanction a party for lost ESI are: "(1) the ESI should have been preserved;" (2) the ESI was lost; "(3) the lost ESI resulted from a party's failure to take reasonable steps to preserve it; and (4) the lost ESI cannot be restored or replaced through additional discovery." *Disedare* at *4 (citations and quotations omitted).

"The presumption that lost information was unfavorable to the destroying party derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction." *Id.* "An adverse inference may be imposed to plac[e] the risk of an erroneous judgment on the party that wrongfully created the risk," thereby returning the "prejudiced party to its position had ESI not been lost. *Id.*

"The party alleging spoliation bears the burden of proof." *Id. but see* 2015 Advisory Committee Notes to Rule ("The rule does not place a burden of proving or disproving prejudice on one party or the other… placing the burden of proving prejudice on the party that did not lose the information may be unfair … The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.").

**Argument**

**I.      ESI should have been preserved as of November 2017.**

A party to litigation has a duty to preserve evidence "when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).  "Such a duty does not exclusively arise during litigation but extends to the period before litigation when a party knew or should have known that litigation was imminent."  *Disedare* at *6 (citations and internal quotations omitted). "The duty to preserve extends to information that is relevant to the claims and defenses of any party, or which is relevant to the subject matter involved in the action." *Id.*

Plaintiff's duty to preserve was triggered in November 2017 when he began to prepare for litigation against EPS.  The Goa Herald's article documents that in November 2017 Plaintiff anticipated litigation with EPS.

Further, as detailed above, actions by Plaintiff's attorneys in early 2018 confirm that Plaintiff was preparing for litigation. Plaintiff and EPS were argued over the right to payment outside the scope of Plaintiff's employment agreement, U.S. jurisdiction and the application of U.S. law, and Plaintiff's medical condition and need for treatment in the U.S. – all which also further a duty to preserve ESI.

Finally, Plaintiff commenced litigation in December 2018, thereby, undisputedly,

13

triggering Plaintiff's duty to preserve.  All the above events occurred before Plaintiff traded-in his phone "after 2018."

Undisputedly, the Plaintiff's cell phone and its data constitute ESI.  *See e.g. Owens v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 695 F. Supp. 3d 750, 754 (M.D. La. 2023)(conducing Rule 37(e) analysis and concluding that "[t]here should be no question that a standard specific to ESI is the appropriate legal standard for evaluating the spoliation of data on the [at issue] cell phones."); *Kellar v. Union Pac. R.R. Co.,* 2024 WL 3818535, at *8 (E.D. La. July 26, 2024), *report and recommendation adopted*, 2024 WL 4649244 (E.D. La. Oct. 17, 2024)(Finding a duty to preserve cellphone data and noting that a "party must take reasonable steps to preserve all relevant ESI under FRCP 37(e), including emails, shared files, social media, and data sources.").

## II.    ESI – the Plaintiff's cell phone and associated data - was lost.

Again, Plaintiff admits that the phone – and implicitly the electronically stored information on it - is lost.  (Ganpat Dep. 181:10-20; 191:20-192:23; 239:25-241:23). Plaintiff never conducted a search for relevant evidence on the phone – he only hand selected and saved what was beneficial to his complaint.  Because the phone is lost, the extent and scope of the lost ESI is unknown.

But it is clear – as noted above - conversations – including WhatsApp communications and photographs relevant to this case were lost from Plaintiff's time on STARGATE, during his treatment in Brazil, and during the November/December 2017 timeframe when Plaintiff began preparing his case against EPS.  These conversations are relevant and material to EPS defense because they directly contain contemporaneous reports related to Plaintiff's allegations about what happened on the STARGATE, how he was exposed to malaria, his treatment, and its

aftermath.

### III.   The Lost ESI Resulted from Plaintiff's Failure to Take Reasonable Steps to Preserve it.

"Rule 37(e) imposes a duty on parties to litigation "to take reasonable steps to preserve"

ESI.  *Disedare* at *9 (quoting Fed. R. Civ. P. 37(e)).

Plaintiff had full control and responsibility for his phone. Plaintiff, however, admits he

voluntarily traded in his working cell phone – thereby failing to take reasonable steps to preserve

it and its electronic data for EPS' use in this litigation.

