UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KHOLKAR VISHVESHWAR GANPAT, | CIVIL ACTION NO.: 18-13556 SM-KWR |
| Plaintiff, | IN ADMIRALTY |
| v. | JUDGE SUSIE MORGAN |
| EASTERN PACIFIC SHIPPING PTE. LTD., d/b/a "EPS" | MAG. JUDGE KAREN WELLS ROBY |
| Defendant. | |

### PLAINTIFF'S ANSWERS TO DEFENDANT'S INTERROGATORIES

To: Eastern Pacific Shipping, Pte. Ltd.
Through its Attorneys of Record:

J. Stephen Simms, Esquire
Simms Showers LLP
201 International Circle, Suite 250,
Baltimore, Maryland 21030

Michael Bagot, Esquire
Wagner, Bagot & Rayer LLP
601 Poydras St., Suite 1660
New Orleans, LA 70130-6029

COMES NOW Kholkar Vishveshwar Ganpat ("Plaintiff"), and provides his responses and objections to the following Interrogatories propounded by Eastern Pacific Shipping Pte. Ltd. ("Eastern Pacific") on May 6, 2022:

**INTERROGATORY NO. 1:**

Please identify all persons who are likely to have personal knowledge of any fact alleged in the pleadings, and state the subject matter of the personal knowledge possessed by each such person.

**Answer: Please refer to the individuals and subject matters listed in Plaintiff's Fed. R. Civ. P. 26(a)(1)(A)(I) served on April 29, 2022.**

**INTERROGATORY NO. 2:**

Please itemize and show how you calculate any damages claimed by you in this action, whether economic, non-economic, punitive, or other.

**Answer:**

**Economic damages:**
- Past medical expenses – Plaintiff's out-of-pocket payments for medical expenses
- Future medical expenses – To be determined by Plaintiff's treating physicians, a vocational rehabilitation expert, and an expert economist.
- Loss of past wages – To be determined prospectively by an expert economist and will be based upon Plaintiff's pre-injury income, post-injury maintenance payments, and possible post-MMI income before trial.
- Loss of future wages – To be determined by Plaintiff's treating physicians' disability ratings, a vocational rehabilitation expert, and an expert economist.
- Loss of employment opportunities – To be determined by Plaintiff's treating physicians' disability ratings, a vocational rehabilitation expert, and an expert economist.

**Non-economic damages:**
- Pain and suffering – To be determined by a jury.
- Punitive damages – To be determined by a jury.
-

**INTERROGATORY NO. 3:**

Please specify what if anything the plaintiff did to protect himself from mosquito bites and/or acquiring malaria upon arriving in Gabon.

**Answer: Plaintiff wore the company provided boiler suit and safety shoes, covered his hands with gloves, and tried to cover his neck as well to avoid mosquito bites.**

**INTERROGATORY NO. 4**:

Did the plaintiff buy or attempt to buy anti-malarial medication or mosquito bite prevention means on arrival at Gabon? If the plaintiff bought anti-malarial medication or mosquito bite prevention means on arrival at Gabon, please identify what the plaintiff bought. If the plaintiff did not buy or attempt to buy such medication or prevention, please state why the plaintiff did not buy or attempt to by such medication or prevention.

**Answer: Plaintiff did not buy any anti-malarial medication or mosquito bite prevention means in Gabon, however, Plaintiff requested mosquito spray for the nighttime watch on deck from the 2nd Officer, German Kudeyrovs, who failed to provide it and instead told Plaintiff that nothing would happen to him.**

**INTERROGATORY NO. 5:**

Please identify each person, other than present legal counsel, to whom plaintiff has communicated at any time that the M/V STARGATE lacked anti-malarial medication, during the voyage from Savannah to Gabon which is the subject of the complaint and identify each such communication.

**Answer: Plaintiff told his family that the 2nd Officer German Kudeyrovs informed Plaintiff and another Turkish A/B that the malaria tablets that he had ordered did not come aboard.**

**INTERROGATORY NO. 6:**

Please state each fact supporting your allegations of your Complaint Count 2 [ECF 1], identify each witness whose testimony supports that fact, and identify each communication at any time related to such fact, including but not limited to that:

   (b.) The vessel's "medical officer" was not trained to recognize the symptoms of a Malaria infection;

   **Answer: Between May 20, 2017 to May 27, 2017, Plaintiff complained to the medical officer that he was experiencing strong fevers, dark yellow urine, severe headaches, weakness and dizziness, loss of appetite and/or vomiting after eating anything, and vision problems but the medical officer failed to provide him with prompt and proper medical treatment. Moreover, Plaintiff was not signed off the ship until he was almost dead.**
   (c.) The vessel's "medical officer" was not trained to treat a Malaria infection;

