UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KHOLKAR VISHVESHWAR GANPAT,<br><br>    Plaintiff,<br><br>v.<br><br>EASTERN PACIFIC SHIPPING PTE, LTD., d/b/a/ "EPS"<br><br>    Defendant. | Civil Action No.  18-13556 "E" (4)<br> IN ADMIRALTY<br><br>JUDGE:  SUSIE MORGAN<br><br>MAG. JUDGE:  KAREN WELLS ROBY |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
TO PROHIBIT TESTIMONY BY VIDEO CONFERENCE**

Defendant Eastern Pacific Shipping Pte, Ltd. ("EPS") submits this memorandum in support of its motion *in limine* seeking to limit testimony by video conference of Plaintiff Kholkar Vishveshwar Ganpat's witnesses under Fed. R. Civ. P. 43(a).

## Background

This Court is familiar with Mr. Ganpat's allegations against EPS.

Trial has since June 20, 2024 been scheduled for February 10, 2025 [Dkt. 411].

Plaintiff chose this forum, filing suit December 12, 2018 (Dkt. 1) – far away from Goa, where he lives.

Mr. Ganpat has indicated he intends to call an international potpourri of witnesses (27 witnesses to be exact), spanning the globe, including many who reside outside of the United States in, among others, India, Brazil, Singapore, Liberia, and the United Kingdom.  [Dkt. 470]. Other witnesses, though in the United States, reside outside of this District.  Importantly, none of Mr. Ganpat's fact witnesses reside in the United States.

To avoid prejudice – and any issues at trial - EPS proactively moves, pursuant to Rule 43, for an order requiring all testimony to be in-person, and to prohibit any testimony via Zoom.

Prior Zoom testimony in this case both in deposition and in an evidentiary hearing before the Court has been riddled with technical difficulties and the loss of testimony including:

- Sixteen instances of "Zoom audio distortion" during Plaintiff's evidentiary hearing on his injunction;

- Counsel for the Plaintiff needing to "restate" the witnesses testimony throughout the evidentiary hearing so that the Court could understand;

- An acknowledgement by the Court on the record that the only way to "get through this" was by leading the witness;

- No fewer than **160** instances of "inaudible" recorded during Plaintiff's Zoom deposition;

- During Ms. Favoloro's (EPS designated expert) hybrid Zoom-in person deposition, the remote court reporter insisted on continuing the deposition because she could not hear both counsel and the witness sufficient to transcribe the record;

- Captain Singh's (EPS) Zoom deposition had "crossing conversations" and inability of the witness and counsel to communicate the most basic of questions due to sound delays;

- The Zoom depositions of Drs. Ogden and Millet (EPS designated experts) both, due to sound issues, requiring counsel for EPS to mute which impacted objections.

## Law and Argument

### A. The standard for taking testimony remotely, "compelling circumstances", has not been met.

"In the most important affairs of life, people approach each other in person, and television is no substitute for direct personal contact. Video tape is still a picture, not a life." *Stoner v. Sowders,* 997 F.2d 209, 213 (6th Cir.1993) (considering whether video depositions are as good as

live testimony).

The Federal Rules of Civil Procedure are clear. Fed. R. Civ. P. 43 governs the "Taking of Testimony" and provides that:

> (a) **In Open Court**. At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.
> (b) **Affirmation Instead of an Oath**. When these rules require an oath, a solemn affirmation suffices.
> (c) **Evidence on a Motion**. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions.
> (d) **Interpreter**. The court may appoint an interpreter of its choosing; fix reasonable compensation to be paid from funds provided by law or by one or more parties; and tax the compensation as costs.

Fed. R. Civ. P. 43. At trial, a witnesses' testimony must be taken in open court unless….Thus, in person testimony in open court is the rule, rather than the exception. Fed. R. Civ. P. 43(a) provides for "good cause" in "compelling circumstances" and with "appropriate safeguards" the Court "may" permit testimony in open court by "contemporaneous transmission" from a "different location."

In Multi District Litigation (MDL) cases, this Court has used five factors to determine whether testimony should be allowed under Rule 43(a). This Court's opinion in *Vioxx* laid out five factors to consider when determining good cause and compelling circumstances: (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation. *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2017 WL 2311719, at

*3 (E.D. La. May 26, 2017); *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640 (E.D. La. 2006) (same).