EPS acknowledges that while Plaintiff himself may not be sophisticated with litigation

and in evaluating preservation requirements, that same cannot be said for his learned and

experienced counsel.  Counsel -and thus the Plaintiff – should be familiar with preservation

obligations that litigation imposes.  *Link v. Wabash R. Co.,* 370 U.S. 626, 633–34 (1962)("An

attorney is an agent of the party, and a party cannot, "avoid the consequences of the acts or

omissions," of its attorney."). "Counsel must oversee compliance with the litigation hold,

monitoring the party's efforts to retain and produce the relevant documents." *Owens 695 F. Supp.*

*3d 750, 758 citing Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004); *see*

*also, Yelton v. PHI, Inc.*, 279 F.R.D. 377, 387 (E.D. La. 2011).  To ensure compliance with the

preservation obligation counsel should "(1) issue a litigation hold at the outset of litigation or

whenever litigation is reasonably anticipated; (2) clearly communicate the preservation duty to

"key players"; and (3) "instruct all employees to produce electronic copies of their relevant

active files" and "separate relevant backup tapes from others." *Id. citing Zubulake.*

Counsel here failed to take any of these steps – including clearly communicating to Plaintiff his

preservation duty, resulting in the significant loss of ESI here.

Plaintiff and his attorneys had a duty to preserve the cell phone and its data long before Plaintiff traded in his cell phone, and they failed in that duty. *See Kellar,* 2024 WL 3818535, at *8 (E.D. La. July 26, 2024). <u>*No*</u> apparent steps were taken to collect the phone's data and preserve it by the Plaintiff and his attorneys.

The burden of maintaining the Plaintiff's cell phone was minimal at most – yet Plaintiff and his attorneys did not do so. They failed to not only save the phone itself, but the ESI on it by not making a back-up or forensic copy for later examination by EPS. There is no legitimate justification for failing to preserve Plaintiff's cell phone and simultaneously using data from the phone for Plaintiff's complaint.

**IV.    The Lost ESI cannot be Restored or Replaced Through Additional Discovery**

There is no dispute that Plaintiff traded-in his cell phone and that it is gone – likely long ago wiped of data, restored to factory settings and resold or recycled. (Ganpat Dep. 181:10-20; 191:20-192:23; 239:25-241:23). The original data is forever lost.

While in theory EPS might be able to recovery some communications or photos through third parties – it is unreasonable to conclude that EPS could retrieve all relevant information (communication and texts) this way (*i.e.* such as photos taken by Plaintiff and not shared, etc.). *Owens*., 695 F. Supp. 3d 750, 760 (M.D. La. 2023). Further, even if some of the information lost is – to some extent – cumulative – there is still a negative impact on EPS because EPS cannot present the "overwhelming quality of evidence" EPS otherwise would have had for its defense. *Id.* Ultimately, because there is no "guaranteed way to recover the files," and because "any attempts would extremely costly and potentially futile," the missing cell phone data cannot be replaced or restored for Plaintiffs' use. *Id.*

**V.    EPS is Prejudiced**

"[T]he prejudice inquiry turns on whether the party seeking sanctions can demonstrate the missing or altered evidence would have been relevant to proving a claim or defense." *Disedare* at *10. "[L]ost or destroyed evidence is 'relevant' if a 'reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Id.*

Plaintiff – and his testimony – are central in this litigation. It stretches the bounds of reason to think his cell phones would contain no relevant communications or photos other than the few hand-selected and saved by Plaintiff to support his claims.

As a result, EPS is left with missing- or an incomplete record - of the communications that Plaintiff had with STARGATE crewmembers, family, EPS India, Mr. Barretto, and other potentially unknown third parties.

Further, much of the Plaintiff's case relies on his own testimony.  Without the lost ESI, EPS cannot test the consistency of Plaintiff's testimony or properly cross-examine Plaintiff at trial.  This is particularly troubling because Plaintiff has already recanted some of his allegations. Specifically, Plaintiff disavowed paragraph 24 of his complaint [Dkt. 1-1] (incorporated and adopted in the amended and restated complaint [Dkt. 411] via paragraph 6) in his deposition. Ganpat Dep (157:18-159:5)(admitting paragraph 24 of his complaint was not true).

Photos too are lost.  These lost photos also might have had a significant impact on this case.  This is most evident with the photo – discussed above - of Mr. Ganpat at the Goa bar on shore leave in short sleeves at an outdoor bar, where he most likely was exposed to malaria. Exhibit 2**.**  Again, Plaintiff did not produce this photo – that was on his phone - and EPS luckily found it through a search of social media.

17

What would the case look like if EPS hadn't discovered this photo? What other photos are gone – and now unknown and unavailable to EPS - because of Plaintiff's actions that might further exonerate EPS?

Ultimately, no one knows exactly what ESI Plaintiff lost or how significant that ESI is to this litigation – but the overwhelming impact cannot be ignored or understated.  EPS suffers prejudice due to this lost ESI. *See Owens,* 695 F. Supp. 3d 750, 760 (M.D. La. 2023); *see also Brown v. Certain Underwriters at Lloyds, London* 2017 WL 2536419, at *5 (E.D. Pa. June 12, 2017)(Finding prejudice and noting Defendants "ha[ve] not and will not have any opportunity to determine whether information on Plaintiff's cell phone would have aided their defense of Plaintiff's claim…").