**Answer: As the vessel's medical officer, German Kudeyrovs was, or should have been trained on how to recognize symptoms of malaria and how to test and treat malaria. Plaintiff's complaints and concerns of malaria were ignored by the medical officer despite symptoms of malaria. Moreover, the medical officer knew the vessel had been docked at Port Owendo in Gabon, a country known for risks of malaria, and, despite Plaintiff's symptoms, which had been occurring for days, Plaintiff was not tested for malaria or provided with any emergency standby medication for malaria.**

(d.) The vessel's "medical officer" could not treat Plaintiff's Malaria because no anti-Malaria drugs were aboard the vessel;

**Answer: While the M/V Stargate was docked in Port Savannah, Officer German Kudeyrovs informed Plaintiff and another Turkish A/B that the malaria tablets that he had ordered did not come aboard.**

(e) The vessel's Master, who was not trained to recognize the symptoms of a Malaria infection, reacted to Plaintiff's report of illness by restricting him to quarters, thus demonstrating that the Master lacked fitness to command;

**Answer: Between May 20, 2017 to May 27, 2017, Plaintiff reported that he was experiencing strong fevers, dark yellow urine, severe headaches, weakness and dizziness, loss of appetite and/or vomiting after eating anything, and vision problems. Plaintiff was not tested for malaria or provided with any malaria medication. The vessel's Master, Captain Nicolae Teodor Ivanoschi, along with the 2nd Officer, misdiagnosed Plaintiff's symptoms as a flu, despite the severe symptoms and despite the knowledge that the vessel was recently docked in Port Owendo in Gabon, a region known for a high prevalence of malaria. Instead of arranging for Plaintiff to be evaluated for his ongoing complaints and symptoms as begged to do so by the Plaintiff, the Master of the vessel consulted with his son, who he claimed was a doctor in Romania who said the symptoms he was experiencing was of a normal fever and he should eat Filipino rice; and told Plaintiff to stop making up excuses instead of working. It was not until May 27, 2017, six days after Plaintiff's initial complaints, that the Master put in an urgent request for Plaintiff to be attended to by a doctor.**

(f.) The vessel, while present in Gabon, was an unreasonably dangerous place for Plaintiff to work because no supply of prophylactic anti-Malaria drugs had been maintained aboard;

**Answer: The Centers for Disease Control and Prevention ("CDC") lists Gabon as a country where malaria can be transmitted from all areas and recommends that travelers going to Gabon take prescription medicine to prevent malaria, and that depending on the medicine taken, that the medicine would need to be taken weeks before the trip, during the trip, and weeks after the trip. Plaintiff was informed by the 2nd Officer that the stock of antimalaria medication did not arrive when the vessel was in Port Savannah. The Master was also aware that the antimalaria medication did not arrive.**

(g.) The vessel's 2nd Officer, who served as the vessel's "medical officer", was specifically informed by Plaintiff about the lack of anti-Malaria drugs before the vessel sailed from U.S. waters on April 7, 2017, and yet he did nothing, thus demonstrating he lacked the fitness to serve as 2nd Officer and "medical officer" [.]

**Answer: Prior to the M/V Stargate departing from Port of Savannah, the 2nd Officer received store and after, took an inventory of the vessel's medical supplies and found it was missing antimalaria medications, which he reported to the Captain.**

**INTERROGATORY NO. 7:**

Please state each fact supporting your allegations of your Complaint Count 6 [ECF 1], identify each witness whose testimony supports that fact, and identify each communication at any time related to such fact, including but not limited to that Eastern Pacific failed to:

(a.) Provide any medical care whatsoever to Plaintiff after the vessel departed Gabon and before it arrived at Brazil;

**Answer: The vessel departed Gabon on or about May 11, 2017 and arrived to Brazil on or about May 22, 2017. Between the voyage from Gabon to Brazil, Plaintiff was not provided with any malaria medication from the ship.**

(b.) Provide any medical care whatsoever to Plaintiff after the vessel arrived at Brazil;

**Answer: The vessel arrived at Brazil on or about May 22, 2017. Between May 20, 2017 to May 27, 2017, Plaintiff reported that he was experiencing strong fevers, dark yellow urine, severe headaches, weakness and dizziness, loss of appetite and/or vomiting after eating anything, and vision problems. Plaintiff was not provided with any antimalaria medication from the ship – he was forced to use a medication he had brought onboard with him and medication that was provided to him by other crewmembers.**

(c.) Medically evacuate Plaintiff to a more suitable medical facility; and [that Eastern Pacific]

**Answer: Defendant, through the vessel's Master and 2nd Officer / Medical Officer, failed to arrange for Plaintiff to be sent to a medical facility until he was almost dead on May 27, 2017.**

(d.) Abandon[ed] Plaintiff in Brazil without making any arrangements for his maintenance and his continued post-repatriation medical care.