"Nothing in Rule 43(a) suggests that the contemporaneous video transmission should be utilized simply for the convenience of counsel, or because of the mere distance of a witness from the courthouse." *O'Bryant v. Gray Ins. Co.*, No. CV 16-13203, 2017 WL 4785793, at *2 (E.D. La. Oct. 19, 2017).

As an initial matter, Mr. Ganpat's case is not the type of complex, multi-party, multi-state litigation for which flexibility is needed to manage a complex multi-district case. *O'Bryant* at, *2 (slip and fall case was not complex multi-district case finding "no circumstance of a "compelling nature" and failing to see any exigent situation in which Plaintiff should be so accommodated [by calling witnesses under Rule 43(a)]).

"In short, contemporaneous video transmission for regular witness testimony, during the course of a routine "slip and fall" case such as this, does not lend itself to contemporaneous transmission of testimony." *Id*. In addition, as explained *supra* and *infra*, and as demonstrated by the March 2022 hearing before this Court with just one Indian Zoom witness, true prejudice to EPS exists. EPS was unable to object, subject to 16 separate instances of "Zoom distortion."

Then there is the issue of the depositions taken by Plaintiff in this case. Plaintiff, apparently made technical or strategic reasons to not depose many witnesses. Specifically, of Plaintiff's 27 witnesses, 22 are undeposed.

Plaintiff has not preserved their testimony, as he could have, via deposition. *O'Bryant v. Gray Ins. Co.*, No. CV 16-13203, 2017 WL 4785793, at *2 (E.D. La. Oct. 19, 2017) ("Plaintiff also fails to demonstrate why such testimony could not have been taken via a perpetuation deposition under Fed. R. Civ. P. Rule 32(4)(B), which is the normal process for procuring the

needed testimony for presentation of absent witnesses' testimony at trial.").

If Plaintiff then is allowed to call witnesses "live" to give trial testimony via Zoom, Plaintiff does an end run around this Court and the Federal Rule's process for preserving absent witnesses' testimony. This is not a situation of no harm, no foul. EPS had no obligation to scour the globe to find Plaintiff's witnesses, hire foreign counsel to accomplish compliance with the Hague Convention and foreign subpoena rules to preserve their testimony.

EPS will be materially prejudiced if Plaintiff is then allowed to short cut all of those rules and procedural protections for live in person testimony—**in the jurisdiction where after all Plaintiff chose to sue EPS**—if those witnesses are then allowed to testify at trial via Zoom from abroad.

If Plaintiff wishes to offer their testimony, having shown known no compelling circumstances otherwise, this Court must require the witnesses to appear in person in this Court, not by remote video.

> Live testimony is always preferable to a video transmission, in that the jury can view the witness in his/her entirety, including body language, and how the witness conducts himself/herself on the witness stand, which is particularly important in evaluating credibility. Nothing in Rule 43(a) suggests that the contemporaneous video transmission should be utilized simply for the convenience of counsel, or because of the mere distance of a witness from the courthouse.

*Id*. at *2 (emphasis added).

Courts have repeatedly held that mere inconvenience or the expense or logistical difficulties associated with travel falls short of supplying the requisite good cause under Rule 43(a). *See Doe v. Univ. of Texas at San Antonio,* No. 5:20-CV-1039-DAE, 2022 WL 22891322, at *1 (W.D. Tex. Sept. 12, 2022) citing "*Powers v. Target Corp.*, Case No. 19-cv-60922-BLOOM/Valle, 2020 WL 8970607, at *2 (S.D. Fla. Mar. 9, 2020) (concluding that plaintiff failed to establish good cause under Rule 43(a) where the "explanations submitted to the Court reflect[ed]

5

the entirely foreseeable inconvenience" to the witness of "having to interrupt his busy schedule to attend trial in person" and explaining that the "inconvenience" of paying for a witness's travel and lodging expenses does not constitute the "type of 'good cause' or 'compelling circumstances' that would warrant granting Plaintiff's Motion"); *see also Lamonica v. Safe Hurricane Shutters, Inc.*, No. 07-61295-CIV, 2011 WL 917726, at *1 (S.D. Fla. Feb. 18, 2011) (concluding that the alleged financial and logistical burdens of attending trial did not constitute "good cause" or "compelling circumstances" under Rule 43, even where the plaintiffs lived outside of the country and would have to travel internationally).