## VI.    Plaintiff acted with actual intent as required by Fed. R. Civ. P. 37(e)(2)

"A party must prove actual intent by either direct evidence or by inference from a strong chain of circumstantial evidence." *Disedare* at *11(citations and quotations omitted).  "The few courts in the Fifth Circuit that have considered whether a party acted with the intent to deprive their adversary of the use of lost ESI in litigation under Rule 37(e) analogize the standard to the 'bad faith' standard for a finding of spoliation." *Id* at 12(citations omitted).

### Plaintiff Only Preserved Certain Favorable Evidence

Bad faith can be evinced when "documents were destroyed after [a defendant] had notice of their relevance to [a plaintiff's] claim." *Id. citing Russell v. Univ. of Tex. of Permian Basin, 234 Fed. App'x 195, 208 (5th Cir. 2007)*.  Similarly, "the selective preservation of relevant evidence in the face of imminent litigation" can amount to bad faith.  *Disedare* at *12 citing *Miramontes v. Peraton, Inc*, 2023 WL 3855603, at *6 (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004)); *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475-76 (E.D. Pa. 2020) ("Selective

preservation can also reflect intent.")).

The facts here support finding intent.  Plaintiff's counsel never told Plaintiff of his obligation to preserve his phone and took no action to safeguard it (or bank-up its data) – despite using evidence hand-selected evidence from the phone for his complaint (*i.e.* selective preservation and on notice of the relevance of the phone's data).

### Plaintiff's Intentional Acts Resulted in Lost ESI

Plaintiff knew that this case – since 2017 – was adversarial and disputed.  Plaintiff knew there was relevant information on his phone related to the litigation that he commenced against EPS  - after all, he had sent some of it to his counsel.   Despite this knowledge, Plaintiff still affirmatively traded-in his phone.  This is not a case of automatic or accidental deletion of ESI – this is a case of an affirmative and intentional act that directedly resulted in a large volume of ESI being forever lost.

### Plaintiff Did Not Disclose the Goa Bar Photo

Again, as discussed above, Plaintiff did not disclose the existence of his Google review and the photo of him in the bar at Goa in his discovery response (or produce this document and photo). **Exhibit 14**, Plaintiff's Answers to Defendants Interrogatories dated June 6, 2022 at Interrogatory No. 16; *see also* Exhibit 10 at Response 26 (describing and producing Facebook posts but not Google Review).  EPS discovered Plaintiff's Google review and photo after receiving Plaintiff's discovery responses.

This photo establishes clear intent of Plaintiff to withhold ESI from Plaintiff. By way of further explanation:

Again, in his deposition, Plaintiff denied having *any* photos/pictures on his phone. (Ganpat Dep. 180:20-23). When impeached - with the subject bar photo, however, Mr. Ganpat implicitly

acknowledged that his phone had photos on it – at a minimum – the one from the bar he posted on a Google review. (Ganpat Dep. 183:12-185:20). Plaintiff's deposition testimony is evidence of a proclivity on Plaintiff's part to lie – under oath – about the scope of evidence – to include photos – on his phone.

Further, this is photo (and its lack of disclosure) is instructive because it is evidence of a motive for Plaintiff to intentionally conceal evidence on his phone and trade-it in/have it no longer in his possession as the litigation progressed.  Plaintiff only admitted to the photo – and its existence on his phone- when confronted with it at his deposition.

Withholding information about the Goa bar photo is consistent with Plaintiff's lack of forthcomingness overall with regards to his phone.

Again, Plaintiff admits to turning in his phone "after 2018," but he doesn't isn't specific on when he exactly did.

Further, Plaintiff did not disclose that he no longer had his phone until 2022.  Plaintiff only provided this information to EPS after specific inquiry from EPS about the phone and its ESI. Exhibit 12 at Interrogatory No. 15 ("Lenovo Vibe K5 Note – no longer in Plaintiff's possession. Present location unknown").  And it wasn't until the deposition that Plaintiff explained the circumstance surrounding why his phone was longer in his possession – his affirmative acts taken during the litigation of this case. (Ganpat Dep. 178:19-180:19).

While it's unclear when Plaintiff told his attorney about the lost phone – it does not appear Plaintiff or his counsel – took any steps to try to retrieve the phone. If Plaintiff's counsel did not know that Plaintiff no longer had his phone until EPS' submitted its May 2022 discovery request – that further highlights the gross failure of Plaintiff and his counsel to comply with their preservation obligations and their intent/bad faith in keeping this evidence from EPS.