**Answer: While in Brazil, Plaintiff did not receive any maintenance benefits. Plaintiff did not receive the sick wages until September 2017, approximately 3.5 months after he was signed off in Brazil. Moreover, when Plaintiff was repatriated to India on August 10, 2017. Dr. Bernardo S. Campos, Plaintiff's treating physician while in Brazil, stated that Plaintiff "must continue medical treatment upon arrival his home town for**

**approximately the next 2 months, accordingly to his evolution." While Plaintiff was sent to V.M. Salgaocar Hospital for treatment and surgery with Dr. Mahendra Anil Kumar between August 12, 2017 and August 23, 2017, he was not provided any further post-repatriation medical care until Plaintiff retained counsel and, on or about April 3, 2018, demanded for Defendant to tender the additional medical care that was recommended to Plaintiff for an open wound in his toe that Defendant agreed to provide medical treatment.**

### INTERROGATORY NO. 8:

Please state each reason that you claim that the Brazil medical facility at which plaintiff was treated was not suitable, identify each person with knowledge this claim, and identify each communication concerning this claim.

**Answer: None.**

### INTERROGATORY NO. 9:

Please state, by amount, all maintenance and cure which you contend Eastern Pacific owes the plaintiff, and all basis for your claim that any such amount continues to be owed to the plaintiff.

**Answer: Plaintiff has not been found to be at Maximum Medical Improvement ("MMI") and continues to require medical treatment for back pain and avascular necrosis of the left hip that has developed as a result of the malaria that he contracted in 2017. Plaintiff also requires follow up treatment with infectious disease, neurology, nephrology and hematology, home health care, physical therapy, and orthopedic surgery for complications related to malaria. The total amount is unknown. Investigation ongoing.**

### INTERROGATORY NO. 10:

Please state for each of your attorneys and paralegals for whom you will claim a fee award in response to your complaint, the amount of attorneys fee which each has incurred and/or which you have paid to date.

**Answer: The total amount is unknown at this time. The case and investigation are ongoing.**

### INTERROGATORY NO. 11:

Please identify any communication which you had with any person, including any attorney or paralegal, concerning your response to judicial papers issued to you by the Court at Goa, prior to your first in-person appearance in that Court.

**Answer: Plaintiff objects to this interrogatory on the basis of attorney-client privilege that it seeks information that is in the attorney's work product. Otherwise, my family.**

**INTERROGATORY NO. 12:**

Please state in detail the source and amount of any income which you have received, following your discharge from the M/V STARGATE to the present, and identify each person or entity who or which paid you that income.

**Answer: Plaintiff has received income in the amount of approximately 39,043.25 INR from renting property through Booking.com and Airbnb between 12/1/19 to 3/31/22.**

**INTERROGATORY NO. 13:**

Please state in detail whether any attorney or any person on their behalf has paid you or any member of your family any money or made any loan to you or any member of your family or provided anything of value to you or any member of your family in any connection with your claims against Eastern Pacific in this case. If you have been paid any such money, or extended any such loan, or provided any such thing of value, please for each state (a) the amount of the money, loan or description of thing of value, (b) the date paid or received; (c) the identity of the person or entity making the payment, loan or providing the thing of value; and (d) the terms for repayment of the money or loan, or for the thing of value.

**Answer: No.**

**INTERROGATORY NO. 14:**

Please state in detail what if any medical care or treatment, including medication, you provided for yourself, or you have been provided by means other than those from or on behalf of Eastern Pacific following your discharge from the M/V STARGATE, including in that detail the medical

care, treatment or medication you received, and the amounts that you paid, or that were paid for you, for such medical care, treatment or medication.

**Answer: Between October 5, 2019 to date, Plaintiff has been receiving and paying for medical treatment with Dr. Edwin M. Araujo for back pain and avascular necrosis of the left hip. Dr. Araujo has prescribed medication, recommended physiotherapy and diagnostic testing. Plaintiff has also paid for the diagnostic tests. Please refer to Plaintiff's response to RFP No. 13 for details related to the medical treatment and medication prescribed. The amounts paid currently in Plaintiff's possession are listed below. This answer will be supplemented upon receipt of further information.**