Moreover, "[t]he importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." Rule 43(a) Advisory Committee Notes, 1996. Cf. *Napier v. Bossard,* 102 F.2d 467, 469 (2d Cir.1939) (Learned Hand, J.)(the deposition is "a substitute, a second-best, not to be used when the original is at hand.")

This Court nevertheless allowed plaintiff to testify via Zoom at the evidentiary hearing on his injunction. *See generally*, Transcript (attached hereto as **Exhibit 1**). In no fewer than sixteen instances, did the Court reporter record "Zoom audio distortion." *See e.g.*, Exhibit 1 at 23, ll 23-24; 24, l. 25, 32; l. 13; 43-44, l. 25 & 1; 45, ll 4-5; 58, ll 16-17; 59, ll 8-9; 62, l. 15; 70, l. 4 & 19, 71, l. 3; 73, l. 5; 79, l. 25; 80, l. 2, 5 & 13.

As the transcript confirms, because of shortcomings in video testimony transmission, huge chunks of testimony were lost.

Early in the hearing, this Court instructed counsel for Mr. Ganpat to restate the answers of the witness:

> "**THE COURT:** All right. Mr. Kholkar is appearing by videoconference. We are going to do the best we can to transcribe his testimony. If there are times when it's difficult to understand him, Mr. Martin, it might be good for you to say, "Was your response X?" and he can say, "Yes," if you understand him better than we are able to."

Exhibit 1 at 5, l. 17. At other points, he could not be understood by the Court—"**THE COURT:** I didn't understand." Exhibit 1 at 40, l. 17; 50, l. 27; 64, l. 8. Also of concern, counsel objected to form — leading — and was told:

> THE COURT: Well, I think that's the only way we are going to get through this. I'm going to give him some leeway. Maybe you can try to rephrase it.
>
> "MR. GONZALEZ: Sure".

Exhibit 1 at 23, ll 9-13. This history of Zoom testimony in an evidentiary hearing in this very case illustrates the prejudice that EPS will suffer (inability to object to form, sixteen separate instances of "Zoom audio distortion" and concerns with the Court's and counsel's ability to understand, via Zoom, the English of a non-native English speaker) and the inability of the Court, due to language and technical limitations, to order appropriate safeguards on Zoom testimony as raised by many Courts faced with the decision whether to allow contemporaneous oral testimony from another location under Rule 43(a).

The depositions of witnesses taken via Zoom in this case did not fare any better. *See e.g.*, Deposition of Plaintiff September 18, 2022 (attached as **Exhibit 2**). In Plaintiff's September 18, 2022 deposition, there were no fewer than 160 instances of "inaudible." *Id*. The following passage is only one example:

> Q. Okay. So your testimony now is you remember telling the chief mate, I want to go see my daughter, she has been born?
>
> A. No, sir. I -- I was complaining from when-- when he (inaudible) and they kept me on-board and kept me knowing my conditions. Even the second officer didn't -- didn't (inaudible) my condition. So I was -- I start complaining then. I was sleeping in my cabin. The chief officer on (inaudible) my cabin and I told him that I'm not going -- I'm not going to alive. So I -- I scared for my life. So he told me -- I asked him, I need to go to doctor. So

7

he told me he will speak to the captain and he will let me know.

Exhibit 2 at 32-33, ll 12-25 & 1.  Deposed witnesses in Singapore fared no better.  In Captain Anil Singh's deposition, at points, due to Zoom, the witness struggled to understand counsel on the most basic of questions.  *See* July 27, 2022 Deposition of Captain Anil Singh (attached as **Exhibit 3**)[1] at 77, ll 17-23:

> **Q.** Okay. Well, I'm taking your deposition on Zoom today, right? Right?
>
> **A.** Our discussion crossed. What did you say?
>
> **Q.** I said I'm taking your deposition on Zoom today, right?
>
> **A.**     Correct.