**The Same Background on Conversations from 2017 and 2020 Suggest
the Phone and/or Its Data May not Be Traded-In /Lost as Plaintiff Claims**

Again, Plaintiff attached a WhatsApp chat with Captain Bhasin from 2017 to his

complaint. [Dkt. 1-7, Exhibit 6 to Complaint [Dkt. 1]].  The background to this WhatsApp Chat

appears to show Plaintiff standing on the deck of a ship.

Again, Plaintiff traded in his phone "after 2018" and represented on in his June 2022 that

he no longer had the phone in his possession.

In October, 2024 EPS produced WhatsApp chat between Plaintiff and Abel Barretto that

are dated August 2022. Exhibit 8. The background of this WhatsApp chat is the same

background as Plaintiff's 2017 WhatsApp Chat with Captain Bhasin. *Compare* background of

[Dkt. 1-7, Exhibit 6 to Complaint [Dkt. 1]] *with* Exhibit 8.

The same background suggests that Plaintiff may have saved some ESI when he traded in

his phone – including this background photo- that he has not disclosed to EPS.

**Plaintiff Waited to Inform EPS about the Lost ESI and Did Not Provide Evidence About
Goa Bar Photo on his Phone**

Plaintiff's lack of credibility regarding the phone's contents and overall forthcoming also

supports a finding of bad faith.  *See Kellar* 2024 WL 3818535, at *11 discussing *Corey Brown v.

Certain Underwriters at Lloyds, London, et al No. 16-CV-02737, 2017 WL 2536419, at  *4 (E.D.

Penn. Jun. 12, 2017)*. Specifically, in discussing the *Corey Brown* case – where the Court found

bad faith and awarded sanctions for a lost cell phone - the *Kellar* court noted:

> [Plaintiff ] and his attorney did not notify [Defendant] of the loss of relevant evidence that
> he had a known duty to preserve until hours before the requested time of production, even
> though its loss had supposedly been known for at least four (4) months. [Plaintiff] offered
> zero explanation as to how he came to lose his phone.  He also offered no indication that
> he took even rudimentary steps to preserve the evidence that existed on his phone, as was
> his obligation, or to take any measures to find the phone after it was somehow lost.

21

The facts in *Corey Brown* are similar to the facts here – again: (1) Plaintiff lied about photos being on his cell phone; (2) Plaintiff did not disclose an exculpatory photo and review posted on social media from his time at an outdoor bar in Gabon where he likely contradicted malaria; (3) Plaintiff intentionally turned in his phone, thereby resulting it in not being available for EPS use in this litigation; (4) Plaintiff and his counsel took no steps to preserve the phone and comply with their legal obligations; and (5) Plaintiff did not notify EPS about the loss of relevant evidence until EPS demanded discovery on the phone.

A finding of intent/bad faith is supported- and appropriate under the facts of this case. The appropriate remedy is dismissal with prejudice.

## Conclusion

Pursuant to Fed. R. Civ. P. 37(e)(2)(C), this Court should dismiss this case with prejudice due to the spoliation of Plaintiff's cell phone and the ESI therein. If the Court does not dismiss this matter under Fed. R. Civ. P. 37(e)(2)(C), this Court should presume that the lost information was unfavorable to Plaintiff under Fed. R. Civ. P. 37(e)(2)(A).

All four predicate elements clearly exist: "(1) the ESI should have been preserved;" (2) the ESI was lost; "(3) the lost ESI resulted from Plaintiff's – and his counsels' - failure to take reasonable steps to preserve it; and (4) the lost ESI cannot be restored or replaced through additional discovery. Further, the facts and circumstances establish not only prejudice to EPS, but an intent/bad faith by Plaintiff to deprive EPS of this ESI for use in its defense.

In the alternative – if the Court does not find intent – this Court should still grant EPS relief under Fed. R. Civ. P. (e)(1) – which should include prohibiting Plaintiff from using any evidence derived – or potentially derived – from Plaintiff's phone and costs.

Dated: December 3, 2024

Respectfully Submitted,

/s/ J. Stephen Simms                        MICHAEL H. BAGOT, JR., T.A. (#2665)
J. Stephen Simms                            THOMAS A. RAYER, Jr. (#20581)
Catherine M. Benson                         WAGNER, BAGOT & RAYER, LLP
Gary C. Murphy                              Pan American Life Center – Suite 1660
Simms Showers LLP                           601 Poydras Street
201 International Circle, Suite 230         New Orleans, Louisiana 70130
Baltimore, Maryland 21030                   Telephone: 504-525-2141
Tel:  410-783-5795                          Facsimile: 504-523-1587
Fax: 410-510-1789                           E-mail: mbagot@wb-lalaw.com
Email: jssimms@simmsshowers.com

Eastern Pacific Shipping Pte. Ltd. Counsel