| No. | Date(s) of Service | Cost | Amount Paid |
|---|---|---|---|
| 1. | 9/25/20 | Molio Medicos – Medication | 715.00 INR |
| 2. | 10/16/20 | Molio Medicos – Medication | 657.00 INR |
| 3. | 4/6/21 | Molio Medicos – Medication | 1,990.00 INR |
| 4. | 4/6/21 | Grace Ultrasound / X-ray Clinic / O.P.G & Mammography Centre – X-ray of the left hip joint and lumbar spine | 1,000.00 INR |
| 5. | 7/3/21 | Molio Medicos – Medication | 2,500.00 INR |
| 6. | 8/6/21 | Molio Medicos – Medication | 2,513.00 INR |
| 7. | 9/7/21 | Molio Medicos – Medication | 2,500.00 INR |
| 8. | 12/6/21 | Molio Medicos – Medication | 2,650.00 INR |
| 9. | 5/4/22 | Grace Ultrasound / X-ray Clinic / O.P.G & Mammography Centre – X-ray pelvis with both hip | 500.00 INR |

**INTERROGATORY NO. 15:**

Have you used a computer and/or mobile phone at any time during the period beginning with your joining the M/V STARGATE to the present? If your answer is in the affirmative, for each such computer and/or mobile phone, state its present location and identify its make and model.

**Answer: Yes:**

1. **Dell laptop – currently in Plaintiff's possession**
2. **Motorola G60 – currently in Plaintiff's possession**
3. **Motorola G5 Plus – currently in Plaintiff's possession**
4. **Lenovo Vibe K5 Note – no longer in Plaintiff's possession. Present location unknown**

**INTERROGATORY NO. 16:**

Have you made any posts to social media at any time during the period between your joining the M/V STARGATE to the present? If your answer is in the affirmative, please state (a) the date(s) of your posts, and identify (b) the social media to which you posted.

**Answer: Yes, Plaintiff made posts on Facebook between 2/15/17 and 12/10/21.**

INTERROGATORY NO. 17:

If you contend that Plaintiff had not reached maximum medical improvement ("MMI:") as of January 29, 2018, please state all facts and identify each communication concerning that contention.

**Answer: Plaintiff still needs medical treatment to his feet and continues to receive medical treatment for the sequela of malaria, including avascular necrosis. Please refer to Dr. Araujo's medical records produced in response to Plaintiff's response to Request for Production No. 13.**

INTERROGATORY NO. 18:

If you contend that Plaintiff's Seafarer Employment Agreement does not apply to Plaintiff's claims, state all facts and identify each communication concerning that contention.

**Answer: Plaintiff contends that the Seafarer's Employment Agreement that applies is the first three pages of the 14-page Contract dated December 22, 2016 signed by Mr. Kholkar and EPS' representative(s).**

INTERROGATORY NO. 19:

Please state all facts concerning the matters alleged in Count VII of your Supplemental Complaint, identify each witness with knowledge of those facts, and identify each communication concerning those facts.

**Answer: Plaintiff objects to this interrogatory on the basis of attorney-client privilege. The facts are stated in Count VII. Please refer to Count VII of Plaintiff's First Supplemental Complaint for each witness with knowledge and communication concerning those facts.**

Dated: June 6, 2022

AS TO OBJECTIONS:

/s/ Richard M. Martin, Jr.
Richard M. Martin, Jr. LA Bar #08998
LAMOTHE LAW FIRM, LLC
400 Poydras Street
Suite 1760
New Orleans, Louisiana 70130
Telephone: (504) 704-1414
E-Mail: rmartin@lamothefirm.com
*Local Counsel for Plaintiff*

/s/ Alejandro J. Gonzalez
Alejandro J. Gonzalez, FL Bar # 015293
GONZALEZ, P.A.
19 South Krome Ave.
Homestead, FL 33030
Telephone: (877) 413-4448
E-Mail: alex@agonzalezlaw.com
*Co-Counsel for Plaintiff, pro hac vice*

/s/ Pedro P. Sotolongo
Pedro P. Sotolongo, FL Bar #0584101
SOTOLONGO, P.A.
1000 5th Street
Miami Beach, FL 33139
Telephone: (305) 415-0073
E-Mail: psotolongo@sotolongolaw.colm
*Co-counsel for Plaintiff, pro hac vice*

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 6, 2022.

_____
VISHVESHWAR GANPAT KHOLKAR
Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has this day been forwarded to the following counsel of record to this proceeding by electronic transmission, this 6th day of June 2022.

J. Stephen Simms, Esquire
Simms Showers LLP
201 International Circle, Suite 250,
Baltimore, Maryland 21030
jssimms@simmsshowers.com

Michael Bagot, Esquire
Wagner, Bagot & Rayer LLP
601 Poydras St., Suite 1660
New Orleans, LA 70130-6029
mbagot@wb-lalaw.com

                                                */s/ Pedro P. Sotolongo*
                                                PEDRO P. SOTOLONGO