One Zoom expert deposition, that of Defendant's expert Nancy Favoloro, taken by Plaintiff was continued when the witness and counsel for both parties were present live in New Orleans and the Court reporter was remote in Florida.  This deposition was continued at the Court reporter's

---

[1] Blithely ignoring the role of the Court under Rule 43(a), Plaintiff elicited the following testimony from Captain Singh:

> Q. And we're doing it -- it's not inconvenient and not expensive, right? Other than me having to take your depo from 9 p.m. to 12 and you having to sit through these three hours, which, you know, we have to get through, but other than that, we're doing it on Zoom, right?
> A. What you say is correct. What I referred to was to attend trial -- to attend trial in New Orleans, I will have to attend in person. I'm referring to that.
> Q. Well, not necessarily because you can -- we can take testimony via video like we're doing right now. Unless you want to come in person, then it's up to you, but you can appear just like you are today, correct?
> A. Correct.

Exhibit 3 at 77, ll 24-25; 76, ll 1-14

insistence because, remotely, she could not hear both counsel's questions and the witness's answers through one computer. This only serves to highlight further limitations on Zoom testimony and the importance of "compelling circumstances" for the use of such. The Zoom deposition of Dr. Ogden, defendant's expert, taken by Plaintiff also suffered from audio issues requiring counsel for EPS to "mute" which then delayed and hindered counsel's ability to object *See e.g.*, Transcript of Dr. Ogden Deposition (**Exhibit 4**) at 35, ll 5-17.

> ***B. Based on Zoom experiences to date, Plaintiff cannot assure "appropriate safeguards" required by Rule 43(a).***

In addition to requiring a showing of "compelling circumstances," Rule 43(a) allows remote testimony only if "appropriate safeguards" are in place. These safeguards are to ensure "accurate transmission" of testimony, as well as "[p]rotection against influence from persons present with the witness." Fed. R. Civ. P. 43(a) advisory committee's note. Related Fed Rules Evid. 611(a) prescribes that the Court should "exercise reasonable control over the mode….of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time…."

 Experience from the Evidentiary Hearing held on March 28, 2022 in this case, which included Plaintiff's live, contemporaneous testimony, via Zoom from Goa in connection with Plaintiff's motion for injunction, demonstrate that witness testimony via Zoom cannot abide by these rules and will not safeguard the fundamental due process rights they seek to protect.

Subject to pending motions for summary judgement and to dismiss, Plaintiff, an Indian national, has sued EPS, a Singapore corporation, and the Court will apply Liberian laws to

Plaintiff's maritime tort claims, and Indian law to his malicious prosecution claim. [2]

Plaintiff has disclosed eleven (excluding the deceased doctor) experts and treating physicians purportedly residing throughout the United States, Brazil, India, and Liberia. Defendant has disclosed 13 living experts and treating physicians residing in the United States, Liberia, India, Brazil, and UK. Both sides have disclosed experts ranging in topics from maritime safety, Liberian law, Indian law, podiatry, orthopedics, internal medicine, and public health. In addition, Plaintiff has designated a potpourri of international witnesses (many of whom have not been deposed and many of whom are non-native English speakers) residing in India (9 including Plaintiff) , Brazil (5), Singapore (3), UK, and Liberia. [Dkt. 470]. Time change alone ranges from U.S. Central Time (the time zone of the Court) to thirteen hours ahead in Singapore, with many witnesses residing in time zones in between. For example:

| Country | Time Difference* | U.S. Central Standard Time | Local Time (Start) | Local Time (End)** |
|---|---|---|---|---|
| Singapore | + 14 hours | 9:00 a.m. | 11:00 p.m. | 6:00 a.m. |
| India | + 11.5 hours | 9:00 a.m. | 8:30 p.m. | 6:30 a.m. |
| UK | + 6 hours | 9:00 a.m. | 3:00 p.m. | 10:00 p.m. |
| Liberia | +6 hour | 9:00 a.m. | 3:00 p.m. | 10:00 p.m. |
| Brazil (Rio) | + 3 hours | 9:00 a.m. | 12:00 p.m. | 7:00 p.m. |
| | ** Assumes seven hour trial day (ending at 4:pm) | | | |

Securing "contemporaneous" video testimony from these witnesses in their home countries will be nigh on impossible. There is no indication how contemporaneous (and reliable) testimony will be elicited from these witnesses in their home countries via Zoom.

---

[2] EPS fully briefed the Court in its pending motion to dismiss, under the controlling law of India there is no cause of action for malicious prosecution as alleged – or under the facts of this case. [Dkt. 413-1, July 8, 2024, Dkt. 436, August 9, 2024). Similarly, EPS has pending motions for partial summary judgment on general maritime negligence [Dkt. 429, August 6, 2024, Dkt. 445, August 23, 2024] and unseaworthiness [Dkt. 30, August 6, 2024, Dkt. 444, August 23, 2024] under Liberian law.

The documents that will be used with these witnesses are extensive, spanning thousands (approximately 12,000 total) of pages. *See e.g.*, [Dkt. 467 and 469] (Parties' proposed exhibits). During Zoom testimony, the Court also would not be able to see the witness and the exhibit simultaneously, as publishing the exhibit on the video screen generally displaces the Zoom "speaker."

There would be no opportunity for the trier of fact to assess the demeanor and comportment of the witness while the exhibit occupies the computer screen. This would detract significantly and prejudicially from the testimony of the witnesses. And again, video testimony is not the same as live in person testimony especially when both sides have raised issues of candor with witnesses, there are dueling experts, and the Court will need to assess credibility. Because of the nature of this case, proper presentation of these witnesses and exhibits necessitates live presentation.

All of these things make it difficult, if not impossible, to properly safeguard Rule 43(a) testimony. In this way, true prejudice to EPS exists.

The record from the short, one-witness Zoom hearing on March 29, 2022 in this Court paints the picture of what multiple witnesses called via Zoom will look like and the prejudice that EPS will suffer.

The record, from a single witness, shows no fewer than 16 "Zoom audio distortion" passages in the transcript, at least two instances where the Court was heard to say "I don't understand," and one instance where the Court remarked that the only way to get through the Zoom testimony was to lead the witness. In addition, communication was so garbled and difficult to understand, counsel was allowed to re-state the witness's answers and then ask the witness if he agreed with the restatement.

These disruptions are distracting, prejudicial, and particularly during cross-examination,

11

take away from the efficacy of this "effective procedure for determining the truth." *See* Fed. R. Evid. 611(a).  Finally, such disruptions at trial would pose a significant waste of the Court's time and resources. *See Id*.  The use of Zoom testimony of multiple witnesses cannot insure, based on the experience to date, "accurate transmission" of testimony, Fed. R. Civ. P. 43(a) advisory committee's note, and would not "avoid wasting time," Fed. R. Evid. 611(a).

### C. *Required protocols for taking testimony by remote video transmission have not been met.*

Even assuming Plaintiff could show "compelling circumstances" and "appropriate safeguards" to justify taking trial testimony by contemporaneous transmission, Fed. R. Civ. P. 43(a) does not give this Court jurisdiction beyond the territorial limits of the United States. *See Hilton v. Guyot*, 159 U.S. 113, 163 (1895) ("No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived").  Taking trial testimony from witnesses located abroad, live or by video conference, would be an exercise of judicial power within the territory of a foreign sovereign state.  Such sovereign act would need to be consistent with "the comity of nations." *Id*.; *see also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. Iowa*, 482 U.S. 522, 543 n. 27 (1987) ("Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states.").

Taking testimony abroad, including in India, would contravene that sovereign state's interests in protecting against the exercise of foreign judicial powers within its borders, unless conducted through the proper channels.  As this Court is aware and referenced in its order on *forum non conveniens* [Dkt. 221], in the first instance, that protocol is defined for the United States of America and India by the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"), opened for signature, Mar. 18, 1970, 23

U.S.T. 2555, T.I.A.S. No. 7444. India's reservations to the treaty make clear that U.S. judicial personnel may only be present for the giving of testimony by a person in India upon the execution of a Hague Evidence Convention Letter of Request by an Indian judge. *See, e.g.*, Declarations by the Government of India, *available at*: https://www.hcch. net/en/instruments/conventions/status-table/notifications/?csid=988&disp=resdn (India's Denunciations); *see also FTC v. Vyera Pharm.*, 1:20-cv-706 (no docket number – between Dkt. 205 and 206) (July 30, 2020 S.D.N.Y.) (issuing a Letter of Request to be executed in India); *see also* [https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/India.html](https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/India.html) ; last visited November 29, 2024.

Like India, the other nationalities of witnesses designated by Plaintiff in this case rules could be implicated by the proposed Zoom testimony as well. *See e.g.* [https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Singapore.html](https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Singapore.html); last visited November 29,2024 (discussing submitting requests to the Singapore Central Authority for the Convention. Yet, Plaintiff – as far as EPS is aware - has done nothing to address these concerns.

This is not theoretical speculation either. Recently, Germany protested the United States Tax Court's powers being used to take trial testimony by contemporaneous transmission from litigants within Germany. *See* United States' Statement of Interest at 12-13, *Zuhovitzky v. Comm'r of Internal Revenue*, No. 3489-16 (June 13, 2018 T.C.). In another recent case, China answered in the negative to the question: "Can United States Government attorneys and private counsel directly take depositions of person in Macao or over video-conference of a voluntary witness in Macao who is a Chinese national." *SEC v. Yin*, No. 1:17-cv-972, ECF No. 105 (May 28, 2019 S.D.N.Y.) (Response brief of SEC to Judge Oetken); *see also Junjiang Ji v. Jling Inc.*, No. 15-CV-

13

4191, 2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019) ("It is … undisputed that, by testifying via video link while located in mainland China, [plaintiff] violated Article 277 of the Chinese Civil Law.").

Absent compliance with the Hague Evidence Convention, or a similar international judicial process for obtaining evidence abroad, significant and prejudicial problems could arise should the Court allow live trial testimony from witnesses located within a foreign sovereign state. Counsel for the United States may be strictly disallowed by the Executive Branch from participating. *See* United States' Statement of Interest at 12-13, *Zuhovitzky*, No. 3489-16 (pertaining to testimony through videoconference) ("The Justice Department's Civil and Tax Divisions have advised the Commissioner that . . . it should not permit its attorneys to participate in that portion of the Tax Court's proceedings that are taking place on German soil . . . ."). Further, any party participating could be in violation of the criminal laws of the foreign state. *SEC v. Yin*, No. 1:17-cv-972, ECF No. 105 (noting that participation in examination of witness in China could be a criminal act under Chinese law).

At an absolute minimum, at this time, the Court should not allow live trial testimony by contemporaneous transmission for any witness located abroad. Such an order should only follow an opportunity by the parties to review foreign sovereignty issues and evidence-gathering restrictions on a state-by-state basis. That process is not likely to proceed quickly. It is notable that this case, brought by Plaintiff in this District, will proceed most timely – by proceeding with an in-person trial with in-person witnesses as proposed by EPS.

## Conclusion

EPS respectfully requests the Court exclude all of Plaintiff's witnesses from testifying via video conference and/or Zoom and require that all witness testimony be taken in open court in the

United States District Court for the Eastern District of Louisiana where — after all — Plaintiff chose to file his suit.

Dated: December 3, 2024

Respectfully Submitted,

| | |
|---|---|
| Michael H. Bagot, Jr., T.A. (#2665) | /s/ J. Stephen Simms |
| Thomas A. Rayer, Jr. (#20581) | J. Stephen Simms (*pro hac vice*) |
| WAGNER, BAGOT & RAYER LLP | Catherine M. Benson (*pro hac vice*) |
| Pan American Life Center – Suite 1660 | Gary C. Murphy (*pro hac vice*) |
| 601 Poydras St. | Simms Showers LLP |
| New Orleans, Louisiana 70130 | 201 International Circle, Suite 230 |
| Telephone: 504-525-2141 | Baltimore, Maryland 21030 |
| Facsimile: 504-523-1587 | Tel: 410-783-5795 |
| E-mail: mbagot@wb-lalaw.com | Fax: 410-510-1789 |
|       trayer@wb-lalaw.com | Email: jssimms@simmsshowers.com |
| |       cmbenson@simmsshowers.com |
| |       gcmurphy@simmsshowers.com |

Counsel for Eastern Pacific Shipping Pte, Ltd.